**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

I/P ENGINE, INC.

                  Plaintiff,

        v.

AOL INC., *et al.*,

                  Defendants.

Civil Action No. 2:11-cv-512

**DEFENDANTS GOOGLE INC., AOL INC., GANNETT CO., INC., IAC SEARCH &
MEDIA, INC., AND TARGET CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION TO SEAL DOCUMENTS AND CLOSE THE COURTROOM
<u>DURING PRESENTATION OF CONFIDENTIAL MATERIAL AT TRIAL</u>**

**Introduction**

Due to the protective order entered by this Court, Defendants have produced hundreds of thousands of pages of materials that include some of their most highly sensitive engineering and finance records without troubling the Court with the concerns the companies otherwise would have over the dissemination of sensitive, confidential information. However, the protections that have allowed the parties to freely share information amongst themselves during the discovery process cannot protect confidential information from disclosure in an open courtroom. Defendants ask this Court to close the courtroom and seal the record as to a three limited categories of extraordinarily sensitive and valuable confidential business information: (1) how AdWords and AdSense for Search determine which advertisements to display to users, (2) Google's confidential patent license agreements and other intellectual property agreements, and (3) Defendants' confidential, non-public financial information. While Defendants respect the right of public access to judicial proceedings, public dissemination of these limited categories of information would cause considerable harm to their competitive standing.

The strong public interest in protecting this kind of sensitive commercial information from disclosure outweighs the common law presumption of public access to judicial proceedings. Thus, testimony and documents concerning the confidential operations of Google's products, testimony and documents concerning Google's confidential intellectual property agreements, and testimony and documents concerning Defendants' nonpublic financial data should be shielded from public disclosure. Accordingly, Defendants ask the Court to close the courtroom whenever testimony regarding their sensitive commercial information is offered at trial, and to seal all documents and portions of transcripts discussing Defendants' sensitive commercial information.

Once the parties exchange their objections to exhibit lists and deposition designations, then meet and confer with Plaintiff about the same, Defendants will supplement this motion with a specific and narrowly tailored list of evidence that should not be heard in open court, along with tailored evidence justifying the request.

## Argument

### I. COURTS DENY PUBLIC ACCESS TO JUDICIAL PROCEEDINGS WHEN DISCLOSURE OF CONFIDENTIAL COMMERCIAL INFORMATION COULD HARM A PARTY'S COMPETITIVE STANDING.

While there is a common law right of public access to judicial proceedings, that right is not a constitutional right, and it is "not absolute." *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978); *Woven Electronics Corp. v. The Advance Group, Inc.,* Nos. 89-1580, 89-1588, 1991 U.S. App. LEXIS 6004 at *17-*19 (4th Cir. April 15, 1991) ("It is also uncontested, however, that this right of access is not unlimited."); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 432 (5th Cir. 1981) ("The common law right of access certainly antedates the Constitution's free press guarantee, but it does not rise to that level of importance or merit the same degree of protection"); *In re Iowa Freedom of Information Council,* 724 F.2d 658, 664 (8th Cir. 1983) (holding that a private party's property interests in its trade secrets sufficed to override the media's First Amendment right of access).

The Fourth Circuit acknowledged the legitimacy of limiting public access to court proceedings and records in order to protect proprietary information in an unpublished per curiam decision. *Woven Electronics*, 1991 U.S. App. LEXIS 6004 (finding that an order closing the courtroom during times when trade secrets were exposed would have been proper). There the Fourth Circuit stated that the decision to close the courtroom is vested in the discretion of the trial court, so a court should seek "an appropriate balance between the public's right of access to judicial records and proceedings and the parties' legitimate interest in the protection of sensitive

proprietary information." *Id.* at *18-*19. This can be accomplished by closing those portions of the trial and sealing "those portions necessary to prevent the disclosure of trade secrets." *Id.* at *19. The court recommended following the Eighth Circuit's approach from *In re Iowa* and instructing the district court to review the record and "seal only those portions necessary to prevent the disclosure of trade secrets." *Id.* (citing *In re Iowa*, 724 F.2d at 663-64). "The Fourth Circuit [cited] the analysis of *In re Iowa* extensively and, although it followed that case in emphasizing that it was 'not announcing a blanket rule that the presence of trade secrets will in every case and at all events justify the closure of a hearing or trial,' it acknowledged that such action by the district court would be appropriate in certain circumstances." *Level 3 Comm., LLC v. Limelight Networks, Inc.,* 611 F. Supp. 2d 572, 582 (E.D. Va. 2009) (quoting *Woven Electronics*, 1991 U.S. App. LEXIS 6004 at *6).

