UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| I/P ENGINE, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civ. Action No. 2:11-cv-512 |
| AOL, INC. et al., | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF I/P ENGINE, INC.'S *DAUBERT* MOTION, AND FOURTH MOTION *IN LIMINE,* TO EXCLUDE LYLE UNGAR'S NEW THEORY OF INVALIDITY AND OPINIONS REGARDING CLAIM CONSTRUCTION**

## I. INTRODUCTION

Pursuant to Federal Rules of Evidence 401 through 403, and 702, Plaintiff I/P Engine, Inc. ("I/P Engine") requests that this Court preclude any evidence of, reference to, or suggestion of Dr. Ungar's late disclosed new invalidity theory based on Culliss, as it was not rightfully or timely disclosed in his expert report. I/P Engine additionally requests that this Court preclude any arguments, opinions or evidence at trial by Dr. Ungar (or any other witness) regarding any claim constructions proposed during the *Markman* process that were rejected by this Court.

## II. DISCUSSION

### A. Dr. Ungar Should Be Limited to His Expert Report

The Federal Rules of Civil Procedure require an expert to provide in their written report "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. Rule. Civ. Pro. 26(a)(2)(B)(i). Accordingly, direct testimony by an expert witness at trial should be limited to the contents of his expert report, and nothing more. *See, e.g., ePlus,*

1

*Inc. v. Lawson Software, Inc.,* 2011 WL 3584313, at *5-6 (E.D. Va. Aug. 12, 2011) (precluding expert testimony about a theory that was not supported or disclosed in the expert report and stating that "[t]he exclusion of the theory was a result of [defendant's] own making"); *Voda v. Cordis Corp.,* 506 F. Supp. 2d 868, 881 (W.D. Okla. 2007) (limiting expert witness testimony to the opinions disclosed in his expert report is not error); *Dow Chem. Co. v. Mee Indus.,* 341 F.3d 1370, 1379 (Fed. Cir. 2003) (limiting the scope of the presentation at trial to what was provided in the expert reports).

During re-direct examination by Defendants' counsel at the end of his deposition, Dr. Ungar disclosed a new invalidity theory with respect to Culliss that was not in his expert reports. In his expert reports, Dr. Ungar had already provided specific theories of anticipation and obviousness in light of Culliss' disclosure. Ex. 1 at 46-53. In response, Dr. Carbonell, I/P Engine's validity expert, analyzed Dr. Ungar's invalidity theories, and identified specific deficiencies in Dr. Ungar's Culliss analysis that disputed and defeated Dr. Ungar's theories. During his deposition, Dr. Ungar acknowledged those deficiencies identified by Dr. Carbonell. Ex. 2 at 490:1-491:11 ("filtering at least in the way that we seem to be settled on using it now, was not identified before.").

Having had its anticipation positions based on Culliss substantially gutted, Defendants attempted to move to "plan B" and to introduce a new theory of invalidity based on the Culliss reference through re-direct examination of Dr. Ungar during his deposition. Ex. 2 at 522:14-525:1. The need for re-direct examination makes clear that even Defendants view this theory as outside the scope of Dr. Ungar's expert reports. Counsel for Defendants conducted the re-direct to ensure that this new and never previously disclosed theory would be "on the record." Dr. Ungar has admitted it was outside the scope of his expert reports because, when asked if his

2

expert report was complete, Dr. Ungar stated that he was "not sure it's fully complete," because he had "discovered" something additional in the Culliss reference that he "might want to present." Ex. 2 at 442:4-443:3. Dr. Ungar admitted that whatever he might want to add "came from discussions with [Defendants'] counsel." Ex. 2 at 443:4-6.

Defendants have the burden of proving invalidity. This means they have the affirmative burden of going forward with the evidence and proving their case by clear and convincing evidence. Their burden of going forward with the evidence is not conditioned upon or in rebuttal to any evidence I/P Engine might offer. Here, Defendants have known about the Culliss reference since the day this case was filed because that patent appears on the face of both patents-in-suit. Moreover, in response to I/P Engine's First Motion for Discovery Sanctions to preclude the untimely disclosure of this reference, Defendants never denied knowing about Culliss from the beginning of the case. These facts all demonstrate a complete lack of diligence by the Defendants in identifying the bases for any contention that Culliss invalidates the patents-in-suit and timely disclosing them.

