UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

I/P ENGINE, INC.

            Plaintiff,

     v.

AOL, INC., *et al.*,

            Defendants.

Civil Action No. 2:11-cv-512

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S DAUBERT MOTION, AND FOURTH MOTION *IN LIMINE*, TO EXCLUDE LYLE UNGAR'S NEW THEORY OF INVALIDITY AND OPINIONS REGARDING CLAIM CONSTRUCTION

## I.    INTRODUCTION

      Plaintiff's Fourth Motion in Limine seeks to preclude testimony from Dr. Ungar,

Defendants' expert for invalidity and non-infringement, on two issues: (1) an explanation of how

the Culliss prior art reference discloses the "filtering" limitation of the Asserted Patents; and (2) a

non-infringement position based on the fact that AdWords does not look for advertisements on a

network. As explained below, Plaintiff's Motion to preclude Dr. Ungar from testifying on these

two issues is unwarranted and should be denied.

      Regarding the first issue, <u>Plaintiff</u> is responsible for the fact that Dr. Ungar did not

disclose the additional evidence related to Culliss' "filtering" teachings until his deposition,

because Plaintiff refused to provide any validity contentions on Culliss until after Dr. Ungar's

Invalidity Report was served. As a result, Defendants and Dr. Ungar did not learn of Plaintiff's

position concerning the meaning of "filtering" (one that is inconsistent with its plain meaning

1

and that was never advanced by Plaintiff during claim construction) until Plaintiff's expert served his rebuttal invalidity report. Plaintiff has been aware of Culliss since at least July 2, 2012, when Defendants informed Plaintiff that Culliss was invalidating prior art. Defendants repeatedly asked Plaintiff to supplement its validity contentions as to Culliss, pointing out that they deserved to know Plaintiff's validity position on this reference in advance of the expert report deadline. Yet, even though Plaintiff represented to Defendants that it would supplement its responses as needed, Plaintiff ignored its duty to supplement under Fed. R. Civ. P. 26(e), instead waiting until its own rebuttal expert report to take a new position on what "filtering" requires and allege that Culliss doesn't "filter" under this new position. Had Plaintiff provided its validity contentions as to Culliss in a timely manner – as Defendants requested – Dr. Ungar could have (and would have) discussed in his Invalidity Report how Culliss "filters" under even Plaintiff's new interpretation of this term.

Regarding the second issue, Plaintiff misinterprets Dr. Ungar's non-infringement position regarding "scanning a network." Dr. Ungar simply argues that a database lookup is not equivalent to "looking for" an item on the network. As Dr. Ungar's position is based on the Court's claim construction and does not seek to undermine the Court's construction, Plaintiff has no basis for precluding this testimony.

For all these reasons, Plaintiff's Daubert Motion and Fourth Motion in Limine should be denied.

II.    **ARGUMENT**

    A.    **Plaintiff's Lack of Validity Contentions for Culliss and Plaintiff's New "Filtering" Theory Required Dr. Ungar to Cite Additional Evidence of Why Culliss "Filters"**

        1.    <u>Defendants repeatedly asked Plaintiff to supplement its interrogatory response to account for Culliss, yet Plaintiff refused to do so</u>

Well in advance of expert discovery in this case, the parties served interrogatories seeking Defendants' non-infringement positions and Plaintiff's validity positions. Defendants served Interrogatory No. 13 on February 17, 2012, asking Plaintiff to:

> IDENTIFY each element of each ASSERTED CLAIM that YOU contend is not disclosed in each of the PRIOR ART references cited by GOOGLE in its supplementary response to Plaintiff's Interrogatory No. 8, served on February 13, 2012 (and any later supplementation or amendments thereto), and set forth in specific detail each fact, opinion, argument, inference, and DOCUMENT that supports YOUR contention (including the name, address, and telephone number of each PERSON who has firsthand knowledge or possession of each such fact, opinion and DOCUMENT).

(Declaration of Howard Chen in Support of Defendants' Opposition to Plaintiff's Daubert Motion, and Fourth Motion in Limine ("Chen Dec."), Ex. 1, 7.)

