**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| I/P ENGINE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civ. Action No. 2:11-cv-512 |
| ) | |
| AOL, INC. et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF I/P ENGINE, INC.'S REPLY IN FURTHER SUPPORT OF ITS DAUBERT MOTION, AND FOURTH MOTION *IN LIMINE*, TO EXCLUDE LYLE UNGAR'S NEW THEORY OF <u>INVALIDITY AND OPINIONS REGARDING CLAIM CONSTRUCTION</u>**

I.     INTRODUCTION

By unilaterally excusing itself from the requirements for Rule 26(a)(2)(B), Defendants have set the stage the type of ambush the Rules seek to prevent. Indeed, while deposing Dr. Carbonell (I/P Engine's rebuttal witness) Defendants filled 30 pages of transcript with questions about Dr. Ungar's new opinions.[1] But when these questions were asked, Dr. Ungar's new opinions had never been revealed to Dr. Carbonell (or anyone else). Dr. Carbonell was unfairly ambushed.

Two days later, after more than ten hours of questioning had already occurred, Defendants revealed the existence of Dr. Ungar's new opinion for the first time. Defendants suggest that I/P Engine's counsel should have responded to this ambush by (1) learning the full scope of the new opinion through deposition testimony, (2) evaluate that opinion on the fly, and (3) asking questions about the new opinion, also on the fly. Because I/P Engine's counsel failed to perform these nearly-impossible tasks, Defendants allege that "Plaintiff has suffered no prejudice." D.I. 511 at 7-8.

Rule 26(a)(2) requires expert reports to avoid situations like these. Defendants do not allege that they have complied with Rule 26(a)(2)(B). Indeed, Dr. Ungar has _not_ supplemented his report with his new opinion. Defendants argue that they are excused from complying with Rule 26(a)(2)(B) because I/P Engine did not supplement its interrogatories to reflect Dr. Carbonell's _rebuttal_ to Dr. Ungar's initial opinions _before_ the time when Dr. Ungar's _initial opinions_ were first revealed. This excuse is astonishing for many reasons, the least of which is

---

[1] Defendants's admit deposing Dr. Carbonell about "why he believes that this section does not invalidate the Asserted Patents" at page 7 of their opposition. They cite 30 pages (pages 82-111) of the transcript in support of this statement.

1

that it fails to explain why Defendants – even today – have failed to provide the written report Rule 26(a)(2)(B) requires.

Failing to strike Dr. Ungar's new theory of invalidity would multiply the effects of Defendants' ambush: Dr. Ungar's opinions would be fully revealed for the first time at trial; I/P Engine would be force to proceed on-the-fly, without the benefit of any deposition testimony about the new opinions; and Defendants may seek to take advantage of the deposition testimony they obtained unfairly from Dr. Carbonell. Enforcing Rule 26(a)(2)(B) by excluding Dr. Ungar's new invalidity opinion is the only way to prevent this grossly unfair result. *See* Fed. R. Civ. P. 37(c)(1) (specifying exclusion as the remedy for failure to comply with Rule 26(a)).

Dr. Ungar's opinions that contradict the Court's Constructions should also be precluded. It is well settled that such testimony is irrelevant and unduly prejudicial. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

## II.  DISCUSSION

### A.  Defendants Turn The Burden Of Proof On Its Head

#### 1.  <u>Defendants' Burden Of Proving Invalidity Does Not Depend On Any Action Taken By The I/P Engine</u>

The rules require that Dr. Ungar's report contain "a <u>complete</u> statement of <u>all</u> opinions [Dr. Ungar] will express and the basis and reasons for them." Fed. R. Civ. Pro. 26(a)(2)(B)(i). Dr. Ungar admits his report was not complete, and Defendants' opposition makes no claim to the contrary. Defendants attempt to excuse their non-compliance, but Defendants' excuses are unavailing.

Lacking any valid reason for failing to comply with Rule 26(a)(2), Defendants allege misconduct by I/P Engine. This is nothing but a distraction from the issue at hand. Defendants should have filed a motion if they wished to seek sanctions for I/P Engine's alleged violation of

2

Rule 26(e). But none would have been available. I/P Engine provided the requested information on August 30, 2012. This was timely, especially because the requested information required a complete analysis of three newly-disclosed references and production of claim charts for each reference.

