IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

```
┌─────────────────────────────┐
│           FILED             │
│                             │
│         OCT 1 2 2012        │
│                             │
│  CLERK, US DISTRICT COURT   │
│        NORFOLK, VA          │
└─────────────────────────────┘
```

I/P ENGINE, INC.,

           **Plaintiff,**

V.                                                        **CIVIL ACTION NO. 2:11cv512**

AOL INC., *et al.,*

           **Defendants.**

### *ORDER NUMBER 2 - PRE-TRIAL MOTIONS*

Before the Court are remaining motions to exclude evidence and witnesses from trial in the above-styled matter filed by both Plaintiff and Defendants. These matters have been fully briefed by the Parties. The Court finds that oral arguments of these motions will not aid its decisional process. Having reviewed the motions and related materials, the Court finds these matters ripe for judicial determination. For the reasons stated herein, and pursuant to the inherent authority to make evidentiary rulings prior to trial, *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984), the Court resolves the Parties' motions as outlined below.

### I. I/P Engine's *Motions in Limine*

**A.      Plaintiff's First *Motion in Limine* to Exclude Inadmissible Evidence**

While the Court resolved a majority of the issues related to Plaintiff's First *Motion in Limine*, two items remained outstanding. First, Plaintiff's sought to exclude evidence concerning recent offers and other negotiations for, and the 2011 purchase price of, the patent portfolio that included the patents-in-suit ("Item 2"). Second, Plaintiff's sought to exclude evidence concerning Plaintiff's failure to practice the inventions claimed in the patents ("Item 6"). The Court has determined that these items will be addressed at trial upon further consideration.

Accordingly, Plaintiff's First *Motion in Limine* as to Items 2 and 6 is **DEFERRED**.

### B.   Plaintiff's Second Motion in Limine to Preclude Non-Comparable License Agreements

To determine a reasonable royalty to remedy any patent infringement, parties

traditionally engage in a hypothetical negotiation employing the 15 factors set forth in *Georgia-*

*Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y.

1970)("The *Georgia-Pacific* Factors") to guide their calculations. Factor Two of that test permits

consideration of "[t]he rates paid by the licensee for the use of other patents comparable to the

patent in suit." *Id.* The Federal Circuit has provided guidelines in recent cases regarding how to

determine whether a patent is "comparable" for the purposes of determining a reasonable royalty.

First, "there must be a basis in fact to associate the royalty rates used in prior licenses to

particular hypothetical negotiations at issue in the case." *Uniloc USA, Inc. v. Microsoft Corp.*,

632 F.3d 1292, 1317 (Fed. Cir. 2011). In other words, the Federal Circuit has "determined that a

patentee could not rely on license agreements that were radically different from the hypothetical

agreement under consideration to determine a reasonable royalty." *Id (quoting Lucent Techs.,*

*Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-1328 (Fed. Cir. 2009))(internal quotations omitted).

Next, the Federal Circuit requires that the past licensing agreements must be of the same

subject matter as the patents in the instant case so that the finder of fact may "adequately

evaluat[e] the probative value of those agreements." *Id.,* at 1328. The Federal Circuit has also

directed that parties attempting to use comparable licenses to account for "the technological and

economic differences between them." *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609

F.3d 1308, 1320 (Fed. Cir. 2010) (*quoting ResQNet.com, Inc. v. Lansa, Inc,,* 594 F.3d 860, 873

(Fed. Cir. 2010)). Furthermore, "the trial court must carefully tie proof of damages to the

claimed invention's footprint in the market place." *Id.,* at 869. Finally, the Federal Circuit has observed that "the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation." *Id.,* at 872. As a result district courts are directed to be mindful of whether the comparable license at issue was negotiated under circumstances that might have influenced the value and form of the resulting royalty. *Id.,* 872-73. Plaintiff has sought to exclude licenses between Google and Disney and Google and Carl Meyer. Plaintiff also seeks to exclude seven licensing agreements between Google and a number of companies as well as agreements between Lycos, Inc. and Tivo/Blockbuster/Netflix. According to Defendants, these agreements were offered for the sole purpose of supporting the assertion that Google only enters into lump sum royalty agreements.

