

| | |
|---|---|
| I/P ENGINE, INC. | |
| Plaintiff, | Civil Action No. 2:11-cv-512 |
| v. | |
| AOL, INC., *et al.*, | |
| Defendants. | |

## ORDER ON FINAL PRETRIAL CONFERENCE

Plaintiff I/P Engine, Inc. ("Plaintiff") and Defendants AOL Inc., Google Inc., IAC

Search & Media, Inc., Gannett Co., Inc., and Target Corporation (collectively, "Defendants")

submit the following proposed final pretrial order pursuant to the Court's Order of February 15,

2012, the Federal Rules of Civil Procedure, and the Local Rules of this Court and the Case

Management Orders, previously entered herein. The parties having stipulated as to various

matters identified herein and having identified exhibits, witnesses, factual contentions and triable

issues, it is hereby ORDERED as follows:

## I.    STIPULATION OF UNDISPUTED FACTS

The parties agree that the following facts are undisputed for purposes of this litigation:

1.   U.S. Patent No. 6,314,420 ("the '420 patent") is entitled "Collaborative/Adaptive Search Engine" and issued on November 6, 2001.

2.   The application that issued as the '420 patent was filed on December 3, 1998.

3.   Claims 10, 14, 15, 25, 27, and 28 of the '420 patent are asserted.

4.   Claims 1, 5, 6, 21, 22, 26, 28 and 38 of the '664 patent are asserted.

5.   U.S. Patent No. 6,775,664 ("the '664 patent") is entitled "Information Filter System and Method for Integrated Content-Based and Collaborative/Adaptive Feedback Queries" and issued on August 10, 2004.

6. The application that issued as the '664 patent is a continuation of the '420 patent, and was filed on October 22, 2001.

7. Andrew K. Lang and Donald Kosak are named inventors of the '420 patent.

8. Andrew K. Lang and Donald Kosak are named inventors of the '664 patent.

9. United States Patent No. 6,202,058, the Rose '058 patent, is entitled "System for Ranking the Relevance of Information Objects Accessed by Computer Users."

10. The Rose '058 patent was issued by the United States Patent and Trademark Office on March 13, 2001.

11. The application that issued as the Rose '058 patent was filed on April 25, 1994.

12. United States Patent No. 6,006,222, the Culliss '222 patent, is entitled "Method for Organizing Information."

13. The Culliss '222 patent was issued by the United States Patent and Trademark Office on December 21, 1999.

14. The application that issued as the Culliss '222 patent was filed on August 1, 1997, and is a continuation in part of Application No. 08/840,922, filed April 25, 1997.

15. United States Patent No. 6,185,558, the Bowman '558 patent, is entitled "Identifying the Items Most Relevant to a Current Query Based on Items Selected in Connection with Similar Queries."

16. The Bowman '558 patent was issued by the United States Patent and Trademark Office on February 6, 2001.

17. The application that issued as the Bowman '558 patent was filed on March 10, 1998, and is a continuation in part of Application No. 09/033,824, filed on March 3, 1998.

## II. **EXHIBITS**

### A. **Exhibit Lists**

The parties have segregated the documents, summaries and other exhibits that may be offered into evidence at trial into exhibit lists. Plaintiff's Exhibit List is attached hereto as **Exhibit A**; Defendants' Exhibit List is attached as **Exhibit B**. The parties agree to deliver to the Court an original and one copy of their respective exhibits sequentially numbered with tabs in three (3) inch binders by 3:00 p.m. on October 12, 2012.

2

**B.** **Efforts to Resolve Objections**

The parties have been working diligently to resolve or narrow all objections lodged as to their respective exhibits. The parties have successfully resolved many objections and will continue their efforts to resolve the objections to each other's proposed exhibits.

**C.** **Exhibits to Which No Objections Have Been Made**

The parties agree that the documents, summaries and other exhibits listed on their Exhibit Lists to which no objection has been specified, may be introduced into evidence without the necessity of further proof of admissibility. This is without prejudice to the pending motions *in limine* and *Daubert* motions concerning certain of these documents and related testimony.

**D.** **Rebuttal Exhibits**

The Exhibit Lists attached hereto do not include potential rebuttal exhibits that may or may not be introduced into evidence. The lists also include documents relied upon by experts in rendering opinions which may or may not be introduced into evidence. The parties reserve the right to offer exhibits for purposes of cross examination, impeachment or rebuttal that are not included in the exhibit lists.

