```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       Norfolk Division

 3

 4   I/P ENGINE, INC.,               )
                                     )
 5               Plaintiff,          )      CIVIL ACTION
                                     )
 6        V.                         )      2:11CV512
                                     )
 7   AOL INC., GOOGLE INC.,          )
     IAC SEARCH & MEDIA, INC.,       )
 8   GANNETT CO., INC., and          )
     TARGET CORPORATION,             )
 9                                   )
                 Defendants.         )
10

11

12
                        (MORNING SESSION)
13

14               TRANSCRIPT OF PROCEEDINGS

15                    Norfolk, Virginia

16                   October 16, 2012

17

18                  JURY TRIAL - Day 1

19                    (Pages 1-82)

20

21   Before:   THE HONORABLE RAYMOND A. JACKSON
               United States District Judge
22

23

24

25
```

```
 1  Appearances:

 2

 3              CRENSHAW, WARE & MARTIN, P.L.C.
                By:  W. RYAN SNOW, ESQUIRE
 4                   DONALD C. SCHULTZ, ESQUIRE
                           and
 5              DICKSTEIN SHAPIRO, LLP
                By:  JEFFREY K. SHERWOOD, ESQUIRE
 6                   FRANK C. CIMINO, JR., ESQUIRE
                     KENNETH W. BROTHERS, ESQUIRE
 7                         and
                     DAWN RUDENKO, ESQUIRE
 8                   Counsel for the Plaintiff

 9
                QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
10              By:  DAVID A. PERLSON, ESQUIRE
                     DAVID L. BILSKER, ESQUIRE
11                   DAVID NELSON, ESQUIRE
                     EMILY C. O'BRIEN, ESQUIRE
12                   ROBERT A. WILSON, ESQUIRE
                           and
13              KAUFMAN & CANOLES
                By:  STEPHEN E. NOONA, ESQUIRE
14                   Counsel for the Defendants

15

16                         *    *    *

17

18

19

20

21

22

23

24

25
```

```
 1              (Court convened at 10:30 a.m.)
 2              THE DEPUTY CLERK: I/P Engine, Inc. versus AOL,
 3  Inc., Google, Inc., IAC Search & Media, Inc., Gannett
 4  Company, Inc. and Target Corporation, in civil action No.
 5  2:11cv512.
 6              Mr. Brothers, is the plaintiff and
 7  counter defendant ready to proceed?
 8              MR. BROTHERS:  Yes.
 9              THE COURT:  Mr. Nelson, are the defendants and
10  counter claimant ready to proceed?
11              MR. NELSON:  Yes, we are.
12              THE COURT:  Members of the jury, as I call your
13  name, would you please stand and answer present.  Please
14  remain standing until the next name is called and then be
15  seated.
16              Judith Ann Anderson?
17              PROSPECTIVE JUROR:  Present.
18              THE DEPUTY CLERK:  Agaton Umanos Antonio?
19              PROSPECTIVE JUROR:  Present.
20              THE DEPUTY CLERK:  Timothy John Birch?
21              PROSPECTIVE JUROR:  Present.
22              THE DEPUTY CLERK:  Janice Susan Blauert?
23              PROSPECTIVE JUROR:  Present.
24              THE DEPUTY CLERK:  SPENCER Alton Burmeister?
25              PROSPECTIVE JUROR:  Present.
```

1          THE DEPUTY CLERK:  Dominic Allen Caldwell?

2          PROSPECTIVE JUROR:  Present.

3          THE DEPUTY CLERK:  Christopher Ray Clark?

4          PROSPECTIVE JUROR:  Present.

5          THE DEPUTY CLERK:  Clarina Publico Cruz?

6          PROSPECTIVE JUROR:  Present.

7          THE DEPUTY CLERK:  Elizabeth Spain Flowers?

8          PROSPECTIVE JUROR:  Present.

9          THE DEPUTY CLERK:  Samantha Nicole Garner?

10         PROSPECTIVE JUROR:  Present.

11         THE DEPUTY CLERK:  Janet Twiddy Gilbert?

12         PROSPECTIVE JUROR:  Present.

13         THE DEPUTY CLERK:  Jennifer Petra Goodwin?

14         PROSPECTIVE JUROR:  Present.

15         THE DEPUTY CLERK:  Winifred Lois Griggs?

16         PROSPECTIVE JUROR:  Present.

17         THE DEPUTY CLERK:  Angela Beatrice Harris?

18         PROSPECTIVE JUROR:  Present.

19         THE DEPUTY CLERK:  Nancy Ellen Harrison?

20         PROSPECTIVE JUROR:  Present.

21         THE DEPUTY CLERK:  Nicholas Hionis?

22         PROSPECTIVE JUROR:  Present.

23         THE DEPUTY CLERK:  Christopher Hopkins?

24         PROSPECTIVE JUROR:  Present.

25         THE DEPUTY CLERK:  Janice Lee Johnson?

| | |
|---|---|
| 1 | PROSPECTIVE JUROR:  Present. |
| 2 | THE DEPUTY CLERK:  Kelly Rae Kasperbauer? |
| 3 | PROSPECTIVE JUROR:  Present. |
| 4 | THE DEPUTY CLERK:  Tracie Renee Kerr? |
| 5 | PROSPECTIVE JUROR:  Present. |
| 6 | THE DEPUTY CLERK:  Linda S. Lampe? |
| 7 | PROSPECTIVE JUROR:  Present. |
| 8 | THE DEPUTY CLERK:  Carl Nyberg Lewis? |
| 9 | PROSPECTIVE JUROR:  Present. |
| 10 | THE DEPUTY CLERK:  Jon MacCartney? |
| 11 | PROSPECTIVE JUROR:  Present. |
| 12 | THE DEPUTY CLERK:  Donnie Lee McGuire? |
| 13 | PROSPECTIVE JUROR:  Present. |
| 14 | THE DEPUTY CLERK:  Christina Danielle Miller? |
| 15 | PROSPECTIVE JUROR:  Present. |
| 16 | THE DEPUTY CLERK:  Emma Louise Mitchell? |
| 17 | PROSPECTIVE JUROR:  Present. |
| 18 | THE DEPUTY CLERK:  Kenneth Gene Morningstar? |
| 19 | PROSPECTIVE JUROR:  Present. |
| 20 | THE DEPUTY CLERK:  May Iona Caldwell Parks? |
| 21 | PROSPECTIVE JUROR:  Present. |
| 22 | THE DEPUTY CLERK:  Jonathan Michael Parr? |
| 23 | PROSPECTIVE JUROR:  Present. |
| 24 | THE DEPUTY CLERK:  Amy Carol Pippin? |
| 25 | PROSPECTIVE JUROR:  Present. |

```
 1              THE DEPUTY CLERK:  Catherine Long Pitts?
 2              PROSPECTIVE JUROR:  Present.
 3              THE DEPUTY CLERK:  Cathy Elnora Quinn-Curry.
 4              PROSPECTIVE JUROR:  Present.
 5              THE DEPUTY CLERK:  Anthony Curtis Reddy?
 6              PROSPECTIVE JUROR:  Present.
 7              THE DEPUTY CLERK:  Christopher Deron Safrit?
 8              PROSPECTIVE JUROR:  Present.
 9              THE DEPUTY CLERK:  Vicki Lynn Smith?
10              PROSPECTIVE JUROR:  Present.
11              THE DEPUTY CLERK:  Vanora Stephanie Stevens?
12              PROSPECTIVE JUROR:  Present.
13              THE DEPUTY CLERK:  Andrew David Stredler?
14              PROSPECTIVE JUROR:  Present.
15              THE DEPUTY CLERK:  Allan Webster Sullivan?
16              PROSPECTIVE JUROR:  Present.
17              THE DEPUTY CLERK:  Lindsay Svedberg?
18              PROSPECTIVE JUROR:  Present.
19              THE DEPUTY CLERK:  Missouri Judkins Tillery?
20              PROSPECTIVE JUROR:  Present.
21              THE DEPUTY CLERK:  Lisa Ann Watters?
22              PROSPECTIVE JUROR:  Present.
23              THE DEPUTY CLERK:  Are there any jurors names I
24  have not called?
25              (No response.)
```

```
 1              THE DEPUTY CLERK:  There are 42 jurors, your
 2   Honor.
 3              THE COURT:  All right.
 4              THE DEPUTY CLERK:  Members of the jury, please
 5   stand and be sworn.
 6              (The jury panel was sworn on voir dire by the
 7   deputy clerk.)
 8              THE COURT:  Good morning, ladies and gentlemen.
 9              THE JURY:  Good morning.
10              THE COURT:  Ladies and gentlemen today we have
11   for trial a civil case.  This civil case is expected to
12   take approximately ten days to try.
13              This case, ladies and gentlemen, is a patent
14   case.  It's a patent infringement case that we have
15   before the Court, and in this patent infringement case
16   the plaintiff in this case is I/P Engine and I/P Engine
17   contends or takes the position that the defendants in
18   this case -- the defendants in this case being Google
19   Incorporated, AOL Inc., IAC Search & Media, Inc., Gannett
20   Company, Inc. and Target Corporation have infringed their
21   patent, their licensed patent.
22              The defendants, of course, take the position
23   that they have not infringed the patent of I/P Engine.
24   This is the nature of the contest that we have here in
25   this case.
```

1          Ladies and gentlemen at this time I want to
2    again list the names of the parties and the counsel
3    representing the parties.  I want you to pay careful
4    attention to the counsel who are called in the case
5    because at some future point I will want to inquire
6    whether you have had any type of professional or social
7    relationship with any party or any counsel in the case.
8          Now, in this case I/P Engine is the plaintiff in
9    the case.  I/P Engine is represented by the law firm of
10   Dickstein Shapiro LLP and Crenshaw Ware & Martin PLC.
11         I want to introduce you to counsel representing
12   the plaintiff, Mr. Kenneth Brothers.
13         Mr. Brothers, if you would stand.
14         MR. BROTHERS:  Good morning.
15         THE COURT:  Mr. Jeffrey Sherwood.
16         MR. SHERWOOD:  Good morning.
17         THE COURT:  Dawn Rudenko?
18         MS. RUDENKO:  Good morning.
19         THE COURT:  And Frank Cimino, Jr.
20         MR. CIMINO:  Good morning.
21         These are counsel for I/P Engine.  The counsel
22   for Google, IAC, Target and Gannett are represented by
23   the firm of Quinn Emanuel Urquhart & Sullivan, LLP and
24   the firm of Kaufman & Canoles.  Those counsel are as
25   follows:  Mr. David Nelson.

1          MR. NELSON:  Good morning.

2          THE COURT:  Mr. David Bilsker.

3          MR. BILSKER:  Good morning.

4          THE COURT:  Mr. Robert Wilson.

5          MR. WILSON:  Good morning.

6          THE COURT:  Steven A. Noona.

7          MR. NOONA:  Good morning.

8          THE COURT:  And Mr. David Perlson.

9          MR. PERLSON:  Good morning.

10          THE COURT:  Ladies and gentlemen, we are now

11 ready to begin the jury selection process.  In this case

12 we will select nine of your numbers to sit in this jury.

13          The parties have the right to have this case

14 tried by a qualified, fair and impartial jury panel.  A

15 qualified and impartial jury is one who is responsible

16 and capable and which will without fear, favor, bias,

17 prejudice, sympathy or passion objectively hear and

18 decide the issues to be tried and to render its verdict

19 based solely on the evidence presented in this case and

20 the law applicable to the case as given to you by the

21 Court.

22          Your qualifications and your impartiality may

23 not be assumed without some inquiry and this inquiry that

24 we are about to make is known as the voir dire process or

25 examination.  It's a time-honored process, ladies and

1  gentlemen, by which your qualifications and impartiality

2  as jurors may be determined.  The purpose is to develop

3  the truth about your state of mind, your competency and

4  your ability to abide by the oath you took just a few

5  minutes ago.

