IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

```
┌─────────────────────────────┐
│          FILED              │
│                             │
│       NOV 2 0 2012          │
│                             │
│   CLERK, US DISTRICT COURT  │
│        NORFOLK. VA          │
└─────────────────────────────┘
```

**I/P ENGINE, INC.,**

         **Plaintiff,**

**V.**                                             **CIVIL ACTION NO. 2:11cv512**

**AOL INC.,** *et al.,*

         **Defendants.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is the issue of whether the equitable defense of laches should apply in this case. The Court initially styled its ruling from the bench as a response to a renewed motion for a Judgment as a Matter of Law on Laches from the Defendants. However, in reviewing the trial transcript, the Court notes that Defendants made no such Rule 50(a) motion regarding laches. The Plaintiff, however, did make a Rule 50(a) motion regarding laches and provided argument on the matter. Furthermore, Defendants responded to this motion and proffered additional evidence for the Court's consideration, which Plaintiff received and had an opportunity to respond to, but did not. Creating additional confusions is the fact that because laches is an equitable defense to be resolved as to both fact and law by the Court, a Rule 50(a) motion is inappropriate from either party. In the end, however, the Court will not place form over substance, particularly when all parties have been given a fair opportunity to litigate on the issue. Accordingly, the Court construes Plaintiff's Rule 50(a) Motion for Judgment as a Matter of Law on Laches as a Motion for Partial Findings pursuant to Rule 52(c). By making their inappropriate Rule 50(a) Motion, the Court determined that Plaintiff had placed into evidence all

relevant materials regarding laches, a determination that was only questioned by Plaintiff after the Court provided its initial ruling against them on laches from the bench on October 31, 2012. Even when given an opportunity to proffer additional evidence with the benefit of consideration of the Court's ruling on the matter, the Plaintiff put forward a proffer that contains information already in the record or that is irrelevant in light of relevant case law.

Therefore, having taking evidence on laches concurrently with the jury trial on infringement, invalidity, and damages and after thoroughly reviewing the evidence, arguments (including those made on summary judgment), and record in this case, as well as considering Rule 52's advisory committee's notes, which "authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence," the Court found that this case was ripe for decision and ruled from the bench on the issue of laches. As the Court indicated when it ruled on laches, it reserved the right to further elaborate on its decision in a written opinion. For the reasons stated herein and on the record, the Court finds that the doctrine of laches should apply to all defendants in this case.

## I.    The Equitable Doctrine of Laches

The Patent Act does not provide a statute of limitations for infringement claims. However, it is well-established law that the equitable doctrine of laches may bar a patentee's recovery of pre-filing damages where (1) the patentee knew of his claim, but unreasonably delayed in filing suit and (2) that delay caused material prejudice to the alleged infringer. *See Hair v. United States*, 350 F.3d 1253, 1257 (Fed. Cir. 2003) ("Even without a specific statutory bar to call into play, courts will impose a parallel bar—under the rubric of laches—in cases in which the plaintiff has failed to act in a reasonably prudent manner to protect and enforce rights,

2

and when a perceived injustice to the defendant exists."). With respect to the first requirement –
knowledge of infringement coupled with unreasonable delay in pursing claims against said
infringement – The Federal Circuit has held that "[t]he length of time which may be deemed
unreasonable has no fixed boundaries but rather depends on the circumstances." *A. C. Aukerman
Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). Furthermore, "[t]he
period of delay is measured from the time the plaintiff knew or reasonably should have known of
the defendant's alleged infringing activities to the date of suit. However, the period does not
begin prior to issuance of the patent." *Id.* (citations omitted). Put another way, "[t]he period of
delay begins at the time the patentee has actual or *constructive knowledge* of the defendant's
potentially infringing activities." *Wanlass v. GE*, 148 F.3d 1334, 1337 (Fed. Cir. 1998)
(emphasis added).

