**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

---

| | |
|---|---|
| I/P ENGINE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civ.  Action No. 2:11-cv-512 |
| ) | |
| AOL, INC.  et al., ) | |
| ) | |
| Defendants. ) | |

---

**REPLY IN SUPPORT OF PLAINTIFF I/P ENGINE, INC.'S**
**MOTION FOR AN AWARD OF PREJUDGMENT INTEREST, POST-JUDGMENT**
**INTEREST, AND SUPPLEMENTAL DAMAGES FOR DEFENDANTS' POST-**
**DISCOVERY/PRE-VERDICT INFRINGEMENT**

i

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................1

II.     I/P ENGINE'S MOTION IS NOT PREMATURE ..........................................................2

III.    PREJUDGMENT INTEREST IS PROPER IN THIS CASE.............................................3

        A. ........The Court's Laches Ruling Does Not Preclude Prejudgment Interest ...................3

        B. ........Prejudgment Interest Rate Should Be Awarded At the Prime Rate, Not the T-
                Bill Rate ...............................................................................................................5

        C. ........Compounding Prejudgment Interest Quarterly is Not Only Consistent with
                Both Parties' Calculations, It is the Only Proper Calculation in this Case..............8

        D. ........Unlike Defendants' Prejudgment Calculation, Dr. Becker's Damages
                Calculation Fully Compensates I/P Engine for Defendants' Infringement ............8

IV.     I/P ENGINE IS ENTITLED TO SUPPLEMENTAL DAMAGES FOR POST-
        DISCOVERY/PRE-VERDICT INFRINGING REVENUES RECEIVED BY
        DEFENDANTS ............................................................................................................10

        A. ........Common Sense and the Law Mandates that the Jury's Damages Award Can
                Only Include Revenues that Were Proffered at Trial and Produced During
                Discovery ...........................................................................................................10

        B. ........I/P Engine's Supplemental Damages Calculations Are Appropriate and the
                Only Calculations that were Proffered to the Jury During Trial............................12

V.      CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
 2011 WL 4899922 (E.D. Va. 2011) ............................................................................. passim

*Edwards Lifesciences AG v. CoreValve, Inc.*,
 2011 WL 446203 (D. Del. 2011) ...................................................................................6

*Energy Transp. Group, Inc. v. William Demant Holding A/S*,
 697 F.3d 1342 (Fed. Cir. 2012) ....................................................................................3

*General Motors Crop. v. Devex Corp.*,
 461 U.S. 648 (1983) .................................................................................................4, 6

*Greene v. Safeway Stores, Inc.*,
 211 F.3d 1278 (10th Cir. 2000) ...................................................................................2

*Hynix Semiconductor Inc. v. Rambus Inc.*,
 609 F. Supp. 2d 951 (N.D. Cal. 2009) ........................................................................2

*Laitram v. NEC Corp.*,
 115 F.3d 947 (Fed Cir. 1997) ......................................................................................6

*Lummus Industries, Inc. v. D.M. & E. Corp.*,
 862 F.2d 267 (Fed. Cir. 1988) ..............................................................................1, 3, 4

*Mikohn Gaming Corp., v. Acres Gaming, Inc.*,
 2001 WL 34778689 (D. Nev. 2001) ............................................................................2

*Minemyer v. R-Boc Representative, Inc.*,
 No. 07 C 1763, WL 2423102 (N.D. Ill. 2012) .............................................................5

*Poleto v. Consolidated Rail Corp.*,
 826 F.2d 1270 (3rd Cir. 1987) .....................................................................................3

*Presidio Components Inc. v. American Technical Ceramics Corp.*,
 2010 WL 3070370 (S.D. Cal 2010) .............................................................................2

*Rosco, Inc. v. Mirror Lite Co.*,
 2009 WL 3587344 (E.D.N.Y. 2009) .........................................................................5, 8

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharmaceuticals Inc.*,
 821 F. Supp. 2d 681 (D. N.J. 2011) .........................................................................2, 12

*Sheppard v. Maxwell*,
384 U.S. 333 (1966) ........................................................................................11

*Soverain Software LLC v. J.C. Penney Corp., Inc.*,
2012 WL 4903268 (E.D. Tex. 2012) ..................................................................6

*SSL Services, LLC v. Citrix Systems, Inc.*,
2012 WL 4092449 (E.D. Tex. 2012) ..................................................................6

*St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co., Ltd.*,
2009 WL 4015654 (D. Del. 2009) ......................................................................6

