**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| I/P ENGINE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civ.  Action No. 2:11-cv-512 |
| ) | |
| AOL, INC.  et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF I/P ENGINE, INC.'S MEMORANDUM IN**
**SUPPORT OF ITS RULE 59 MOTION FOR A NEW TRIAL**
**ON THE DOLLAR AMOUNT OF PAST DAMAGES**

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY .................................................................... 1

II. RULE 59 AUTHORIZES A NEW TRIAL ON THE AMOUNT OF PAST
    DAMAGES ......................................................................................................... 2

III. ARGUMENT ....................................................................................................... 3

    A.  The Court's Rulings Forced The Jury To Speculate Regarding The Past
        Damage Award ........................................................................................... 3

    B.  The Court Erroneously Precluded I/P Engine From Introducing Evidence
        Of Defendants' Infringing Revenues ....................................................... 7

    C.  The Jury's $15.8 Million Past Damages Award Against Google Is Not
        Supported By Substantial Evidence ......................................................... 13

    D.  The Jury Was Instructed To Use The Wrong Damages Period ............................ 17

    E.  A New Damages Trial Is Required For AOL And Gannett ................................. 17

IV. CONCLUSION .................................................................................................... 18

# I.    INTRODUCTION AND SUMMARY

This Court should order a new trial on the dollar amount of past damages for five reasons, the first three of which are independent of this Court's ruling on I/P Engine's post-trial motion regarding laches.  First, the timing and Court implementation of its laches ruling after the close of the parties' respective cases, and the Court's forbidding I/P Engine to identify a specific damages amount to the jury, was fundamentally unfair and highly prejudicial to I/P Engine.  I/P Engine was precluded from explaining how the evidence supported $118 million of damages accrued since September 15, 2011.  Second, this Court wrongly prevented I/P Engine from introducing evidence of Defendants' accused revenues, which formed the total revenue base. This evidence also would have enabled I/P Engine to explain the damages amounts from September 15, 2011.  Third, the jury's damages award is internally inconsistent; the jury awarded 35% of I/P Engine's initial claimed damages against four defendants, but only 3.5% of I/P Engine's initial claimed damages against Google.   Fourth, as set forth in detail in I/P Engine's post-trial motion regarding laches, this Court's exclusion of damages from September 15, 2005 to September 15, 2011 was error.  Fifth, applying laches to AOL and Gannett was error, because there was no record evidence that either had indemnification agreements with Google.

In making this Motion, I/P Engine stresses that this Motion is limited solely to the amount of the past damages monetary award.  There were no defects in any other aspect of the trial or jury verdict regarding infringement, validity, the running royalty finding, or the 3.5% running royalty rate.  A "special verdict enables errors to be localized so that the sound portions of the verdict may be saved and only the unsound portions be subject to redeterminations through a new trial."  *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1484-85 (Fed. Cir. 1997) (quoting Sunderland, *Verdicts, General and Special*, 29 Yale L.J. 253, 259 (1920)).  This

Court's use of a special verdict form allows for the new trial on past damages to be limited to the sole issue of the dollar amount of past damages as stated by question III.C of the verdict form:

> "If you have found any claim of the '420 or the '664 patent to be both valid and infringed by Defendants, what sum of money, if any, if paid now in cash, would reasonably compensate I/P Engine for any of defendants past infringement?"

A new trial on the dollar amount of past damages could be accomplished in a single day, with brief openings, stipulated facts, and expert testimony (consistent with their reports) from Dr. Becker and Dr. Ugone.

## II.    RULE 59 AUTHORIZES A NEW TRIAL ON THE AMOUNT OF PAST DAMAGES

Under Federal Rule of Civil Procedure 59(a), a new trial may be granted in an action in which there has been a trial by jury "for any reason for which a new trial has heretofore been granted in actions at law in federal court."  Fed. R. Civ. P. 59(a).  "On a Rule 59(a) motion, a district court may set aside the jury's verdict and grant a new trial only if (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice even though there may be substantial evidence which would prevent the direction of a verdict."  *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10cv121, 2010 U.S. Dist. LEXIS 119119, at *2 (E.D. Va. Nov. 9, 2010) (quoting *Atlas Food Sys. & Servs. Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)).