The common law provides only a presumption of public access, which is just <u>one</u> of the interests to be weighed in favor of disclosure. *See Belo*, 654 F. 2d at 434; *Van Waeyeberghe*, 900 F.2d at 848 n4 ("we have refused to assign a particular weight to the right."). Where, as here, only private commercial interests—as opposed to questions of public policy—are involved, the interest in public access is diminished. *See In re Iowa*, 724 F.2d at 664 ("Where only private commercial interests or damage are involved, we think the law justifies the steps taken by the District Court to [prevent public disclosure]"). The Fourth Circuit instructed that "[i]n these sensitive situations courts must proceed cautiously and with due regard to the unique facts involved in each case." *Woven Electronics*, 1991 U.S. App. LEXIS 6004 at *19.

In stark contrast to the diminished interests in public access to these proceedings, there are strong interests in favor of a narrowly tailored order protecting Defendants' confidential commercial information from disclosure. "[T]here can be no doubt that society in general is

interested in the protection of trade secrets and other valuable commercial information. That interest is recognized, for example, in Rule 26(c)(7), in our copyright, trademark, and patent statues, and in the common law of business torts." *Zenith Radio*, 529 F. Supp. 866 at 905 (E.D. Pa. 1981). Protecting confidential information such as trade secrets and other valuable, confidential commercial information is important since "[t]heir only value consists in their being kept private. If they are disclosed or revealed, they are destroyed." *In re Iowa*, 724 F.2d at 662.

Accordingly, courts frequently deny public access when disclosure of confidential commercial information could "harm a litigant's competitive standing." *See Woven Electronics,* 1991 U.S. App. LEXIS 6004; *Nixon*, 435 U.S. at 598. *See also New York v. Microsoft Corp.*, 2002 WL 1315804 (D.D.C. 2002); *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273, 1277 (S.D.N.Y. 1982) ("the right to attend judicial proceedings should, in appropriate circumstances, give way to the right to protect one's trade secrets"); *Zenith Radio*, 529 F. Supp. at 901 ("Judicial proceedings and records may be closed in part or in full to the public in order to protect private interests, including proprietary interest in trade secrets and other commercial information"). In *Function Media v. Google* trial in the Eastern District of Texas, the Court granted Google's motion to seal the courtroom, in part, by allowing Google to bring to the Court's attention when it was necessary to close the courtroom and then giving Google some time to identify the portions of the record that should remain under seal. (Declaration of Margaret P. Kammerud in Support of Defendants' Motion to Seal Documents and Close the Courtroom During Presentation of Confidential Material at Trial, Ex. A, 3:12-4:2, 6:16-24.) Defendants ask the Court to do the same here.

## II. THE DISCLOSURE OF GOOGLE'S CONFIDENTIAL COMMERCIAL INFORMATION AT ISSUE IN THIS CASE COULD HARM GOOGLE'S COMPETITIVE STANDING.

Because this motion was filed after the parties exchanged pretrial disclosures and before they exchanged objections to such disclosures or met and conferred on the subject, Defendants do not know what the full scope of evidence will be at trial or what Plaintiff intends to introduce. Given that, Defendants cannot specify at this time the precise evidence that should be shielded from disclosure in open court, or the evidence or testimony that would fall within those categories. Once the parties have met and conferred regarding the parties' disclosures and objections, Defendants will supplement this motion with a specific and narrowly tailored list of evidence that should not be heard in open court, along with tailored evidence and testimony justifying the request. In light of the above legal principles, Defendants do not intend to cast a wide net across everything that they have produced. Instead, Defendants will limit their request to those subject matters that are truly sensitive and confidential.

Based on the discovery to date, however, Defendants believe both sides will introduce evidence regarding (1) how AdWords and AdSense for Search determine which advertisements to display to users, (2) Google's confidential patent license agreements and other intellectual property agreements, and (3) Defendants' confidential financial information. The Court should close the courtroom when this evidence is heard because its public dissemination could harm Defendants' competitive standing. (*See* Declaration of Michael Hochberg in Support of Plaintiff's and Defendants' Motion to Seal[1] ("Hochberg Dec."); Declaration of James Maccoun

---

[1] The declaration is titled "Declaration of Michael Hochberg in Support of Plaintiff's and Defendants' Motions to Seal" because it was prepared in response to the Court's orders to show cause why certain litigation materials should not be unsealed and filed in the public record. Plaintiff has not joined this motion.

in Support of Defendants' Motion to Seal ("Maccoun Dec."); Declaration of Danielle Romain in Support of Defendants' Motion to Seal ("Romain Dec.").)