During oral argument of I/P Engine's First Motion for Discovery Sanctions, Defendants argued that disclosure of the Culliss reference 60 days before the close of fact discovery was sufficient time to cure any alleged prejudice to I/P Engine from the lack of disclosure. In doing so, Defendants distinguished *Woods v. DeAngelo Marine Exhaust, Inc.* (No. 2010-1478, 2012 WL 3683536 (Fed. Cir. Aug. 28, 2012)), where the disclosure occurred the day before discovery ended. Here, Defendants did not disclose their new theory of invalidity until September 21, 2012 during the deposition of I/P Engine's validity expert, almost three weeks after the close of fact discovery (and the deadline for invalidity contentions) – when they attempted to ambush the expert with their new, undisclosed theory. When the ambush failed, they then sought to create a

record of disclosure two days later, September 23, 2012, during the deposition of their own expert, who honestly admitted he had not previously disclosed this opinion. Ex. 2 at 522:14-525:1. This Court's ruling on the first sanctions motion and Defendants' arguments on that motion compel only one conclusion – Dr. Ungar's new theory must be excluded when the reference has been known to Defendants for more than one year and there is no good cause for such late disclosure.

Consistent with Rule 26, Dr. Ungar should be precluded from offering any testimony or opinions related to this new theory of Culliss because it was not disclosed in his report. As this Court has held, direct testimony by an expert witness at trial should be limited to the contents of his expert report, and nothing more. *See, e.g., ePlus,* 2011 WL 3584313, at *5-6, at *24-26 (precluding expert testimony about a theory that was not supported or disclosed in the expert report and stating that "[t]he exclusion of the theory was a result of [defendant's] own making"). Dr. Ungar should be held to the same standard here; his testimony at trial should be limited to the contents of his expert reports.

### B. Dr. Ungar's Arguments Regarding Claim Construction Terms That Were Rejected By This Court During Claim Construction Should be Precluded

Dr. Ungar should also be precluded from offering any arguments, opinions or evidence at trial regarding any claim constructions (e.g., the claim term "scanning") proposed during the *Markman* process that were rejected by this Court and are inconsistent with this Court's constructions. For example, Dr. Ungar maintains that his non-infringement analysis is based on the fact that Defendants' systems do not spider or crawl for items. *See, e.g.*, Ex. 2 at 232:1-4 and 232:15-20. This Court has already rejected this position during claim construction.

This Court has excluded such evidence in other cases, reasoning that "[t]he parties' proposed claim constructions which were not adopted by the Court are not relevant and would

certainly increase the risk of jury confusion." *DNT, LLC v. Sprint Spectrum, LP*, 2010 WL 582164 at *2 (excluding evidence or argument relating to claim construction positions not adopted by the court). The same holds true in this case. Here, this Court has already issued its claim construction order and the jury's task is now limited to applying the claims as construed to the accused systems and making a factual determination as to whether the claims cover, or "read on", the products. *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) (it is "the jury's obligation to adopt and apply the court's determined meanings of disputed claim terms to the jury's deliberation of the facts"). This Court's claim constructions are now the law of the case, and claim construction positions rejected by this Court have no evidentiary weight. *See id.*

  Dr. Ungar's arguments and evidence relating to every claim construction issue that was rejected by this Court are irrelevant to the trial of this matter and should be precluded. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (testimony properly excluded as irrelevant when based on an impermissible claim construction).

### III. CONCLUSION

For the reasons above, I/P Engine's *Daubert* Motion, and Fourth Motion *In Limine,* to Exclude Lyle Ungar's New Theory of Invalidity and Opinions Regarding Claim Construction should be granted.

Dated: September 24, 2012

By: /s/ Jeffrey K. Sherwood
Donald C. Schultz (Virginia Bar No. 30531)
W. Ryan Snow (Virginia Bar No. 47423)
CRENSHAW, WARE & MARTIN PLC
150 West Main Street
Norfolk, VA 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735

Jeffrey K. Sherwood (Virginia Bar No. 19222)
Frank C. Cimino, Jr.
Kenneth W. Brothers
Dawn Rudenko Albert
Charles J. Monterio, Jr.
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Counsel for Plaintiff I/P Engine, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September, 2012, the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF I/P ENGINE, INC.'S *DAUBERT* MOTION, AND FOURTH MOTION *IN LIMINE*, TO EXCLUDE LYLE UNGAR'S NEW THEORY OF INVALIDITY AND OPINIONS REGARDING CLAIM CONSTRUCTION** was served via the Court's CM/ECF system, on the following:

Stephen Edward Noona
Kaufman & Canoles, P.C.
150 W Main St
Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com

David Bilsker
David Perlson
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

Robert L. Burns
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
robert.burns@finnegan.com

Cortney S. Alexander
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
cortney.alexander@finnegan.com

/s/ Jeffrey K. Sherwood