On July 2, 2012, Defendants disclosed U.S. Patent No. 6,006,222 to Culliss ("Culliss") as prior art that Defendants intended to rely on to show that the Asserted Patents are invalid. (*Id.*, Ex. 2, 5-6.) Along with this disclosure, Defendants provided Plaintiff with a claim chart that described how Culliss invalidated the Asserted Patents. (*Id.*, Ex. A-8.) This claim chart disclosed Defendants' contention that Culliss invalidates each and every limitation of the Asserted Patents.

Following the July 2 disclosure of Culliss, on July 17, Defendants asked Plaintiff to supplement its response to Defendants' Interrogatory No. 13 in advance of the July 25 deadline for Dr. Ungar's Invalidity Report. Defendants pointed out that they needed and deserved Plaintiff's validity positions in advance of this expert report deadline:

Google's Interrogatory No. 13 asks Plaintiff to identify every claim element that Plaintiff contends is not disclosed in the prior art references cited in Google's response(s) to Plaintiff's Interrogatory No. 8, and explain why Plaintiff contends that such elements are not disclosed by these prior art references. Plaintiff served its response to Interrogatory No. 13 on March 22, 2012.

On July 2, 2012, Google served its Third Supplemental Response to Plaintiff's Interrogatory No. 8, identifying three additional prior art references that Google contends invalidate the asserted claims. Thus, pursuant to the plain terms of Interrogatory No. 13, Plaintiff has a duty to supplement its response to Interrogatory No. 13 to set forth its contention of why these new prior art references do not invalidate the asserted claims. To date, we have not received a supplemental response to Interrogatory No. 13 that addresses these new references.

Given the upcoming expert report deadline, we request that Plaintiff provide a supplemental response to Interrogatory No. 13 no later than COB this Friday, July 20.

(*Id.*, Ex. 3 (emphasis added).) On July 19, Plaintiff indicated it would supplement its

interrogatory response as needed to account for Culliss and the other references that Defendants

disclosed on July 2:

In response to our teleconference of last evening, as Defendants only recently identified the additional prior art, I/P Engine will provide supplemental responses, to the extent necessary, in due course.

(*Id.*, Ex. 4.) But, Plaintiff did not supplement "in due course" or any time prior to service of Dr.

Ungar's Invalidity Report.

Even after Dr. Ungar served his Invalidity Report on July 25, Defendants continued to

push Plaintiff to provide its validity contentions regarding Culliss and the other references:

It has now been nearly a full month since Defendants identified their additional prior art and provided their contentions as to why this prior art invalidates the asserted claims. Yet Plaintiff has still not supplemented its response to Interrogatory No. 13 to state its contentions as to why this prior art does not invalidate the asserted claims. By way of comparison, Defendants supplemented their non-infringement contentions more than a week ago. Please confirm Plaintiff will supplement its response to Interrogatory No. 13 by no later than COB this Friday, August 3.

(*Id.*, Ex. 5.)  Plaintiff ignored Defendants' email.  A week later, August 6, Defendants asked

again for Plaintiff to supplement:

> Plaintiff indicated it would supplement its response to Interrogatory No. 13 "in
> due course," but has not done so.  Please provide a date certain for this
> supplementation.

(*Id.*, Ex. 6.)  Plaintiff never responded.  Thus, the first time Defendants and Dr. Ungar learned of

Plaintiff's position about whether Culliss teaches "filtering" (or any other claim element) was on

August 30, when Plaintiff's expert Dr. Carbonell served his Rebuttal Validity Report.[1]

2.   <u>Dr. Carbonell's Validity Report takes a previously undisclosed position on
"filtering," inconsistent with Plaintiff's previously disclosed infringement
positions.</u>

In his Rebuttal Validity Report, Dr. Carbonell argued that Culliss does not disclose

"filtering" because the portions of Culliss cited in Dr. Ungar's Invalidity Report refer to

presenting search results in ranked order, and "filtering" allegedly requires excluding search

results altogether.  (D.N. 240-19, ¶ 108.)