Neither Rule 26(e) nor any other rule justifies Defendants' non-compliance with Rule 26(a)(2). Indeed, Defendants failed to cite any rule or case law in support of their position. It is Defendants, not I/P Engine, that are required to come forward with all of the evidence needed to prove invalidity. *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008). Defendants' burden is in no way contingent on the contents of I/P Engine's rebuttal case, so Defendants' attempt to blame I/P Engine for its failure are unavailing. *See*, *Id.* Further, Defendants' opposition provides no excuse whatsoever for its continued failure to comply with Rule 26(a)(2) even today – long after Dr. Carbonell's rebuttal was revealed.

2. <u>Defendants' Violation of Rule 26(a)(2) Prejudiced I/P Engine</u>

Even if Defendants' initial failure to completely consider the "filtering" limitations were excusable (it is not), Defendants delay is correcting Dr. Ungar's flawed opinions cannot be excused. Defendants provided no written notice of its new theories to I/P Engine even after it received I/P Engine's rebuttal. Instead, it waited to reveal the new theories until the very end of Dr. Ungar's deposition.

Twenty five (25) days passed between when Dr. Carbonnell rebutted Dr. Ungar's flawed analysis and when Dr. Ungar revealed his new invalidity theories. If I/P Engine was expected to respond to three entire references in less than 23 days, as Defendants allege (at 3), then surely Defendants should have provided their revised analysis of a single aspect of just one of those references in the same timeframe. But Defendants failed to meet their own standard, opting instead to ambush I/P Engine.

3

Contrary to Defendants' claim that "Plaintiff has suffered no prejudice," both Dr. Carbonnell and I/P Engine's counsel were ambushed by Defendants' failure to disclose its new invalidity theories. As Defendants admit (at 7), 30 pages of the transcript in Dr. Carbonell's deposition are directed to the section of Culliss that Dr. Ungar now believes is relevant. But Defendants did not reveal Dr. Ungar's new opinion until *after* Dr. Carbonell's deposition. Thus, Dr. Carbonell was forced to testify "at great length" in rebuttal to an invalidity case that had not yet been revealed to him (or to anyone else). This is fundamentally unfair.

I/P Engine was also prejudiced during the deposition of Dr. Ungar. The existence of Dr. Ungar's new theory was first revealed only at the very end of Dr. Ungar's deposition, after ten hours of questioning had taken place, and, as Defendants admit, fewer than two hours remained. The rules specifically forbid forcing a questioner to depose an expert without the benefit of a written report. Fed. R. Civ. P. 26(b)(4)(a) ("If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.") Yet Defendants fault I/P Engine for failing to do what the Rules say does not have to be done. D.I. 511 at 8.

Rule 26(b)(4)(a) seeks to prevent the very prejudice that Defendants inflicted upon I/P Engine. Although Defendants argue that I/P Engine should have formulated questions on-the-fly, actually doing so would have been extraordinarily difficult. Not only would I/P Engine's counsel have had to elicit the full scope of the new opinion, he would also have to instantaneously analyze that opinion in order to ask follow-up questions. This would be no substitute for the thorough analysis and careful planning for which the Rules allow.

Further, Defendants counsel explicitly suggested that Dr. Ungar only summarize his new opinions during the deposition. Despite the requirements of Rule 26(a)(2)(B), a complete

4

statement of Dr. Ungar's new opinions has never been provided. The eight questions asked by Defendants counsel included no less than three suggestions to avoid providing complete detail:

- "Well, let me ask you … since we want [I/P Engine's counsel] to get home to his football game?" (526:10-12);

- "Are you able to find any others quickly?" (526:19-20)

- "Well, if there's one that's easy at your fingertips, that's fine. We don't have to go through the whole reference right now." (527:11-13) (Ex. 1)

If I/P Engine's Motion is not granted, Dr. Ungar will present his new theories at trial. Having been ambushed at his deposition, I/P Engine's counsel will have no deposition testimony to rely on when cross-examining him. Further, I/P Engine's counsel will have to develop cross-examination questions on the fly, because, as explained above, trial would be the first time Dr. Ungar's theories are fully revealed. Similarly, Dr. Carbonell would be forced to develop rebuttal opinions on the fly. Moreover, Dr. Carbonell would be subject to cross-examination based on questions that he answered in deposition before he was aware of the opinion he is rebutting.