With respect to the Lycos, Inc. and Tivo/Blockbuster/Netflix agreements, the Court finds that they are inadmissible. By Dr. Ugone's own admission (which Defendants do not contest), these licenses cannot be considered comparable, which is why he placed no value or importance on their settlement amounts. Defendants argue that despite the fact that the agreements are not comparable, they are still relevant and admissible evidence to show Google's preferences toward lump sum royalty payments. However, the Federal Circuit has made clear that non-comparable licensing cannot be used as the basis for determining a reasonable royalty. Because the form of the royalty is equally important as the amount of the royalty, the Court concludes that if an agreement is non-comparable as to one aspect of the royalty question, it is non-comparable as to all aspects.

Furthermore, the Court believes that the introduction of these agreements, even if for the purpose of showing Google's preferred form of royalty, is likely to confuse the jury and allow them to give impermissible weight to the amounts of the lump sum payments associated with

3

those agreements. Accordingly, for the reasons outlined above and under the Court's discretion under Fed. R. Evid. 403, Plaintiff's Second *Motion in Limine* to Preclude Non-Comparable License Agreements as to the Lycos, Inc. and Tivo/Blockbuster/Netflix agreements is **GRANTED**.

The Court's reasoning with respect to the Lycos agreements is equally applicable to the seven agreements Defendants wish to offer, which by their own admission are non-comparable, and are again solely offered for the purpose of showing a preference by Google for lump sum royalty payments. Non-comparable licenses cannot be used to determine either the form or amount of a reasonable royalty. Accordingly, for the reasons outlined above and under the Court's discretion under Fed. R. Evid. 403, Plaintiff's Second *Motion in Limine* to Preclude Non-Comparable License Agreements between Google and other third parties, as outlined in Plaintiff's memorandum in support of this motion, is **GRANTED**.

With respect to the Google and Carl Meyer Agreement, there is a disagreement as to whether the technology underlying the agreement is comparable for the purposes of permitting it to inform Defendants' reasonable royalty calculation. In a case involving a similar disagreement, the U.S. District Court in the District of Connecticut found that "the question of a reasonable royalty rate and the similarity of licensing agreements as a basis of reference for arriving at a reasonable royalty rate, are questions of fact." *Sargent Mfg. Co. v. Cal-Royal Prods.*, 2012 U.S. Dist. LEXIS 105260 (D. Conn. July 27, 2012). The district court reached its conclusion based on a number of Federal Circuit's precedents:

> [T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." [*Uniloc* 632 F.3d] at 1317. Where no analogous licenses are available as a frame of reference, expert testimony may be offered opining on a reasonable royalty rate, provided that such testimony "carefully tie[s] proof of damages to the claimed invention's footprint in

the marketplace." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

Id. Given it is the province of the jury to determine what a reasonable royalty as well as to determine the factual basis of said royalty, the Court finds that the question of whether the technology underlying the Google-Meyer Agreement is similar enough to be comparable for the purposes of determining a reasonable royalty is one for the jury. Accordingly, Plaintiff's Second *Motion in Limine* to exclude the Google-Meyer Agreement is **DENIED.**

Additionally, the Court's reasoning with respect to the Google-Meyer Agreement is equally applicable to the Google-Disney Agreement. As there is a dispute to whether the technology underlying the Google-Disney Agreements is comparable, the jury must resolve the dispute in the context of determining a reasonable royalty for damages. Consequently, Plaintiff's Second *Motion in Limine* to exclude the Google-Disney Agreement is **DENIED.**

Accordingly, Plaintiff's Second *Motion in Limine* to Preclude Non-Comparable License Agreements (ECF No. 333) is **GRANTED-IN-PART and DENIED-IN-PART.**