**E.** **Advance Notification of Witnesses and Exhibits**

During presentation of evidence during their respective cases-in-chief, each party must identify to opposing counsel the identity of any live witnesses to be called at trial by no later than **8:00 p.m. two days before** the start of the trial day on which that witness is expected to testify (*i.e.*, witnesses to be called on Monday must be disclosed by 8:00 p.m. the preceding Saturday). Any non-demonstrative exhibits to be used with the any live witnesses must be identified by no later than **8:00 a.m. the day before** the start of the trial day on which that witness's testimony will be offered (*i.e.*, non-demonstrative exhibits for witnesses to be called on Monday must be disclosed by 8:00 a.m. the preceding Sunday).

3

Non-demonstrative exhibits, deposition testimony or other evidence to be presented as part of opening statements shall be identified no later than **8:00 p.m. the night before** their use at trial. The parties are required to disclose the expected order in which the witnesses will be called, and use good faith in identifying non-demonstrative exhibits that are intended to be used in the direct testimony of each witness or as part of opening statements. The parties will meet and confer as to any objections to the exhibits no later than the evening before the opening statements or proposed testimony. The parties will cooperate in seeking to have the Court resolve prior to the opening statements or proposed testimony any objections they are unable to resolve among themselves. Each side is to provide direct-exhibit binders to opposing counsel and to the Court at the beginning of each direct examination. Each side is to provide cross-exhibit binders to opposing counsel and to the Court at the beginning of each cross examination. There is no duty to identify cross-examination exhibits prior to cross examination. Neither will providing a cross-exhibit binder prevent a party from using exhibits not originally included in that binder that are required as a result of the direct examination.

F. **Demonstrative Exhibits and Animations**

Animations and demonstratives, including those used during opening statements, closing arguments, and direct examination, do not need to be included on the trial exhibit list, but must be provided to opposing counsel no later than **7:00 p.m. the night before** their use during trial (*i.e.*, animations and demonstratives to be used on Monday must be disclosed by 7:00 p.m. the preceding Sunday). This agreement does not include demonstrative exhibits used solely for the purpose of cross examination. Demonstrative exhibits that are merely excerpts, enlargements, or highlights of trial exhibits need not be exchanged, but the underlying trial exhibits must be identified under the procedure outline in this Order.

The other party must identify any objections to animations and demonstratives no later than **10:00 p.m. the night before** their use at trial. The parties will meet and confer as to any objections to the animations and demonstratives no later than the night before their use at trial. The parties will cooperate in seeking to have the Court resolve prior to the proposed testimony any objections they are unable to resolve among themselves.

## III.   **WITNESSES**

The parties agree that for current employees of a party, any such witness that such party expects to call in their case-in-chief will appear live. For those witnesses who will be called in a party's case-in-chief via deposition, the parties agree that any counter-designated testimony will be presented to the jury together with the designated deposition testimony, subject to the resolution of any objections to the designated or counter-designated testimony, as discussed below.

During presentation of evidence during their respective cases-in-chief, each party must identify to opposing counsel the identity of any witnesses to be called at trial by deposition, along with the specific deposition testimony that the party intends to present to the jury, no later than **8:00 p.m. three days before** the start of the trial day on which that witness's testimony will be offered (*i.e.*, witnesses to be called by deposition on Monday must be disclosed by 8:00 p.m. the preceding Friday, along with their proposed testimony).

The other party must identify any objections to the designated testimony and any counter-designations **no later than 24 hours after** the witnesses have been disclosed. The parties' current deposition designations, objections and counter-designations are attached as **Exhibits C** (Plaintiff) and **D** (Defendants). The parties will meet and confer as to any objections no later than the evening before the proposed testimony. The parties will cooperate in seeking to have

5

the Court resolve prior to the proposed testimony any objections they are unable to resolve among themselves.

Nothing in this provision is intended to supersede the deadlines set forth in the Court's February 15, 2012 Scheduling Order, including the dates for (1) designations of deposition testimony that the parties believe, in good faith, they may present to the jury at trial, (2) counter-designations and objections, and (3) the parties to meet and confer as to any objections.