6          Your answers to the Court's questions will also

7  allow to Court to determine whether you should be excused

8  for cause either on the motion of the Court or one of the

9  parties, or either on the Court's determination.

10         Your answers will also allow counsel to make

11  intelligent use of their peremptory strikes.  A

12  peremptory strike is nothing more than an opportunity the

13  law gives a party through counsel to strike a person from

14  the jury panel without really assigning a specific reason

15  for striking or removing that person from the panel.  So

16  it's important that your answers to the questions be

17  truthful and be complete.

18         Each of you is under a compulsion to disclose

19  upon a general question or general inquiry any matters

20  which might tend to disqualify you for any reason from

21  sitting on this case.  So while the sweep of my questions

22  might be broad, I want you to affirmatively and honestly

23  and conscientiously answer the real implications of my

24  questions.  Don't wait until you are on the panel the

25  third or fourth day to raise your hand to tell the Court

1   something you need to tell the Court now.

2          Also, false and misleading answers may result in

3   someone being seated who should not be seated.  That

4   causes a miscarriage of justice and we want to avoid that

5   at all costs in this case.  So consider each question

6   very carefully.  As I said, don't wait to make known what

7   you should make known now.  So while I address you

8   collectively, I want you to answer my questions as

9   clearly as possible.

10          Some questions may seem rather routine, but they

11  are important.  Can each of you read, write, speak and

12  understand the English language?  In other words, are

13  there any language barriers?  If so, raise your hand.

14          By the way, any time you wish to respond to one

15  of the Court's questions, always stand and when you are

16  recognized, give your name first.

17          One other precaution.  While you are speaking

18  you may hear me clearly, but your voice sometimes

19  disappears into the ceiling in this courtroom, so we may

20  have to ask you to speak up.

21          Can each of you hear well with the assistance of

22  any hearing aid?  In other words, are there any hearing

23  difficulties?

24          Stand up, sir, and state your name.

25          PROSPECTIVE JUROR:  My name is Nicholas Hionis.

```
 1            THE COURT:  Nicholas?
 2            PROSPECTIVE JUROR:  Hionis, H-i-o-n-i-s.
 3            THE COURT:  Do you have a hearing problem?
 4            PROSPECTIVE JUROR:  Yes, a problem with the left
 5  side.
 6            THE COURT:  Okay.  Are you able to hear me now?
 7            PROSPECTIVE JUROR:  Yes.
 8            THE COURT:  Okay.  Thank you very much, sir.
 9            PROSPECTIVE JUROR:  Yes.
10            THE COURT:  Does anyone have any physical
11  disability that would cause them to be unable to sit in
12  this case, physical or medical problems?
13            Now, ladies and gentlemen, I just told you that
14  this is a big, old dispute against I/P Engine and Google
15  and Target and AOL and the rest of the defendants about a
16  patent, a patent having to do with the advertising
17  systems, Internet advertising systems.  Do any of you
18  think you know anything about this case?  Have you heard
19  anything about this case through any means or any source?
20            (No response.)
21            THE COURT:  If any of you have previously served
22  on a jury of any kind before, either in a state or
23  federal court, in a civil or criminal case, would you
24  please stand and tell me where and when you served, prior
25  jury service.
```

```
 1              We are going to start up front.  Yes, ma'am.
 2              PROSPECTIVE JUROR:  My name is Judith Ann
 3  Anderson.  I served in Atlanta, Georgia, and it was
 4  approximately 15 years ago.
 5              THE COURT:  Civil or criminal case?
 6              PROSPECTIVE JUROR:  Criminal.
 7              THE COURT:  All right.  Thank you.
 8              Yes, ma'am.
 9              PROSPECTIVE JUROR:  Clarina Cruz.  I served ten
10  years ago.
11              THE COURT:  What kind of case?
12              PROSPECTIVE JUROR:  Criminal.
13              THE COURT:  Thank you.
14              Yes, sir.
15              PROSPECTIVE JUROR:  My name is Chris Hopkins.  I
16  served in the Norfolk Circuit Court, criminal case,
17  approximately 12 years ago.
18              THE COURT:  Thank you.
19              Yes, ma'am, in the red.
20              PROSPECTIVE JUROR:  My name is Winifred Griggs.
21  I served in Buffalo, New York, with the Eerie County
22  Circuit Court.  It was a civil case, 22 years ago.
23              THE COURT:  What kind of civil case was it?
24              PROSPECTIVE JUROR:  It was a wrongful injury
25  case.
```

```
 1              THE COURT:  Thank you.
 2              Yes, sir.
 3              PROSPECTIVE JUROR:  Carl Lewis.  Virginia
 4  Beach.  It was a criminal case.
 5              THE COURT:  Okay.  Thank you.
 6              PROSPECTIVE JUROR:  Emma Mitchell, Virginia
 7  Beach.  I believe it was civil court.
 8              THE COURT:  Civil?
 9              PROSPECTIVE JUROR:  Yes.
10              THE COURT:  Do you recall what the case was
11  about?
12              PROSPECTIVE JUROR:  Oh, traffic.
13              THE COURT:  Thank you.
14              Yes, ma'am, in the black.
15              PROSPECTIVE JUROR:  Catherine Pitts.
16              THE COURT:  What was your name?
17              PROSPECTIVE JUROR:  Catherine Pitts.  I served
18  about 20 plus years in Virginia Beach.  It was a civil
19  case.
20              THE COURT:  Do you know what the case was about?
21              PROSPECTIVE JUROR:  It was a sea injury.
22              THE COURT:  Thank you.
23              Yes, ma'am.
24              PROSPECTIVE JUROR:  Cathy Quinn-Curry.  It was a
25  civil case in Virginia Beach.
```

1          THE COURT:  I didn't get your name, again.

2          PROSPECTIVE JUROR:  Cathy Quinn-Curry.

3          THE COURT:  What was the case about?

4          PROSPECTIVE JUROR:  Wrongful injury.

5          THE COURT:  Thank you.

6          Yes, ma'am.

7          PROSPECTIVE JUROR:  Vicki Smith.  It was

8  Norfolk, a civil case and it was a wrongful injury at

9  about 40 years ago, maybe.

10          THE COURT:  Okay.  Thank you.

11          Yes, sir.

12          PROSPECTIVE JUROR:  Andrew Stredler, Virginia

13  Beach Circuit Court about 16 years ago, and it was an

14  injury.

15          THE COURT:  Okay.  Thank you.

16          Okay.  Ten of you indicated you had prior jury

17  service.  My question to you is this:  Was there anything

18  about your jury service there that would cause you to be

19  unable to sit in this case and render a fair and

20  impartial verdict based upon the law and the facts

21  presented to you?

22          (No response.)

23          THE COURT:  Okay.  Thank you.

24          Ladies and gentlemen, I listed the defendant

25  companies in this case, and I will list them again for

1  you just in case any of you have forgotten.  It was

2  Google, Incorporated; America Online, Inc.; Target

3  Corporation; IAC, and I will just say IAC for IAC Search

4  & Media; and Gannett Company, Incorporated.  There are a

5  couple of other companies that might be mentioned here:

6  Innovate Protect, Inc.; Hudson Bay Capital Management;

7  Vringo, V-r-i-n-g-o, Inc.; and Lycos, Inc.  My question

8  to you is are any of you employees of any of these

9  companies?

10          (No response.)

11          THE COURT:  Have you ever been employed by any

12  of these companies?

13          (No response.)

14          THE COURT:  Has any member of your family ever

15  been employed by any of these companies?

16          (No response.)

17          THE COURT:  Do you have any professional

18  associations with any persons associated with these

19  companies?

20          (No response.)

21          THE COURT:  Do you own any stock, bonds or other

22  resources of any of these companies?

23          State your name.

24          PROSPECTIVE JUROR:  Kenneth Morningstar.  I own

25  stock.

```
 1              THE COURT:  In which company?

 2              PROSPECTIVE JUROR:  In I/P.

 3              THE COURT:  In I/P?

 4              PROSPECTIVE JUROR:  Yes.

 5              THE COURT:  How long have you owned stock in

 6   I/P?

 7              PROSPECTIVE JUROR:  Seven years.

 8              THE COURT:  Okay.  Thank you.

 9              Do any of you have any financial dealings with

10   any of these companies?

11              (No response.)

12              THE COURT:  Have any of you ever been in any

13   litigation with any of these companies?

14              Stand up and state your name.

15              PROSPECTIVE JUROR:  My name is Chris Hopkins.

16   Litigation involving Target.

17              THE COURT:  Did you sue them or did they sue

18   you?

19              PROSPECTIVE JUROR:  Excuse me, your Honor?

20              THE COURT:  You say you were involved in

21   litigation.  Were you a defendant, plaintiff, counsel or

22   what?

23              PROSPECTIVE JUROR:  Plaintiff, for my daughter.

24              THE COURT:  How long ago was this?

25              PROSPECTIVE JUROR:  Approximately seven years
```

1   ago.

2           THE COURT:  In short, who prevailed?

3           PROSPECTIVE JUROR:  I did.

4           THE COURT:  Let me ask you something,

5   Mr. Hopkins.  What is your occupation?

6           PROSPECTIVE JUROR:  Mortgage banker with

7   secondary income in real estate and media.

8           THE COURT:  Given your experience with Target

9   Corporation, do you believe you could sit in this case

10  and render a fair and impartial verdict based upon the

11  law and the evidence?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  All right.  Thank you.

14          Your name?

15          PROSPECTIVE JUROR:  Vanora Stevens.

16          THE COURT:  Ms. Stevens?

17          PROSPECTIVE JUROR:  Yes.  I worked at Target

18  Corporation about 15 years ago.

19          THE COURT:  What was your position there?

20          PROSPECTIVE JUROR:  Sales clerk.

21          THE COURT:  In view of that experience, do you

22  believe you are able to sit in this case and to render a

23  fair and impartial verdict based upon the law and the

24  evidence?

25          PROSPECTIVE JUROR:  Yes.

```
1              THE COURT:  Thank you.

2              Yes, ma'am.  Will you stand up.

3              PROSPECTIVE JUROR:  Yes.  Janice Johnson.  I

4   worked for Target and I had a Workers' Comp case with

5   them.

6              THE COURT:  You have a Workers' Comp case and

7   you work for them now?

8              PROSPECTIVE JUROR:  In 1996.  I don't work there

9   right now.

10             THE COURT:  But do you currently have a Workers'

11  Comp case with them?

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  You had one?

14             PROSPECTIVE JUROR:  I had one.

15             THE COURT:  I ask you the same question I asked

16  the rest of the people who have relationships:  Do you

17  believe that in view of that relationship you are able to

18  render a fair and impartial verdict in this case based

19  upon the law and the evidence?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  In other words, do you hold any kind

22  of residual bias or anything against Target Corporation?

23             PROSPECTIVE JUROR:  No, I do not.

24             THE COURT:  How did you work out in that case;

25  did you prevail?
```

1          PROSPECTIVE JUROR:  I did.

2          THE COURT:  Now, I think I asked you in the

3    beginning had you heard anything about this litigation,

4    and I believe no one indicated they had heard anything

5    about this litigation and so I'm proceeding on with that

6    understanding in mind.

7          Now, ladies and gentlemen, a number of witnesses

8    may be called in this case.  If I call the name of

9    someone and you are not sure whether this is someone that

10   you know, then I might have to turn to counsel and get

11   counsel to give me more identifying information to make

12   sure it's not your good friend or neighbor that we are

13   talking about.  So let's see how far we get.