     With respect to constructive knowledge, the Federal Circuit charges a patentee "with
making the inquiry that a diligent and reasonably prudent patentee would make to determine
whether another device infringes his patent." *Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp.
911, 917 (E.D. Va. 1996) (citing *Jamesbury v. Litton Industrial Products*, Inc., 839 F.2d 1544,
1552 (Fed. Cir.), cert. denied, 488 U.S. 828 (1988)). Moreover, the Supreme Court holds that
"the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry,
provided the facts already known by him were such as to put upon a man of ordinary intelligence
the duty of inquiry." *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (U.S. 1893). With
respect to the question of when a patentee has a duty to make inquiries as to whether its patents
are being infringed, the Court finds the standard laid out in *Odetics* to be persuasive and
applicable in this case:

3

> If a patentee knows of the existence of a product or device that (i) embodies technology similar to that for which he holds a patent and (ii) uses that similar technology to accomplish a similar objective, he has a duty to examine the product or device more closely to ascertain whether it infringes his patent. If he shirks this duty, he does so on peril of triggering the laches period and perhaps ultimately losing his right to recover damages for the infringement.

*Odetics*, 919 F. Supp. at 918. The Federal Circuit has further elaborated on the circumstances that necessitate inquiry by a patentee as to whether infringement is occurring: "[t]hese circumstances include "pervasive, open, and notorious activities" that a reasonable patentee would suspect were infringing." *Wanlass*, 148 F.3d at 1338 (quoting *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553 (Fed. Cir. 1996). As indicated by the Federal Circuit, "sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention, or published descriptions of the defendant's potentially infringing activities" certainly create a duty to investigate whether infringement of one's patents is occurring. *Id.* (internal citations omitted). Additionally, even if a patentee is not actually aware of these activities, "constructive knowledge of the infringement may be imputed to the patentee... if these activities are sufficiently prevalent in the inventor's field of endeavor." *Id. See also, Wollensak v. Reiher*, 115 U.S. 96, 99 (1885) ([T]he law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it. Not to improve such opportunity, under the stimulus of self-interest, with reasonable diligence, constitutes laches which in equity disables the party who seeks to revive a right which he has allowed to lie unclaimed from enforcing it, to the detriment of those who have, in consequence, been led to act as though it were abandoned").

It is also widely accepted law that a presumption of laches arises if there is a delay of six years or more once a party has actual or constructive notice of possible infringement of their patents:

The presumption of laches arising from a more than six-year delay in filing suit is consonant with the mainstream of the law. The length of the time period--six years--is reasonable compared to the presumptions respecting laches in other situations, which may be as short as one year. Also the presumption provides a yardstick for reaching comparable results in comparable circumstances rather than leaving the matter without any guidelines to a district court's exercise of discretion. In any event, this court adopted a laches presumption seven years ago in *Leinoff*, 726 F.2d at 741-42, 220 USPQ at 850, agreeing with our sister circuits that the presumption represents an equitable balancing of the interests of the parties.

*A. C. Aukerman Co.*, 960 F.2d at 1035 (internal citations omitted).   If the presumption of laches applies, it applies to both required elements of the doctrine – (1) that the delay was unreasonable and; (2) that the defendant must be prejudiced by the delay. *Odetics*, at 919 F. Supp at 918. Once this presumption is met, the patentee bears the burden of rebutting both elements of laches (by a preponderance of the evidence) by showing that their delay was reasonable and/or by showing a lack of prejudice as a result of any unreasonable delay. *Id.* If the presumption does not apply, the defendant seeking protection behind the shield of laches must make a showing by the preponderance of the evidence that the delay was unreasonable and that prejudice occurred as a result.

On a variety of occasions, the Federal Circuit and other federal courts of appeals have defined the circumstances in which delay is reasonable. *See* 6 CHISUM ON PATENTS § 19.05[b][i]-[vii]. The Plaintiff has principally argued that their delay was either the result of strategic indecision at Lycos (the predecessor-in-interest of the patents-in-suit) or that Lycos was unable to pursue litigation against the Defendants due to on-going lawsuits and negotiations involving *related* patents to those in suit. As a result, the Court focuses on relevant case law concerning the excuses for which evidence was admitted into the record: strategic indecision and ongoing lawsuits. With respect to reasonable delay due to other lawsuits, the *Odetics* Court summarizes

5

the general boundaries of the "ongoing litigation" excuse:

> Thus, an ongoing litigation involving the patent at issue can excuse a delay in filing an infringement action against a putative infringer. In such cases, however, the patentee must give notice to the accused infringer, warning him that he might be subject to suit in the future, after resolution of the other litigation. Indeed, some form of notice to a putative infringer -- some signal that the patentee considers his rights to be infringed and intends to respond to the infringement -- is typically, though not invariably, required in connection with excusing a delay in initiating an infringement suit. For example, a patentee who gives notice of infringement to a suspected infringer may then delay suit until the extent of the infringement makes litigation financially feasible. A patentee may also excusably delay the onset of infringement litigation to negotiate with the accused infringer. Notice to an alleged infringer is the key to a finding of excusable delay, for notice allows the accused infringer to take steps to protect himself from liability -- to change his product or his activities, for instance, or to institute a declaratory judgment suit himself against the patentee.