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
891 F. Supp. 751 (E.D.N.Y. 1995) .....................................................................6

*Studiengesellschaft Kohle v. Dart Industries, Inc.*,
862 F.2d 1564 (Fed. Cir. 1988) ......................................................................5, 6

*TiVo Inc. v. Echostar Commc'ns. Corp.*,
2006 US Dist. LEXIS 64291 (E.D. Tex. 2006) ..................................................2

*U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd.*,
607 F. Supp. 2d 470 (S.D.N.Y. 2009) ................................................................6

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
939 F.2d 1540 (Fed. Cir. 1991) ......................................................................6, 7

*Voda v. Cordis Corp.*,
No. CIV-03-1512, 2006 WL 2570614 (W.D. Okla. 2006) ................................3

*Voda v. Medtronic Inc.*,
2012 WL 4470644 (W.D. Okla. 2012) ...............................................................6

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ............................................................................12

**STATUTES**

35 U.S.C. § 284 .......................................................................................1, 2, 8, 12

## I.    INTRODUCTION

Contrary to Defendants' assertion, I/P Engine's motion is not premature.  "Courts routinely determine that a party is entitled to post-judgment interest in civil matters where an appeal or post-trial motions are pending."  *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 2011 WL 4899922, at *7 (E.D. Va. 2011).

Neither is prejudgment interest precluded because of the Court's laches ruling.  "[T]he withholding of prejudgment interest based on delay is the exception, not the rule, and . . . the discretion of the district court is not unlimited."  *Lummus Industries, Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988).  The justification for withholding prejudgment interest must have some relation to the reasons for awarding it.  *Id.*  In this case, the Court applied laches to preclude the recovery of damages prior to the date of the filing of the Complaint.  The jury ruled across the board in I/P Engine's favor, and awarded $30.5 million for Defendants' post-filing infringement.  Because laches has no application to the time period of the jury's award, and there was no delay or associated prejudice during that time period, there is no reason for denying prejudgment interest for damages that are attributable to infringement that occurred since September 15, 2011.  To find otherwise, would be improper, because it would apply laches to both the pre-filing conduct, and the post-filing conduct.

Defendants' assertion (at 8) that I/P Engine is not entitled to supplemental damages, because the jury accounted for all pre-verdict damages in its award, is astonishing.  It is axiomatic that a jury's damages award must be based on the evidence proffered during trial. There was no evidence of their earnings after September 30, 2012 proffered at trial, because Defendants had not produced it.  Defendants fail to explain how the jury could have included any pre-verdict royalties relating to revenues that were not produced in discovery or presented during trial.  Under 35 U.S.C. § 284, I/P Engine is entitled to a damages remedy to compensate if for the

1

infringement.  Courts routinely recognize that the only way to provide a complete remedy under § 284 is through an accounting following a jury verdict.  *See, e.g., ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 2011 WL 4899922, at *1 (E.D. Va 2011); *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharmaceuticals Inc.*, 821 F. Supp. 2d 681, (D. N.J. 2011); *TiVo Inc. v. Echostar Commc'ns. Corp.,* 2006 U.S. Dist. LEXIS 64291, at *6 (E.D. Tex. 2006). Supplemental damages regularly take into account pre-verdict infringing sales that were not covered by the jury verdict due to deficiencies in the discovery production.  *ActiveVideo,* 2011 WL 4899922, at *1  ("[T]he patentee is entitled to damages for the entire period of infringement and should therefore be awarded supplemental damages for any periods of infringement not covered by the jury verdict."); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.* 2001 WL3477868 at *20-22, *Hynix Semiconductor Inc. v. Rambus Inc.,* 609 F. Supp. 2d 951, 960-61 (N.D. Cal. 2009); *Presidio Components Inc. v. American Technical Ceramics Corp.,* 2010 WL 3070370, at *1 (S.D. Cal 2010).  Defendants do not dispute that they produced revenues for the accused products only through September 30, 2012.  An accounting and supplemental damages are needed to fully compensate I/P Engine for Defendants' pre-judgment infringement.  And those supplemental damages must be calculated by applying the jury's running royalty rate of 3.5% to the ***only*** proffered apportioned revenue base of 20.9%.

Defendants are silent on the issue of post-judgment interest, and thus have conceded that I/P Engine's request is proper.