In considering a Rule 59 motion, "courts may make credibility judgments in determining the clear weight of the evidence."  *Id.* (citing *Knussman v. Maryland*, 272 F.3d 625, 647 (4th Cir. 2001)). "The grant or denial of a motion for new trial is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion."  *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998).  A new trial may be granted even where judgment as a matter of law may not have been appropriate.  *Litton Systems, Inc. v.*

*Honeywell, Inc.*, 87 F.3d 1559, 1576 (Fed. Cir 1996) ("The court may thus grant a new trial even where substantial evidence supports the verdict, if the verdict is against the clear weight of evidence.").[1]

## III.    ARGUMENT

### A.    The Timing And Implementation Of The Court's Laches Ruling Unfairly Precluded I/P Engine From Seeking Damages From September 15, 2011

On October 31, 2012 – after both I/P Engine and Defendants had rested – the Court moved the beginning of the damages period from September 2005 to September 2011.  In another motion filed contemporaneously, I/P Engine explains why that laches ruling was error.  But independent of whether that ruling is altered, the timing and method that this Court used to implement that ruling substantially and materially affected I/P Engine's right to a fair trial on the amount of past damages.  This Court's *sua sponte* ruling precluded I/P Engine from presenting the jury with a specific damages number for the new damages period.  This Court refused to allow I/P Engine to identify a specific damages number, or even a range, for the time period from September 15, 2011 through September 30, 2012, even though it was supported by the evidence.  As a result, the jury awarded past damages that were far lower than the evidence supported.  A new trial on the dollar amount of past damages is needed to alleviate the prejudice of this Court's rulings.

As a result of this Court's laches ruling and its subsequent rulings in the charge conference and at closing, I/P Engine was deprived of the ability to put forth a specific damages

---

[1]  Out of an abundance of caution, I/P Engine renews its Rule 50 motion regarding Dr. Ugone's damages analysis, which was flawed and relied on irrelevant evidence.  Trial Tr. at 1777:15-1778:23.  Defendants' utterly abandoned Dr. Ugone's testimony during closing, making no reference to it and instead arguing zero damages should be awarded.  To the extent that Defendants argue, or the Court finds, that the jury relied on Dr. Ugone's improper methodology, judgment as a matter of law is appropriate for I/P Engine, because the proper measure of damages under the law are Defendants' infringing uses.

number for Google.  Dr. Becker had provided testimony covering the entire claimed damages period, from September 15, 2005 through September 30, 2012, the last period for which Defendants had produced revenue information.  *See, e.g.*, Trial Tr. at 832:20-833:25.  Dr. Becker's testimony was complete and appropriate for that purpose.[2]  Trial Tr. at 1028:20-21; 2135:8-2136:25 (denying Defendants' Rule 50(a) motion on damages).  Defendants then presented their case, including testimony from Dr. Ugone for the damages period from September 2005 to the present.  Defendants then rested.  Trial Tr. at 1769:5-6.  Prior to the Court's laches ruling on October 31, 2012, there was no motion, or even a suggestion, either by this Court or Defendants during trial that the time period for damages should commence on September 15, 2011.

After the Court's ruling, I/P Engine calculated its damages for Google based upon Dr. Becker's testimony and consistent with the methodology in his report.  The application of this Court's laches ruling to the evidence resulted in a total damages claim of $154,588,483.  Sherwood Dec. ¶ 2; PDX-443.[3]  This Court, however, declined to permit I/P Engine to refer to a specific damages number for Google or use a demonstrative that reflected the royalties from September 15, 2011 through September 30, 2012.  Sherwood Dec. ¶ 2; Trial Tr. at 1963:20-22.  This Court would only permit I/P Engine to explain to the jury was to reference PDX-083, reproduced below.  Trial Tr. 1965:20-25.