     **A.**     **Defendants' Technology and Product Design and Operations Are Highly Confidential.**

There can be no dispute that evidence related to the design and technology underlying Defendants' advertising products are confidential, proprietary information that must be protected. In *Viacom Int'l, Inc. v. Youtube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008), with respect to Google's AdWords system—one of the accused products in this case—the court found that the schema for Google's AdWords database "constitutes commercially sensitive information regarding Google's advertising business, the disclosure of which would permit others to profit without equivalent investment from the years of refinement and thousands of person hours of work Google spent." *Id.* at 263. The *Viacom* court found that the source code underlying Google's search technology is "the product of over a thousand person-years of work" and that "[t]here is no dispute that its secrecy is of enormous commercial value. Someone with access to it could readily perceive its basic design principles, and cause catastrophic competitive harm to Google by sharing them with others who might create their programs without making the same investment." *Id.* at 259.

Of particular concern in this litigation is disclosure of Google's technology and methods for delivering ads to end users.[2] Google's superior ability to target ads derives, in large part, from its highly confidential process of identifying and delivering ads. Google has invested significant resources in building, maintaining, and improving this technology, and its public disclosure would allow competitors to adopt Google's valuable proprietary information without

---

     [2]  These same concerns apply to AOL Search Marketplace, a white label version of Google AdWords.

making the same investment Google did.  (Hochberg Dec., ¶ 17.)  Moreover, the disclosure of the means by which AdWords and AdSense for Search determine which ads to display could allow advertisers to manipulate the system to improve the position of their content in search results or Sponsored Links.  (*Id.,* ¶11.)  Such gaming of the system would hurt consumers by increasing the rankings of lower quality advertisements.  These tactics also hurt other advertisers by making it more difficult for their advertisements to be displayed.  (*Id.,* ¶ 16.)

In *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273 (S.D.N.Y. 1982), the court closed the courtroom to hear testimony about S&P's confidential business procedures relating to the development and composition of the S&P 500 Index.  A news service sought access to the transcripts from the hearing but the court denied the request, reasoning that the sealed testimony "constitute[d] trade secret information not available to the general public and that this information if released would reveal how S&P maintains its position as the most reliable and accurate of the stock market indexers to the irreparable detriment of S&P." *Id.* at 1277.  Similarly, releasing Defendants' technology to the general public would reveal how Google's advertising systems function, including how they rank and price ads on Google.com and its partner websites.  In this case, Google has produced highly confidential source code.  Moreover, many of the key engineering documents produced in response to Plaintiff's requests are potentially even more valuable to competitors than the source code, as they explain in plain English the various steps involved in Defendants' accused products.  Assuming Plaintiff intends to use those documents – which are presumably more accessible to a jury – and elicit testimony regarding their content, Defendants will face considerable harm if the record and courtroom remains completely open to the public during the presentation of this evidence.

Accordingly, the Court should close the courtroom when information about this process is offered at trial, and seal all documents and portions of transcripts related to this testimony.

**B.**     **The Disclosure of Google's Confidential Intellectual Property Agreements Could Harm Google's Competitive Standing.**

Defendants also ask the Court to close the courtroom for any testimony related to Google's confidential patent license agreements and other intellectual property agreements, and seal all documents and portions of the trial transcript discussing this sensitive information. Courts typically find that a party's interest in maintaining the confidentiality of nonpublic financial information outweighs the common law right to public access. *See e.g. Flexible Benefits Council v. Feldman*, 2008 WL 4924711 (E.D. Va. 2008) (holding that Plaintiff's interest in preserving the confidentiality of financial data normally unavailable to the public outweighs public's interest to access). In this action, Google has produced a number of patent license agreements and other intellectual property agreements, including settlement agreements, with third parties, and the parties' damages experts have discussed such agreements in their expert reports. (*See* Maccoun Dec., ¶ 3.) Public dissemination of these agreements would harm both Google and the third parties to the agreements. (*See generally* Maccoun Dec.)