Dr. Carbonell's position regarding filtering was a surprise, not only because Plaintiff had

not disclosed it in any interrogatory response, but also given Plaintiff's sudden shift in its

interpretation of this term.  In Plaintiff's March 22 response to Interrogatory No. 13, Plaintiff

<u>never</u> contended that ranking was different from filtering for purposes of invalidity.  For

example, even though another of Defendants' prior art references, U.S. Patent No. 6,202,058 to

Rose ("Rose") discloses ranking items, Plaintiff's prior interrogatory responses never contended

that Rose lacked "filtering."  (Chen Dec., Ex. 8, 7.)  Instead, Plaintiff merely contended that Rose

---

[1]   On August 3, Plaintiff moved for sanctions, seeking to strike Defendants' disclosure of
three pieces of prior art, including Culliss.  (D.N. 200.)  The Court denied Plaintiff's motion,
reasoning that Defendants timely disclosed these three references after Plaintiff's new litigation
positions made them relevant and that Plaintiff was not prejudiced by Defendants' disclosure.
(Chen Dec., Ex. 7, 36:24-38:4.)

did not filter <u>for relevance to the query</u> because it ranked items based on other characteristics.

(*Id.*)  Dr. Ungar had also relied on Plaintiff's previously expressed infringement theory ██████

████████████████████████████████████████████████████████

█████████ – was filtering.  (D.N. 358-1, ¶ 129.)

Furthermore, Plaintiff's consultant (and named co-inventor of the Asserted Patents)

Donald Kosak had affirmatively stated in his May 31 deposition that ranking items <u>does</u> qualify

as "filtering" them:

> Q: What do you mean by "a filtering system?"
>
> A: It's a system that takes documents and basically applies a filter or a process by
> which those documents are <u>graded or ranked and/or eliminated</u> as they go through
> the filter.

(*Id.*, Ex. 9, 30:6-11 (emphasis added).)

In Dr. Carbonell's August 30 Rebuttal report, however, Plaintiff changed its position,

arguing for the first time that "filtering" requires items to be excluded outright (or at least

considered for outright exclusion).  (D.N. 240-19, ¶ 108 ("Ranking is different than filtering,

which does not use a ranked list, but rather is an item-by-item process that considers each item

for exclusion based on its own attributes.").)[2]  Based on this new position, Dr. Ungar analyzed

Culliss anew to see whether it disclosed the "exclusionary" filtering that Plaintiff now contended

was required by the Asserted Patents.  At his deposition, Dr. Ungar simply stated on the record

that Culliss does indeed disclose "exclusionary" filtering, and pointed out specific places where

Culliss discloses this.  (Chen Dec., Ex. 10, 522:16-524:11.)

Given Plaintiff's belated change of theories about what "filtering" requires, there was

nothing improper about Dr. Ungar stating at his deposition how Culliss discloses the type of

---

[2]  In his August 30 Report, Dr. Carbonell also alleged for the first time that the Rose
reference did not anticipate because "[r]anking is different than filtering."  (D.N. 240-19, ¶ 53.)

"exclusionary" filtering that Plaintiff now contends is required. Indeed, it is entirely proper that Dr. Ungar be allowed to put forth this evidence at his deposition and at trial. Otherwise, Plaintiff would be rewarded for its belated change of theories as to what "filtering" requires and its refusal to provide <u>any</u> notice in its interrogatory response about why Culliss supposedly lacks this element.

           3.     <u>Plaintiff has suffered no prejudice.</u>

In addition, Plaintiff has failed to articulate any prejudice it suffered, given the timing of Dr. Ungar's disclosure of where Culliss discloses the "exclusionary" filtering that Plaintiff now contends is required.

First, Plaintiff has been aware that Defendants planned on asserting Culliss as prior art since July 2. Given that Culliss is only 15 pages (including figures, cover pages and the claims), Plaintiff cannot credibly say that the "new" evidence cited in Dr. Ungar's deposition was buried in the patent, especially as this evidence spans almost a full page. (*See* D.N. 240-3.)