The situation the Defendants have created is the very definition of trial by ambush, which is precisely what the Federal Rules are supposed to prevent. *See Slaughter v. Barton*, 2003 WL 24100297 (E.D. Va.) ("allowing such an untimely disclosure would be disruptive to the trial in this matter because it would condone the strategy of last-minute disclosures, behavior that flies in the face of the Federal Rules of Civil Procedure"). Contrary to Defendants' allegations, I/P Engine would be severely prejudiced if the Court allows Defendants' tactics. The only remedy is limiting Dr. Ungar's testimony to the opinions he revealed in his expert report.

### B.     Arguments Regarding Claim Construction Should Be Precluded

Defendants claim that Dr. Ungar has no intention of contradicting the Court's claim construction. But in the next breath Defendants say that I/P Engine's motion to preclude arguments regarding claim constructions rejected by the Court should be denied. If Defendants

5

do not plan to contradict the Court's claim construction, then there should be no reason to oppose I/P Engine's motion.

I/P Engine is concerned because, despite the Court rejecting Defendants' contention that "scanning a network" requires a spider (D.I. 171 at 12-15), Dr. Ungar still seems to think using a spider is the only way to meet the claim:

> Q: So it's true that you did not form an opinion, when performing your noninfringement analysis, as to whether there's an alternate implementation of scanning a network that would not require a spider.
>
> A: That's correct.

(Ungar Dep. at 232: 15-20). (Ex. 1)

Although Defendants' opposition discusses Dr. Ungar's other opinions, it does not explain the one quoted above. Defendants' opposition (at 9) says Dr. Ungar admits "that one can scan a network without spidering," but the cited testimony does not support this claim:

> There's nothing intrinsic to the definition that says spidering has to be the way to do it. That's somehow the obvious way that comes to mind of how I would do it. I would need to take -- **I would need to think much more carefully about an alternate implementation of that.**

(*Id.* at 231:16-22.) (Ex. 1) Dr. Ungar does not admit that the Court's claim construction is correct. Instead, he says he would need to think much more carefully about it.

I/P Engine does not and cannot know precisely what Defendants will contend at trial, but Dr. Ungar's deposition suggests that he had not considered that "scanning a network" does not require spidering at the time he formed his non-infringement opinions. Especially in light of Defendant's opposition to this motion, I/P Engine believes an affirmative order is needed to ensure that irrelevant and prejudicial testimony contradicting the Court's claim construction is not introduced at trial.

6

Dated: October 3, 2012

By: /s/ Jeffrey K. Sherwood
Donald C. Schultz (Virginia Bar No. 30531)
W. Ryan Snow (Virginia Bar No. 47423)
CRENSHAW, WARE & MARTIN PLC
150 West Main Street
Norfolk, VA 23510
Telephone:   (757) 623-3000
Facsimile:   (757) 623-5735

Jeffrey K. Sherwood (Virginia Bar No. 19222)
Frank C. Cimino, Jr.
Kenneth W. Brothers
Dawn Rudenko Albert
Charles J. Monterio, Jr.
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone:   (202) 420-2200
Facsimile:   (202) 420-2201

Counsel for Plaintiff I/P Engine, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October, 2012, the foregoing, **PLAINTIFF I/P ENGINE, INC.'S REPLY IN FURTHER SUPPORT OF ITS DAUBERT MOTION, AND FOURTH MOTION *IN LIMINE*, TO EXCLUDE LYLE UNGAR'S NEW THEORY OF INVALIDITY AND OPINIONS REGARDING CLAIM CONSTRUCTION,** was served via the Court's CM/ECF system on the following:

Stephen Edward Noona
Kaufman & Canoles, P.C.
150 W Main St
Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com

David Bilsker
David Perlson
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

Robert L. Burns
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
robert.burns@finnegan.com

Cortney S. Alexander
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
cortney.alexander@finnegan.com

                                                      /s/ Jeffrey K. Sherwood