**C.     Plaintiff's Motion to Exclude Opinions and Testimony of Dr. Keith R. Ugone**

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. To determine a reasonable royalty to remedy any patent infringement, parties traditional engage in a hypothetical negotiation employing the 15 factors set forth in *Georgia-Pacific Corp.* to guide their calculations. Plaintiff asserts that Defendants' damages rebuttal

5

witness, Dr. Keith Ugone, uses an impermissible method ("the proxy" or "yardstick" method) to calculate his measure of damages based on non-comparable licensing agreements. Plaintiff also asserts that Dr. Ugone, despite not being a technical expert, will be elicited to give technical testimony. Defendants argue that they are not using a new or untested measure of damages in a patent suit and that any use of an analogy related home valuation in a real estate market is misinterpreted.

Regardless of whether Defendants are actually using a new approach for calculating damages, the Court has found no case law, nor has any been suggested to it, describing or supporting the use of any "yardstick" or "proxy" approach to measuring of damages. Accordingly, the Court **GRANTS** Plaintiff's Motion Exclude Opinions and Testimony of Keith R. Ugone as to any testimony using a "yardstick" or "proxy" methodology or the use of the real estate valuations analogies in this context. Dr. Ugone is free to present expert opinion using established methods of calculating damages, including the hypothetical negotiation approach guided by the *Georgia-Pacific* Factors, which he purports to use.

With respect to specific evidence concerning non-comparable agreements, the Court incorporates its findings above concerning said agreements into its decision regarding Dr. Ugone's testimony. Finally, the Court finds that while Dr. Ugone may provide the underlying basis of his analysis to the jury, he may not provide technical expert opinion. The Court will be mindful of this prohibition at trial. Accordingly, Plaintiff's Motion to Exclude Opinions and Testimony of Dr. Keith R. Ugone (ECF No. 340) is **GRANTED-IN-PART and DENIED-IN-PART.**

D.   **Plaintiff's Daubert Motion and Fourth *Motion in Limine*, to Exclude Lyle Ungars New Theory of Invalidity and Opinions Regarding Claim Construction.**

Having reviewed the motions and related pleadings, the Court finds that Dr. Ungars new theory of invalidity is not violative of Rule 26 procedures. Furthermore, the Court finds that Plaintiff has neither been surprised nor prejudiced by this new theory under Fourth Circuit precedent on this issue. *See Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). Accordingly, Plaintiff's motion as to Dr. Ungars' new theory of invalidity is **DENIED**.

With respect to any opinion or testimony Dr. Ungars intends to give that is contrary to the Court claim construction order, such testimony is not relevant and would likely cause jury confusion. As such, Plaintiff's motion as to Dr. Ungars' use of rejected claim constructions is **GRANTED**. Accordingly, Plaintiff's Daubert Motion and Fourth Motion in Limine, to Exclude Lyle Ungars New Theory of Invalidity and Opinions Regarding Claim Construction. (ECF No. 357) is **DENIED-IN-PART** and **GRANTED-IN-PART**.

## II. Defendants' Motions

A.   **Defendants' *Motion in Limine* No. 1 to Preclude Plaintiff from Introducing Evidence on Willful Infringement, Pre-Suit Knowledge, or Copying**

Rule 8 of the Federal Rules of Civil Procedure require that a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief; and [] a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8. After reviewing the arguments on this motion, the Court finds that Plaintiff failed to adequately plead willful infringement in its complaint as required by Rule 8. Accordingly, Defendant's *Motion in Limine* #1 (ECF No. 299) is **GRANTED**.