A.    <u>**Plaintiff Witnesses**</u>

I/P Engine expects to call the following witnesses at trial:

1. Andrew K. Lang
2. Andrew Perlman
3. Dr. Ophir Frieder  (subject to Defendants' pending Motion to Exclude)
4. Dr. Stephen L. Becker
5. Dr. Jaime Carbonell

I/P Engine may call the following witnesses at trial:

1. Jonathan Alferness
2. Gary Holt
3. Donald M. Kosak
4. Alexander Berger
5. Derek Leslie-Cook
6. Bartholomew Furrow
7. Robert Hickernell
8. Sanjay Datta
9. Jim Maccoun
10. Nicholas Fox

11. Jon Diorio

12. Mark Blais

13. Stephen Kurtz

14. James Christopherson

15. Celia Denery

I/P Engine expects to or may call the following witnesses at trial by deposition:

1. Derek Leslie-Cook

2. Gary Holt

3. Bartholomew Furrow

4. Jonathan Alferness

5. Robert Hickernell

6. Sanjay Datta

7. Jim Maccoun

8. Nicholas Fox

9. Jon Diorio

10. Mark Blais

11. Stephen Kurtz

12. James Christopherson

13. Celia Denery

I/P Engine reserves the right to call by deposition any witness listed as one who they will or may call.

## B.     Defendants' Witnesses

Defendants expect to call the following witnesses at trial:

1. Jonathan Alferness

2. Bartholomew Furrow

3.    Dr. Lyle Ungar

4.    Dr. Keith Ugone

5.    Gary Culliss

6.    Rubin Ortega

7.    Nick Fox

Defendants may call the following witnesses at trial:

1.    Andrew K. Lang

2.    Donald M. Kosak

3.    Alexander Berger

4.    Andrew Perlman

5.    Mark Blais

6.    Daniel Rose

7.    Derek Cook

8.    Sanjay Datta

9.    Gary Holt

10.   James Maccoun

11.   Stephen Kurtz

12.   Celia Denery

13.   Kevin Cotter

14.   James Christopherson

15.   Marie Bamford

16.   Robert Hickernell

Defendants expect to or may call the following witnesses at trial by deposition:

1.   Andrew Lang

2.   Donald M. Kosak

3.   Alexander R. Berger

4.   Mark Blais

5.   Andrew D. Perlman

Pursuant to the discussion during the October 9, 2012 Pretrial Conference, to the extent Plaintiff decides to call for live testimony any witnesses on the Defendants' "expect to call" list that Defendants bring to trial, this will be subject to the parties' agreement regarding Advance Notification of Witnesses and Exhibits (outlined in II.E above) and witness availability. The parties further agree that they will not call as live witnesses during their respective cases any officers or employees of an opposing party. This does not affect a party's ability to play deposition designations.

## IV.   FACTUAL CONTENTIONS

The parties agree that this list of Factual Contentions may be supplemented and that the absence of a Factual Contention on this list shall not constitute waiver and shall not preclude the admission of relevant evidence at trial. The factual contentions of the parties (in addition to the Stipulated Facts identified in Section I, above) are as follows:

### A.   Plaintiff's Factual Contentions

I/P Engine proposes that the parties agree that this list of Factual Contentions may be supplemented and that the absence of a Factual Contention on this list shall not constitute waiver and shall not preclude the admission of relevant evidence at trial. I/P Engine's contentions in this case are described, in part, through (a) I/P Engine's expert reports of Dr. Stephen Becker, Dr. Ophir Frieder, and Dr. Jaime Carbonell; (b) the parties discovery responses; and (c) Defendants' experts' reports.

9

I/P Engine has offered to stipulate to the operation of the Adwords system as described in Defendants' own expert report of Dr. Ungar; Defendants, however, have refused. A stipulation regarding the operation of the Adwords system will fundamentally narrow the issues at trial, and would shorten the trial.

I/P Engine's factual contentions (in addition to the matters to which the parties have stipulated pursuant to this Order and as set forth above) are as follows:

1. At least as early as December 3, 1998, Mr. Andrew K. Lang and Donald Kosak conceived of their inventions described and claimed in the asserted '420 and '664 patents.

2. The '420 patent is entitled to a priority date of December 3, 1998.

3. The '664 patent is entitled to a priority date of December 3, 1998.

4. Google has and is currently infringing the asserted claims of the '420 and '664 patents in the United States, including this judicial district, by its use of its AdWords, AdSense for Search, AdSense for Mobile Search and AOL Search Marketplace systems.

5. AOL has and is currently infringing the asserted claims of the '420 and '664 patents in the United States, including this judicial district, by its use of Google's AdSense for Search system and its AOL Search Marketplace system.

6. IAC has and is currently infringing the asserted claims of the '420 and '664 patents in the United States, including this judicial district, by its use of Google's AdSense for Search system.