14         Andrew K. Lang, Donald M, Kosak, Alexander

15   Berger, Andrew Perlman, Mark Blais, Ophir Frieder, I

16   think that's Dr. Ophir Frieder, Dr. Steven L. Becker.

17   These are not medical doctors.  Jay Carbonell, Jonathan

18   Alferness, Bartholomew Furrow, Dr. Keith Ugone, Dr. Lyle

19   Ungar, Rubin Ortega, Gary Culliss, Daniel Rose, Nick Fox,

20   Derek Cook, Sanjay Datta, Gary Holt, James Maccoun, John

21   Diorio; Stephen Kurtz, Celia Denery, Kevin Cotter, James

22   Christopherson, Marie Bamford, Robert Hickernell.

23         These are some of the witnesses, ladies and

24   gentlemen, who may be called in this case.  If you

25   believe you know any of them, raise your hand and we will

1   try to determine whether you do.

2          Okay.  No hands went up.

3          Let's talk about backgrounds.  Does anyone in

4   the jury have a background in science, that is, whether

5   you are an engineer, scientist, electronics,

6   technological background?

7          Okay.  We are going to start up front.  Stand up

8   everyone who responded to the question.

9          PROSPECTIVE JUROR:  Clarina Cruz.  I work at

10  Chesapeake General.  I work in sterile processing.  We

11  sterilize instruments.  I have just a few science

12  background.

13         THE COURT:  Science background?

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Okay.  Thank you.

16         PROSPECTIVE JUROR:  Winifred Griggs.  I am an

17  elementary science school teacher.  My master's in

18  education is based on a concentration on science.  My

19  first degree I minored in computer science.

20         THE COURT:  Oh, by the way -- thank you.

21         That question I am raising also includes a

22  background in computer and electronics also.

23         Thank you, ma'am.

24         Yes, sir.

25         PROSPECTIVE JUROR:  John MacCartney, I have a

1    degree in mechanical engineering.

2         THE COURT:  Do you work as a mechanical engineer

3    now?

4         PROSPECTIVE JUROR:  I do not.

5         THE COURT:  Okay.  Thank you.

6         Yes, sir.

7         PROSPECTIVE JUROR:  Carl Lewis.  I'm a

8    mechanical engineer.  I do work in that field.

9         THE COURT:  Okay.  You do work in that field?

10        PROSPECTIVE JUROR:  I do, your Honor.

11        THE COURT:  Okay.  And what phase?

12        PROSPECTIVE JUROR:  I do mostly shock and

13   vibration analysis.  I do this for -- it's Huntington

14   Ingalls Industries.

15        THE COURT:  Okay.  Thank you.

16        PROSPECTIVE JUROR:  May Iona Parks.  I am a

17   biology major and computer technology major, but did very

18   little on computers.

19        THE COURT:  I couldn't hear the last part.

20        PROSPECTIVE JUROR:  Did very little on

21   computers.

22        THE COURT:  Okay.  Thank you.

23        PROSPECTIVE JUROR:  Andrew Stredler.  I'm a

24   computer network engineer.

25        THE COURT:  Thank you.

```
 1              Yes, ma'am.
 2              PROSPECTIVE JUROR:  Vanora Stevens, bachelor's in
 3  network security.  I work in Special Education in
 4  elementary school.
 5              THE COURT:  A bachelor's in what?
 6              PROSPECTIVE JUROR:  Network security.
 7              THE COURT:  Thank you.
 8              Does any member of the jury have any experience
 9  in working in licensing patents?
10              (No response.)
11              THE COURT:  As long as I'm on the subject, HAS
12  any member of the jury panel, potential jury panel, ever
13  invented and patented any item, project?  Does anyone own
14  a patent, in other words?
15              (No response.)
16              THE COURT:  Does any member of your family own a
17  patent?
18              State your name.
19              PROSPECTIVE JUROR:  Spencer Burmeister.  I want
20  to say it's my great uncle, Gilbert Bachman.  He's got a
21  patent for like this -- I really don't know quite what it
22  is.  It's for morgues.  It's like a thing that covers up
23  the coffin, like a coffin stand deal.
24              THE COURT:  Okay.  Thank you.
25              PROSPECTIVE JUROR:  Winifred Griggs.  My father,
```

```
1   Jonathan London.  He had a patent for a singer sewing
2   machine back in the '60's.  I don't know what model.
3              THE COURT:  Okay.  Thank you.
4              Yes, sir.
5              PROSPECTIVE JUROR:  Ken Morningstar.  My wife,
6   Michelle, worked for Walter Reed as a biologist.  She has
7   a patent with several people for the cure for -- the
8   antidote for Anthrax.
9              THE COURT:  Okay.  Has any member of the
10  potential jury panel ever been involved in helping
11  someone else procure a patent?
12             (No response.)
13             THE COURT:  How many members of the panel have
14  worked regularly on your home computer?
15             I didn't ask for any names.  I thought it would
16  be substantial.  Thank you very much.
17             How many members of the jury use Google search
18  engines on the computer?
19             Nearly the whole panel.  Thank you.
20             Has any member of the panel ever filed any kind
21  of complaint against Google?
22             (No response.)
23             THE COURT:  Have you ever had any problems as a
24  result of your work on the computer with Google?
25             (No response.)
```

```
 1              THE COURT:   How many members of the panel are
 2  involved with social networking web sites on the
 3  computer?
 4              (Several potential jurors raised their hands.)
 5              THE COURT:   Thank you.
 6              How many of you have accounts with social
 7  networking sites on the computer?
 8              (Several potential jurors raised their hands.)
 9              THE COURT:   Thank you.
10              How many of you have any type of an interaction
11  with AOL.com, or Ask.com, Yahoo.com?
12              (Several potential jurors raised their hands.)
13              THE COURT:   Thank you.
14              Are there any members of the panel who are sole
15  proprietors or you own your own business?
16              Stand up all those who own your own businesses.
17              Okay.  State your name.
18              PROSPECTIVE JUROR:  Linda Lampe.
19              THE COURT:  And what business do you own?
20              PROSPECTIVE JUROR:  A sewing and alteration
21  business.
22              THE COURT:  Okay.  Thank you, ma'am.
23              PROSPECTIVE JUROR:  You are welcome.
24              THE COURT:  Mr. Morningstar?
25              PROSPECTIVE JUROR:  Yes, sir.
```

```
 1              THE COURT:  I know the names by now,
 2   Mr. Morningstar.  What business do you own?
 3              PROSPECTIVE JUROR:  Seaward Marine Corporation,
 4   sir.  It's an underwater diving contract construction
 5   company.
 6              THE COURT:  Thank you.
 7              Yes, ma'am.
 8              PROSPECTIVE JUROR:  Lisa Watters, market and
 9   research.
10              THE COURT:  Thank you very much.
11              Someone stood up.  Yes, sir.
12              PROSPECTIVE JUROR:  Nicholas Hionis.  I own a
13   restaurant.
14              THE COURT:  What was your company?
15              PROSPECTIVE JUROR:  Crab Shack Restaurant, like
16   blue crabs?
17              THE COURT:  Now, ladies and gentlemen, a few
18   minutes ago I think a couple of people indicated they had
19   been involved in some litigation.  How many of you have
20   been defendants in a lawsuit?  In other words, you have
21   been sued.
22              Stand up if you have been sued, been a defendant
23   in a lawsuit.
24              Okay.  State your name.
25              PROSPECTIVE JUROR:  Winifred Griggs.
```

```
1              PROSPECTIVE JUROR:  Lisa Watters.

2              THE COURT:  Now, was there anything about that

3   experience that makes it difficult for you, Ms. Watters,

4   Ms. Griggs to come in here and to sit in this case and

5   render a verdict for either one of these parties based on

6   your experience?

7              PROSPECTIVE JUROR GRIGGS:  No, sir.

8              PROSPECTIVE JUROR WATTERS:  No, sir.

9              THE COURT:  Now, plaintiffs in a lawsuit, all

10  those who sued.

11             Don't everybody stand up at one time.

12             State your name again.

13             PROSPECTIVE JUROR:  Judy Anderson.

14             THE COURT:  Okay.

15             PROSPECTIVE JUROR:  Angela Harris.

16             PROSPECTIVE JUROR:  Nancy Harrison

17             THE COURT:  Nancy?

18             PROSPECTIVE JUROR:  Nancy Harrison.

19             THE COURT:  Mr. Hopkins?

20             PROSPECTIVE JUROR:  Yes, sir.

21             THE COURT:  You may have a seat.

22             PROSPECTIVE JUROR:  John MacCartney.

23             THE COURT:  Now, the question to you, all of the

24  plaintiffs --

25             You may have a seat.
```

1          -- is there anything about that experience of

2     having to go in there and having to fight and sue that

3     would cause you to be unable to come in here and to have

4     an impartial attitude in this litigation whereby your

5     able to render a fair and impartial verdict for the

6     plaintiff or the defendant in this lawsuit?

7          (No response.)

8          THE COURT:  Does anyone hold any kind of belief,

9     moral or ethical belief, that causes you to be unable to

10    sit in judgment of another person or a company and to

11    make a decision for or against a company?

12         Ladies and gentlemen, the Court has been asking

13    you a series of questions here to see whether some of you

14    had any problems that you would have sitting in this jury

15    panel, but I'm going to ask you a question here that

16    causes you to do some introspection.  If you are selected

17    as a juror in this case, you are going to be called upon

18    to put aside any feelings of passion or prejudice or bias

19    that you might have to arrive at a verdict in the case.

20    Do any of you know of any reason why you think -- maybe

21    the Court hasn't discovered it -- that you could not sit

22    in this case and render a fair, just, honest and

23    impartial verdict?

24         Mr. Hopkins, stand up.

25         Well, before you speak, depending upon what you

1   are going to say, I don't want you to disqualify the

2   whole jury panel.  So you think about it.  So if we need

3   to question you one on one, we can do it over here.

4           PROSPECTIVE JUROR:  Okay.  I think that would

5   probably be preferred.

6           THE COURT:  All right.  Thank you, sir.

7           Ladies and gentlemen, we are going to have

8   something called a quick side bar here.

9           Step up here.

10          (**BENCH CONFERENCE**)

11          THE COURT:  You are going to have to speak into

12  this right here.

13          Do you have something else you want me to follow

14  up with?  We are going to be following up with

15  Mr. Hopkins in the jury room over here, so you very may

16  well want to raise it in there.  But depending upon what

17  it is, I can ask it right now.

18          MR. BROTHERS:  This is Ken Brothers.  I think

19  it's appropriate that we follow up with Mr. Hopkins in

20  the jury room.  You had indicated you wanted to do that.

21          THE COURT:  Yes, sir.

22          MR. BROTHERS:  Are you asking us whether there

23  are other questions we have for the whole panel?

24          THE COURT.  That's right.  If you have some

25  right now, I might ask it before we go in there.

```
 1              MR. BROTHERS:  For plaintiffs, not with the
 2   whole panel.
 3              THE COURT:  Okay.
 4              MR. NOONA:  This is Steve Noona.  We may need
 5   also to follow up with Mr. Morningstar.  He had lots of
 6   answers that we have a couple of inquiries.
 7              THE COURT:  All right.  We will follow up with
 8   him inside the jury room.
 9              MR. NOONA:  Yes, sir.
10              THE COURT:  All right.  Why don't we do that?
11   We will go into the jury room and we will follow up with
12   any additional questions.  If you have any additional
13   questions you want me to propound to the jury, I will
14   come back out and propound them afterwards.
15              MR. NOONA:  Thank you, Judge.
16              MR. BROTHERS:  Thank you.
17              (PROCEEDINGS RESUMED IN OPEN COURT.)
18              THE COURT:  Now, ladies and gentlemen, the Court
19   is going to take a recess into the jury room here to
20   follow up on some individual questions.  While we are out
21   of the courtroom, we are still in session so I don't want
22   you to leave, and please remain quiet out here.  We will
23   call you in one by one as we wish to conduct some further
24   inquiry, but at this time we are going to be in recess.
25   I'm going to take in principal counsel for the parties
```

1   along with my staff so that we can continue these

2   questions, and then we will come back in.