*Odetics, Inc.*, 919 F. Supp. at 918-919 (internal citations omitted). The Court found no support in the case law for an excuse concerning "strategic indecision."

If a delay is considered unreasonable, a showing by the party with the burden must be made as to the existence of material prejudice. *A. C. Aukerman Co.*, 960 F.2d at 1033 ("Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense"). Evidentiary prejudice occurs when a defendant is unable "to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.* (internal citations omitted). Economic prejudice arises "where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Id.* The Federal Court, however, has been clear that "[s]uch damages or monetary losses are not merely those attributable to a finding of liability for infringement." *Id* (internal citation omitted). Instead, "[t]he courts must look for a change in the economic position

6

of the alleged infringer during the period of delay." *Id.*

The authority to impose laches lies within the sound discretion of the district court. *See Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995) ("Even if the elements of laches are established, however, a court need not bar a plaintiff's suit. The application of the laches defense is discretionary, and as an equitable matter, the district court is to look to all the facts and circumstances of the case and weigh the equities of the parties."). Finally, it is settled law in the United States "that in determining the length of delay, a transferee of the patent must accept the consequences of the dilatory conduct of immediate and remote transferors." 6 CHISUM ON PATENTS §19.05[2][a][ii]; *accord Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997), *rev'd on other grounds, Cybor Corp. v. Fas Techs.*, 138 F.3d 1448, 1455 (Fed. Cir. 1998).

Based on forgoing principles of law, the court turns to its findings of fact and conclusions of law regarding laches in this case.

## II.  Findings of Fact and Conclusions of Law

Looking to the totality of evidence presented, the Court finds it appropriate to limit I/P Engine's damages based upon the principle of laches. Specifically, the Court finds that a presumption of laches is applicable in this case as Plaintiff waited in excess of six years to file its lawsuit against Defendants after having constructive knowledge of Defendants' infringement activities. In light of the presumption of laches, the burden shifts to Plaintiff to show that its delay was reasonable and/or that no evidentiary or economic prejudice resulted from said delay. The Court finds the Plaintiff fails on both counts. As such, the presumption of laches does not fall. Finally, the weight of the equities in this case supports application of the equitable doctrine

of laches. Accordingly, Plaintiff's pre-filing damages are barred.

## A. Presumption of Laches Applies

Defendants have claimed throughout the trial and through presentation of evidence that a presumption of laches applies because Plaintiff's waited more than six years to file suit. The record establishes, and the Court finds, that Lycos (and thus I/P Engine) had constructive notice that the Google Adwords system potentially infringed its patents as of July 2005 and failed to undertake any reasonable investigation to further determine if infringement was occurring.

The source of Plaintiff's constructive knowledge of Google's infringement rests on disclosures made by Google itself. On July 18, 2005, Google published a post on its "Google Inside AdWords" Blog, its official blog with respect to the AdWords system. This post was entered into the record as PX-176 (the "AdWords Post"). In a series of questions, the AdWords Post described a set of changes to the AdWords system. Of particular relevance to the question of laches are Google's statements concerning how ads are ranked and the introduction of Quality Score:

> Question no. 1: Are you changing how you rank ads?
> Though you'll see new keyword states in your account, we want to assure you
> that the 'auction' will remain the same. We'll continue to rank your ads based on
> your maximum CPC and the Quality Score.
>
> Question no. 2: What is the Quality Score?
> The Quality Score is simply a new name for the predicated CTR, which is
> determined based on the CTR of your keyword, the relevance of your ad text, the
> historical keyword performance, and other relevancy facts.

(PX-176). In I/P Engine's complaint, filed September 15, 2011, the company's core allegations are as follows:

> 37. The accused systems in this litigation use the Lang/Kosak Relevance Filtering
> Technology by filtering and presenting search and search advertising results based

8

on a combination of (i) an item's content relevance to a search query; and (ii) click-through-rates from prior users relative to that item.

[...]