## II.    I/P ENGINE'S MOTION IS NOT PREMATURE

Defendants cite no case law to support their contention that I/P Engine's motion is premature.  (Opp. at 2).  This is because they cannot.  "Courts routinely determine that a party is entitled to post-judgment interest in civil matters where an appeal or post-trial motions are pending."  *ActiveVideo*, 2011 WL 4899922, at *7; *see also Greene v. Safeway Stores, Inc*., 211

F.3d 1278 (10th Cir. 2000) (unpublished table decision) ("The tolling of the time to file a notice

of appeal [due to a post-trial motion]... does not mean that the judgment, when entered, was

anything less than a final, appealable judgment on which postjudgment interest could begin to

accrue."); *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1281 (3rd Cir. 1987) ("When post-

trial matters require time for proper resolution . . . the better practice is not to delay entry of the

judgment (thereby prejudicing the successful plaintiff's claim to postjudgment interest), but to

enter the judgment and entertain a motion to stay its execution . . . .").

## III.   PREJUDGMENT INTEREST IS PROPER IN THIS CASE

### A.   The Court's Laches Ruling Does Not Preclude Prejudgment Interest

Defendants claim that there is a "[r]ule that unreasonable delay negates entitlement to

prejudgment interest."  (Opp. at 5).  The opposite is in fact true: an award of prejudgment interest

is the rule, and the denial of prejudgment interest due to delay "[i]s the exception*, not the rule*."

*Lummus Industries, Inc. v. D.M. & E. Corp.,* 862 F.2d 267, 275 (Fed. Cir. 1988) (emphasis

added).  To trigger this exception, "the justification for withholding prejudgment interest must

have some relation to the reasons for awarding it."  *Id.* (reversing limitation on award of

prejudgment interest because District Court's justification for the limitation was unrelated to the

compensatory purpose of prejudgment interest).

The Court's laches ruling does not preclude an award of prejudgment interest for the time

period that the Court determined was not affected by the laches ruling.  In making their

argument, Defendants ignore that delay, by itself, does not automatically justify denying pre-

judgment interest.  *See Voda v. Cordis Corp.*, No. CIV-03-1512, 2006 WL 2570614, at *1 (W.D.

Okla. 2006) (awarding prejudgment interest at the prime rate despite eight-year delay in bringing

suit); *Energy Transp. Group, Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed.

Cir. 2012) (refusing to reverse award of prejudgment interest based on delay alone).  Denying

prejudgment interest requires prejudice.  *Lummus*, 862 F.2d at 275 ("[A]bsent prejudice to the

defendants, any delay by [the patentee] does not support the denial of prejudgment interest.").

 Defendants do not explain how they have been prejudiced for the time period from

September 15, 2011 to the present.  Nor do Defendants attempt to tie any alleged prejudice to the

jury's award of damages from the commencement of the suit forward.  Defendants do not claim

economic prejudice.  And they do not dispute that I/P Engine was fully within its right to sue

them for damages from commencement of the litigation forward.  Further, Defendants do not

claim that they would have conducted themselves in any other manner regardless of when I/P

Engine filed suit.

 Even if there were some evidence of prejudice (which there is not), that prejudice would

not be related to the reasons for awarding prejudgment interest.  Indeed, the purpose of

prejudgment interest is "to ensure that the patent owner is placed in as good a position as he

would have been in had the infringer entered into a reasonable royalty agreement."  *General

Motors Crop. v. Devex Corp.*, 461 U.S. 648, 655 (1983).  Prejudgment interest "serves to make

the patent owner whole, since his damages consist not only of the value of the royalty payments

but also of the foregone use of the money between the time of infringement and the date of the

judgment."  *Id.*  Any alleged *evidentiary* prejudice is unrelated to this *economic* concern.

Economic prejudice is not at issue in this case.  (D.I. 800 at 13, n.4).

 Even if there were some economic prejudice in the record, that prejudice has already

been remedied by the Court's laches ruling, which eliminated not just interest but all damages

prior to the filing date of this suit.  There is no justification for applying two different remedies

for the same alleged delay.  Despite citing cases where the alleged delays took place during the

pendency of the lawsuit,[1] Defendants do not and cannot allege that I/P Engine delayed at any

time after the filing date of this lawsuit. Because there was no delay or associated prejudice

during this time period, there is no principled reason for denying prejudgment interest for the

damages the jury awarded, all of which are attributable to infringement that occurred during this

time period.

 For each of these reasons, any alleged delay in filing this suit should not preclude the

routine award of prejudgment interest.