---

[2]  As explained below, this Court's rulings precluded I/P Engine from introducing into evidence of the amount of Defendants' revenues.

[3]  Applying the Court's ruling to all Defendants results in a total of $118,437,643.  *Id.*



**Figure 1: PDX-083, from which the jury was expected to derive the royalties attributable to the damages period beginning on September 15, 2011.**

This Court thus precluded I/P Engine from identifying the amount of its past damages claim, or even giving a range. Neither I/P Engine nor the jury should have been forced to rely only on such vaguaries, especially when I/P Engine's damages expert had explained how his methodology could provide a specific past damages claim. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 13356 (Fed. Cir. 2009) (remanding for new trial where jury's damage award was inconsistent with the evidence).

For the other defendants, this Court initially ruled at the charge conference that, because laches was a personal defense, those defendants could not benefit from the laches ruling. *See* Trial Tr. at 1976:9-19. At closing, I/P Engine's counsel argued for specific damages amounts for those defendants. Trial Tr. at 2008:25-2009:2.

After I/P Engine's summation, however, Defendants, without notifying I/P Engine, provided this Court with the *Odetics* case, and represented without introducing evidence that all

of the non-Google defendants had indemnification agreements with Google.  This Court changed its ruling (Trial Tr. at 2022:3-12), and instructed the jury that all Defendants' damages accrued as of September 15, 2011.  Trial Tr. at 2113:13-19.  In its rebuttal summation, I/P Engine was obligated to explain that this Court had made a ruling that the damages period for all defendants was September 15, 2011, and that the jury should do its best with the recollection of the evidence.  Trial Tr. at 2024:17-2025:4; 2063:18-22; 2069:22-2070:9.  Once again, this Court's implementation of the laches ruling in the middle of closing arguments was fundamentally unfair to I/P Engine.

During deliberations, the jury's confusion on damages was reflected in four of its questions to this Court.  First, the jury clarified the changed damages period by asking, "Is there a date to use when considering the question of third-party infringement?"  Trial Tr. at 2141:1-2.  Once that question was answered, the jury asked for clarification of the royalty base, asking, "If a running royalty rate is determined, are we to apply the rate to a certain figure for each defendant?"  Trial Tr. at 2146:15-17.  The Court answered "yes," without giving the jury any further information on the royalty base to which the rate would apply.  Trial Tr. at 2146:8-25.  Undeterred, the jury next asked "To what figure do we apply the rate?"  Trial Tr. at 2148:7.  This Court did not provide a figure, but instead instructed the jury to rely on its recollection of the evidence.  Trial Tr. at 2149:15-23.  The jury's fourth question reflected its frustration and confusion:  "If we assign a cash amount to be awarded, is this in addition to a running royalty rate we choose?"  Trial Tr. at 2154:54-2155:1.  This Court did not answer with a yes or a no.  Instead it responded, "If you have made a determination that a lump sum royalty or a running royalty is applicable, you must determine what damages, if any, should be awarded in III C… of the verdict form."  *See* Trial Tr. at 2160:4-21.

The timing and implementation of this Court's ruling on laches, especially when combined with this Court's jury instruction regarding the damages period and the changing of the ground rules in the middle of closing, substantially prejudiced I/P Engine's ability to present its damages case to the jury. I/P Engine should have been given fair notice and an opportunity to explain its evidence supporting a damages claim from September 15, 2011 through September 30, 2012. If this Court's ruling on laches remains intact, then a new trial on the dollar amount of past damages should be awarded to allow I/P Engine to apply its evidence to the shortened damages period, and to provide a specific damages number to the finder of fact.