A lack of Court protection of the information included in the intellectual property agreements produced by Google in this action would severely harm Google because the information could be used by third parties as leverage in negotiating with Google related to intellectual property and intellectual property disputes. Google would also suffer competitive harm in having other parties know its licensing rates for intellectual property. This could give competitors or potential licensors insight into Google's and its licensing partners' confidential licensing strategy and thus an unfair competitive advantage. (*Id.*, ¶ 5.)

Further, all or almost all of these agreements contain confidentiality clauses in order to protect the confidential information of Google and the third parties with whom they have entered into agreements. Most of these confidentiality clauses require that notice be given to the third party signors prior to any disclosure in litigation, including timeframes during which the signors may object to disclosure. (Maccoun Dec., ¶ 4.) This demonstrates the care the parties exercised in protecting the underlying agreements. This confidential information includes the intellectual property, technology, or other assets that Google has licensed or acquired in the past and the terms of those agreements, including the payment terms. Google and its partners in those agreements consider this information to be highly confidential and sensitive, and treat it as such under the confidentiality provisions negotiated and entered into by those parties. (*Id.*) Defendants ask the Court to do the same by closing the courtroom when any evidence of Google's confidential intellectual property agreements is offered at trial, and sealing all documents and portions of transcripts related to this evidence.

**C.**    **The Disclosure of Defendants' Nonpublic Financial Data Could Harm Defendants' Competitive Standing.**

Defendants also ask the Court to close the courtroom for any testimony related to their nonpublic financial data and seal related portions of the record because courts typically find that a party's interest in maintaining the confidentiality of nonpublic financial information outweighs the common law right to public access. *See e.g. Flexible Benefits Council*, 2008 WL 4924711.

Here, Defendants have produced substantial financial data to Plaintiff that is not disclosed to the public. Such information would be a gold mine to their competitors, enabling them to evaluate which of Defendants' products and strategies are the most profitable and which features attract the most users and customers. (*See generally,* Romain Dec.) Specifically, knowledge of Google's margin information and the amounts that Google provides to its

publishers under its AdSense system would give competitors an advantage in negotiating with third party publishers. (*Id.*, ¶ 5.) "Additionally, information regarding Google's confidential financial information by product would provide insight to competitors regarding how changes to Google's accused products and systems impact its revenues and costs for those systems." (*Id.*)

Defendants produced all of this information in good faith pursuant to the Court's protective order; they should not now face damaging public access to such materials in order to exercise their right to a trial. Due to the obviously sensitive nature of this information, the Court should close the courtroom when any evidence of Google's nonpublic financial information is offered at trial, and seal all documents and portions of transcripts related to this evidence.

## III. PLAINTIFF AGREED TO MEET AND CONFER WITH DEFENDANTS ON THESE ISSUES.

Because the parties just served pretrial disclosures and Defendants do not know the full scope of evidence that will be presented at trial, Defendants reached out to Plaintiff and asked whether Plaintiff would agree to meet and confer about these issues at a later date. Plaintiff has agreed to review the motion and consider the testimony for which Defendants seek to close the courtroom in good faith. Defendants anticipate supplementing this motion with a specific and narrowly tailored list of evidence that should not be heard in open court, along with tailored evidence and testimony justifying the request after such meet and confer takes place. Defendants are also willing to work with Plaintiff to minimize disruption to the Court from the periodic closing of the courtroom, including grouping subject matters or evidence together to reduce the number of times the courtroom needs to be closed.

## **CONCLUSION**

For the foregoing reasons, the Court should close the courtroom during the presentation of confidential commercial information at trial and seal all documents and portions of transcripts discussing Defendants' sensitive commercial information.

DATED: September 24, 2012

_/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624.3000
Facsimile:  (757) 624.3169
senoona@kaufcan.com

David Bilsker
David A. Perlson
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

_Counsel for Google Inc., Target Corporation,
IAC Search & Media, Inc., and Gannett Co., Inc._

By:  _/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile:  (757) 624-3169

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW,  GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile:  (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile: (415) 653-6444

*Counsel for Defendant AOL Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2012, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the

following:

Jeffrey K. Sherwood
Kenneth W. Brothers
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC   20006
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, VA  23510
Telephone:  (757) 623-3000
Facsimile:  (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff, I/P Engine, Inc.*

  /s/ Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624.3000
Facsimile:  (757) 624.3169
senoona@kaufcan.com

11942576v1

14