Dr. Carbonell also confirmed that he had a "good understanding" of Culliss. (Chen Dec., Ex. 11, 33:5-9.) At his deposition, Dr. Carbonell acknowledged that he understands the specific section of Culliss at issue in this Motion, which relates to excluding items based on their rating scores. He also explained – at great length – why he believes that this section does not invalidate the Asserted Patents. (*See id.*, 82:5-111:16). Accordingly, Plaintiff cannot contend that it was unaware of the additional evidence that Dr. Ungar identified during his deposition or that it was prejudiced in its ability to address this evidence.

Second, Plaintiff had the opportunity to depose Dr. Ungar on this evidence. When Plaintiff's counsel asked Dr. Ungar at deposition if his Invalidity Report contained a complete statement of all his opinions, Dr. Ungar stated that he wished to highlight an additional Culliss passage regarding "filtering" whose relevance became apparent after reading Dr. Carbonell's

Rebuttal Invalidity Report. (*Id.*, Ex. 10, 442:4-443:3.) Plaintiff, however, chose to not follow up

to ascertain what this additional passage even was. Even after learning of the additional passage

through Defendants' redirect of Dr. Ungar, Plaintiff chose to forego cross-examining Dr. Ungar

on this evidence. (*Id.*, 528:1-2.) Notably, Plaintiff demanded additional time beyond the 10.5

hours that Defendants had offered for Dr. Ungar's deposition, and requested a call with the Court

for this additional time. The Court granted Plaintiff 12 hours for the deposition, and Plaintiff still

had approximately <u>an hour and a half left</u> if it wanted to ask additional questions. Plaintiff

simply chose not to do so.[3]

## B.   Plaintiff Misinterprets Dr. Ungar's Non-Infringement Argument, Which Is Based on the Court's Construction

Plaintiff's second argument, regarding Dr. Ungar's supposedly improper construction of

"scanning," is a straw man. Dr. Ungar is not attempting to re-construe terms that were construed

by the Court. Rather, Dr. Ungar is simply making a non-infringement argument based on the

Court's construction that "scanning a network" means "looking for or examining items in a

network." (D.N. 171, 15.)

As explained in Dr. Ungar's Non-Infringement Report, Dr. Ungar's position is that

"[t]here is a broad disconnect between searching or looking for informons on a network—which

the specification describes and the claims as construed by the Court require—and looking up

items on a database by their identifiers." (Chen Dec., Ex. 12, 66.) Dr. Ungar explains the

differences between networks and databases to support his position a database lookup is different

from "looking for . . . items in a network." (*Id.*, 66-70.) He further explains that an apt

---

[3]   Furthermore, Plaintiff deposed the inventor of the Culliss reference on September 27
and questioned him at length about the additional passage cited at Dr. Ungar's deposition. (Chen
Dec., ¶ 13.) This further shows that Plaintiff had adequate opportunity to take discovery into this
passage from Culliss.

comparison would be driving to a known location, like the driver's own house, versus driving to an unknown house for which one would have to search for the appropriate address.   (*Id.*, 68.)

Simply put, Dr. Ungar contends that performing a database "lookup" is not equivalent to "looking for" under the Court's construction because the location of items in a database is already known.   Dr. Ungar is not contending that the accused systems must spider or crawl a network to infringe the asserted claims.   In fact, he admits that spidering and scanning are different (Chen Dec., Ex. 13, 230:8-12) and that one can scan a network without spidering.   (*Id.*, 231:9-19.)

As Dr. Ungar's opinions are <u>based on</u> the Court's construction, not in violation of it, Plaintiff's motion is unfounded and should be denied.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Daubert Motion and and Fourth Motion *in Limine*.

9

DATED: October 1, 2012

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624.3000
Facsimile: (757) 624.3169
senoona@kaufcan.com

David Bilsker
David A. Perlson
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

*Counsel for Google Inc., Target Corporation,*
*IAC Search & Media, Inc., and*
*Gannett Co., Inc.*

By: */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT &

10

DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile:  (415) 653-6444

*Counsel for Defendant AOL, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jeffrey K. Sherwood
Kenneth W. Brothers
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC   20006
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, VA  23510
Telephone:  (757) 623-3000
Facsimile:  (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff, I/P Engine, Inc.*

  */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624.3000
Facsimile:  (757) 624.3169
senoona@kaufcan.com