**B.   Defendants' *Motion in Limine* No. 2 to Exclude Evidence of Entire Market Value of Accused Products and of Defendants' Size, Wealth and Overall Revenues**

Although damage awards based on gross speculation may not be sustained, *see Wordtech Sys., Inc v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1321–22 (Fed. Cir. 2010), a district court may consider a hypothetical negotiation between a willing licensor and a willing licensee as a tool to fix a royalty rate that is adequate to compensate a patentee for infringement. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 869–70 (Fed. Cir. 2003). In cases where "small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2012 U.S. App. LEXIS 18441, *32-33 (Fed. Cir. Aug. 30, 2012). As a result, the Federal Circuit has found that "it is generally required that royalties be based not on the entire product, but instead on the "smallest salable patent-practicing unit."" *Id. (quoting Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283, 287-88 (N.D.N.Y. 2009)). The "Entire Market Value Rule" serves as an exception to this generally practiced rule against entire product damages calculations. According to the Federal Circuit, "[i]f it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product. *Id.* (internal citation omitted). Taken together, it is clear that "patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature." *Id.*, at *34-35.

At Final-Pre Trial Conference, Defendants essentially asked for reconsideration of the

Court's previous denial of their *Motion in Limine* No. 2. Having again reviewed the relevant case law, the Court declines to reconsider its decision. I/P Engine, through its damages expert, is prepared to offer evidence at trial that "patented technology forms a substantial basis of the consumer demand of the accused products" through discovered documents showing increased revenue specifically attributed to patented technologies, presumably reflecting increased consumer demand. The sufficiency of this evidence in determining a reasonable royalty is a question for the jury. If questions arise as to whether Dr. Becker's trial testimony adequately supports application of the Entire Market Value Rule, they can be addressed through cross-examination or through relevant trial motions. Accordingly, motion for reconsideration of the Court's previous denial of their *Motion in Limine* No. 2 is **DENIED.**

**C.    Defendants' Motion to Dismiss as to AOL Inc., Gannett Co., Inc., IAC Search & Media, Inc., and Target Corporation**

The Federal Circuit has held that "the parties that make and sell an infringing device are joint tort-feasors with parties that purchase an infringing device for use or resale ...." *Shockley v. Arcan Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001). As a result, AOL, Gannett, IAC Search & Media, and Target Corporation may be jointly and severally liable for any alleged infringement with their co-defendant, Google, Inc., and the Plaintiff has alleged such. Furthermore, I/P Engine's damages expert, Dr. Becker, has provided specific damages calculations as to AOL, Inc., Gannett Co., and Target Corporation. Accordingly, Defendants' *Motion to Dismiss* (ECF No. 293) is **DENIED.**

**D.    Defendants' Motion to Exclude the Testimony of Dr. Stephen L. Becker**

Having reviewed the motion and related pleadings, the Court finds that objections to Dr. Becker's testimony are best resolved at trial during the course of examination as they generally

go to the weight of the evidence and should be resolved by the jury. Accordingly, Defendants'

Motion to Exclude the Testimony of Dr. Stephen L. Becker (ECF No. 319) is **DENIED**.

>   **E.** **Defendants' Motion To Exclude (Preclude) The Testimony Of Dr. Ophir Frieder From Testifying Regarding Untimely Opinions That Were Not Disclosed In His Original Expert Report And Opinions That He Now Concedes Are Incorrect**

Having reviewed the motions and related pleadings, the Court finds that the supplemental

report filed by Dr. Frieder is not violative of Rule 26 procedures. Furthermore, the Court finds

that Defendants have neither been surprised nor prejudiced by the supplemental report under

Fourth Circuit precedent on this issue. *See Southern States Rack & Fixture, Inc. v. Sherwin-*

*Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). Accordingly, Defendants' Motion To Exclude

(Preclude) The Testimony Of Dr. Ophir Frieder From Testifying Regarding Untimely Opinions

That Were Not Disclosed In His Original Expert Report And Opinions That He Now Concedes

Are Incorrect (ECF No. 327) is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and parties of

record.

**IT IS SO ORDERED.**

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
October /ﾑ, 2012