7. Target has and is currently infringing the asserted claims of the '420 and '664 patents in the United States, including this judicial district, by its use of Google's AdSense for Search system.

8. Gannett has and is currently infringing the asserted claims of the '420 and '664 patents in the United States, including this judicial district, by its use of Google's AdSense for Search system.

9. The '420 and '664 patents are valid and enforceable.

10. Google has been aware of the '420 and '664 patents at least as early as the filing of the present litigation.

11. Reasonable royalties are an appropriate measure of damages.

12. The reasonable royalty rate that is adequate to compensate I/P Engine for Defendants' infringement of the '420 and '664 patents is 3.5%.

13. There is an absence of acceptable non-infringing alternatives.

14. Google's internal tracking of the impact of Smart Ads (and the related accused "Promotion" and "Disabling" features) provided a significant and lasting incremental improvement in the revenue generating capability of Google's search advertising platform.

15. Google indicated that the implementation of the Smart Ads system and its utilization in the accused system generated "a large revenue and quality impact." Google tracked the impact of Smart Ads on its revenues (in the form of impact on RPM) on a percentage and dollar basis, starting in third quarter of 2004. This tracking demonstrates that Smart Ads had an immediate impact of over 20% on Google's revenues.

16. The royalty base for the license between Lycos and Google reflects the estimated incremental impact on Google's accused revenues as identified in the Parties Undisputed Facts of the implementation of the Smart Ads system and its utilization in the accused products. This represents a reasonable apportionment of Google's revenues to arrive at a royalty base against which the royalty rate for the license to the patents in suit should be applied.

17.     The incremental benefit to Google's revenues is properly derived from calculating an apportionment factor for each quarter from the third quarter of 2004 to the present using the Google's own tracking data. This provides a reliable and tangible basis to apportion the revenue of the accused products and to limit the royalty base to revenue most closely associated with Google's use of the patented technology. This apportionment specifically and conservatively excludes elements of Google's revenue from the accused systems that are attributable to capabilities present in Google's ad serving systems prior to Google's implementation of Smart Ads as well as improvements to Google's system that occurred during and after the implementation of Smart Ads that are unrelated to the accused functionality.

18.     I/P Engine contends that this is an exceptional case entitling it to attorneys' fees, costs, and interest.

19.     I/P Engine contends that it is entitled to any enhancement of actual damages or any supplemental or increased damages.

20.     I/P Engine reserves the right to include additional contentions and disputed issues of fact and law based on other motions or procedural or substantive issues that may arise between the date of this proposed pretrial order and the pre-trial conference and trial.

## B.    Defendants' Factual Contentions

1.      Defendants contend that they do not infringe the asserted claims of the '420 patent, listed below:

    a.  Claim 10

    b.  Claim 14

    c.  Claim 15

    d.  Claim 25

     e.  Claim 27

     f.  Claim 28

2.     Defendants contend that they do not infringe the asserted claims of the '664 patent, listed below:[1]

     a.  Claim 1

     b.  Claim 5

     c.  Claim 6

     d.  Claim 21

     e.  Claim 22

     f.  Claim 26

     g.  Claim 28

     h.  Claim 38

3.     Defendants contend that AdWords is the online advertising auction system used to display advertisements next to search results on www.google.com. AdWords was launched by Google in the fourth quarter of 2000.

4.     Defendants contend that some third party and Google-owned websites show advertisements provided by a Google system called AdSense for Search ("AFS"). Those websites typically show AFS-provided ads on the "result" page for a search function. AFS was launched by Google in the first quarter of 2002. AdSense for Mobile Search is similar to AFS, but for use on mobile website search results pages. AFMS was launched by Google in the first quarter of 2009.

---

[1] Defendants further contend that the number of asserted claims should be reduced for purposes of trial.

5.     Defendants contend that each time an end user enters a search query on google.com, AdWords runs an auction for the ad space available on the search results page displayed to the end user.  To enter the auction, advertisers submit an advertisement, identify keywords they wish to associate with the advertisement, and provide their bid: the maximum cost-per-click, which indicates the maximum price the advertiser is willing to pay if an end-user clicks on the ad.  For each auction, AdWords then ranks the advertisements by scores that include, among other things, the advertiser's bid and the ad's predicted clickthrough rate.  Ads with higher scores are ranked higher than ads with lower scores.

6.     Defendants contend that in 2002, Google implemented the auction-based AdWords system.  Google shifted from a pay-per-impression system to a pay-per-click system, and began an auction system that incorporated both bid amount and predicted click-through rate in the ranking of ads.