3          The first person we are going to take after we

4   get inside will be Mr. Hopkins and then Mr. Morningstar,

5   and we will go from there.

6          (Court, counsel and staff retired to the jury

7   room for individual voir dire questioning as follows,

8   after which court reconvened in open court:)

9          THE COURT:  Have Bill bring in Mr. Hopkins.

10          CHRISTOPHER E. HOPKINS, having been previously

11   sworn, was further examined on voir dire as follows:

12                         EXAMINATION

13          THE COURT:  Will you state your full name for

14   the record, please.

15          PROSPECTIVE JUROR:  Christopher Earl Hopkins.

16          THE COURT:  You indicated there was a reason you

17   feel you may not be able to sit in this case and render a

18   fair and impartial verdict, and we called you in so you

19   could further articulate the reasons for your position.

20          PROSPECTIVE JUROR:  I do have some professional

21   experiences with both Marshall and Crenshaw and Kaufman &

22   Canoles in my current occupation as a mortgage banker

23   and, as I said, commercial real estate.  The biggest

24   thing for me would be to be able to render a fair and

25   impartial decision with respect to Google.

1          I believe in the concept of Google.  I do not

2   necessarily believe the direction it's going as a company

3   with respect to some of the things that I have read on

4   line pertaining to the Chinese government and some of the

5   issues they have had with Google here in the past year or

6   so.  So, that's really my biggest concern.

7          THE COURT:  So you do not believe you have an

8   open mind toward Google?

9          PROSPECTIVE JUROR:  Not with some of the stuff

10  that I've read in the press in the past year, no.

11         THE COURT:  All right.  Thank you very much.

12         PROSPECTIVE JUROR:  Thank you.

13         THE COURT:  You may return to the courtroom.

14         That doesn't mean you are excused.  You may

15  return to the courtroom.

16         PROSPECTIVE JUROR:  That's fine.  Thank you.

17         MR. NOONA:  Thank you.

18         (Mr. Hopkins returned to the courtroom.)

19         THE COURT:  Do I hear a motion?

20         MR. NELSON:  Yeah, a motion to excuse

21  Mr. Hopkins for cause, your Honor.

22         THE COURT:  All right.  I think Mr. Hopkins has

23  articulated his reasons, so the Court will strike him for

24  cause.

25         Mr. Morningstar.

```
 1                            *    *    *
 2            KENNETH G. MORNINGSTAR, having previously been
 3   sworn, was further examined on voir dire as follows:
 4                          EXAMINATION
 5            THE COURT:  All right.  State your full name for
 6   the record, please.
 7            PROSPECTIVE JUROR:  Kenneth Gene Morningstar.
 8            THE COURT:  Mr. Morningstar, we called you in
 9   because I think we had, at least, a follow-up question
10   for you.
11            Who had the question?
12            MR. NELSON:  You indicated that you had stock in
13   I/P.
14            PROSPECTIVE JUROR:  Yes.
15            THE COURT:  And I didn't know if you believed
16   that was one of the companies involved in this case or --
17            PROSPECTIVE JUROR:  There's a stock in my
18   portfolio called I/P.  That's all I know.
19            MR. BROTHERS:  My guess is it's International
20   Paper.
21            THE COURT:  So you don't know that it's I/P
22   Engine?
23            PROSPECTIVE JUROR:  No.  All I know is you said
24   I/P stock and I know I have I/P stock, that's all.
25            THE COURT:  All right.
```

1            MR. BROTHERS:  May I ask how long you have owned

2    this stock?

3            PROSPECTIVE JUROR:  Seven years.

4            MR. BROTHERS:  Okay.

5            THE COURT:  Thank you very much, sir.

6            PROSPECTIVE JUROR:  Sure.

7            (Mr. Morningstar returned to the courtroom.)

8            THE COURT:  Now, one thing I would say about

9    Mr. Morningstar.  I hope that he doesn't get back out

10   there and really discover -- could it possibly be I/P

11   Engine?

12           MR. BROTHERS:  I/P Engine is not publicly

13   traded.

14           THE COURT:  Okay.  Then there's no problem.

15           MR. BROTHERS:  There's a parent company, but

16   it's not I/P, and it hasn't been publicly traded that

17   long.

18           THE COURT:  Okay.  Gentlemen, are there any

19   others that you need a specific follow-up with?

20           MR. BROTHERS:  If your Honor could call in

21   Spencer Burmeister.  He's the younger fellow up front.

22   He is the one who had the posting about *Mein Kampf* being

23   his favorite book.  I'm want to try and assess, you know,

24   really what that means.  It sends up some warning flags

25   for us.

1          THE COURT:  What, specifically, would you be

2    asking him?

3          MR. BROTHERS:  Whether his -- well, whether he

4    has Nazi related beliefs that would impair his judgment

5    or cause him to influence this jury with his thinking.

6          THE COURT:  Okay.  Now, here's the situation:

7    Even if he had Communistic or maybe Nazi type etiology,

8    the Court doesn't understand how that may influence his

9    judgment in trying to reach a fair and impartial verdict

10   on this issue.

11         MR. BROTHERS:  That's all I'm trying to

12   determine, whether he believes it would influence.  If he

13   believes it doesn't influence, then so be it, and maybe

14   he doesn't have such beliefs.

15         THE COURT:  All right.  Well, we will call him

16   in.

17                        *    *    *

18         SPENCER A. BURMEISTER, having been previously

19   sworn, was further examined on voir dire as follows:

20                        EXAMINATION

21         THE COURT:  You may have a seat.

22         Will you state your full name for the record,

23   please.

24         PROSPECTIVE JUROR:  Spencer Alton Burmeister.

25         THE COURT:  Mr. Burmeister, we wanted to ask you

1  a question.  You have indicated, I believe, on one of

2  your web sites that one of your favorite books was Meim

3  Kampf?

4           PROSPECTIVE JUROR:  Yeah.  I read that in high

5  school.  It was a long time ago.  That's not my favorite

6  book.  It was a running joke between some friends,

7  inappropriate, and it is not something that I like.

8           THE COURT:  Not something that you would like?

9           PROSPECTIVE JUROR:  It's not something that I --

10  I have read it, but it is not something that I like or

11  believe in.

12           THE COURT:  Okay.  So this book in no way would

13  influence your ability to reach a fair and impartial

14  verdict in this case?

15           PROSPECTIVE JUROR:  No.  By no means does that

16  affect my judgment or my personality.

17           THE COURT:  All right.

18           PROSPECTIVE JUROR:  I apologize.  That was like

19  way long ago.  It's funny, because I didn't even have a

20  Face Book so I don't make bad comments in My Space.  All

21  the way back in middle school got me, Wow!

22           THE COURT:  Nothing like cyberspace.

23           PROSPECTIVE JUROR:  It's crazy, man.

24           THE COURT:  Thank you.

25           PROSPECTIVE JUROR:  Sorry.

```
 1             MR. NOONA:  Thank you.
 2             MR. BROTHERS:  Thank you.  I think someone is
 3   going to go home and change his profile.
 4             MR. NOONA:  Yes.
 5             MR. SCHULTZ:  It's a new world.
 6             MR. BROTHERS:  That's right.
 7             THE COURT:  All right.  Any others?
 8             MR. BROTHERS:  I don't know if we need to call
 9   them in, but there's the Kaufman & Canoles' employee and
10   there's the attorney whose firm has done work for
11   Google.
12             THE COURT:  Who was that?
13             MR. NOONA:  The lawyer is No. 9, Elizabeth Spain
14   Flowers.  She's with Troutman Sanders.
15             THE COURT:  Did I ask any questions designed to
16   bring that out?
17             MR. BROTHERS:  You did not.
18             MR. NELSON:  Well, and she may not know.  See,
19   that's my --
20             MR. NOONA:  You did identify all the lawyers,
21   but I'm not sure you asked if anybody knew any of the
22   lawyers, which might have made her stand up.
23             MR. BROTHERS:  And she may not know who --
24   Troutman is a big firm.
25             MR. NELSON:  Yes.  it's only that her firm does
```

1    some representation for Google.  We don't have any

2    information that she, herself, does any representation.

3             MR. NOONA:  Right.

4             THE COURT:  Well, we will inquire.

5             MR. NELSON:  Yeah.

6             THE COURT:  Flowers.

7             MR. NOONA:  Yes.

8             THE COURT:  And who is the Kaufman employee?

9             MR. NOONA:  No. 20, Tracie Kerr.  She works in

10   our accounts receiving department.

11            THE COURT:  I think that under the circumstances

12   we should remove her for cause so there will be no

13   question.

14            MR. NOONA:  Absolutely.

15            MR. BROTHERS:  We so move.

16            THE COURT:  All right.

17                         *   *   *

18            ELIZABETH SPAIN FLOWERS, having been previously

19   sworn, was further examined on voir dire as follows:

20                         EXAMINATION

21            THE COURT:  Will you state your name for the

22   record, please.

23            PROSPECTIVE JUROR:  Elizabeth Flowers.

24            THE COURT:  And where are you employed?

25            PROSPECTIVE JUROR:  Troutman Sanders, LLP.

1      THE COURT:  Okay.  And Ms. Sanders, what is your

2  area of specialty in the firm?

3      PROSPECTIVE JUROR:  I'm a litigator.  I focus on

4  consumer finance litigation, intellectual property

5  litigation and general commercial litigation.

6      THE COURT:  Do you know whether your firm or you

7  personally -- first, have you personally had any type of

8  litigation experience with any of the parties in this

9  case?

10      PROSPECTIVE JUROR:  None of the parties, no,

11  sir.

12      THE COURT:  Do you know whether your firm has?

13      PROSPECTIVE JUROR:  I do not.  I mean, the firm

14  is global and the parties are big, so it wouldn't

15  surprise me, but I don't know.

16      THE COURT:  Okay.  Do you believe being an

17  attorney in some way and focusing on intellectual

18  property as one of your specialties would in some way

19  impact your ability to be fair and impartial in this

20  case?

21      PROSPECTIVE JUROR:  No, sir.

22      THE COURT:  Is there some doubt about that?

23      PROSPECTIVE JUROR:  I mean, I have background

24  knowledge, so I think it would be hard to separate that

25  from what I'm hearing.  But beyond that, I think I could

```
 1  be fair.
 2         THE COURT:  All right.  Any other questions?
 3         MR. BROTHERS:  If I may.
 4         THE COURT:  Yes.
 5         MR. BROTHERS:  Are you aware of whether your
 6  firm represents the plaintiff, Vringo, or the investment
 7  bank, Etico, up in New York?
 8         PROSPECTIVE JUROR:  I'm not aware, but I
 9  wouldn't know.
10         THE COURT:  Okay.  Thank you very much.  You may
11  return to the courtroom.
12         (Ms. Flowers returned to the courtroom.)
13         THE COURT:  Counsel, I don't know that we have
14  sufficient cause to strike her for cause.  If she pops
15  up --
16         MR. BROTHERS:  If I may put more on the record.
17  We have information, and it's in the main courtroom, that
18  attorneys from her firm personally represented Vringo's
19  chairman of the board and also that Troutman and Sanders
20  represents Etico, which did a fairness opinion which is a
21  trial exhibit in this case.
22         THE COURT:  All right.  So what is your
23  position?
24         MR. BROTHERS:  I would move to strike.  I think
25  it would put her in an inappropriate position and I move
```

 1    to strike for cause.