43. For example, Google adopted the Lang/Kosak Relevance Filtering Technology with its use of "Quality Score." Google's search advertising systems filter advertisements by using "Quality Score" which is a combination of an advertisement's content relevance to a search query (e.g., the relevance of the keyword and the matched advertisement to the search query), and click-through-rates from prior users relative to that advertisement (e.g., the historical click-through rate of the keyword and matched advertisement).

(Complaint ¶ 37, 42). The language included in the AdWords Post quoted above is significantly similar to the language utilized by the Plaintiff in its complaint.

The Defendants argue that this similarity shows that as early as July 18, 2005, sufficient information had been made public by Google regarding the infringing technologies to put Lycos on notice that it should at the very least investigate for possible infringement or bring suit against Google because the same information eventually put I/P Engine on notice for their suit. I/P Engine refutes this point on two grounds. First, Plaintiff argues that the blog post was not a technically accurate description of the AdWords system by pointing to testimony by Jonathan Alferness, a Google employee. Second, Plaintiff argues that no one at Lycos was even aware of the AdWords Post and thus this is why they took no action to investigate. Both of these reasons lack merit. With respect to the first, the Federal Circuit does not require that perfect or exacting information being made public of a possibly infringing technology to place a patentee on notice. The *Wanlass* Court held that "sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention, or published descriptions of the defendant's potentially infringing activities, give rise to a duty to investigate whether there is infringement." *Wanlass*, 148 F.3d at 1338 (quoting *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d

9

1548, 1553 (Fed. Cir. 1996). Given that Google described what Quality Score is in their AdWords Post and given that Quality Score is at the heart of the Plaintiff's claims against Defendants (as indicated by the substantial similarity of description of Quality Score in the complaint), the Court finds any argument that somehow Google's description of Quality Score as being too inaccurate to provide notice to Lycos in 2005 to be totally disingenuous and is rejected.[1] Even if the AdWords is technically inaccurate, it still serves as the kind of marketing document the Wanlass Court cited as putting a patentee on notice of possible infringement.

As to Plaintiff's second argument, that no one at Lycos was aware of the AdWords Post and that even if Lycos had been aware of the AdWords Post, it would not have engaged in an investigation, it also lacks merit and is contrary to established law. As the *Wanlass* Court also made clear, even if a patentee is not actually aware of activities that should put them on notice of infringement, like the AdWords Post, "constructive knowledge of the infringement may be imputed to the patentee... if these activities are sufficiently prevalent in the inventor's field of endeavor." Furthermore, questions of constructive knowledge are not answered through a subjective lens but rather from the perspective of a "man of ordinary intelligence." *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (U.S. 1893). The fact that Lycos in 2005 had no actual knowledge of the AdWords Post is meaningless if it had constructive knowledge, which the Court finds that it did. Google's publication of information concerning new advances in their search and ad serving technologies is the kind of "prevalent" activity in the field of the Lang and Kosak's inventions that Lycos should have been aware of in determining whether to enforce their patents. As the record indicates, the inventors of the asserted patents did little to investigation

---

[1] There is also evidence on the record indicating that I/P Engine itself sought to use the Google AdWords Post to support its infringement claims at trial.

potential infringement despite being on notice and having the opportunity to do so. For example, when asked at trial, a co-inventor of the asserted patents, Dr. Kosak, when asked "[a]nd have you ever done anything personally while you were at Lycos to determine whether anyone was using the patents in this case," he responded "I did not." Trial Tr. at 353. Furthermore, Mr. Blais in a declaration submitted along with Plaintiff's Laches Proffer indicated that Lycos did not undertake any steps to investigate whether Google was infringing its patents. Plaintiff's Laches Proffer, Blais Dec. at ¶ 3).

Taken together, the Court concludes that I/P Engine (and Lycos as the predecessor-in-interest of the patents-in-suit) had constructive notice of possible infringement on the date Google published the AdWords Post on July 18, 2005. The Google AdWords Post contained information that serves as the heart of I/P Engine's claims against Google. If the information contained in the AdWords Post was sufficient to place I/P Engine on notice of infringement by Defendants in 2011, it was sufficient to place Lycos on notice in 2005. The record indicates that I/P Engine filed its lawsuit in the Eastern District of Virginia on September 15, 2011. Between July 18, 2005 and September 15, 2011, six years, one month, and 28 days passed. In short, more than six years passed before infringement claims were brought against Defendant. As a result, the presumption of laches applies in this case.