### B. Prejudgment Interest Rate Should Be Awarded At the Prime Rate, Not the T-Bill Rate

 Unencumbered by authority, because there is none, Defendants base their argument on

the faulty premise that the T-bill rate is the default for prejudgment interest. And, without citing

any case law, they assert that independent evidence is needed to depart from the T-bill rate. The

Federal Circuit has explicitly rejected this argument. *Studiengesellschaft Kohle v. Dart*

*Industries, Inc.*, 862 F.2d 1564, 1579–80 (Fed. Cir. 1988) (holding that no "affirmative

demonstration" is required to be entitled to an award of prejudgment interest at the prime rate).

Independent evidence is needed to set prejudgment interest at a rate **higher** than the prime rate.

*Rosco, Inc. v. Mirror Lite Co.*, 2009 WL 3587344, at *2 (E.D.N.Y. 2009). Also contrary to

Defendants' assertion, "it is **not** necessary that a patentee demonstrate that it borrowed at the

prime rate in order to be entitled to prejudgment interest at that rate." *Id.* (quoting *Uniroyal, Inc.*

*v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (emphasis added)).

---

[1] *See*, *e.g.*, *Minemyer v. R-Boc Representative, Inc.*, No. 07 C 1763, 2012 WL 2423102 (N.D. Ill. 2012). In that case, the plaintiff served initial interrogatories three months late; plaintiff repeatedly failed to meet deadlines that were extended at plaintiff's own request; plaintiff failed to comply with the court's discovery orders; and plaintiff caused the trial date to be extended four times. *Minemyer* bears no relation to the facts of this case.

Pre-judgment interest compensates for "the foregone use of the money between the time of infringement and the date of the judgment." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656 (1983). In view of this goal, the majority of courts set prejudgment interest at the prime rate, "which better approximates a corporate borrower's cost of funds." *U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd.*, 607 F. Supp. 2d 470, 483 (S.D.N.Y. 2009). "The 3 month Treasury Bill rate is the cost of raising funds by the Government. Corporations are more likely to borrow at the prime rate. . . . The prime rate is more reflective of [the corporate plaintiff's] cost of funds than the 3 month Treasury Rate." *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 833 (E.D.N.Y. 1995) (awarding prejudgment interest at the prime rate); (*see also*, Becker Dec., ¶ 9-10).

Applying this precedent, district courts, including this Court, routinely award prejudgment interest at the prime rate. *See, e.g., ActiveVideo*, 2011 WL 4899922, at *7; *Uniroyal,*939 F.2d 1540, 1545; *Studiengesellschaft Kohle*, 862 F.2d 1564, 1579–80; *Soverain Software LLC v. J.C. Penney Corp., Inc.*, 2012 WL 4903268, *10 (E.D. Tex. 2012); *Voda v. Medtronic Inc.,* 2012 WL 4470644, *9 (W.D. Okla. 2012); *SSL Services, LLC v. Citrix Systems, Inc.*, 2012 WL 4092449, *7 (E.D. Tex. 2012); *Edwards Lifesciences AG v. CoreValve, Inc.*, 2011 WL 446203, *13 (D. Del. 2011); and *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co., Ltd.*, 2009 WL 4015654, *4–*5 (D. Del. 2009).

The case cited by Defendants merely reflects that, on specific facts different than in this case, a district court's adoption of the T-bill rate was not an abuse of discretion. *Laitram Corp., v. NEC Corp.,* 115 F.3d 947, 955 (Fed Cir. 1997). The T-Bill rate does not provide a reasonable basis upon which to calculate pre-judgment interest in this case. Because the purpose of pre-

judgment interest is to make I/P Engine economically and financially "whole" for the lack of use of the royalties that were awarded by the jury, the prime rate, not the T-Bill rate, is appropriate.

Defendants' sole reason for departing from the prime rate is that "there is no evidence that [I/P Engine] borrowed money at or above the prime rate." (Opp. at 6). Such a showing has been expressly rejected by the Federal Circuit. *Uniroyal*, 939 F.2d at 1545 ("[I]t is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate."). In any event, I/P Engine's cost of capital is in excess of the prime rate. I/P Engine's damages expert, Dr. Stephen Becker, analyzed I/P Engine's cost of capital, and found that its true cost of capital during the prejudgment interest period was 21.1%:

> It is my opinion that the T-Bill rate does not provide a reasonable basis upon which to calculate pre-judgment interest in this case. If the purpose of pre-judgment interest is to make I/P Engine economically and financially "whole" for the lack of use of the royalties that it was awarded by the jury, the T-Bill rate would not accomplish that goal. Even the Prime Rate of 3.25% undercompensates I/P Engine for the true cost of its capital. Vringo's cost of capital during the PJI period is approximately 21.1% (see Exhibit 1 attached hereto). Thus, applying the Prime Rate of 3.25% to the damages award is highly conservative, fair and reasonable.