**B. This Court Erroneously Precluded I/P Engine From Introducing Evidence Of Defendants' Infringing Revenues**

The only financial information that the Defendants produced in discovery was their total revenues for the accused AdWords system. Dr. Frieder, I/P Engine's technical expert, explained that every time Defendants served advertisements in the U.S. using the accused technology, Defendants infringed. *See, e.g.*, Trial Tr. at 568:5-7. Dr. Becker, I/P Engine's damages expert, used the U.S. AdWords revenues as the starting point of his damages analysis. Trial Tr. at 831:19-832:4. Dr. Becker used Defendants' total infringing revenues to calculate (1) the amount of a royalty base over the then-applicable damages period, and (2) the amount of a reasonable royalty applied to that royalty base. *See, e.g.*, Trial Tr. at 827:13-18; 830:19-833:25. Dr. Becker's royalty base was a percentage of the total infringing U.S. revenues. The specific percentage varied quarter-by-quarter, averaging about 20% of the total infringing revenues. Trial Tr. at 819:10-821:15. That 20% figure was based upon evidence from Google's own documents that reflected that the amount of increased revenue attributable to the infringing functions of AdWords was about 20%, although it may have been as high as 40%. Trial Tr. at 809:23-810:9. That adjusted amount of the total infringing revenues formed the calculated royalty base. Trial

Tr. at 830:19-833:25. Dr. Becker's reasonable royalty was 3.5% of the calculated royalty base. Trial Tr. at 844:21-845:2.

I/P Engine sought to introduce the total U.S. AdWords infringing revenue into evidence to explain and support Dr. Becker's establishment of the calculated royalty base. Defendants objected, however, and this Court precluded its introduction. Trial Tr. at 746:2-19 (general ruling). When I/P Engine sought to introduce Defendants' specific documents that set forth the infringing AdWords revenues by quarter or year, this Court sustained Defendants' objection. *See e.g.,* Trial Tr. at 828:2-22 (specifically precluding PX-280). Those documents included Defendants' revenue statements and other revenue documents that showed Defendants' quarterly U.S. AdWords revenue, which were used to determine the dollar value of the infringing use.

This Court, however, ruled that I/P Engine may not introduce "overall revenue figures" based on *Uniloc*. Trial Tr. at 746:2-19. This was error. *Uniloc USA, Inc. v. Microsoft Corp.*, holds that a district court did not err in granting a new trial because a plaintiff used the entire market value rule without satisfying the evidentiary bases required to use the rule. 632 F.2d 1292, 1318-21 (Fed. Cir. 2011). *Uniloc* does not apply to the facts of this case because I/P Engine does not now and has not ever invoked the entire market value rule. The entire market value rule is an exception to the general rule that damages must be tied to the "smallest salable patent-practicing unit." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). Dr. Becker did tie his damages to the smallest salable patent-practicing unit. There is no smaller salable unit than the accused AdWords system. Defendants cannot and have not made any allegations to the contrary. Despite I/P Engine seeking to introduce the revenues associated with the smallest salable patent-practicing unit into evidence, this Court still precluded these revenues, citing *Uniloc*. Trial Tr. at 746:2-16.

8

In *Uniloc*, Dr. Gemini, plaintiff's damages expert, identified the "isolated value" of the accused infringing component as $10 per license. 632 F.3d 1292, 1311 (Fed. Cir. 2011). The number of licenses for that product were known—225,978,721. *Id.* Thus, the royalty base could be calculated using these two numbers alone (225,978,721*$10 = about $2.25 billion). The only step left was for Dr. Gemini to apply a royalty rate to this royalty base. Dr. Gemini did this, opining (erroneously) that a 25% royalty rate was proper, leading to a $565 million royalty. *Id.*

But Dr. Gemini did not stop once he identified the amount of a reasonable royalty using his $10/license "isolated value." Instead, Dr. Gemini went out of his way to expressly refer to revenue numbers that had nothing to do with his royalty rate calculation. Specifically, Dr. Gemini mentioned $19 billion in total sales of software programs that happen to contain the accused infringing component as well as other, unaccused components. *Id.* Dr. Gemini then compared his $565 million dollar royalty to this larger number for the sole purpose of expressing his royalty as a percentage (2.9%) of the larger figure. *Id.* There was no reason to mention the $19 billion number because it was in no way needed to calculate the royalty base. The 2.9% was not the royalty rate; the royalty rate was 25%. Instead, the 2.9% figure was just a comparison of the award that Dr. Gemini sought, to the larger overall sales number.