7.     Defendants contend that, during prosecution of the '420 patent and the '664 patent, the PTO did not state that filtering information by combining content data and user feedback data was novel or patent-worthy.  Rather, the PTO allowed the patents based on the fact that no prior art taught the use of a "wire," which the patents cite as a continuous query whose results are updated over time.  None of the asserted claims recite the "wire" that the PTO recited as the alleged point of novelty.

8.     Defendants contend that Plaintiff purchased the '420 patent and '664 patent in the summer of 2011, as part of a family of eight patents, from Lycos, Inc. ("Lycos").  Plaintiff paid a lump sum payment for these eight patents.  The sale was the outcome of a bidding process. Lycos sold the patent family to the highest bidder, I/P Engine's predecessor.

9.     Defendants contend that, in a hypothetical negotiation between Google and Lycos, the parties would have agreed to a lump sum royalty for the asserted patents.

10.     Defendants contend that in 2004, Daum Communications bought Lycos, which owned the asserted patents at the time, for $95 million.

11.     Defendants contend that in 2010, Ybrant Digital bought Lycos, which owned the asserted patents at the time.

12.     Defendants contend that there are acceptable non-infringing alternatives to the '420 and '664 patents.

13.     Defendants contend that, for purposes of the reasonable royalty analysis, the date of the hypothetical negotiation would have been in 2010, rather than 2004, based on Plaintiff's infringement allegations as expressed in Dr. Frieder's September 4 Updated Report on Infringement.[2]

14.     Defendants contend that the damages opinion of Plaintiff's expert, Dr. Becker, is fundamentally flawed because he relies on an incorrect date in 2004 for the hypothetical negotiation, instead of 2010 – which is the earliest date of first alleged infringement under Plaintiff's current infringement contentions.

15.     Defendants contend that Dr. Becker's analysis is also flawed because he adopts a running royalty as the form of damages, as opposed to a lump sum payment, based on license agreements to unrelated patents that do not involve Google or any of the other Defendants. Dr. Becker's opinion is flatly inconsistent with Google's actual agreements, which confirm Google's consistent practice to license or acquire technology using a lump sum payment structure.

---

[2] Dr. Frieder served a Second Updated Expert Report on October 12, 2012. Because Dr. Frieder's report is untimely and beyond the scope of the Court's October 9, 2012 Order, Defendants are moving to strike the portion of the report beyond the scope of the Court's Order.

16.     Defendants contend that the damages opinion of Dr. Becker is artificially inflated because Dr. Becker overstates the applicable royalty base. Dr. Becker's analysis includes revenue generated prior to the date of the first alleged infringement.

17.     Dr. Becker's opinion is also inflated because he fails to appropriately allocate the revenue base to correspond to the value of the allegedly infringing features of the accused system, and instead assumes that the royalty base is the entire incremental increase in revenue for Google's accused "Smart Ads" system over its earlier advertisement serving systems. By including revenue generated from both patented and unpatented features, Dr. Becker's attempt to apportion revenue is unavailing, and his analysis runs afoul of the Entire Market Value Rule.

18.     Defendants further contend that Dr. Becker applies an inflated royalty rate because he relies on non-comparable license agreements to patents that are not at issue in this case and between companies who are not parties to this litigation. At the same time, Dr. Becker excludes from his analysis actual transactions involving the asserted patents. For example, I/P Engine purchased eight U.S. patents (including the patents in suit) from Lycos in 2011 for a lump sum.

19.     Defendants contend that the asserted claims of the '420 and '664 patents are invalid as anticipated under 35 U.S.C. § 102 and/or as obvious under 35 U.S.C. § 103, under the prior art, including the Bowman '558 patent, the Culliss '222 patent, the Rose '058 patent, "Feature Guided Automated Collaborative Filtering," by Yezdezard Zerxes Lashkari, Master's Thesis submitted to the Program in Media Arts and Sciences, School of Architecture and Planning at the Massachusetts Institute of Technology ("Webhound"), and also what was disclosed in Defendants' Notice Pursuant to 35 U.S.C. § 282 (D.N. 248), and as indefinite and lacking written description under 35 U.S.C. § 112.

20. Defendants contend that Google openly advertised and publicized Quality Score in July and August 2005, and that in July 2005, numerous third-party publications also reported on Google's implementation of Quality Score.