 2            THE COURT:  All right.  I think out of an

 3    abundance of caution the Court will grant the motion.

 4            Who else?

 5            MR. BROTHERS:  Ms. Kerr, Kaufman & Canoles.

 6            THE COURT:  We already did that one.  So we have

 7    got one, two, three, three we have stricken for cause.

 8            We did Hopkins, right?

 9            MR. BROTHERS:  Yeah, Hopkins was stricken for

10    cause.

11            THE COURT:  Flowers, Hopkins.

12            MR. NOONA:  Morningstar we followed up on.

13            THE COURT:  Morningstar, we didn't strike him.

14    I can't find a reason to strike him.

15            All right.  Are there other questions you want

16    me to follow up with this panel?  This panel appears to

17    be all computer literate.  This may be a advantage and

18    some may consider it a disadvantage, but in this case it

19    may be an advantage.  They at least know how to turn the

20    button on.

21            MR. NELSON:  Maybe they would like PowerPoint.

22            THE COURT:  You are going to find out, both of

23    you.

24            MR. NELSON:  The only other question I have,

25    there were a number of people who indicated, and on the

1   other side as well, that they were plaintiffs in

2   lawsuits.  I know that they all said they could be

3   impartial, but without knowing any information about what

4   those cases were.  Did they involve, for example, an

5   allegation that they took property?  Those kinds of

6   things could potentially be relevant because we are going

7   to have those kinds of allegations, obviously, here.

8           When it's described as a patent case, that

9   sounds, you know, a little generic.  But there's

10  allegations here we are wrongfully using the intellectual

11  property so that could --

12          THE COURT:  You are asking the Court to voir

13  dire all five of these people?

14          MR. NELSON:  I would like to, your Honor.

15          THE COURT:  Well, I can bring them in and simply

16  briefly ask them what was the nature of the case.

17          MR. NELSON:  That's all I am asking.

18          THE COURT:  What was the charge.

19          Okay.  Ms. Anderson.

20          We are still faster than California, so we will

21  go on.

22          MR. BROTHERS:  I guess if we are going to go

23  down the path, there were two that indicated they were

24  defendants.

25          THE COURT:  I have Griggs and Watters.

```
 1           MR. BROTHERS:  I have a note from one of my

 2  colleagues that Kasperbauer, Kelly Kasperbauer,

 3  intentionally didn't take the oath.

 4           THE COURT:  Didn't take the oath?  What oath?

 5           MR. BROTHERS:  The oath.  She didn't raise her

 6  hand.

 7           THE COURT:  What number is she?

 8           MR. BROTHERS:  No. 19.

 9           THE COURT:  Well, we will find out.

10                          *    *    *

11           JUDITH ANN ANDERSON, having been previously

12  sworn, was further examined on voir dire as follows:

13                        EXAMINATION

14           THE COURT:  Will you state your full name for

15  the record, please.

16           PROSPECTIVE JUROR:  Judith Ann Anderson.

17           THE COURT:  Ms. Anderson, you had indicated you

18  had been a plaintiff in a case.  What kind of case was

19  that?

20           PROSPECTIVE JUROR:  There's been a couple.  Back

21  in 1985 I sued my boss for sexual harassment.

22           THE COURT:  Okay.

23           PROSPECTIVE JUROR:  The Judge threw it out.  He

24  had a complaint against me and I had one against him.  I

25  started it and then he put something against me, and the
```

1  Judge just said, Go.

2          THE COURT:  All right.  What was the next one?

3          PROSPECTIVE JUROR:  I've been in three car

4  accidents.  Two of them I was the plaintiff in.  One was

5  in '86, '87.  The other one was in '95, '96.

6          THE COURT:  Did you prevail in any of the car

7  accidents?

8          PROSPECTIVE JUROR:  Yes, sir.

9          THE COURT:  Do you believe any of this would,

10 again, adversely impact your ability to be fair and

11 impartial in this case?

12         PROSPECTIVE JUROR:  No, sir.

13         THE COURT:  So you are not upset with the legal

14 system?

15         PROSPECTIVE JUROR:  No.

16         THE COURT:  Thank you, ma'am.

17         PROSPECTIVE JUROR:  Is that it in.

18         THE COURT:  You may be excused.

19         (Ms. Anderson returned to the courtroom.)

20         THE COURT:  Harrison.

21         MR. BROTHERS:  As I think about it, Lisa Watters

22 said she did market research.

23         THE COURT:  Who?

24         MR. BROTHERS:  The very last juror, 42, Lisa

25 Watters, said she did market research, she was a business

```
 1  owner.  She was also a defendant in a lawsuit, so we will
 2  bring her back.
 3            THE COURT:  I already have her on the list.
 4            Here comes another note.
 5            COURT SECURITY OFFICER:  Mr. Carl Lewis said he
 6  has a professional exam on Friday.  He needs to speak to
 7  somebody.
 8            THE COURT:  All right.  We will get to him.
 9            Harrison.
10                        *    *    *
11            NANCY E. HARRISON, having been previously sworn,
12  was further examined on voir dire as follows:
13                        EXAMINATION
14            THE COURT:  Hello.  Will you state your full
15  name for the record, please.
16            THE WITNESS:  Nancy Ellen Harrison.
17            THE COURT:  Ms. Harrison, you indicated you had
18  been a plaintiff in a lawsuit.  What was that lawsuit
19  about?
20            PROSPECTIVE JUROR:  It was a car accident for my
21  minor daughter.
22            THE COURT:  And do you remember who prevailed in
23  that lawsuit?
24            PROSPECTIVE JUROR:  She did, I did.
25            THE COURT:  Okay.  Do you have any issues with
```

1 the legal system that would prevent you from sitting in

2 this case fairly and impartially?

3          PROSPECTIVE JUROR:  No.  My dad is a cop, my

4 brothers are cops.  So, no.

5          THE COURT:  All right.  Thank you very much.

6          PROSPECTIVE JUROR:  Thank you.

7          (Ms. Harrison returned to the courtroom.)

8          THE COURT:  Hopkins.

9          MR. NOONA:  He's struck.

10          THE DEPUTY CLERK:  He's struck.

11          THE COURT:  Okay.  Good.  We are making a little

12 headway.

13          MacCartney.

14                         *    *    *

15          JON MacCARTNEY, having been previously sworn,

16 was further examined on voir dire as follows:

17                         EXAMINATION

18          THE COURT:  Will you state your full name for

19 the record, please.

20          PROSPECTIVE JUROR:  Jon MacCartney.

21          THE COURT:  Mr. MacCartney, you indicated you

22 had been a plaintiff in a lawsuit.  What was the nature

23 of the suit?

24          PROSPECTIVE JUROR:  I sued a waste management

25 company.  It was in Virginia.  This is a truck that was

```
 1  driving in front of me that was operated by them that
 2  dumped a bunch of mud and rock on my car in the highway.
 3  It cracked my windshield.  They wouldn't pay for it, so I
 4  took them to court.
 5           THE COURT:  Did you prevail?
 6           PROSPECTIVE JUROR:  I did.
 7           THE COURT:  As a result of that, do you have any
 8  problems with the legal system that would cause you not
 9  to be open-minded, fair and impartial in this case?
10           PROSPECTIVE JUROR:  No, sir, none whatsoever.
11           THE COURT:  Thank you, sir.
12           PROSPECTIVE JUROR:  You are welcome.
13           THE COURT:  You may return to the courtroom.
14           PROSPECTIVE JUROR:  Very good.  Thank you.
15           (Mr. MacCartney returned to the courtroom.)
16           THE COURT:  Lisa Ann Watters.
17           MR. BROTHERS:  If you could also find out more
18  about the market research that she does because that may
19  be an issue here.  I would appreciate that.
20           THE COURT:  All right.
21                          *    *    *
22           LISA ANN WATTERS-PERKINS, having been previously
23  sworn, was further examined on voir dire as follows:
24                          EXAMINATION
25           THE COURT:  Will you state your full name for
```

1  the record, please.

2          PROSPECTIVE JUROR:  Lisa Ann Watters-Perkins.

3  You-all didn't have that part.

4          THE COURT:  So you go by Perkins?

5          PROSPECTIVE JUROR:  No, Watters is fine.

6          THE COURT:  Watters-Perkins?

7          PROSPECTIVE JUROR:  Watters-Perkins, yeah.

8          THE COURT:  Ma'am, you indicate you are a market

9  researcher?

10          PROSPECTIVE JUROR:  I am.  I own a company,

11  Collective Opinions, Incorporated.  We do collection

12  market research.

13          THE COURT:  Okay.  And in doing that data

14  collection research and marketing research, do you have

15  any type of research tools that are in any way associated

16  with any of the defendants in this case?

17          PROSPECTIVE JUROR:  No.  I don't use -- that

18  work would not interfere with the case you are talking

19  about here.

20          THE COURT:  Okay.  I think I asked generally in

21  there do you know of any reason whatsoever -- oh, back

22  up.  You have been a defendant in a case?

23          PROSPECTIVE JUROR:  It was a traffic accident.

24          THE COURT:  So you were sued?

25          PROSPECTIVE JUROR:  I was.

1          THE COURT:  And did you prevail in that case?

2          PROSPECTIVE JUROR:  I did not.  I was at fault.

3          THE COURT:  Okay.  Did it go to court?

4          PROSPECTIVE JUROR:  It did go to court and the

5  plaintiff was awarded, I think, $10,000.

6          THE COURT:  As a result of that court

7  experience, has it in any way caused you to be unable to

8  snit this case and make a fair and impartial verdict

9  based on the facts and the law?

10          PROSPECTIVE JUROR:  No.  I didn't even have to

11  appear.  So, no.

12          THE COURT:  Thank you very much.

13          PROSPECTIVE JUROR:  Can I address you?  Can I

14  ask a question?

15          I faxed in on Friday to see if I could be

16  excused from this round of jury duty.  I just started a

17  new job this week and I just wanted to know if there was

18  any way I could be put back in for the next shuffle.

19  Every time you say Google I think, oh, because of what I

20  need to be doing.  I know we all have jobs.

21          THE COURT:  Okay.  I will have to determine

22  that, ma'am.

23          PROSPECTIVE JUROR:  I know.

24          THE COURT:  But thank you for bringing that to

25  our attention.

1          PROSPECTIVE JUROR:  All right.  Thank you.

2          MR. NOONA:  Thank you.

3          (Ms. Watters-Perkins returned to the courtroom.)

4          THE COURT:  What I usually share with counsel is

5    the list of all those who have asked for excuses to be

6    excused.  Apparently she was one?

7          THE DEPUTY CLERK:  Yes.

8          Okay.  Let's see what did she put in this.  "I'm

9    writing today to request being excused from the following

10   week jury duty, 10-15 through 19.  I have recently gained

11   employment with Navy Exchange Service Command

12   Headquarters and would greatly appreciate not having to

13   miss my second week of work.

14          I have been hired on a rush basis due to a great

15   need for my services on the job.  I realize it's last

16   minute.  I sincerely apologize.  Thank you for your

17   consideration."

18          That's not ground for cause to excuse her.  I

19   mean, I cannot excuse her for cause.  The only thing I

20   can do is let you know about it so if you are looking at

21   the sheet and decide whether you want this lady or

22   someone else, you can factor it in your thinking.

23          MR. BROTHERS:  Are there any others who have

24   made similar requests?

25          THE COURT:  Linda Lampe.  She says, "I notice

1   that I need to report on October 15th.  My system's

2   manager is sick and in the hospital.  My schedule for

3   work has changed and I have to open the store at

4   8:30 a.m. on Monday and Tuesday and then close the

5   remaining days of the week, from 3 to 8:30 p.m.  Thank

6   you in advance for understanding.  If you need verbal

7   confirmation, you may call our manager, Mr. Whitfield."