### B. Plaintiff Fails to Rebut Presumption of Laches

Because a presumption of laches arises in this case, the burden in on plaintiff to "introduce evidence sufficient to support a finding of nonexistence of the presumed facts." *Wanlass v. Fedders Corp.*, 145 F.3d 1462, 1464 (Fed. Cir. 1998) (en banc) (citing *A.C. Aukerman Co. v.* 960 F.2d at 1037). Specifically, the plaintiff must provide sufficient evidence

to show that either their delay in filing their suit was reasonable and/or that no economic or evidentiary prejudice occurred. In this case, I/P Engine has failed on both counts.[2]

First, I/P Engine has failed to make its required showing that its delay was reasonable. I/P Engine essentially makes two arguments on this point. One, I/P Engine argues that strategic indecision at Lycos after a series of corporation ownership transfers made it impossible for the company to consider what to do with its patents. As the Court notes, Plaintiff has not provided a single case citation to support strategic indecision as a justification for sleeping on its rights to challenge infringement of its patents, nor has the Court discovered such a justification in the case law.[3] As such, strategic indecision provides no reasonable excuse to delay in bring their suit.

Second, I/P Engine argues ongoing litigation with respect to *related* patents to those in suit in this case provides a reasonable excuse for not filing suit sooner. Again, the Plaintiff has failed to provide any support in the case law that litigation concerning *related* patents is a reasonable excuse for dilatory conduct. Furthermore, a court in this jurisdiction has rejected the argument that patents other than those at suit can justify a delay in bringing litigation because to do so "would eviscerate the protection of laches." *Humanscale Corp. v. CompX Intern. Inc.*, No. 09-86, 2010 WL 3222411, *10 -11 (E.D.Va., 2010). However, assuming *arguendo*, that other litigation concerning related patents can serve as reasonable justification for delay in bringing suit, I /P Engine has still failed to provide any evidence to show that it gave notice of any kind to Defendants that it intended to bring suit for infringement at the resolution of its ongoing

---

[2] Plaintiff argues that the Court failed to give it sufficient opportunity to rebut the presumption of laches. This argument is without merit. The Plaintiff was aware before trial that the Defendants claimed a presumption of laches in this case. Plaintiff provided evidence on this issue before asking the Court to rule on laches. It is unclear why Plaintiff would seek resolution of the laches issue if it had not put into evidence all of its arguments on laches.
[3] Even if strategic indecision were an excuse, the Court notes that the record indicates that corporate ownership changes occurred prior to the delay period. Common sense dictates that when those transfers occurred, the purchasers involved engaged in said transactions with a purpose in mind for Lycos.

litigation. As a result, Plaintiff has provided no evidence sufficient to justify the unreasonable delay.

Plaintiff must rebut the presumption of, in this case, evidentiary prejudice.[4] I/P Engine asserts that no evidentiary prejudice occurred as a result of the six year delay in bringing the case because the meaningful events in this case happened long before the start of the period of delay and that it is unlikely Mr. Lang, Mr. Kosak, or Mr. Blais (as Lycos's Rule 30(b)(6) representative) would have remembered any additional information if they had been questioned in 2005. I/P, however, has failed to provide any evidence (expert or otherwise) to support its contention that the memories of Mr. Lang, Mr. Kosak, or Lycos (institutionally) would be unimproved by being questioned earlier in relation to this suit. Defendants, on the other hand, have provided a number of examples in its Laches Proffer of what the Court finds to be critical questions regarding Defendants' defenses and damages that went unanswered by Lang Kosak, or Lycos at their depositions. *See* Defendants' Laches Proffer, Ex. A (Lang Dep.); Defendants' Laches Proffer, Ex. B (Kosak Dep.); Defendants' Laches Proffer Ex. C (Blais Dep.). Furthermore, had the suit been brought sooner, it quite probable that Lycos would have been able to produce an institutional representative with better knowledge of the period of time at issue in this case. As a result, Plaintiff has provided no evidence sufficient to rebut the presumption of laches.

### C. Equities Favor Application of Laches

As indicated above, the authority to impose laches lies within the sound discretion of the district court. Courts considering the question of laches are required to weight the totality of the

---

[4] Economic prejudice has not been at issue in this case.