Becker Decl. ¶ 9. Dr. Becker also found that Google's cost of capital during the prejudgment interest period was 9.54%. *Id.*

Defendants also suggest (at 5-7) that I/P Engine cannot support the application of a high interest rate because it is a non-practicing entity. This argument is nonsensical. First, the prime rate is not "a high interest rate," but is the standard, commonly applied rate used in determining prejudgment interest. *ActiveVideo,* 2011 WL 4899922, at *3 (indicating that courts often award prejudgment interest at the prime rate). Second, even if I/P Engine was a non-practicing entity (which it is not), it is entitled to prejudgment interest like any other patentee awarded damages.[2]

---

[2] Although unnecessary to justify interest at the prime rate, the record reflects that I/P Engine borrowed money (Trial Tr. at 201:10-13), acquired a new product prior to trial and received

Like any other patentee, I/P Engine should be fully compensated under § 284 for the foregone use of capital between the time of infringement and the date of the judgment.

### C. Compounding Prejudgment Interest Quarterly is Not Only Consistent with Both Parties' Calculations, It is the Only Proper Calculation in this Case

Defendants assert, without support, that prejudgment interest should be compounded annually, rather than quarterly. It is common and accepted that prejudgment interest be compounded quarterly. *See Rosco*, 2009 WL 3587344, at *2 ("The prejudgment interest will be compounded quarterly so as to best approximate when [the patent holder] would have received the royalty payments from [the infringer]."). Defendant's own expert, Keith Ugone, acknowledges that "[c]ompanies generally make royalty payments at a set time... each quarter." (Ugone Dec., ¶ 6). Defendants' use of annual compounding is inconsistent with Dr. Ugone's explicit assumption that the royalties owed to I/P Engine would have been paid quarterly. (*See* Ugone Dec., ¶ 5). Defendants have no explanation of why an annual prejudgment interest payment is appropriate. In contrast, Dr. Becker's approach includes quarterly compounding, consistent with the assumed timing of the underlying infringement that was found to have occurred. (Becker Dec., ¶ 7).

### D. Unlike Defendants' Prejudgment Calculation, Dr. Becker's Damages Calculation Fully Compensates I/P Engine for Defendants' Infringement

Defendants' allege that Dr. Becker's calculation of prejudgment interest is "overstated." (Opp at 6, n.3). In his Declaration, Dr. Ugone does not dispute Dr. Becker's ultimate calculation. The disagreement is whether interest is due as infringement occurs, as I/P Engine contends, or if Defendants receive a grace period before interest begins to accrue, as Defendants contend.

---

revenues. (Trial Tr. at 183:22-184:13). Its parent company has created multiple products which are used by over 3 million people. (Trial Tr. at 184:17-186:7).

Specifically, Dr. Ugone takes issue with what he calls Dr. Becker's "midpoint' formula" of calculating the interest.  (*See* Ugone Decl., ¶ 6).  In arriving at his calculation, Dr. Becker assumes that the damages were incurred by Google and the other Defendants ratably over each quarter and, hence, I/P Engine earned those royalties ratably over each quarter.  Dr. Becker's method calculates the interest that is due on the infringement as it occurred.  (Becker Dec., ¶ 3).  This is an accepted and appropriate method for calculating prejudgment interest.  And, it is the only calculation that will fully compensate I/P Engine for Defendants' infringement.  (Becker Dec., ¶ 3).

For example, for Google's infringement from October 1, 2011 through December 31, 2011 (i.e. "Q4 2011"), Dr. Ugone assumes the allocated damages for Google are $3,805,236.[3] He assumes that interest begins to accrue on those damages on the last day of the quarter, namely on December 31, 2011.  He calculates the interest for that quarter's allocated damages as 311 days of interest (i.e. the number of days from December 31, 2011 to November 6, 2012) times a daily interest rate.  (Becker Dec., ¶ 4).  The result of his calculation (in his Prime Rate scenario) is $105,374.  A consequence of Dr. Ugone's assumption regarding when interest begins to accrue is that Google's infringement that occurred on October 1, 2011, for example, and for which I/P Engine was awarded damages, accrues no interest until December 31, 2011 and, only after that date does I/P Engine begin to be credited with interest on those royalties. (Becker Dec., ¶ 4).