Unlike *Uniloc*, the revenue numbers that I/P Engine sought to introduce were an integral part of Dr. Becker's calculation of the royalty base. These numbers were the *only* numbers produced in this case showing the revenues attributable to the accused products. Thus, Dr. Becker needed these numbers to calculate his royalty base. As explained above, he did so by multiplying the revenues by the apportionment factors he identified.

Further, in *Uniloc*, Dr. Gemini expressed his royalty rate as a percentage (2.9%) of the total revenues, not as a percentage of the royalty base. The Federal Circuit specifically quoted

colloquies containing comparisons between the royalty amount and the total revenues with disapproval. *Id.* at 1320. Dr. Becker's testimony does not share this fatal feature of Dr. Gemini's testimony. Unlike in *Uniloc*, Dr. Becker never once compared his damages amount to the Defendants' total revenues. Dr. Becker only used the total revenues of the accused products to calculate a royalty base. Further, I/P Engine never sought to introduce Defendants' <u>total</u> revenues, which would include, for example, advertisements served by unaccused systems. I/P Engine only sought to introduce the revenues associated with the accused AdWords system, which were the foundation for his apportionment base. Again, there was no smaller unit of revenues for I/P Engine to seek. Neither *Uniloc*, nor any other case law of which I/P Engine is aware, justifies eliminating I/P Engine's ability to submit the only evidence related to a royalty base into evidence.

Defendants may argue that *LaserDynamics* justifies this Court's exclusion of Defendants' revenues for the accused systems; it does not. In dicta, *LaserDynamics* indicates that "disclosure of revenues associated with a complete product, rather than a patented component only," is "one way in which the error of an improperly admitted entire market value rule theory manifests itself." *LaserDynamics Inc.,* 694 F.3d 51, 68. But "the error of an improperly admitted entire market value rule theory" does not exist in this case.

The accused product in *LaserDynamics* was an optical disk drive (such as a CD-ROM or DVD drive), which was purchased separately from the other components of a computer. *Id.* at 69-70. An independent price could have been placed on the accused disk drive alone. *Id.* The plaintiff, however, presented the total revenues associated with the entire computer, not just the disk drive. *Id.* The plaintiff used these total revenues as a royalty base, and applied a 2% royalty directly to the total revenues associated with sales of entire computers. *Id.* No separate royalty

base that was linked only to the patented invention was identified. *Id* at 68. In other words, no apportionment analysis was performed. Further, the 2% royalty that was applied directly to total revenues "appears to have been plucked out of thin air." *Id.* at 69. None of these errors exist in this case.

Despite already paring his revenue numbers down to the smallest salable component, Dr. Becker still performed an apportionment analysis, subdividing these revenues into a royalty base attributable to the patented invention. Dr. Becker did not apply his 3.5% royalty rate to total revenues nor did he ever compare his royalty rate to Defendants' total revenues. Unlike in *Uniloc* and *LaserDynamics,* Dr. Becker applied his 3.5% royalty rate to the apportioned royalty base. In short, Dr. Becker carefully tied the proof of the damages to the claimed invention. *See ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (noting that "the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place" and "[a]ny evidence unrelated to the claimed invention does not support compensation for infringement").