21. Defendants contend that the equitable doctrine of laches bars I/P Engine from obtaining the relief that it seeks. Because I/P Engine and its predecessors-in-interest delayed filing suit for more than six years after actual or constructive notice of the accused functionality, a presumption of laches applies, and I/P Engine has not rebutted the presumption. Furthermore, even without the presumption, the period of delay was unreasonable, witnesses' memories have faded as a result of the delay, and relevant documents have been lost, destroyed, or misplaced in the ordinary course of business as a result of the delay.

22. Defendants contend that I/P Engine is not entitled to damages on its claims of infringement.

23. Defendants contend that this is an exceptional case entitling Defendants to attorneys' fees, costs, and interest.

24. Defendants contend that I/P Engine is not entitled to a finding that would warrant I/P Engine being awarded its attorneys' fees.

V.     **TRIABLE ISSUES**

   A.     **The Triable Issues As Contended By Plaintiff**

   1. Whether Defendants infringe directly and/or indirectly claims 10, 14, 15, 25, 27 and 28 of the '420 patent by making, using, selling or offering for sale in the United States Google's AdWords, AdSense for Search, and AdSense for Mobile Search, and AOL Search Marketplace.

2. Whether I/P Engine has suffered and will continue to suffer damages in an amount to be determined at trial as a direct and proximate result of Defendants' infringement of the '420 patent.

3. Whether Defendants' infringe directly and/or indirectly claims 1, 5, 6, 21, 22, 26, 28 and 38 of the '664 patent by making, using, selling or offering for sale in the United Sates, Google's AdWords, AdSense for Search, and AdSense for Mobile Search, and AOL Search Marketplace.

4. Whether I/P Engine has suffered and will continue to suffer damages in an amount to be determined at trial as a direct and proximate result of Defendants' infringement of the '664 patent.

5. Whether this is an exceptional case such that I/P Engine is entitled to receive enhanced damages and/or attorneys' fees.

6. Whether claims 10, 14, 15, 25, 27 and 28 of the '420 patent and claims 1, 5, 6, 21, 22, 26, 28 and 38 of the '664 patent are anticipated by, or obvious in light of, the prior art under 35 U.S.C. §§ 102 and 103.

7. I/P Engine believes that any issues directed to laches outside of the presence of the jury.

**B.** **The Triable Issues As Contended By Defendants**

1. Whether Defendants infringe any of the asserted claims of the '420 patent, listed below:

    a. Claim 10

    b. Claim 14

    c. Claim 15

    d. Claim 25

18

     e.  Claim 27

     f.  Claim 28

2.      Whether Defendants infringe any of the asserted claims of the '664 patent, listed below:

     g.  Claim 1

     h.  Claim 5

     i.  Claim 6

     j.  Claim 21

     k.  Claim 22

     l.  Claim 26

     m.  Claim 28

     n.  Claim 38

3.      Whether the asserted claims of the '420 and '664 patents are invalid as anticipated under 35 U.S.C. § 102, as obvious under 35 U.S.C. § 103 and as indefinite under 35 U.S.C. § 112.

4.      Whether, and to what extent I/P Engine is entitled to damages if the Defendants are found to infringe either the '420 patent or the '664 patent.

5.      Whether I/P Engine's claims for relief are barred due to laches.

6.      Whether this is an exceptional case that entitles Google to attorneys' fees, costs, and interest.

Dated: October _15_, 2012          Entered: _10 / 15 / 12_

                                 Raymond A. Jackson
                                 United States District Judge

Hon. Raymond A. Jackson
United States District Court
Eastern District of Virginia

**I/P ENGINE, INC.**

/s/ W. Ryan Snow
Jeffrey K. Sherwood
Kenneth W. Brothers
**DICKSTEIN SHAPIRO LLP**
1825 Eye Street NW
Washington, DC  20006
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
**CRENSHAW, WARE & MARTIN, P.L.C.**
150 West Main Street, Suite 1500
Norfolk, VA  23510
Telephone:  (757) 623-3000
Facsimile:  (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff I/P Engine, Inc.*

**GOOGLE INC.,**
**IAC SEARCH & MEDIA, INC.,**
**GANNETT CO., INC.** and
**TARGET CORPORATION**

_/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624.3000
Facsimile: (757) 624.3169
senoona@kaufcan.com

David Bilsker
David A. Perlson
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

_Counsel for Defendants Google Inc., IAC Search & Media, Inc.,_
_Gannett Co., Inc. and Target Corporation_

**AOL INC.**

By: _/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169

Robert L. Burns
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile:  (415) 653-6444

*Counsel for Defendant AOL Inc.*