8           So she has also a work request.  Neither one of

9   them can I say are for cause because jury service

10  inconveniences everybody, but you certainly need to be

11  aware of both of these people.  The names might not even

12  come up, so you just be aware of them.

13          MR. BROTHERS:  Winifred Griggs indicated --

14          THE COURT:  Oh, yeah.  I have her.

15          MR. BROTHERS:  Okay.  If she's on your list.

16          THE COURT:  Oh, yeah, she's there.  We are on

17  it.

18          Ms. Griggs.  Then we are coming back to 42.  Who

19  was No. 42?

20          MR. BROTHERS:  That was Lisa.  We have done her.

21          THE COURT:  Oh, No. 19.  You said somebody

22  didn't take the oath.  Who was that?

23          MR. BROTHERS:  Kasperbauer.

24          THE DEPUTY CLERK:  No. 19.

25          MR. BROTHERS:  No. 19.

```
 1            THE COURT:  We are going to find out was that

 2  was all about?  If she didn't take the oath -- are they

 3  saying she didn't raise her hand?

 4            MR. BROTHERS:  I didn't see it.  I'm just

 5  looking at the note.  I'm assuming that is the case.

 6                        *    *    *

 7            WINIFRED LOIS GRIGGS, having been previously

 8  sworn, was further examined on voir dire as follows:

 9                        EXAMINATION

10            THE COURT:  Can you state your full name for the

11  record, please.

12            PROSPECTIVE JUROR:  Winifred Lois Griggs.

13            THE COURT:  Ms. Griggs, you had indicated you

14  had been a defendant in some litigation.  What was that

15  case about?

16            PROSPECTIVE JUROR:  We were moving from the

17  Eastern Shore.  We were renting property on the Eastern

18  Shore and we were moving over here, and the landlord sued

19  me for damages.  The case was against me.  It was a

20  question of how the whole case went.  My attorney asked

21  five questions and I was drilled for an hour and a half.

22  So I didn't think I had proper representation of the

23  case, but, you know, I had to pay the bill.  So --

24            THE COURT:  So in the case you did not prevail

25  in court?
```

```
 1              PROSPECTIVE JUROR:  No, sir, I did not.

 2              THE COURT:  Now, as a result of that experience,

 3    did it kind of give you a sour feeling about the legal

 4    system?

 5              PROSPECTIVE JUROR:  No, because it was my

 6    fault.  I had a bad feeling about my attorney and I

 7    called the court the day of and said, Is there a way that

 8    I can ask for a postponement?

 9              Then in talking to my attorney, he said, Oh, no,

10    you are fine.  We will be all right.  Then in the middle

11    of the case when it was time for him to ask questions, he

12    said I only ask five questions.  That was the end of it

13    and I couldn't do anything at that point.  All I could do

14    was sit there and allow the judge to -- you know, there

15    was nothing I could do.  So it was my fault the case did

16    not go the way it should have when my gut said I should

17    have gone with another attorney.

18              THE COURT:  Do you believe in light of that

19    experience you are able to sit here and fairly and

20    impartially render a verdict based on the facts and the

21    law?

22              PROSPECTIVE JUROR:  Yes, sir.

23              THE COURT:  Thank you very much.

24              PROSPECTIVE JUROR:  You are welcome.

25              (Ms. Griggs returned to the courtroom.)
```

1          THE COURT:  All right.  Ms. Kasperbauer, No. 19.

2          COURT SECURITY OFFICER:  Mr. McGuire says that

3    he has a business trip in Hawaii next Tuesday.

4          MR. BROTHERS:  I will go in his place.

5          THE COURT:  Well, we will talk to Mr. McGuire,

6    but I'm not sure what we can do.  We will see.

7          MR. BROTHERS:  I had a note that No. 14, Angela

8    Harris, was also a plaintiff in a lawsuit.  Did I get

9    that one?

10         THE COURT:  Did I miss that one?

11         MR. BROTHERS:  Yes.

12         THE COURT:  Okay.  We will come back to that

13   one, then.

14                          *    *    *

15         KELLY RAE KASPERBAUER, having been previously

16   sworn, was further examined on voir dire as follows:

17                        EXAMINATION

18         THE COURT:  State your full name tor record,

19   please.

20         PROSPECTIVE JUROR:  Kelly Rae Kasperbauer.

21         THE COURT:  Ms. Kasperbauer, did you raise your

22   hand when you were told to raise your hand to take the

23   oath a few minutes ago?

24         PROSPECTIVE JUROR:  Yeah.

25         THE COURT:  You took the oath?

1            PROSPECTIVE JUROR:  Um-hum.  We only did one,

2  right?

3            THE COURT:  You did one.

4            PROSPECTIVE JUROR:  Yes, at the beginning.  Yes.

5            THE COURT:  Are there any matters of concern

6  that would cause you to believe that you are not able to

7  sit in this case and issue a fair and impartial verdict

8  based on the law and the facts?

9            PROSPECTIVE JUROR:  No.  My only thing is I

10 would rather be at work.  I am an employee of one.  I

11 work for two neurosurgeons and they are working big cases

12 this week.  That's the only thing that keeps going off in

13 my head.

14           THE COURT:  You do understand that jury duty

15 inconveniences everybody sitting in there?

16           PROSPECTIVE JUROR:  It's a big duty.  Yes, I do

17 know that.

18           THE COURT:  It doesn't help, but that's the

19 reality.

20           PROSPECTIVE JUROR:  Yes.  I am aware of that,

21 and I keep telling myself that.

22           THE COURT:  All right.  Anything else?

23           MR. BROTHERS:  No, your Honor.

24           THE COURT:  Thank you very much.

25           PROSPECTIVE JUROR:  All right.

1          Excuse me, ma'am.

2          PROSPECTIVE JUROR:  Sure.

3          THE COURT:  One further question.

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  What is your educational background?

6          PROSPECTIVE JUROR:  I have a bachelor's degree

7  from Longwood College, and then I went to EVMS for a

8  certification program.

9          THE COURT:  In what specialty?  What do you have

10  your degree in?

11          PROSPECTIVE JUROR:  My degree is exercise and

12  health science, and then I have a certification for

13  surgical assistant from EVMS.

14          THE COURT:  Okay.

15          PROSPECTIVE JUROR:  When you said science

16  earlier, I was pretty sure you meant computer science, so

17  I didn't stand up.

18          THE COURT:  I meant all the sciences.

19          PROSPECTIVE JUROR:  Oh, I'm sorry.

20          THE COURT:  Thank you very much.

21          (Ms. Kasperbauer returned to the courtroom.)

22          THE COURT:  Ms. Harris.

23          I don't think that's enough to strike her.  You

24  deal with it.

25          MR. BROTHERS:  I also have some concerns about

1  Mr. Hionis who has both the hearing problem and the

2  rather --

3            THE COURT:  I can't understand him.

4            MR. BROTHERS:  He had a thick accent.  I don't

5  know that the other jurors are going to understand him

6  either.

7            THE COURT:  I don't know if that's grounds to

8  disqualify him.  He didn't say anything disqualifying.

9                         *    *    *

10           ANGELA BEATRICE HARRIS, having been previously

11 sworn, was further examined on voir dire as follows:

12                        EXAMINATION

13           THE COURT:  Will you state your full name for

14 the record, please.

15           PROSPECTIVE JUROR:  Angela Beatrice Harris.

16           THE COURT:  Ms. Harris, you were a plaintiff in

17 a lawsuit.  Can you tell us what that lawsuit was about?

18           PROSPECTIVE JUROR:  It was more than 40 years

19 ago.  A car accident.

20           THE COURT:  More than 40 years ago?

21           PROSPECTIVE JUROR:  More than 40 years ago.

22           THE COURT:  You sued someone?

23           PROSPECTIVE JUROR:  Right.

24           THE COURT:  Did you prevail?

25           PROSPECTIVE JUROR:  Yes.

```
 1              THE COURT:  I take it, as a result of that
 2   particular case, you have no difficulty sitting in this
 3   case?
 4              PROSPECTIVE JUROR:  No, sir.
 5              THE COURT:  Thank you very much.
 6              MR. NOONA:  Thank you.
 7              MR. NELSON:  Thank you.
 8              (Ms. Harris returned to the courtroom.)
 9              THE COURT:  All right.  I think we have run
10   through just about all of them here.
11              Any other questions?
12              THE DEPUTY CLERK:  Mr. McGuire said something
13   about the trip.
14              THE COURT:  Oh, Mr. McGuire.  I forgot
15   Mr. McGuire.  That's why you need a bunch of people here.
16              MR. NOONA:  Carl Lewis, the professional exam.
17              THE COURT:  Oh, yeah.  I forgot that, too.  Get
18   Mr. McGuire or Mr. Lewis, one of them in here.
19              Here's what's been my experience, gentlemen.  We
20   can refuse to excuse them for cause, but I can guarantee
21   you if that's the circumstance, you will have an
22   embittered juror on your hands who won't be maybe as
23   attentive as he or she ought to be.  For example, if you
24   are about to sit for the bar exam and had to sit through
25   jury duty, you wouldn't be a happy camper.
```

1          MR. BROTHERS:  I know.

2                          *    *    *

3          CARL N. LEWIS, having been previously sworn, was

4    further examined on voir dire as follows:

5                          EXAMINATION

6          THE COURT:  Good morning.  Will you state your

7    full name for the record, please.

8          PROSPECTIVE JUROR:  Carl Lewis.

9          THE COURT:  Okay.  Mr. Lewis, I believe you had

10   some concern about some matter you needed to attend to.

11         PROSPECTIVE JUROR:  Friday of next week I'm

12   scheduled to take the Virginia Professional Engineers

13   exam.  I paid for that test probably four months ago.  I

14   would have said something earlier, but the ten-day trial

15   part of it sort of kicked in after you stepped in here.

16         THE COURT:  Okay.

17         MR. NELSON:  Is that a test you need to study

18   for?

19         THE COURT:  Now, is this something that you have

20   studied for, or did prep courses for, or something?

21         PROSPECTIVE JUROR:  Yes, sir.  I have been

22   studying for it -- well, this is the third time I will be

23   taking it, so I have been studying, technically, for it

24   for a year and a half.

25         THE COURT:  What's your engineering specialty?

1              PROSPECTIVE JUROR:  Mechanical engineering.

2              THE COURT:  All right.  Thank you very much.

3              (Mr. Lewis returned to the courtroom.)

4              THE COURT:  Hold one second.  I don't know that

5    I will necessarily strike him for cause, but the Court

6    would exercise some type of supervision here.  The Court

7    would take him off the panel.  I just don't believe under

8    the circumstances we should require him to forgo the

9    professional exam under these circumstances.

10             MR. BROTHERS:  No objection.

11             MR. NELSON:  I agree, your Honor.

12             MR. NOONA:  Yes, sir.

13             THE COURT:  That's cruel and unusual conduct.

14             MR. BROTHERS:  I am sure he appreciates it.

15   It's the right thing to do.

16             THE COURT:  I don't know about going to Hawaii.

17   Let's see about Mr. McGuire.

18                          *    *    *

19             DONNIE LEE McGUIRE, having been previously

20   sworn, was further examined on voir dire as follows:

21                         EXAMINATION

22             THE COURT:  Will you state your full name for

23   the record, please.

24             PROSPECTIVE JUROR:  Donnie Lee McGuire.

25             THE COURT:  Mr. McGuire, I believe you raised

1  some concern that you had some trip you needed to take?

2          PROSPECTIVE JUROR:  Yes.  I think it was said it

3  could be a ten-day trial or something like that?