13

circumstance to determine whether laches should apply, even when the basic requirements are met. In this case, for all the reasons indicated above, the Court believes the equities favor application of the equitable doctrine of laches. Furthermore, there is also evidence on the record indicating that Lycos was a client of Google as early as 2003 and used the infringing technology during the course of their business relationship.[5]  While it is true that Google considered its technology a trade secret and did not disclose its technical details, the Court finds its confounding that Lycos, while in possession of the Lang/Kosak patents, was never curious as to how Google AdWords worked and whether its patents were being infringed. Although the fog of litigation makes it highly unlikely that we will ever fully understand the motivations of the parties prior to the filing of this lawsuit, common sense dictates that Lycos didn't bring suit in 2005 because it did not believe its patents were being infringed and that the only thing that changed was that the patents-in-suit were purchased by I/P Engine, a non-practicing entity, for the sole purpose of bringing this litigation. Although Congress is best left to consider the merits of non-practicing patent entities in our patent system, the dilatory nature of this suit is precisely why the doctrine of laches has been applied to patent law. As a result, the weight of the equities in this case warrants the application of the doctrine of laches.

### D. Laches Applies to Non-Google Defendants

Finally, at trial, Plaintiff raised the question of whether the non-Google Defendants should be protected by the doctrine of laches or whether it should apply only to Google, since the Federal Circuit cites laches as a personal defense. *See Israel Bio-Engineering Project v. Amgen Inc.*, 401 F.3d 1299, 1306 (Fed. Cir. 2005).  However, as indicated by the record, Google's

---

[5] *See, e.g.* Trial Tr. at 352 (Q. Now, we talked a lot about Lycos and your work there. You're aware that Lycos was a AdSense customer? A. Yes. Q. And you understand that's one of the accused products in

business relationship agreements with their co-defendants include an indemnification clause against suits for patent infringement. *See e.g.* Plaintiff's Trial Exhibit 242 ¶25.1 ("Google will defend…indemnify and hold harmless IAC…from and against any action…arising from a claim that…[t]he Services or any Google Brand Feature infringes any patent, copyright, trade secret or trade mark of such third party…"). In *Odetics, Inc. v. Storage Tech. Corp.*, Plaintiff similarly argued that the personal nature of the laches defense prevented the doctrine's application to customer co-defendants. *Odetics*, 919 F. Supp. at 925. In that case, the court determined that:

> This argument ignores the indemnity arrangements Storagetek has with its customers, and the importance of this fact to the equitable purposes of laches. If the benefit of laches is not extended to Storagetek's customers, Odetics would be able to recover indirectly from Storagetek for infringement for which it is barred by laches from recovering from Storagetek directly. More specifically, if the customer defendants cannot rely on laches, Odetics can recover infringement damages from them that they in turn can recover from Storagetek on the basis of the indemnity arrangements. This inequitable result effectively circumvents the laches ruling and thus defeats the doctrine's equitable purposes. If Odetics' delay warrants barring recovery from Storagetek, then because of the indemnity arrangements, Odetics should be barred from recovering the same damages from Storagetek's customers. Accordingly, the customer defendants are entitled to benefit from Storagetek's laches defense, and Odetics may recover no damages for the use of allegedly infringing ATLs the customer defendants purchased from Storagetek prior to the institution of this suit on June 29, 1995. Case law supports this result. *See, e.g., Van Alen v. Aluminum Co. of America*, 43 F. Supp. 833, 838 (S.D.N.Y. 1942) ("As far as [the infringer's customer] is concerned, since it is but a customer of defendant, it is covered by the protection which laches affords the latter."); *Boyle Leather Goods Co. v. Feldman*, 30 F. Supp. 914, 915 (S.D.N.Y. 1940) ("An unreasonable delay [exists] which sustains the defense of laches raised by both defendants, for Feldman's co-defendant is but a customer of his.").

*Id.*, 925-26. (alteration in original). This Court finds the indemnification concerns articulated in *Odetics* to be persuasive and applicable in this case. As a result, all customer co-defendants in this case deserve the benefit of the doctrine of laches.

---

this case? A. I believe so, yes.)

## III.   Conclusion

In sum, a presumption of laches arises in this case, which I/P Engine was unable to rebut. Therefore, I/P Engine is barred from recovering damages from any of the defendants for any infringement occurring before September 15, 2011.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 20, 2012

_____
Raymond A. Jackson
United States District Judge

16