---

[3] Dr. Ugone's allocation of the damages award to various quarters differs slightly, but not materially, from Dr. Becker's allocation method.  Dr. Ugone allocates the damages award ratably over the period from September 15, 2011 through September 30, 2012 based on the number of days in each quarter.  (*See* Ugone Dec., Exhibit 1, footnote (b).)  In contrast, Dr. Becker allocated the damages award based on the proportion of the underlying accused revenue of each Defendant in each quarter.  (*See* Becker November 9, 2012 Dec., ¶ 4 (D.I. 794)).

In contrast, Dr. Becker assumes that the royalties for Q4 2011 are earned ratably over each quarter which has the result of making the midpoint of the quarter the effective date from which interested is calculated. (Becker Dec., ¶ 5). For example, for the Q4 2011 allocated royalty, Dr. Becker assumed that I/P Engine is owed four full quarters of interest at a quarterly interest rate of 0.813% (3.25% annual rate divided by 4). Using this methodology, the interest for Q4 2011 is $123,310. (Becker Dec., ¶ 5). This is a common and accepted way to estimate the timing of payments that occur ratably over a period, such as a quarter. (Becker Dec., ¶ 6). Dr. Ugone does not suggest otherwise. (*See, e.g.,* Ugone Dec., ¶ 6).

The difference between Dr. Ugone's result of $105,374 and Dr. Becker's $123,310 for Google's allocated damages for Q4 2011 is almost entirely due to the fact that Dr. Ugone has calculated only 311 days of interest on the $3,805,236 of principal (# of days from 12/31/2011 through 11/6/2012). (Becker Dec., ¶ 6). Dr. Becker calculates interest on that amount for a full year (i.e., the Q4 2011 allocated damages is for royalties that royalty were earned in Q4 2011 and we are now in Q4 2012, a full four quarters later). (Becker Dec. ¶ 6). Dr. Becker's methodology is the only calculation that will fully compensate I/P Engine for Defendants' infringement. *Id.*

## IV.    I/P ENGINE IS ENTITLED TO SUPPLEMENTAL DAMAGES FOR POST-DISCOVERY/PRE-VERDICT INFRINGING REVENUES RECEIVED BY DEFENDANTS

### A.    Common Sense and the Law Mandates that the Jury's Damages Award Can Only Include Revenues that Were Proffered at Trial and Produced During Discovery

Defendants argue that I/P Engine is not entitled to supplemental damages because the verdict "fully compensated Plaintiff for any pre-verdict damages." (Opp. at 8). The sole ground for Defendants' argument is that the verdict form states "what sum of money, if any, *if paid now in cash*, would reasonably compensate I/P Engine *for any of defendants past infringement*?" (Opp. at 9 (emphasis in original)). According to Defendants, the terms "paid now" and "any past

infringement" means that the jury awarded damages for "all" pre-verdict infringement. (*Id.*) This argument is absurd. It is also wrong as a matter of fact and law.

First, it is axiomatic that a jury's damages award must be based on the evidence proffered during trial. This Court instructed the jury to base its verdict on the evidence in this case, and nothing else. (*See, e.g.*, Trial Tr. at 2074, 2075, 2076, 2077). This is consistent with long-standing Supreme Court precedent that "the jury's verdict be based on evidence received in open court, not from outside sources." *Sheppard v. Maxwell*, 384 U.S. 333, 351, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966). Defendants fail to explain how the jury could have included in its calculation any royalties relating to revenues that were not produced in discovery or presented during trial. Defendants' position is untenable.

Second, Defendants' interpretation of the verdict form is factually inaccurate. The verdict form does not say "all," it says "any." (D.I. 789 at 11). In this context, the phrase "any… infringement" refers to the possibility that one or more defendants may or may not be found to infringe. Said another way: "for defendants' past infringement, if any, what sum of money… would reasonably compensate I/P Engine?" Interpreting the phrase "any… infringement" to be an instruction to the jury to assume facts about which no evidence was presented at trial would be clear error. Indeed, Defendants' interpretation of the verdict form contradicts the Court's jury instructions to base its damage calculation on the evidence.

Under § 284, I/P Engine is entitled to a damages remedy to compensate it for the infringement, "[t]ogether with interest and costs as affixed by the court." 35 U.S.C. § 284. Courts routinely recognize that the only way to provide a complete remedy under § 284 is through an accounting following a jury verdict. *See Sanofi-Aventis Deutschland*, 821 F. Supp. 2d 681, 697; *TiVo Inc.,* 2006 U.S. Dist. LEXIS 64291, at *6; *Mikohn Gaming Corp.,* 2001 U.S.