Several courts have held that admitting the data that underlies the type of damages analysis that Dr. Becker performed does not run afoul of either *Uniloc* or the entire market value rule. For example, in *Carnegie Mellon Univ. v. Marvell Tech. Group, LTD.*, No. 09 cv 290, 2012 U.S. Dist. LEXIS 120558, at *12 (W.D. Pa. Aug. 24, 2012), the district court rejected the accused infringer's argument that, by referencing the total operating profit on a per-unit basis, the patentee was applying the entire market value rule. The court held that "Ms. Lawton [plaintiff's damages expert] has not applied the entire market value rule simply by referencing Marvell's total operating profit on a per-unit basis. Instead, she has used the average operating profit as a starting point for her apportionment analysis. Simple reference to average operating

profits for the purpose of showing a starting point is justified, so long as the testimony does not lapse into statements that tend to show how 'reasonable' a royalty is when compared to a much larger amount."  Likewise, in *PACT XPP Techs., AG v. Xilinx, Inc.*, the district court overruled an objection to presentation of average sales price of the accused product because "Mr. Nawrocki [plaintiff's damages expert] apportioned the average sales prices of the accused products to account for the contribution of the unpatented features to the accused products' value, and therefore did not invoke the entire market value rule."  No. 2:07 cv 563, 2012 U.S. Dist. LEXIS 66436, at *8-9 (E.D. Tex. May 10, 2012); *see also Fractus, S.A. v. Samsung Elecs. Co.*, No. 6:09cv203, 2012 U.S. Dist. LEXIS 90284 (E.D. Tex. June 28, 2012) (rejecting infringer's argument that references to average price of infringing product should be excluded because "[m]ere reference to the average price of the accused devices, prior to apportionment, did not create a situation akin to [the situation in *Uniloc*]").  The evidence of Defendants' infringing U.S. AdWords revenues should not have been excluded from evidence.

After successfully moving to exclude the revenues from evidence, Defendants attacked I/P Engine during closing for the lack of evidence:

> "[T]hey have no evidence.  They haven't told you what the amount is….  Remember that $493 million they have been telling you about?  That's off the table, right?  So what are you supposed to do with that?  Just speculate?  Just make something up?"

Trial Tr. at 2063:5-12.  Dr. Becker should have been allowed to refer to documents to explain Defendants' total U.S. AdWords infringing revenues.  As a result of this Court's rulings, Dr. Becker was forced to merely state the amount of his calculated royalty base, instead of showing the jury the total infringing revenues and showing the jury the underlying calculations that led to his result.  Trial Tr. at 828:20-22.  I/P Engine expressed its concern with this approach at the

time of this Court's ruling when its counsel objected "That's the problem. It looks like he just picked the number out of thin air." Trial Tr. at 829:19-22.

The effect of this Court's exclusion of the royalty base numbers was compounded by this Court's alteration of the damages period after the parties' damages experts had testified. Trial Tr. at 1811:19-1817:23. Despite this Court's ruling on Defendants' revenues, Dr. Becker had submitted adequate evidence of the amount of the reasonable royalty due for the damages period that was in effect at the time he testified. Trial Tr. at 833:3-13; 846:2-17. But, by shortening the damages period by six years, this Court shifted the goalposts after both parties had submitted their damages evidence. Although Dr. Becker's testimony addressed the relevant damages period when he stepped down from the stand, when this Court ruled that the calculation of damages commenced on September 15, 2011, I/P Engine would have been able to refer to Defendants' quarterly or annual revenue statements and identify specific documents for each quarter. The jury's questions could have been answered by referencing those documents, instead of a instruction to do the best they could with their recollection.

## C. The Jury's $15.8 Million Past Damages Award Against Google Is Not Supported By Substantial Evidence

The jury's past damages award against Google is not supported by the record. I/P Engine applied the identical damages model to each defendant. *See* Trial Tr. at 819:14-821:15; 826:11-833:13. The jury's award for AOL, IAC, Target, and Gannett, are consistent with each other and with the evidence: each is 35% of the damage award identified by Dr. Becker and reiterated by I/P Engine during closing. Trial Tr. at 768:6-8; 2008:25-2009:2.[4] The award for Google,

---

[4] This Court applied laches to the non-Google defendants after I/P Engine's closing. Trial Tr. at 2022:3-12.