4          THE COURT:  Yes.

5          PROSPECTIVE JUROR:  Next Tuesday I have got a

6  business trip to Hawaii for two and a half weeks.  I work

7  for a consulting group and what we do, we go between the

8  government shipyards and the civilians contractors to

9  make sure that they are doing everything up to spec and

10  stuff like that, and we are starting a new submarine next

11  week and I'm required to be there.

12          THE COURT:  Okay.  Do you work for the

13  government?

14          PROSPECTIVE JUROR:  No.

15          THE COURT:  For a private company?

16          PROSPECTIVE JUROR:  I'm a private contractor.  I

17  worked for the government for 34 years, but I'm a

18  contractor now.

19          THE COURT:  Have you already acquired your

20  ticket?

21          PROSPECTIVE JUROR:  I've already bought a plane

22  ticket, a hotel room and a rental car, because it wasn't

23  in this ten-day window.  That's what I was looking at.  I

24  didn't realize it could go over.  And I didn't want it to

25  go too far before I brought this up.

1              THE COURT:  All right.  Thank you very much.

2   Return to the courtroom.  We will let you know

3   eventually.

4              PROSPECTIVE JUROR:  All right.

5              (Mr. McGuire returned to the courtroom.)

6              THE COURT:  I will tell you one of the things

7   that the Court has done traditionally is if the juror has

8   already had prepaid vacation tickets or travel plans, we

9   have tried to work around those circumstances.  I think

10  his goes beyond justification plans, so unless someone

11  has an objection, I recommend you just take him off.

12             MR. NELSON:  No objection.

13             MR. BROTHERS:  No objection to him being taken

14  off the panel.

15             MR. NOONA:  No objection.

16             THE COURT:  Okay.  Who else?  If we keep on, we

17  will get it down to nine.

18             MR. BROTHERS:  I mean, with regard to

19  Mr. Hionis, your Honor --

20             THE COURT:  You are going to him again?

21             MR. BROTHERS:  Well, no.  The fact is, as your

22  Honor said, you don't understand him.  I had a hard time

23  understanding him.  I don't think the other jurors are

24  going to understand him and also in view of his hearing

25  problems, I would move to strike.

1          MR. NELSON:  I have a lot of Greek relatives,

2  your Honor, so I don't have any problem understanding

3  him.

4          THE COURT:  My question is do you have any

5  reason for striking him for cause?

6          MR. NELSON:  I don't think because a man has an

7  accent is a fair reason to strike him for cause because

8  he could never serve on a jury then.

9          THE COURT:  Here's the situation, Mr. Brothers.

10  When I asked him can you understand me, he said yes.

11  During the course of the trial, you will be closer than

12  the Court was to him.  He will be sitting probably right

13  on the front row, so hearing will not be a problem.  The

14  accent, he will be listening more than talking.

15          Now, in terms of whether his fellow jurors can

16  understand him, sitting around a table, they have the

17  capacity to have him repeat what he's saying, so I don't

18  think we can strike him for cause.  He has a heavy

19  accent.  You have to listen very carefully, but I don't

20  think we can strike him for cause.  So we are going to

21  have to leave him there.

22          Again, he may not even come up in the 15 jurors

23  that are pulled out of the pack.

24          Okay.  Gentlemen, I think we are getting to the

25  end of this thing here.  So let's go back and review what

1  we have taken off for cause.

2          THE DEPUTY CLERK:  Ms. Flowers.

3          THE COURT:  Flowers, number one.

4          THE DEPUTY CLERK:  Mr. Hopkins?

5          THE COURT:  Two.

6          THE DEPUTY CLERK:  Ms. Kerr?

7          THE COURT:  Three.

8          THE DEPUTY CLERK:  Mr. Lewis and McGuire

9  removed.

10          THE COURT:  Four, five.

11          THE DEPUTY CLERK:  And that's all I have.

12          THE COURT:  Okay.  Well, what she is going to do

13  is she is going to put all but these five names -- so

14  that's going to be, what, 39 names going into the hopper.

15          MR. BROTHERS:  There were 42 total.  Three

16  no-shows.

17          THE COURT:  Three no-shows?

18          THE DEPUTY CLERK:  37.

19          THE COURT:  So 37 will be going into the hopper

20  and she is just going to pull them out, as you will see,

21  and stick them on the board and send them to you, and

22  that will be the way it is.

23          When I go back, I will tell them we have

24  concluded the voir dire process and what we are going to

25  do.

1              Time-wise, I don't know how long it's going to

2     take you to run through those names, but here's the

3     situation:   I would prefer, if I can, to get you to pick

4     the jury before I gave them a break because sending all

5     of those people out on a break and trying to get them

6     back may cause you problems.   You don't know what they

7     are going to run into in the hall.   Right now we have

8     gone through it and we know what they think, and we don't

9     have any problems.

10             MR. BROTHERS:   So is your Honor going to put 15

11    on the board and then let the rest go?

12             THE COURT:   No.   We are going to put the 15 on

13    the board, complete all of your strikes, swear those nine

14    before we let those go.

15             MR. BROTHERS:   Fair enough.

16             THE COURT:   Because you never know what kind of

17    problem will come up.   You don't want to let them go and

18    then find out you have a problem and have to bring them

19    back.

20             So what we will do is excuse those who have not

21    been selected, take a break.   Then we will come back and

22    go to the next part of maybe some preliminary

23    instructions, and who knows, I don't know whether we are

24    going to get to that video.

25             How long is that video, anyway?

1          MR. BROTHERS:  It's about 18 minutes, I think.

2          MR. NELSON:  Right around there.

3          MR. BROTHERS:  18 to 20.

4          THE COURT:  Well, you know, it very well could

5  be we could take an early lunch and do it all, do the

6  video and everything after lunch, video, opening

7  statements.

8          Give them the preliminary instructions before we

9  go to lunch, then we won't have any problems.  Then come

10 back and do the video, the balance of my patent

11 instructions, then opening statements and go.

12         MR. BROTHERS:  That's fair.

13         Like Steve said, ten minutes or so, I think, a

14 caucus once we have the 15 on the board.

15         MR. NOONA:  It will go back and forth.  Usually

16 that takes 10, 15 minutes.

17         THE COURT:  We just keep on going backwards and

18 forward, take a strike, backwards and forward.

19         MR. BROTHERS:  Good.

20         (**PROCEEDINGS RESUMED IN OPEN COURT.**)

21         THE COURT:  You may be seated.

22         Ladies and gentlemen, we have now conducted all

23 of the voir dire that we intend to conduct, and at this

24 juncture counsel will have an opportunity to make their

25 selections of those who will be serving on the jury panel

 1  and we will start momentarily.  You will see them pass

 2  the panel with your names backwards and forwards between

 3  tables until they make their strikes.  Then they will

 4  return to me and we will announce who has been selected.

 5          (Counsel took their strikes.)

 6          THE COURT:  Ladies and gentlemen, I usually tell

 7  jurors, and I will tell you this:  Americans don't come

 8  to courtrooms too often.  They spend their times watching

 9  TV shows.  So I want you to know that American courtrooms

10  are public.  Whether you are in this case or not or any

11  case going on anywhere in America, you can go in that

12  courtroom, sit down and watch.  You don't have to be a

13  witness or a participant.

14          I say that because sometimes the notion of what

15  goes on in the courtroom is based on what goes on with

16  the usual crew, Judge Judy and Joe Brown, and all the

17  rest of them.  That's entertainment.  The real thing

18  happens in the courtroom.  The Court encourages you if

19  you have free time, go in, sit down and listen.  It's an

20  education.  And you can come back here anytime you want.

21  I'm sure you prefer to come back as a spectator.

22          THE DEPUTY CLERK:  The following named jurors

23  have been selected for trial.  As your name is called,

24  please come forward and have a seat in the jury box:

25          Agaton Umanos Antonio, Timothy John Birch,

1  Clarina Publico Cruz, Janet Twiddy Gilbert, Janice Lee

2  Johnson, Linda S. Lampe, Vanora Stephanie Stevens,

3  Lindsay Svedberg, Missouri Judkins Tillery.

4        Members of the jury, please answer as your name

5  is called.

6        (The roll of the jury panel was called by the

7  deputy clerk, all answering present, after which the jury

8  panel was sworn by the deputy clerk.)

9        THE DEPUTY CLERK:  Thank you.  You may be

10  seated.

11        THE COURT:  Okay.  Ladies and gentlemen, we want

12  to thank you for coming in to participate in this

13  time-honored process.  You know, we all know that without

14  your participation there would be no juries.  In Japan,

15  Russia and a few other places, there are no juries.  So

16  thank you for coming in.

17        At this time you may stay and observe the

18  proceedings or you may return to your daily affairs.  If

19  you wish to leave, please leave quietly at this time.

20        (The remaining jurors were excused.)

21        THE COURT:  Ladies and gentlemen, I realize you

22  have been sitting for quite a while.  We are going to

23  give you some preliminary instructions and then we are

24  going to break, and then we will come back and we will

25  continue with this matter of the case in about an hour

1    and a half.  You will have about an hour and a half for

2    lunch.

3         What we are going to do right now is the Court

4    is going to give you just a few preliminary instructions,

5    and then I will finish them after lunch.  But now that

6    you have been selected and sworn, I want to briefly tell

7    you something about your duties as jurors.

8         Is everyone good to go for the next 20 minutes?

9         (No response.)

10        THE COURT:  All right.  Then we will continue.

11        I want to tell you something about your duties

12   as jurors and give you some preliminary instructions to

13   guide you as you listen to the evidence in this case.

14   For some of you who have had some jury duty, this may

15   seem repetitive but it's absolutely necessary.  At the

16   end of the trial you will be given additional

17   instructions, written instructions and oral instructions,

18   to guide you in your deliberations.

19        It will be your duty to decide from the evidence

20   what the facts are.  You, and you alone, are the judges

21   of the facts in this case.  So, therefore, you will hear

22   the evidence, decide what the facts are, and then apply

23   those facts to the law as given to you by the Court.

24   That is how you will reach a verdict.

25        In doing so, you must follow the law given to

1  you by the Court, whether you agree with it or not.   You

2  must not take anything that I might say as judge during

3  the course of this trial as indicating to you what your

4  verdict should be.

5        Don't be influenced by any note taking that the

6  Court may engage in because it may have nothing to do

7  with what you are required to do as jurors.

8        Now, it's going to be sometimes the duty of the

9  Court to admonish an attorney who out of zeal for his or

10 her cause does something not in keeping with the proper

11 rules of evidence or the procedure.   If this should

12 happen, do not permit this to in any way affect your

13 evaluation of the merits of the case presented by either

14 party here.

15       You will decide what the facts are from the

16 evidence which will be presented to you in the

17 courtroom.   That evidence will consist of the testimony

18 of the witnesses, depositions, that is testimony taken

19 under oath at some other time, any exhibits or other

20 documents received into evidence, as well as any facts

21 which the lawyers stipulate to, that is, they agree that

22 these facts are established, that they are not in

23 contest, as well as any matters which the Court instructs

24 you to accept.

25       There are some things that are not evidence and

1   you may not consider them in deciding this case:

2   Statements and arguments of the attorneys, questions and

3   objections of the attorneys, testimony that I instruct

4   you to disregard, and anything you may see or hear

5   outside of this courtroom, even if you see or you hear it

6   from some party or witness or someone associated with the

7   case.   The evidence comes from this witness stand, what

8   happens in this courtroom here.