Dist. LEXIS 23416, at *52-53.  As this Court has held, supplemental damages should take into account pre-verdict infringing sales that were not covered by the jury verdict.  *ActiveVideo Networks*, 2011 WL 4899922, at *1 ("[T]he patentee is entitled to damages for the entire period of infringement and should therefore be awarded supplemental damages for any periods of infringement not covered by the jury verdict.").

This case is similar to *ActiveVideo.*  Defendants do not dispute this.  Nor do they dispute that they produced revenues for the infringing products only through September 30, 2012.  They merely argue (without authority) that the use of the word "any" in the verdict form means "all".  Accepting Defendants' invitation to deny post-discovery/pre-verdict supplemental damages would contradict § 284 and the mandate of the Federal Circuit.  *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir. 2012) (holding that, for a running royalty damages award, "the trial court abused its discretion when it failed to award… damages for the period between the jury's verdict and judgment.").

Unlike in *ActiveVideo*, Defendants refuse to provide with their opposition a statement of their infringing revenues from October 1, 2012, through November 21, 2012, when judgment was entered on the docket.  This Court should require an immediate accounting of those revenues, then amend the judgment with supplemental damages using the same methodology that Dr. Becker used at trial.

### B.      I/P Engine's Supplemental Damages Calculations Are Appropriate and the Only Calculations that were Proffered to the Jury During Trial.

Defendants take issue with Dr. Becker's methodology in calculating supplemental damages.  (*See* Opp. at 9-13; Ugone Dec., ¶ 8).  Dr. Becker uses the same methodology that he used at trial.  Defendants do not dispute that the appropriate form of damages is a running royalty.  Defendants also do not dispute that the jury awarded a royalty rate of 3.5%.

Defendants' only disagreement appears to be over the appropriate apportionment factor to use to arrive at the royalty base to which the 3.5% royalty rate should apply.

Consistent with the evidence at trial, I/P Engine (and Dr. Becker) explained in its opening brief that appropriate apportionment percentage is 20.9%.   (I/P Engine Br. at 11-12).   This is the same going-forward apportionment percentage that Dr. Becker presented at trial.   (Trial Tr. at 820-21).   The 20.9% apportionment factor is applied to Defendants' total U.S. revenues from the accused systems, AdWords, AdSense For Search and AdSense For Mobile Search (derived from the requested accounting) to determine the apportioned royalty base. (Becker Dec., ¶ 13).

According to Defendants, an apportionment rate of 2.8%, not 20.9%, should be used for the calculation of Google's supplemental damages.  (Opp. at 11).  Defendants arrive at this figure by referencing a demonstrative exhibit presented to the jury (PDX-441) and comparing that data to the $15.8 million that the jury awarded from Google.  (*See* Opp. at 11; Ugone Dec., ¶ 8 and Exh. 2).  Defendants' criticism has multiple errors.

First, Defendants' methodology wholly ignores the fact that the jury awarded damages to I/P Engine from AOL, IAC, Gannett and Target as well as from Google.  Defendants estimate only the ratio of the jury award against Google as a proportion of the estimated $118 million in claimed damages for the period September 15, 2011 through September 30, 2011.  (*See* Ugone Dec., Exhibit 2).

Second, even assuming the premise of Defendants' calculation is reasonable (which it is not), the calculation is flawed on its face.  The damages figures presented to the jury in graphical form at PDX-083 and again at PDX-441 were the ***total*** damages for ***all*** defendants, not just the

damages associated with Google's infringement.[4]  (Becker Dec., ¶ 14).  This can be seen by comparing the bar chart at PDX-083, which is clearly labeled as totaling $493 million in royalties, to PDX-441, the bar chart used by Dr. Ugone.  Both present identical royalty amounts, with the only difference being that in PDX-441 the bars for Q4 2011 through Q3 2012 have been shaded, reflecting the post-laches time period.  (D.I. 807, Exh. B (PDX-441) and Exh. D (PDX-083)).  That the total amount of these bars, $493 million in royalties, represents all defendants, not just Google, is evident from the trial transcript and from PDX-055, a summary of the royalty damages that Dr. Becker presented to the jury during the trial. (Trial Tr. at 767:20-768-8).