however, is dramatically different:  instead of 35% of I/P Engine's claimed damages, it is 3.5%

of I/P Engine's claimed damages.  This is illustrated in the following chart:

| Defendant | Royalties Sought For Original Damages Period | Royalties Awarded For Shortened Damages Period | Award As Percentage of Royalties Sought (for different damages periods) |
|---|---|---|---|
| AOL, Inc. | $22,693,517[5] | $7,943,000 | 35.0% |
| IAC Search & Media, Inc. | $18,917,570 | $6,650,000 | 35.2% |
| Gannett Co., Inc. | $12,348 | $4,322 | 35.0% |
| Target Corp. | $282,380 | $98,833 | 35.0% |
| Google, Inc. | $451,190,903 | $15,800,000 | **3.5%** |

The 35% figure is much closer to the actual portion of the royalties included in the

original damages period that could be apportioned or allocated to the post-filing damages period.

There is no reasonable interpretation of the evidence to support a 3.5% apportionment between

pre and post-filing damages.[6]  Because no evidence of record explains this distinction between

the jury's use of 35% for four defendants, and 3.5% for Google – I/P Engine believes the jury

misplaced a decimal point when calculating Google's damages.[7]

---

[5]  This amount does not include $510,746 that was identified separately as damages for AOL
Search Marketplace.  Including the $510,746 in the total royalties sought for AOL, Inc. would
result in the jury's award equaling 34.2% of the royalties sought.

[6]  There is a major distinction between the 3.5% royalty rate, as the jury correctly found, and the
jury's award of 3.5% of claimed past damages for Google.  PDX-083, which was published to
the jury, showed that about one-quarter of all claimed royalties accrued after I/P Engine filed
suit; this is sufficient support for the 35% award against four defendants.  Moreover, by allowing
plaintiff's counsel to present PDX-083 to the jury during closing, with the pre-filing period
grayed out, the Court understood that the claimed damages for the post-filing period was
between $100-120 million.

[7]  In their reply brief regarding prejudgment interest, Defendants argue that the jury's award
reflects that the jury rejected the royalty base Dr. Becker calculated.  D.I. 805 at 9-10.  This
contention fails to explain the inconsistency in the jury's verdict.  Although the royalty base for
Google was approximately ten times larger than the royalty base for the other defendants
combined, the jury's award for Google's infringement is approximately equal in size to the jury's
award for the other defendants combined.  Defendants' contention that the jury rejected Dr.
Becker's royalty base would require that the jury accepted the royalty base Dr. Becker calculated

"A party challenging a jury damages verdict 'must show that the award is, in view of all the evidence, either so outrageously high or so outrageously low as to be unsupportable as an estimation of a reasonable royalty.'" *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1345 (Fed. Cir. 2011). "[T]he jury's damages award must be upheld unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1383 (Fed. Cir. 2004). Although the jury's award against Google appears to be "outrageously low" compared to the evidence and the jury's findings regarding the non-Google defendants, I/P Engine need not prove this to obtain a new trial. Instead, this Court only needs to find that the jury's verdict is against the clear weight of the evidence. For the time period of September 15, 2011 through September 30, 2012 (the time period that was before the jury for past damages), I/P Engine demonstrated with PDX-441 that damages between $25 million and $30 million were due for each quarter. Adding each of these quarters together therefore yields an award of between $100 and $120 million for the shortened damages period. This amount is far greater than the jury's award.

---

for AOL, IAC, Gannett, and Target, but rejected that royalty base for Google alone, and instead reduced the royalty base for Google by a factor of ten. There is no evidence to support this theory. Dr. Becker's royalty base was the *only* royalty base presented at trial, and it applied the same apportionment factor to the revenues attributable to each defendant. *See* Trial Tr. at 819:14-821:15; 826:11-833:13. Defendants did not challenge the royalty base that Dr. Becker presented, nor did they present any royalty base of a different size, let alone argue that a separate base calculation applied to Google alone.



Figure 2: PDX-441, illustrating the total reasonable royalties that fall within the shortened damages period.