9         There are two kinds of evidence, ladies and

10  gentlemen, direct and circumstantial.  Direct testimony

11  is testimony by a witness about what that witness

12  personally saw or heard or did, whereas circumstantial

13  evidence might be indirect evidence, proof of one or more

14  facts from which you might draw some conclusion or infer

15  another fact.  You may consider both direct and

16  circumstantial evidence in this case.  The law permits

17  you to give equal weight to both, but it's up to you to

18  decide what evidence to believe.

19        Now, there are certain rules of evidence that

20  controls what can be received into evidence.  When a

21  lawyer asks a question or offers an exhibit into evidence

22  and the opposing counsel thinks that that evidence should

23  not come in or the witness should not answer the

24  question, that lawyer may object.  If I overrule the

25  objection, it means that the question may be answered or

1  an exhibit may come into evidence.  If I sustain the

2  objection, it means that the question may not be answered

3  or the exhibit may not come into evidence.

4          Whether I sustain or overrule an objection, you

5  should not speculate, for example, if I sustain an

6  objection, about what the answer was going to be.

7          You must not be prejudiced for or against any

8  lawyer on either said, party in this case, because of the

9  Court's ruling for or against a party.  It is the duty of

10 lawyers to object when they think they ought to do so.

11         Sometimes the Court may order evidence stricken

12 from the record.  If that should happen, it means when

13 you go out to deliberate, you may not consider any

14 evidence the Court orders stricken or told you to ignore.

15         Sometimes evidence is admitted for a limited

16 purpose and the Court will tell you the only reason it's

17 admitting this testimony, this exhibit.  If that should

18 happen, then when you go to deliberate, you consider that

19 particular document or that testimony for the reason the

20 Court said it was letting it come into the record.

21         Now, let's talk about credibility of the

22 witnesses here.  You are going to have a battle of,

23 probably, experts and other witnesses in this case.  In

24 deciding the facts of the case, you will have to decide

25 which witnesses to believe and which witnesses not to

1  believe.  You may believe everything a witness says, part

2  of it, none of it; it's your choice.  But in deciding

3  what to believe, there are a number of factors you may

4  consider, including the witness's ability to hear or know

5  the things the witness testifies about, the quality of

6  the witness's memory, the witness's manner while

7  testifying on the stand, any interest the witness may

8  have in the outcome of the case or any motive, bias or

9  prejudice the witness may have, any contradiction of the

10 witness by anything he said or wrote.  When I say he, I

11 mean both genders, he or she said before trial, and

12 certainly you may consider the reasonableness of the

13 witness's testimony when you measure it in light of other

14 things in the case or other evidence in the case that you

15 may believe.

16         Now, ladies and gentlemen, limitations by law

17 are imposed upon the ability of a witness to come in here

18 and just state their opinion.  A witness is ordinarily

19 limited to the facts as to what happened, what was seen,

20 what was done, but where a witness has some specialized

21 knowledge concerning a particular subject matter which

22 might aid an ordinary judge or an ordinary jury in

23 understanding some technical field or complicated field,

24 that witness is called an expert witness, and an expert

25 witness is permitted greater latitude in giving opinions.

1          We will have several experts testifying in this

2  case.  You should evaluate the testimony of an expert

3  witness just as you evaluate the testimony of any other

4  witness under some of those factors I mentioned a few

5  minutes ago.  But in addition, with an expert you should

6  evaluate their training and qualifications and knowledge

7  of the subject matter concerning which the expert

8  testifies.  But you should understand one thing:  At the

9  end of the day, the testimony of an expert may not be any

10 more controlling than any other witness, because it's

11 your judgment at the end of the day which will control

12 regarding the credibility of any expert or the weight to

13 be given any expert's testimony.

14          This is a civil case and in this case the

15 plaintiff or I/P Engine has the burden of proof with

16 respect to trying to prevail on its claim against

17 Google.  As I will instruct you later, Google may have

18 the burden with respect to certain defenses it wishes to

19 raise in this case.

20          I will be giving you more detailed instructions

21 at a later point in the trial, but let me talk to you

22 about your conduct in this trial.  First, do not talk to

23 each other about this case or anyone having anything to

24 do with this case until the end of the case when you go

25 to the jury room to decide what the verdict will be.

1          Do not talk to anyone else about the case during

2   the course of the trial.  You are discouraged as jurors

3   from discussing the case.  Anyone means your family

4   members, too.  You don't need to go home and let them get

5   you confused.  You simply tell them you will talk to them

6   about the case at the end of the case.  If anyone

7   attempts to talk to you about this case, please report it

8   to the Court.  So do not let anyone talk to you about

9   this case.

10         Do not conduct any research with respect to this

11  case.  You must decide this case based solely on the

12  evidence presented here.  That means you may not conduct

13  any independent research about this case, the matters in

14  the case, the individuals or corporations involved in

15  this case.  In other words, you should not consult

16  dictionaries or reference materials, search the Internet,

17  web sites, blogs, or use any other electronic tools to

18  obtain the information about this case to help you decide

19  this case.  Please do not try to find out information

20  from any source outside the confines of this courtroom.

21  Until you retire to deliberate, as I told you, you may

22  not discuss this case with anyone.

23         Now, I know that many of you use cell phones,

24  BlackBerrys, iPhones, Internet and other tools of

25  technology.  You also must not talk to anyone at any time

1    about this case or use any of these tools to communicate

2    electronically with anyone about this case.  This

3    includes your family and your friends.  So you may not

4    communicate on your cell phones, through e-mail,

5    BlackBerry, iPhone, text messaging, Twitter, through any

6    blog or web site, including Facebook, Google, MySpace,

7    LinkedIn, YouTube or any other site out there.  You may

8    not use any similar technology or social media, even if I

9    have not specifically mentioned it here, and I expect you

10   to inform me as soon as you become aware of another

11   juror's violation of these instructions.

12          Now, this case is going to be technical, but I

13   hope that you will find it interesting as you go along.

14          Do not make up your mind about this case until

15   you have gone into the jury room with the instructions

16   from the Court when the case is over and then you can

17   discuss it.

18          Remember, the lawyers cannot talk to you about

19   this case, or any parties associated with this case.  If

20   they see you in a restaurant and they ignore you and

21   don't speak to you, that's just the way it's going to be.

22          Now, at the end of this trial you will have to

23   make your decision based on your recall of the evidence.

24   By the way, you will be permitted to take notes, and we

25   will talk about that.

 1          You will note that we have a court reporter

 2   here.  You will not have a written transcript to consult,

 3   and it's difficult and time consuming for the court

 4   reporter to be coming to the jury room to read back

 5   portions of the testimony, so that will not happen.  So

 6   please pay close attention to the testimony as it's given

 7   in this case.

 8          Ordinarily note taking can disrupt your ability

 9   to listen in a case, but this case is going to be

10   technical and it's going to be approximately two weeks.

11   Therefore, the Court will provide you with a legal pad so

12   you can take notes.

13          I will give you certain instructions about how

14   to consider your notes and what to do with them at the

15   end of the case, but at the end of each day, put your

16   name on your notepad and turn them in to Mr. Taylor or

17   whatever CSO is working with the case, and you will leave

18   those notepads here overnight.

19          You will not be permitted to ask questions

20   during the case, so do not raise your hand to ask

21   questions.

22          If you cannot hear or you cannot see, raise your

23   hand and we will make sure that you can hear or you can

24   see.

25          Let me give you a general outline of what this

1  case is going to run like during the next two weeks.  We

2  will start in the mornings somewhere around 9:30 or

3  10:00.  I will tell you the day before what time you have

4  to be in here.  We will usually go for about an hour and

5  a half or two hours before we take a break, but we will

6  take a 15-minute break at a minimum in the morning.  We

7  will recess around 1:00 p.m. for lunch.  You will be

8  given an hour and a half.  We will recommence around

9  2:30 p.m., and we will go to 5:30.  Depending upon what's

10 happening, we might go until 6.  But we will leave.  We

11 will not sleep here at night.  So you need to get in here

12 promptly so that we can get started.

13        Now, during the course of this trial from time

14 to time the Court will have bench conferences, ask

15 lawyers come over here on the side.  That's to avoid you

16 going back into the jury room because some things cannot

17 be discussed in your presence.  Please make an effort not

18 to hear what we are saying.  We will make an effort to

19 make sure you don't, but please pay no attention to

20 what's happening over here.  You may stand up and stretch

21 while we are at the side bar.

22        And we are going to minimize side bars.  We are

23 going to take up a lot of this on your lunch breaks or on

24 breaks.  So if your lunch break and break is a little

25 long, that's because we are in here talking and we are

1   going to try to take up a few of these things.

2          Now, I take a break so you may remain alert.

3   Please help your fellow jurors to stay alert.  If they

4   are falling over on you, wake them up.  So try to stay as

5   alert as possible.

6          Also for your own comfort, the temperature rises

7   and falls in here.  Sometimes it's cold, sometimes it's

8   warm.  So dress so you can put on or take off clothing as

9   necessary.

10         Now, when we come back in here, the first

11  thing -- well, no.  When the trial starts here's the way

12  it's going to run.  You will first hear opening

13  statements from each side.  The opening statement is

14  nothing more than a roadmap of what the plaintiff hopes

15  to prove or what the defendant hopes the evidence will

16  show.

17         Once they do these opening statements, we will

18  then take testimony from witnesses.  Witnesses called by

19  the plaintiff will be subject to cross-examination by the

20  defendant.  When the plaintiff has called all the

21  witnesses that the plaintiff wishes to call, we will then

22  give the defendant an opportunity to call witnesses, and

23  those witnesses called by the defendant will be subject

24  to cross-examination.

25         Now, when all the witnesses have been called,

1   all the exhibits and testimony is in, we will then come

2   back for closing arguments.  This is an opportunity for

3   counsel to, once again, attempt to persuade you about

4   what they believe the evidence has shown.  Plaintiff will

5   go first, then the defendant, then there will be rebuttal

6   testimony.  I will give you the full round of how this

7   will work out at the end of the case.  But when all

8   argument is over, you will have an opportunity to go to

9   the jury room with the exhibits and the instructions in

10  writing to deliberate to reach your verdict.  That's how,

11  generally, the case will go over the next few weeks.

12          Now, I am not finished with my preliminary

13  instructions, but what I have decided I'm going to do is

14  I'm going to break here.  But when you come back, we are

15  going to give you a video presentation to explain to you

16  what a patent is and give you some background about what

17  a patent case is.  This is something that ordinary people

18  may not know about.

19          Once you have heard the video, the Court may

20  supplement the video with more oral instructions that I

21  will read to you.  Once we do that, then we will turn to

22  counsel for their opening statements.  Remember, the

23  opening statements is not evidence; it's just a roadmap.

24  So what we are going to do is we are going to go out and

25  we are going to come back in.  I want you to come back in

1  at 2:15 prepared to go forward with this case.  Remember

2  the precautions the Court has given you about people

3  talking to you.

4          All right.  All rise.

5          You may retire to the jury room.

6          (Jury out.)

7          THE COURT:  Okay.  Counsel, you may be seated

8  for a second.

9          Now that you are closer to starting of the

10  opening statements, if there are any other issues that

11  need to be raised, the Court will be in chambers and we

12  will be back in here so we are prepared to get to those

13  issues by 1:45.  I will be back in chambers if we need to

14  take up any matters again before you get started.

15  Otherwise, we will take up some of these matters on the

16  break, at the end of the day, tomorrow morning, whatever,

17  as we go along.

18          Okay.  Court will be in recess until 2:15.

19          (A luncheon recess was taken at 12:45 p.m.)

20                      *    *    *

21                    CERTIFICATION

22          I certify that the foregoing is a correct
   transcript from the record of proceedings in the
23  above-entitled matter.

24
   X_____/s/ Sharon B. Borden_____X  X October 16, 2012 X
25
        Sharon B. Borden, RMR, FCRR              Date