By using only the $15.8 million awarded against Google and ignoring the $14,696,155 awarded against the other Defendants, Defendants are suggesting a meaningless and unreliable apportionment percentage.  This can be demonstrated by applying the 2.8% apportionment factor to the period covered by the actual award.  Total accused revenues (including the Google co-defendants) for the period from September 15, 2011 through September 30, 2012, based on accounting documents produced by Google, were $16.18 billion. (Becker Dec., ¶ 15).  Defendants' 2.8% apportionment factor, if applied to these undisputed amounts of revenue yield total royalties, for all defendants, of $15,858,033, not the total jury award of $30,496,155.  (Becker Dec., ¶ 15).  To accept Defendants' argument, one must ignore all evidence presented at trial, back into an implied speculative apportionment factor, and ignore the jury award.

---

[4] Defendants argument that I/P Engine is double counting damages (at 12) and that under I/P Engine's damages theory, there are no separate supplemental damages to award from the non-Google Defendants, is baseless.  Throughout trial, including during the closing arguments, I/P Engine made clear that PDX-441 included damages for all defendants.  PDX 443 simply broke out per non-Google Defendant the requested damages, as was required under the verdict form.  As the jury determined at trial, I/P Engine is entitled to damages, including supplemental, from all parties from infringing revenues received by them post-verdict.

The only relevant apportionment percentage proffered at trial, and the only apportionment percentage ever suggested to the jury, was 20.9%.  (Becker Dec., ¶ 16).  Neither PDX-441 nor any other exhibit or demonstrative introduced at trial supports a 2.8% apportionment factor.  (Becker Dec., ¶ 16).  In contrast, there was no evidence at all of a 2.8% factor and, in particular, no evidence upon which one could conclude that the intended royalty rate to be applied to Google was an order of magnitude lower than the other defendants.  To arrive at Defendants' conclusion, one must jump through multiple hoops—none of which were ever proffered at trial.  (Becker Dec., ¶ 16).  To accept this calculation and never-proffered apportionment rate would be clear error.[5]

## V.     CONCLUSION

Accordingly, and for the reasons set forth in I/P Engine's moving papers, Defendants' opposition should be rejected, and I/P Engine's requests for prejudgment interest, post-judgment interest, and supplemental damages for post-discovery/pre-verdict infringement, and post-judgment interest, should be granted.

---

[5] It is apparent that the jury made a simple decimal point transposition error in arriving at its damages amounts.  This confusion was caused by the Court's limitation of the damages period to September 15, 2011 ("the laches damages period").  The Court announced this ruling after all damages evidence had been submitted, and further altered its ruling in the middle of closing arguments.  The jury awarded 35% of the damages I/P Engine sought for AOL, IAC, Gannett, and Target.  (Becker Dec., ¶ 12).  However, for Google, the jury awarded 3.5% of the damages I/P Engine sought for the original damages period—one tenth the amount awarded for the other defendants.  The evidence of the underlying revenues for each of these defendants was the same.  Thus, the portion of the amount I/P Engine sought for the original damages period should have been the same for each of the defendants.  The most plausible explanation is a simple decimal point transposition with respect to Google's damages.

Dated: December 7, 2012

By:    /s/  Jeffrey K.  Sherwood
Donald C.  Schultz (Virginia Bar No. 30531)
W.  Ryan Snow (Virginia Bar No. 47423)
CRENSHAW, WARE & MARTIN PLC
150 West Main Street
Norfolk, VA 23510
Telephone:     (757) 623-3000
Facsimile:     (757) 623-5735

Jeffrey K.  Sherwood (Virginia Bar No. 19222)
Frank C.  Cimino, Jr.
Kenneth W.  Brothers
Dawn Rudenko Albert
Charles J.  Monterio, Jr.
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone:     (202) 420-2200
Facsimile:     (202) 420-2201

Counsel for Plaintiff I/P Engine, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 7th day of December, 2012, the foregoing **REPLY IN SUPPORT OF PLAINTIFF I/P ENGINE, INC.'S MOTION FOR AN AWARD OF PREJUDGMENT INTEREST, POST-JUDGMENT INTEREST, AND SUPPLEMENTAL DAMAGES FOR DEFENDANTS' POST-DISCOVERY/PRE-VERDICT INFRINGEMENT**, was served via the Court's CM/ECF system on the following:

Stephen Edward Noona
Kaufman & Canoles, P.C.
150 W Main St
Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com

David Bilsker
David Perlson
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

Robert L.  Burns
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
robert.burns@finnegan.com

Cortney S.  Alexander
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
cortney.alexander@finnegan.com

                                                       /s/ Jeffrey K.  Sherwood