The jury's $15.8 million damage award for Google is not supported by the jury's verdict finding that a 3.5% running royalty was appropriate. The royalty base that Dr. Becker used and that relates to Google is ten times greater than a royalty base that would support a $15.8 million award using the 3.5% running royalty rate. Because nothing in the record supports such a small royalty base, a new trial is appropriate.

The Federal Circuit has remanded erroneously low jury verdicts for new trials in other cases. For example, in *Richardson v. Suzuki Motor Co., Ltd.*, the evidence suggested a royalty rate of $2 or more. 868 F.2d 1226, 1240-41(Fed. Cir. 1989). The Federal Circuit vacated the jury's verdict where "there was no reasonable basis on which a reasonable jury could have found that fifty cents was a reasonable royalty." *Id.* The jury's unsupportable verdict in *Richardson* was attributed to an erroneous jury instruction. *Id.* Likewise, in *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* the Federal Circuit vacated a 5% royalty and ordered a new trial where

16

no evidence in the record supported that rate, but substantially higher rates were supported by the record.  836 F.2d 1320, 1328 (Fed. Cir. 1987).  As in *Richardson* and *Del Mar Avionics*, a new trial on the amount of Google's past damages is appropriate here.

### D.        The Jury Was Instructed To Use The Wrong Damages Period

Based on its laches ruling, this Court instructed the jury that damages commence on September 15, 2011.  Trial Tr. at 2113:15-19.  As described in I/P Engine's Rule 52(b) motion for amended findings on laches, filed herewith, this Court's laches ruling was error.  The jury should have been instructed that damages commenced on September 15, 2005.  Because the jury was instructed to omit six years of damages to which I/P Engine is entitled, the jury's verdict on the amount of past damages should be vacated and a new trial on the dollar amount of past damages should be granted.  *See Minks v. Polaris Indus.*, 546 F.3d 1364, 1376-77 (Fed. Cir. 2008) (vacating the district court's judgment on damages and remanding for a new trial on damages because, in part, a jury instruction had the potential to erroneously limit the damages period).

### E.        A New Damages Trial Is Required For AOL And Gannett

As explained in I/P Engine's laches motion, this Court improperly limited the damages period for AOL and Gannett based upon Defendants' representation that those two defendants were the beneficiaries of an indemnification agreement with Google.  Trial Tr. at 2019:23-2022:12.  Defendants never introduced those agreements into evidence.  Defendants bore the burden of proof on laches.  In the absence of evidence to the contrary, the proper damages period for those defendants is from September 15, 2005, to the present.

## IV.    CONCLUSION

For each of the foregoing reasons, the jury's responses to question III.C of the verdict form should be vacated and a new trial should be granted on the dollar amount of past damages.

Dated: December 18, 2012

By:  /s/ Jeffrey K.  Sherwood
Donald C.  Schultz (Virginia Bar No. 30531)
W.  Ryan Snow (Virginia Bar No. 47423)
CRENSHAW, WARE & MARTIN PLC
150 West Main Street
Norfolk, VA 23510
Telephone:      (757) 623-3000
Facsimile:      (757) 623-5735

Jeffrey K.  Sherwood (Virginia Bar No. 19222)
Frank C.  Cimino, Jr.
Kenneth W.  Brothers
Dawn Rudenko Albert
Charles J.  Monterio, Jr.
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone:      (202) 420-2200
Facsimile:      (202) 420-2201

Counsel for Plaintiff I/P Engine, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 18th day of December, 2012, the foregoing **PLAINTIFF I/P ENGINE, INC.'S MEMORANDUM IN SUPPORT OF ITS RULE 59 MOTION FOR A NEW TRIAL ON THE DOLLAR AMOUNT OF PAST DAMAGES** was served via the Court's CM/ECF system on the following:


Stephen Edward Noona
Kaufman & Canoles, P.C.
150 W Main St
Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com

David Bilsker
David Perlson
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

Robert L. Burns
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
robert.burns@finnegan.com

Cortney S. Alexander
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
cortney.alexander@finnegan.com


                                    /s/ Jeffrey K. Sherwood
                                  _____