**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| I/P ENGINE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civ. Action No. 2:11-cv-512 |
| | ) |
| AOL, INC. et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF I/P ENGINE, INC.'S MEMORANDUM IN**
**SUPPORT OF ITS MOTION FOR JUDGMENT UNDER RULE 52(B)**
**AND A NEW TRIAL UNDER RULE 59**

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY ................................................................. 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY RELATING TO
       LACHES .......................................................................................................... 2

III.   APPLICABLE STANDARDS OF LAW ......................................................... 7

       A.    Laches ................................................................................................... 7

             1.    Overall Procedure And Burdens Of Proof ................................. 7

             2.    Constructive Knowledge ............................................................ 8

             3.    Laches is a Personal Defense ..................................................... 9

       B.    Rule 52 Requires Notice And An Opportunity To Be Heard ............. 10

       C.    Fed. R. Civ. P. 59 ............................................................................... 11

IV.    ARGUMENT ................................................................................................. 11

       A.    The Court's Laches Ruling Should Be Reversed Because Of Multiple
             Procedural Errors ............................................................................... 11

             1.    The Court's Sua Sponte Ruling Violated Rule 52 .................... 11

             2.    The Court Improperly Precluded I/P Engine's Rebuttal Evidence ........... 13

             3.    The Court Improperly Shifted The Burden Of Proof ............... 15

             4.    The Court's Laches Ruling Violated The Due Process Clause ............... 16

       B.    The Court's Laches Ruling Should Be Reversed Because Of Multiple
             Substantive Errors .............................................................................. 16

             1.    Lycos Reasonably Investigated The Operations of AdWords ................. 16

             2.    The Court Erroneously Imputed Constructive Knowledge on Lycos
                   Based Upon The July 2005 Blog Post ..................................... 17

             3.    There is No Evidence Whatsoever of Any Prejudice Caused by
                   Any Delay by I/P Engine (or Lycos) in Bringing This Suit .................... 23

             4.    Laches Is A Personal Defense, And Cannot Limit The Damages Of
                   AOL Or Gannett In The Absence Of Evidence Of Indemnification ........ 29

V.     CONCLUSION ............................................................................................. 30

# TABLE OF AUTHORITIES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*
   960 F.2d 1020 (Fed. Cir. 1992) ........................................................................ passim

*ABB Robotics, Inc. v. GMFaunc Robotics Corp.*
   828 F.Supp. 1386 (E.D.  Wis. 1993) ........................................................................ 9

*ActiveVideo Networks v. Verizon Commc's*
   10 cv 248, D.I. 932 (E.D. Va. Aug. 2, 2011) ........................................................ 23

*Arbaugh v. Y & H Corp.,*
   546 U.S. 500, 514 (2006) ....................................................................................... 24

*Beam Laser Sys. v. Cox Communs., Inc.,*
   144 F. Supp. 2d 464 (E.D. Va. 2001) .................................................................... 21

*Davis v. Rodriguez,*
   364 F.3d 424 (2d Cir. 2004) ................................................................................... 11

*Decision Insights, Inc. v. Sentia Group, Inc.*
   416 Fed. Appx. 324 (4th Cir. 2011) ....................................................................... 23

*E. I. du Pont de Nemours & Co. v. Kolon Indus.*
   637 F.3d 435 (4th Cir. 2011). ................................................................................ 24

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*
   114 F.3d 1547 (Fed. Cir. 1997) .......................................................................... 9, 10

*Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*
   44 F. Supp. 2d 1149 (D. Kan. 1999). ..................................................................... 10

*Fountain v. Filson*
   336 U.S. 681 (1949) ......................................................................................... 11, 17

*Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*
   60 F.3d 770 (Fed. Cir. 1995) .................................................................................... 7

*Hall v. Aqua Queen Mfg., Inc.*
   93 F.3d 1548, 1553 (Fed Cir.1996) ........................................................................ 21

*Hearing Components, Inc. v. Shure Inc.*
   600 F.3d 1357 (Fed. Cir. 2010) ................................................................................ 8

*Humanscale Corp. v. CompX Int'l Inc.*
   2010 U.S. Dist. LEXIS 83881 (E.D. Va. Aug. 16, 2010). ...................................... 27

*Intirtool, Ltd. v. Texar Corp.*
  369 F.3d 1289 (Fed. Cir. 2004)..................................................................... 21, 22

*Israel Bio-Engineering Project v. Amgen*
  401 F.3d 1299 (Fed. Cir. 2005)..................................................................... 10, 32

*Johnston v. Standard Min. Co.*
  148 U.S. 360 (1893)............................................................................................ 9

*Lucent Technologies Inc. v. Gateway, Inc.*
  470 F. Supp. 2d 1187 (S.D. Cal. 2007)......................................................... 10, 32

*Markman v. Westview Instruments, Inc.*
  52 F.3d 967 (Fed. Cir. 1995)............................................................................ 29

*Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*
  576 F.3d 172 (4th Cir. 2009) ........................................................................... 24

*Meyers v. Asics Corp.*
  974 F.2d 1304 (Fed. Cir. 1992)....................................................................... 26

*Morrow Corp. v. Harleysville Mut. Ins. Co.*
  110 F. Supp. 2d 441 (E.D. Va. 2000) .............................................................. 12

*Nat'l Metal Finishing Co. v. Barclays American / Commercial, Inc.*
  899 F.2d 119, 123 (1st Cir. 1990)................................................................... 12

*Odetics, Inc. v. Storage Technology Corp.*
  919 F. Supp. 911 (E.D. Va. 1996). .......................................................... 26, 27, 32

*Patterson v. McLean Credit Union*
  Case No. 90-1729, 1991 U.S. App.  LEXIS 8274 (4th Cir. May 3, 1991). ....... 11, 18

*Sweetheart Plastics Inc. v. Detroit Forming, Inc.*
  743 F.2d 1039 (4th Cir. 1984). ..................................................................... 10, 32

*U.S. Philips Corp. v. ATI Technologies, Inc.*
  2008 WL 2073928 (S.D. N.Y. 2008)............................................................... 22

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*
  587 F.3d 1339 (Fed. Cir. 2009)........................................................... 9, 10, 18, 23

*United States Dev. Corp. v. Peoples Fed.  Sav.  & Loan Ass'n*
  873 F.2d 731 (4th Cir. 1989). ......................................................................... 11

*United States v. Poole*
   640 F.3d 114 (4th Cir. 2011). ................................................................................................. 11

*Wanlass v. Fedder Corp.*
   145 F.3d 1461 (Fed Cir. 1998) ............................................................................. 8, 16, 22, 23

*Wanlass v. General Elec.  Co.*
   148 F.3d 1334, 1338 (Fed. Cir. 1998) ........................................................................ 9, 21, 23

## I.     INTRODUCTION AND SUMMARY

The Court's October 31, 2012 oral ruling on laches was both procedurally improper and substantively incorrect.  Under Rule 52, the trial court is the first recourse for the correction of errors.  If the laches ruling was error, then there is no reason why this Court must adhere to it.  The Court should amend its findings regarding laches under Rule 52(b), and grant a new trial on the amount of damages under Rule 59.[1]

In making its laches determination, the Court made three critical procedural errors, each of which justifies the granting of this motion.  First, the Court issued its laches ruling *sua sponte*, with no notice to I/P Engine that the Court was going to rule on laches.  The Court did not permit I/P Engine to be "fully heard" on the issue as required by Rule 52(c).  Second, after the Court announced that it had resolved the disputed issue of fact of whether Google's July 2005 blog post was sufficient to trigger the laches clock and thereby shift the presumption, the Court refused to permit I/P Engine to introduce evidence and rebut that presumption.  Third, contrary to Federal Circuit law, the Court wrongly shifted the burden of proof on laches to I/P Engine, requiring I/P Engine to rebut *both elements* of laches by a *preponderance of the evidence*.

The Court also made several critical substantive errors. In finding constructive knowledge, the Court relied on a single July 18, 2005 blog post reasoning that Lycos had made no effort to learn how the accused system worked.  In so finding, the Court disregarded unrebutted evidence sufficient to overcome presumption. At trial Don Kosak, one of the inventors of the patents-in-suit, testified that between 2006 and 2009 he twice tried to find out from Google how its system operated.  The Court also disregarded evidence that Lycos was not using the accused AdWords system until 2006, and had no reason to know about the blog post in

---

[1] The new trial should be limited solely to the amount of damages accrued from September 15, 2005.  The jury's findings on infringement, validity, running royalty, and the 3.5% rate, should remain undisturbed.

2005. And because Google protected as a highly confidential trade secret how the accused AdWords system worked, it was improper to charge Lycos with constructive knowledge.

Finally, the record fails to support any finding of prejudice. The Court cited Defendants' proffer of deposition testimony of the inventors, as well as the Lycos Rule 30(b)(6) corporate representative, as allegedly showing lost evidence (memories). I/P Engine was not allowed to respond to Defendants' proffer of laches evidence either before or after the Court ruled. Significantly, during trial, Defendants did not ask a single question to the inventors about their alleged loss of memories, and the Court rejected Defendants' attempts to introduce into evidence the deposition transcript of Mark Blais, Lycos' 30(b)(6) representative. A review of those transcripts shows that they do not support the Court's finding of evidentiary prejudice.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY RELATING TO LACHES

Prior to the October 9, 2012 final pretrial conference, the parties were not in agreement with regard to the presentation of laches evidence. I/P Engine's position was that the laches evidence should be received outside of the presence of the jury. (D.I. 719 at V.A.7). Defendants argued that the jury should render an advisory verdict on laches. (*Id.* at V.B.5.; *see* D.I. 693 at 58-60 (Defendant's Proposed Laches Jury Instructions); D.I. 694 at 11).

At the final pretrial conference, the Court indicated that it would not submit the issue of laches to the jury, but that the Court instead would decide the issue after all evidence had been received. (Brothers Decl. ¶ 2).[2] The Court observed that it might be possible to elicit certain laches-related evidence from witnesses in front of the jury, but that other laches-related evidence would be received outside of the presence of the jury. *Id.* The Court never indicated when it would take this evidence, or when the record on the non-jury issues would be complete. *Id.*

---

[2] The pretrial conference was not transcribed.

As a result of the Court's instructions during the pretrial conference, Defendants withdrew their request that the jury provide an advisory verdict on laches. At no point prior to October 31 did the Court indicate that it would rule on laches before all evidence had been submitted or prior to the case being submitted to the jury. (Brothers Decl. ¶ 3). Counsel for I/P Engine understood that the Court would not rule on laches prior to the jury's verdict. (*Id.* ¶ 2; Sherwood Dec. ¶ 2; Rudenko Dec. ¶ 2; Snow Dec. ¶ 2).

Because laches was an affirmative defense, I/P Engine understood that it had no obligation to introduce any evidence regarding laches during its case in chief. Nevertheless, mindful of the Court's suggestion that laches evidence could be elicited from live witnesses, I/P Engine asked its inventors questions relevant to laches. (Trial Tr. at 327:14-331:25). On cross-examination, Mr. Kosak, a co-inventor of the asserted patents and the Lycos Chief Technical Officer between 2004 and 2009, gave further testimony relevant to laches when he explained how he twice tried to find out from Google how AdWords was operating. He testified:

> Q: And throughout the time that you were at Lycos, did you ever point out to anybody any thought that Google was infringing your patents?
>
> A: I didn't understand how AdSense or AdWords functioned at the time, so it didn't occur to me they were infringing. I had, at least two different occasions, poked at Google asking them specifically how AdSense or AdWords was operating when we had some problems with the system.

(Trial Tr. at 352:17-352:24). The Court overlooked this testimony when it verbally stated on October 31 that Lycos did nothing to determine how the AdWords system worked. (Trial Tr. at 1802:25-1803:6). In fact, Mr. Kosak made two independent attempts to find out from Google how "AdWords was operating", and Google declined to provide sufficient information that would have enabled an inventor to determine whether there was potential infringement.

3

Defendants made no attempt to elicit any evidence from either inventor during trial regarding any alleged evidentiary prejudice. They asked no questions of either Mr. Lang or Mr. Kosak regarding their allege loss of memories. Nor did Defendants ever introduce into evidence the deposition of Mark Blais, the Lycos Rule 30(b)(6) designee. On Monday, October 22, Defendants stated that they intended to call Mr. Blais by deposition on Thursday, Oct. 25. (Exh. 1). Defendants had previously designated certain Blais deposition testimony in the pretrial order, and I/P Engine's objections were also included in the pretrial order. (D.I. 719, Exh. D at 5-6). On October 22, Defendants served revised designations of Mr. Blais's testimony (Exh. 1) and I/P Engine reiterated its objections. (Exh. 4 and Exh. 5). Unable to resolve their differences, on October 25, counsel for the parties raised the Blais issue during the morning exchange in chambers. (Brothers Dec. ¶ 7). Counsel for Defendants (Mr. Nelson) explained in chambers that Defendants wanted to play a portion of Mr. Blais's testimony to the jury, but have the Court separately review other portions of his testimony for laches. *Id.* Mr. Nelson provided the Court with two separate binders of Mr. Blais' deposition testimony. *Id.* Counsel for I/P Engine (Mr. Brothers) explained that I/P Engine had objected to portions of Mr. Blais's proposed testimony, and provided the Court with a table of I/P Engine's objections. *Id.* Mr. Brothers also offered to the Court his own annotated copy of Mr. Blais's designated deposition testimony, which included handwritten notes of whether the testimony was intended for the jury, or the Court, and also listed I/P Engine's objections. *Id.* Mr. Nelson reviewed those annotations and agreed that it could be provided to the Court. *Id.*

The next morning in chambers, the Court indicated that it had reviewed the Blais designations, and had concluded that 95 percent of the proffered Blais testimony to which I/P Engine had objected was inadmissible, lacked foundation and contained speculation. (Trial Tr.

4

at 1676:18-20 (Court stating "95 percent of what Mr. Blais had to testify about in this case, having been called as a witness, would be inadmissible."). The Court invited Mr. Nelson to try to develop a revised set of designations. *Id.* Instead, Defendants dropped their effort to play any Blais testimony to the jury. *Id.* On Tuesday, October 30, Mr. Nelson indicated in chambers that Defendants might proffer a subset of the Blais testimony for laches purposes. *Id.* Mr. Brothers noted that such a proffer would be only for the Court, not the jury, and that I/P Engine would respond once it reviewed those new designations. *Id.*

Defendants rested on October 30, 2012. Minutes before they rested, Defendants proffered 87 pages of deposition testimony, in support of their laches defense. (Trial Tr. at 1768:21-1769:2). Immediately after Defendants rested, and consistent with Rule 50, I/P Engine verbally moved for judgment as a matter of law ("JMOL") on several issues, including Defendants' affirmative defenses of invalidity and laches. (Trial Tr. at 1775:22-1777:14). Defendants verbally opposed the motion. Defendants did not move for JMOL on laches on October 30, or at any earlier date.[3] The Court indicated that it would review Defendants' proffer before ruling on I/P Engine's motion. (Trial Tr. at 1785:11-18; 1789:16-18).

On the morning of October 31, the Court orally announced that it was granting Defendants' nonexistent laches motion. In three exchanges with counsel for I/P Engine that day, the Court insisted that I/P Engine had been on notice that the Court was considering Defendants'

---

[3] The Court denied Defendants' Rule 50 motion at the close of I/P Engine's case. That 20-point motion made no reference to laches, nor could it, because laches is an affirmative defense. Defendants filed their first and only Motion for Judgment as a Matter of Law Regarding Laches the morning of October 31, 2012. (D.I. 767 and 768). Counsel for I/P Engine did not see that motion until after their return from Court that day. (Brothers Dec. ¶ 5). In its ruling on the morning of October 31, the Court could not have been granting that motion, because it had been filed only hours before the Court made its ruling; I/P Engine had no opportunity to respond or be heard; and the Court stated that its laches ruling was based on its mistaken belief that Defendants had moved for judgment on October 30. (Trial Tr. at 1806:24-1807:25).

motion (which the Court later conceded had not been made), and that I/P Engine had been given an opportunity to submit all evidence.  (Trial Tr. at 1806:24-1807:25; 1935:10-1938:5; 1940:2-1945:10).  The Court stated that it would not consider any laches rebuttal evidence (Trial Tr. at 1941:21-22; 1944:22-1945:10), and specifically instructed I/P Engine not to file any motion for reconsideration until the Court had issued its written order.  (Trial Tr. at 1945:19-1946:6).

The Court's laches ruling was totally unexpected by I/P Engine.  As the Court acknowledged in its written order on November 20, Defendants had made no motion for judgment on October 30 or any earlier date.  (D.I. 800 at 1).  There is nothing in the record reflecting that the Court had placed I/P Engine on notice that it might rule on laches before the close of evidence.  In fact, I/P Engine was never placed on notice, and was not given an opportunity to be heard, before the Court announced its ruling.

The Court made its ruling after the parties had introduced all of their damages evidence.  Both parties had calculated damages starting from September 15, 2005.  No party had calculated damages commencing on September 15, 2011.  To help mitigate the unexpected laches ruling, and to permit the jury to decide the damages case on the evidence presented at trial, I/P Engine asked that the Court permit the jury to decide the case on the evidence, and apply the laches ruling after the jury's verdict, but the Court refused.  (Trial Tr. at 1811:19-1817:18).

The Court compounded the laches-ruling error by altering it in the middle of closing.  During the charge conference, I/P Engine cited case law showing that laches was a personal defense that was applicable only to Google.  (Brothers Dec. ¶ 11).  The Court ruled during the charge conference that the non-Google defendants could not claim laches, and drafted an instruction to that effect.  *Id*.  I/P Engine's summation proceeded on that basis, setting forth specific damage claims for AOL, IAC, Target, and Gannett.  (Trial Tr. at 2008:25-2009:2).

After I/P Engine's summation, but before the defense summation, Defendants' counsel, without notifying I/P Engine, provided the Court with another case indicating that if Google was indemnifying the co-defendants, they also could claim laches.[4]  Defendants asserted that Google was indemnifying the co-defendants, and cited two agreements with IAC and Target.  (Trial Tr. at 2019:24-2021:12; 2021:22-2022:2).  The Court accepted Defendants' representation, abandoned its earlier ruling, and applied laches to all Defendants (Trial Tr. at 2022:3-12) even though Google's agreements with AOL and Gannett were not in evidence. Gannett's agreement does not have any indemnification provisions that cover patent infringement. (Exh. 2).  In addition, during discovery, Google refused to admit that it was indemnifying any co-defendant, so there was an issue of fact regarding indemnity that the Court never resolved.  (Exh. 3).

## III.   APPLICABLE STANDARDS OF LAW

### A.     Laches

#### 1.     <u>Overall Procedure And Burdens Of Proof</u>

The Federal Circuit makes clear that at "all times," the defendant bears the ultimate burden of persuasion of the affirmative defense of laches.  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1037-38 (Fed. Cir. 1992).  Defendants must prove laches by a preponderance of the evidence.  *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773 (Fed. Cir. 1995).  To prevail on laches, Defendants must show (1) that I/P Engine delayed an unreasonable and inexcusable time from the time that Lycos knew or should have known of its claim against Defendants, and (2) that the delay resulted in material prejudice to Defendants.  *Id.*  Material prejudice to a defendant as a result of a plaintiff's delay "[i]s essential to the laches defense."  *Id.* at 1033.  This prejudice may be either economic or evidentiary in nature.  *Id.*

---

[4] Defendants' counsel did not disclose to I/P Engine's counsel that it had provided that case to the Court, and did not give a copy of the case to I/P Engine's counsel until after the Court stated that it was changing its ruling.  (Trial Tr. at 2018:3-12).

A presumption of laches arises where a patentee delays bringing suit for more than six years after the date that the patentee knew or should have known of the alleged infringer's activities.  Once a court determines that the presumption of laches applies, a *prima facie* defense of laches has been made.  *Wanlass v. Fedder Corp.*, 145 F.3d 1461, 1464 (Fed Cir. 1998) (*Wanlass II*).  With the presumption, unreasonable delay and prejudice are inferred.  *Id.*  But establishing the presumption does not dispose of the case.  A presumption has the effect of shifting the burden of going forward with evidence, but does not change the burden of persuasion.  *Id.* at 1037-38.  "The patentee then bears the burden only of coming forward with sufficient evidence to raise a genuine factual issue respecting the reasonableness of its conduct once the defendant shows delay in excess of six years."  *Id.* at 1039.  In other words, the presumption shifts the burden to the plaintiff of producing evidence "[t]hat would show *either* that [the plaintiff] was reasonable under the circumstances *or* that [the defendant] suffered neither economic nor evidentiary prejudice."  *Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010) (emphasis added).

### 2.        Constructive Knowledge

A plaintiff's delay in filing suit is measured from the time the patentee knew or reasonably should have known of the alleged infringers' activity.  *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997).  "The question of when a patentee 'knew or should have known' is one of fact."  *ABB Robotics, Inc. v. GMFaunc Robotics Corp.*, 828 F.Supp. 1386 (E.D. Wis. 1993).  In this case, the only evidence relied upon by Defendants for constructive knowledge is a July 2005 Google blog post, PX-176.  (Exh. 7).

Defendants never have argued that Lycos had actual knowledge of the blog post.  In the absence of actual knowledge, "[t]he plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a

man of ordinary intelligence the duty of inquiry." *Wanless v. General Elec. Co.*, 148 F.3d 1334,

1338 (Fed. Cir. 1998) (*Wanless I*) (quoting *Johnston v. Standard Min. Co.,* 148 U.S. 360, 370

(1893)).  For constructive knowledge to apply, the infringing activity must generally be "open

and notorious."  *Wanless II,* 145 F.3d at 1467 (vacating summary judgment where

"[i]nfringement could not be determined without purchasing the accused air conditioner,

dismantling it, and testing the motor inside").

The plaintiff is not chargeable with knowledge that was not available upon inquiry.

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1348-50 (Fed. Cir. 2009)

(vacating summary judgment where patentee did not have access to defendant's internal

manufacturing procedures and could not test defendant's finished product for existence of a

claim limitation).   The Federal Circuit has made clear that constructive knowledge may not be

imputed with regard to confidential trade secrets.  *Eastman Kodak*, 114 F.3d at 1559; *Ultimax*

*Cement Mfg. Corp.*, 587 F.3d at 1348-50.  Laches does not apply where the accused infringer

keeps its activities secret.  *Eastman Kodak*, 114 F.3d at 1559; *Ultimax Cement Mfg. Corp.*, 587

F.3d at 1348-50 ("An infringer does not escape liability merely by infringing in secret.").

### 3.        Laches is a Personal Defense

The doctrine of laches is a defense that is personal to each party.  *See*, e.g*., Israel Bio-*

*Engineering Project v. Amgen*, 401 F.3d 1299, 1306 (Fed. Cir. 2005); *Sweetheart Plastics Inc. v.*

*Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984).  Each defendant must show laches

independently.  *Lucent Technologies Inc. v. Gateway, Inc.*, 470 F. Supp. 2d 1187, 1192 (S.D.

Cal. 2007) (granting summary judgment dismissing customers' laches defense where customers

erroneously attempted to rely on patentee's alleged delays as to the manufacturer).  "A defendant

may not tack on the time of another party unless there is some formal transfer of the technology

and goodwill of the accused product." *Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 44 F. Supp. 2d 1149, 1156 (D. Kan. 1999) (quotations omitted).

### B.      Rule 52 Requires Notice And An Opportunity To Be Heard

A ruling under Rule 52 is similar to a Ruling under Rule 50.  "Although Rule 50(a)(1) 'authorizes the court to consider a motion for judgment as a matter of law as soon as a party has completed a presentation on a fact essential to that party's case[,] . . . in no event . . . should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact.'" *Davis v. Rodriguez,* 364 F.3d 424, 433 (2d Cir. 2004) (reversing JMOL when plaintiff was surprised by a contention and had no notice or opportunity to respond and be heard); *Fountain v. Filson*, 336 U.S. 681, 683 (1949) (reversing judgment because losing party was denied opportunity to dispute relevant facts).

Rule 52(c) allows the court to find against a party only "[i]f [the] party has been fully heard."  Indeed, an opportunity to be heard is a constitutional requirement.  *Patterson v. McLean Credit Union*, Case No. 90-1729, 1991 U.S. App.  LEXIS 8274, at *6-8 (4th Cir. May 3, 1991) (reversing judgment reasoning that "even the most open-and-shut disposition should be preceded by fair notice and an opportunity to be heard).  For this reason, a court shall not grant judgment *sua sponte.  See United States Dev. Corp. v. Peoples Fed.  Sav.  & Loan Ass'n*, 873 F.2d 731, 736 (4th Cir. 1989) (holding that *sua sponte* grant of summary judgment violated due process).

Under Federal Rule of Civil Procedure 52(b), a party may move, no later than 28 days after entry of judgment, for an order amending or adding to the Court's findings and amending the judgment accordingly.  Fed. R. Civ. P. 52(b).  A Rule 52(b) motion may be granted "to correct manifest errors of law or fact."  *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 110 F. Supp. 2d 441, 445 n.4 (E.D. Va. 2000).  This Court can and should correct errors of judgment under

Rule 52, instead of sending the case to the Federal Circuit.  "Under the rule, the trial court is the first recourse for the correction of errors.  If the errors, in its opinion, require reversal of its first judgment, we see no good reason why it must remain shackled to that judgment."  *Nat'l Metal Finishing Co. v. Barclays American / Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990).

### C.      Fed. R. Civ. P. 59

Rule 59 permits a new trial in view of any error of law that is prejudicial.  This includes erroneously rejecting evidence.  *See* Wright & Miller, Federal Practice and Procedure § 2805.  Defects in due process justify a new trial.  *Id.* (citing *V.I. Nat'l. Bank v. Tropical Ventures, Inc.*, 358 F. Supp. 1203, n.3 (D.V.I. 1973).  Indeed, Rule 59 permits new trials where entering the verdict "will result in a miscarriage of justice."  *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10cv121, 2010 U.S. Dist. LEXIS 119119, at *5 (E.D. Va. Nov. 9, 2010) (quoting *Atlas Food Sys. & Servs. Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)).  Violating I/P Engine's due process rights certainly meets this standard.

## IV.      ARGUMENT

### A.      The Court's Laches Ruling Should Be Reversed Because Of Multiple Procedural Errors

#### 1.      The Court's Sua Sponte Ruling Violated Rule 52

On October 31, the Court insisted that Defendants had made a laches JMOL motion on October 30.  (*See* Trial Tr. at 1807 ("a response yesterday to the motion for laches"), 1942 ("And then they made a motion, a JMOL on laches, and you stood up and you responded to it yesterday afternoon")), 1944 ("[y]ou didn't expect in any way to address  whether the defendant's [sic] motion for laches would be granted?").  But as the Court acknowledged in its written Order of November 20, there was no such pending motion; its ruling was made *sua sponte* under Rule 52(c).  (D.I. 800 at 1-2).

11

Respectfully, the contrast between the Court's statements on October 31, and its written Order of November 20, proves the procedural error of the Court.  I/P Engine never received notice that the Court would rule on laches prior to the close of evidence.  (Brothers Decl. ¶ 6).  I/P Engine was not given a full opportunity (or any opportunity) to be heard prior to the Court announcing its ruling.  These procedural defects cannot be cured by the Court's reliance on the provision in Rule 52 that a court may "[e]nter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence."  (D.I. 800 at 2).  Rule 52(a) requires notice, which usually comes in the form of a motion.  Rule 52(c) expressly precludes the entry of judgment until the "party has been fully heard."  *See* Wright and Miller, Federal Practice and Procedure § 2720, n.17.

Defendants did not move for JMOL on laches on October 30, or at any earlier date.  On the afternoon of October 30, after Defendants had called all of their witnesses, Defendants served an 87-page laches proffer.  This proffer allegedly provided support for evidentiary prejudice caused to Defendants by I/P Engine's delay.  It included deposition testimony from the inventors (Ken Lang and Don Kosak), and from Mark Blais, Lycos's 30(b)(6) representative.

When Defendants provided their 87-page laches proffer to the Court on October 30, it was the first time that I/P Engine saw it.  I/P Engine did not have an opportunity to review that laches proffer prior to Defendants resting.  I/P Engine's counsel understood that, consistent with the conversations with the Court in chambers, that I/P Engine would have an opportunity to review and respond to Defendants' laches proffer (including any new Blais designations since the Court had rejected all of the previous designations), because Defendants bore the burden of proof on that affirmative defense.  (Brothers Decl. ¶ 9).

As required by Rule 50(a), I/P Engine orally moved for JMOL on Defendants'
affirmative defenses, including invalidity and laches.  (Trial Tr. at 1771).  On laches, I/P Engine
noted that the only evidence that Defendants had cited was the July 2005 blog post that
Defendants' own witness said was inaccurate, and that was insufficient to meet their burden of
proof.  *Id.*  Defendants orally opposed.  (Trial Tr. at 1785:21-1789:2).

In its Order (D.I. 800 at 12, n.2), the Court stated, "It is unclear why Plaintiff would seek
resolution of the laches issue if it has not put into evidence all of its arguments on laches."
Defendants bore the burden of proof on laches.  I/P Engine sought a ruling under Rule 50(a) that
the Defendants had not set forth a *prima facie* case for laches. (Trial Tr. at 1775:22-1777:14).  If
the motion was granted, then I/P Engine would not have to respond.  Rule 50(a) requires notice,
which is commonly achieved through a motion.  This is common when the party bearing the
burden of proof rests, because they test whether the moving party's evidence is sufficient.  *See*
Wright & Miller, Federal Practice and Procedure § 2712.  Because I/P Engine's JMOL motion
was the only one pending, if the Court believed that Defendants had established the presumption
or otherwise provided sufficient evidence of laches, the most the Court should have done was to
deny I/P Engine's JMOL motion.  Instead, the Court made a serious procedural error when it *sua*
*sponte* ruled against I/P Engine on laches, without notice or an opportunity to be heard, in
violation of the requirements of Rule 52.

## 2. The Court Improperly Precluded I/P Engine's Rebuttal Evidence

On October 31, the Court announced that it had resolved the disputed issue of fact of
whether or not the presumption of laches should apply.  The Court cited Google's July 2005 blog
post, concluded that it put Lycos on constructive notice, found that more than six years had
passed before suit was filed, and that Google could benefit from the presumption of laches.
(Trial Tr. at 1803:19-1805:2).  The Court, however, then refused to allow I/P Engine to rebut the

13

presumption. (Trial Tr. at 1941:21-22; 1944:22-1945:10). This was procedural error. The law is clear that the plaintiff *must* be given an opportunity to supply evidence in rebuttal to the presumption because the presumption only shifts the burden of production to the plaintiff, not the burden of proof. "The presumption compels the production of this minimum quantum of evidence from the party against whom it operates, nothing more." *Aukerman*, 960 F.2d at 1037. The presumption does not decide the case. Indeed, the presumption "vanishes" once the patentee produces evidence sufficient to create an issue of fact as to either unreasonable delay or prejudice, regardless of whether the fact finder credits the evidence. *Id.* at 1038. Once rebutted with *any* evidence, "the presumption of laches plays no role in the ultimate decision," and Defendants bore the burden of showing both laches prongs. *Id.*

This Court misapplied the presumption in this case. Instead of affording I/P Engine the opportunity to present its rebuttal evidence once the Court found that the presumption applied, the Court announced its ruling and rejected outright I/P Engine's request to proffer rebuttal evidence. (Trial Tr. at 1945:2-4 ("[j]ust as a matter of policy, the Court will permit you to give it to me, but it's rejected")).[5] The Court's ruling underscores the prejudice of this procedural error. The Court found as a factual matter that the presumption applied, which presumed both laches prongs (unreasonable delay and prejudice), then immediately ruled that I/P Engine failed to rebut Defendants' evidence showing evidentiary prejudice. The only alleged evidence of evidentiary

---

[5] The Court indicated that I/P Engine waived its right to submit rebuttal evidence when it stated that its only rebuttal witness would be Dr. Carbonell. (Trial Tr. at 1867:22-1868:22). I/P Engine's comments regarding rebuttal witnesses were limited to issues for the jury to consider. I/P Engine understood that laches evidence would be received by the Court outside of the presence of the jury, and that the Court would decide the issue after the jury's verdict. (Brothers Decl. at ¶ 10). This understanding was based upon the Court's comments at the pretrial conference, as well as the discussions with the Court in chambers when it was considering the admissibility of the Blais deposition.

prejudice submitted by Defendants was the 87-page Laches Proffer.  I/P Engine never had an opportunity to rebut or respond to that proffer before the Court's ruling.

The Court's refusal to accept rebuttal evidence is contrary to Federal Circuit law.  Under *Wanless II*, the proper course was to shift the burden to I/P Engine, then permit it to "introduce evidence sufficient to support a finding of the nonexistence of the presumed facts."  145 F.3d at 1464.  Finding that the presumption had been established without permitting I/P Engine to rebuttal the evidence on laches was error and substantially prejudiced I/P Engine.

### 3.      The Court Improperly Shifted The Burden Of Proof

The Court erroneously shifted the burden of proof to I/P Engine to disprove laches.  In its written Order, the Court held that, once the presumption was met, I/P Engine bore the burden of proof to rebut *both elements* of laches by a *preponderance of the evidence*.  (D.I. 800 at 5).  This is reversible legal error.  The Federal Circuit has made clear that "at all times" the burden of proof remains with the defendant; a patentee *never* bears the burden of proof by a preponderance of evidence, or otherwise.  *Aukerman*, 960 F.2d at 1038-1039.  Once the patentee offers *any* evidence sufficient to create an issue of fact, the presumption "vanishes", "*even if such evidence may ultimately be rejected as not persuasive*."  *Id.* at 1038.  "The presumption compels the production of this *minimum quantum of evidence* from the party against whom it operates, *nothing more*."  *Aukerman*, 960 F.2d at 1037 (emphasis added).  The burden of production is met by showing "[e]*ither* that the … delay was reasonable *or* that the defendant suffered no prejudice or both.  By raising a genuine issue respecting either factual element of a laches defense, the presumption of laches is overcome." *Aukerman* , 960 F.2d at 1038; *see also Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1359-1360 (Fed. Cir. 2008).

Here, the Court misapplied the presumption by carrying it throughout its ruling, instead of having the presumption vanish in the face of I/P Engine's evidence, such as the Kosak

testimony that he "poked" Google to find out how AdWords worked, that Lycos was not using the accused system in 2005, and that Google keeps how its accused systems work as a trade secret. Because Defendants, not I/P Engine, always bore the ultimate burden of persuasion on laches, the Court's shifting of the burden of proof is error.

### 4.    The Court's Laches Ruling Violated The Due Process Clause

The Court's laches ruling violated the Constitution's Due Process Clause because I/P Engine had not yet had an opportunity to rebut Defendants' laches case. The Supreme Court has reversed judgments because the losing party was denied an opportunity to dispute the relevant facts. *Fountain v. Filson*, 336 U.S. 681, 683 (1949). The Fourth Circuit has done the same. *Patterson v. McLean Credit Union*, No. 90-1729, 1991 U.S. App. LEXIS 8274, at *6-8 (4th Cir. May 3, 1991).

### B.    The Court's Laches Ruling Should Be Reversed Because Of Multiple Substantive Errors

### 1.    Lycos Reasonably Investigated The Operations of AdWords

Don Kosak, a co-inventor of the asserted patents, and the Lycos Chief Technical Officer between 2004 and 2009, testified that he tried on two different occasions to understand how Google's AdWords system functioned. "I had, at least two different occasions, poked at Google asking them specifically how AdSense or AdWords was operating when we had some problems with the system." (Trial Tr. at 352:17-353:3). The Court overlooked this testimony when it orally stated on October 31 that Lycos did nothing to determine how the AdWords system worked. (Trial Tr. at 1802:25-1803:6).

By failing to credit Mr. Kosak's testimony, the Court ruled that the laches time period should run continuously from July 2005 to the present. But Lycos (through Kosak) made a reasonable effort to determine how Google's system worked between 2006 and 2009, but was

unable to find out because Google would not disclose any information.  In such a situation,

laches does not apply.  *See Ultimax Cement Mfg. Corp.*, 587 F.3d at 1349-50 ("An infringer does

not escape liability merely by infringing in secret.").

> **2.** **The Court Erroneously Imputed Constructive Knowledge on Lycos Based Upon The July 2005 Blog Post**

The Court imputed constructive knowledge of Google's infringing activities based on a

lone July 18, 2005 blog post on a Google AdWords-customer blog.  (Trial Tr. at 1801:10-

1805:2).  The Court's reliance on this blog post to impute constructive knowledge on Lycos is

error for three reasons.  First, Lycos was not a Google customer of AdWords until 2006, so it

was improper to attribute constructive knowledge of the customer-blog post to Lycos in 2005.

Second, Google admitted during trial that the blog was not "a technical prescription for how the

product works."  Thus, the blog was insufficient to put Lycos on notice of possible infringement

in 2005.  Third, Google kept the actual operation of AdWords a closely held trade secret, and a

patentee cannot be charged with constructive notice of a trade secret.

> **a.** **Lycos Was Not an AdWords Customer in 2005**

PX-176 was a single blog post posted on a Google customer blog for Google AdWords

customers.  Lycos was not a customer of AdWords/AdSense until 2006.  (D.I. 771 Exh. A (Blais

Decl.) ¶ 6 and Exh. B (Blais Dep.) at 33:6-34:15).  Prior to 2006, Lycos had its own search

advertising product called AdBuyer.  (D.I. 771, Exh. B at 40:4-14).  The only Google product

that Lycos was using prior to 2006 was called AdSense for Content (*Id*. at 40:4-14).  This is not,

and never was, an accused product in this case.  (D.I. 771 Exh. A ¶ 6; DX 21; DX 28, DX 255).

Thus, Lycos had no reason to read Google's blog directed to AdWords customers or to inquire as

to how AdWords/AdSense worked in 2005. (D.I. 771 Exh. A ¶¶ 3-5).

**b.** **The Blog Post Did Not Sufficiently Describe How AdWords Worked**

Mr. Alferness of Google testified that the blog was not "a technical prescription for how

the product works":

> Q.    **How much do you tell your customers about the way AdSense for Search works?**
>
> A.    **We don't go into much detail at all.  We talk about it generally at a fairly high level.**
>
> Q.    And why is that?
>
> A.    The details really aren't that important to our customers. **Additionally, they are -- you know, it's our important technology, our trade secrets, I'd say. . . .**
>
> Q.    Can we put up on the screen PX-176?  Do you know what this document is?
>
> A.    [Y]es. This is our Google Inside AdWords blog.  This is one of the mechanisms that we use to communicate to external folks, **customers and the like,** about changes that we are making to AdWords.

(Trial Tr. at 1047 (emphasis added)).

> Q.    Okay.  So during your direct testimony, you talked about PX-176. That's in your binder. Can you pull that up? . . .
>
> A.    **This is a document, a blog aimed at our external customers or advertisers**. We are trying to explain things to our **advertisers in a way such that they understand how to operate within the system**. We are talking about tens if not hundreds of thousands of advertisers, lay people here. **We are not prescribing in technical detail how the system works. . . .**
>
> Q.    **Is it, in fact, Google's official blog with respect to how AdWords works?**
>
> A.    **No.    This is our blog that talks to our advertisers, our customers, so that they can understand at a high level in some abstraction how the system** works so that they can perform well within that system**.**
>
> Q.    Mr. Alferness, please look at the top of the document PX-176. Does it say Google's official blog or not?

18

A.      The document says Google's official blog. **It is not, however, a technical prescription for how the product works.**

(Trial Tr. at 1080-82 (emphasis added)).   This single blog post could not provide Lycos with

sufficient information to trigger any further inquiry.   This fact was confirmed by the testimony of

Lycos's General Counsel, Mr. Blais (D.I. 771 Exh. A (Blais Decl.) ¶ 5):

> In my opinion, that blog post does not provide information regarding the internal operations of Google's Adwords system that would have caused me to commence an investigation into whether Google's Adwords system infringed the '420 or '664 patents.  The relevant portion of PX 176 is a single sentence that does not reveal any technical details of the operation of the Adwords system.  It does not say that Google combines, or filters, or otherwise performs any of the steps in either claim 10 of the '420 patent of (*sic*) claim 1 of the '664 patent.

### c.      The Blog Was Insufficiently Conspicuous to Put Lycos on Notice of Possible Infringement in 2005

The blog post is not the "kind of marketing document that the *Wanless* court cited as

putting a patentee on notice of possible infringement," as found by the Court (D.I. 800 at 10); *cf.*

*Wanless I*, 148 F.3d at 1338-39.  The cases where courts have found the laches clock to start had

either actual notice of infringement or truly conspicuous notice of the defendant's infringement.

*See, e.g., Wanless I*, 148 F.3d at1339 (defendant's "open and notorious sale of easily testable

products gave [plaintiff] the opportunity to discover the alleged infringement"); *Hall v. Aqua

Queen Mfg., Inc.*, 93 F.3d 1548, 1553 (Fed Cir.1996) (defendant "advertised heavily in trade

magazines" and "attended numerous trade shows" attended by the plaintiff); *Beam Laser Sys. v.

Cox Communs., Inc.*, 144 F. Supp. 2d 464, 469 (E.D. Va. 2001) (plaintiff saw and reviewed the

accused products during demonstrations, trade shows, product literature, and when participating

on an industry panel reviewing existing equipment and establishing industry standards).

Google's lone blog post is far less conspicuous than the types of activities that the

Federal Circuit and other courts have found ***failed*** to give rise to constructive notice.  For

19

example, in *Intirtool, Ltd. v. Texar Corp.*, the Federal Circuit reversed the district court's finding

of constructive knowledge even though the patentee had a "clear signal" that the customer had

acted on its plan to infringe.  369 F.3d 1289, 1297 (Fed. Cir. 2004).  The Court held that it was

an abuse of discretion to "place on [the patentee] the burden of policing [the customer's]

subsequent conduct."  *Id.* at 1298.  It was "[u]nwilling to stretch the concept of due diligence so

far."  *Id.*

By its laches ruling, this Court imposed a burden on Lycos to police the marketplace in a

manner inconsistent with *Intirtool*.  But a patentee has no obligation to police the industry in the

absence of "open and notorious" facts sufficient to commence an inquiry. *Wanless II*, 145 F.3d at

1467.  This Court required far more diligence than the law requires. *See U.S. Philips Corp. v.

ATI Technologies, Inc.*, 2008 WL 2073928, *3 (S.D. N.Y. 2008) (holding that press release

announcing product features, including the accused infringing feature, "was certainly not"

conspicuous enough to begin the laches clock).  The blog post here was less conspicuous than

the press release in *U.S. Philips Corp.*  Unlike in *Intirtool*, Lycos had no clear signal that Google

was infringing or planning to infringe its patents.  And unlike a press release, which is intended

to be read by a broad audience, Google's "Inside AdWords" 2005 blog-post was directed to

AdWords customers.  (Trial Tr. at 1081-1082).  Lycos was not a Google AdWords customer in

2005.  (D.I. 771, Exh. A ¶ 6).

### d.    How Google's AdWords and AdSense Systems Worked Was and Is Maintained by Google as a Trade Secret

Google protects as a trade secret how AdWords operates.  AdWords is Google's

"important technology, our trade secrets, I'd say."  (Trial Tr. at 1047).  This is extremely

important here because I/P Engine is only "[c]hargeable with such knowledge as [it] might have

obtained upon inquiry, provided the facts already known by [it] were such as to put upon a man

of ordinary intelligence the duty of inquiry." *Wanless I*, 148 F.3d at 1338 (citations omitted);

*Ultimax Ulitmax Cement Mfg. Corp.*, 587 F.3d at 1348-50  (summary judgment vacated where

patentee did not have access to defendant's internal manufacturing procedures and could not test

defendant's finished product for existence of a claim limitation).  I/P Engine had no obligation to

police the industry without some facts (infringing activity) that triggered a duty of inquiry.  That

triggering event must be "open and notorious." *Wanless II*, 145 F.3d at 1467.  It is axiomatic

that an activity cannot be open and notorious if it is maintained as a trade secret.  *See Decision*

*Insights, Inc. v. Sentia Group, Inc.*, 416 Fed. Appx. 324, 329 (4th Cir. 2011) (recognizing that a

trade secret is information "not generally known to, and not being readily ascertainable by proper

means by, other persons who can obtain economic value from its disclosure or use.").

      Lycos simply did not have access to Google's systems to test them or to know how they

worked.  *See Ultimax Cement*, 587 F.3d at 1348-50.  Even if Defendants had shown that Lycos

may have or even should have become aware of the 2005-blog post (which they did not and

cannot), there is no evidence that Lycos was aware of the "inner workings" of Google's accused

systems or "that it had access to this privileged information."  *See ActiveVideo Networks v.*

*Verizon Commc's*, 10-cv-248, D.I. 932, at 3 (E.D. Va. Aug. 2, 2011) (order denying laches).

      In its written order, the Court acknowledges (at 14) that the operation of the AdWords

system was kept as a trade secret by Google.  This should have ended the inquiry.  Instead, the

Court relied upon the fact that some language in the July 2005-blog post and two paragraphs of

I/P Engine's Complaint are "significantly similar."[6]  The Court reasoned that if the 2005-blog

---

[6] The Court (at 8) identified the AdWords Blog (where the 2005-blog post was posted) as the
"official blog with respect to the AdWords system."  In fact, Mr. Alferness testified the exact
opposite: Q:  Is it, in fact, Google's official blog with respect tohow AdWords works?  A. No.
This is our blog that talks to our advertisers, our customers, so that they can understand at a high

post was sufficient in 2011 to place I/P Engine on notice of potential infringement, it was sufficient to place Lycos on notice in 2005. *Id.* But the Complaint, of which the Court cites to only two paragraphs containing similar language (D.I. 1, ¶¶ 37, 43), is built upon far more evidence from 2007 forward. The single blog post is a very small portion of the Complaint, and was insufficient to put Lycos on notice of how AdWords actually operated. (D.I. 771, Exh. A ¶ 5). The Complaint should be taken as a whole, where all of the paragraphs (and information) combined provided the requisite information for I/P Engine to believe that Google was likely infringing its patents. *See e.g., E. I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 447 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety . . ."); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009) ("In reviewing the district court's dismissal under Rule 12(b)(6), we accept all factual allegations in the complaint as true, and we consider the complaint in its entirety . . .")(quotations omitted).

The laches issue before the Court was whether the 2005-blog post standing alone triggered a duty to investigate, not whether six years of ensuing information and Lycos' 2006 decision to become a Google customer triggered such a duty. There is no evidence that the July 2005 blog post standing alone was sufficient to place Lycos on notice *in July 2005* of Google's potential infringing activities.

---

level in some abstraction how the system works so that they can perform well within that system. (Trial Tr. at 1080-82).

### 3. There is No Evidence Whatsoever of Any Prejudice Caused by Any Delay by I/P Engine (or Lycos) in Bringing This Suit

The Court (D.I. 800 at 13) found evidentiary prejudice. In doing so, the Court relied on the 87-page Laches Proffer that Defendants submitted minutes before I/P Engine made its JMOL motion on October 30, 2012, and which I/P Engine was not given an opportunity to respond prior to the Court's ruling. The Court found this evidence to relate to "critical questions regarding Defendants' defenses and damages that went unanswered by Lang, Kosak and Lycos at their depositions." The Court's reliance and findings based on this evidence is not supported by the proffered depositions.

### a. Defendants Failed to Establish That Any Memories Were Lost Due to Delay

The Court erroneously shifted the burden to I/P Engine to show that allegedly "lost" memories were not a result of any alleged delay.

> Plaintiff must rebut the presumption of, in this case, evidentiary prejudice . . . I/P [Engine], however, has failed to provide any evidence (expert or otherwise) to support its contention that the memories of Mr. Lang, Mr. Kosak, or Lycos (institutionally) would be unimproved by being questioned earlier in relation to this suit.

(D.I. 800 at 13). But Defendants bear the burden of proof to show that a witness's memory was lost due to the delay. "It is … well settled that, to invoke the laches defense, *a defendant has the burden to prove* . . . the delay operated to the prejudice or injury of the defendant. . . . Such prejudice may be . . . the unreliability of memories of long past events." *Aukerman Co.*, 960 F.2d at 1038, emphasis added); *see also Odetics, Inc. v. Storage Technology Corp.*, 919 F. Supp. 911, 919 (E.D. Va. 1996) ("accused infringer must also show either evidentiary or economic prejudice"). Had the Court allowed I/P Engine to respond to Defendants' laches proffer, the Court would have seen that Defendants' evidence does not withstand scrutiny.

In their proffer, Defendants selected and identified excerpts from the deposition transcripts of Lang, Kosak and Blais where those witnesses testified that they could not remember or never knew an answer to a question. (D.I. 766). But Defendants never explained the relevance of the testimony to any issue or defense in this case. They never identified any prejudice, asserted an ability to defend any defense or to present a full and fair defense on the merits was hampered in any way. "Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient" to prove that the defendant suffered injury. *Meyers v. Asics Corp.,* 974 F.2d 1304, 1308 (Fed. Cir. 1992). Here, Defendants do not even make conclusory statements of lost evidence. Defendants did even less than what the *Meyers* court rejected as insufficient.

There must be evidence to show that important evidence (memories or otherwise) was lost due to the alleged delay. *Odetics*, 919 F.Supp. at 922; *see also Humanscale Corp. v. CompX Int'l Inc.*, 2010 U.S. Dist. LEXIS 83881, at *37-39 (E.D. Va. Aug. 16, 2010) (evidentiary prejudice is only established where "documents were lost or destroyed or memories faded" during the period of delay); *Aukerman*, 960 F.2d at 1038 ("patentee may eliminate the presumption by offering proof that no additional prejudice occurred in the six-year time period"). A witness not knowing or not recalling a fact fails to establish prejudice attributable to the alleged delay. *Id.*

**b.  None of the Inventors' Testimony that Defendants Cite in Their Laches Proffer is Relevant to Any Issue or Defense in this Case**

None of the testimony identified by Defendants is "critical" to any claim or defense in this case. Indeed, it is completely irrelevant. An inability to establish an irrelevant fact cannot hamper Defendants' ability to establish their claims or defenses. Defendants fail to cite to a

single excerpt that could reasonably be construed as lost evidence that has hindered their ability to defend themselves in this case.

The Lang and Kosak excerpts fall within four-general buckets: conception; non-prior art in the field; inequitable conduct; and claim construction.  Conception was not at issue in this case; inequitable conduct was not asserted; there was no contention that the prior systems developed by the inventors were relevant to validity; and the inventors' testimony on claim construction is irrelevant.  Further, the Blais excerpts, Lycos's 30(b)(6) corporate representative, do not fall within *any* noticed topics.  It is therefore pure speculation as to whether Lycos would have been unable to produce a competent witness to testify on these subjects.  The Defendants' evidence only shows that the Lycos' representative was not prepared to answer questions on subject that were not noticed for deposition.  This cannot possibly prove evidentiary prejudice.

(1)      Conception is Not at Issue in this Case

Defendants cite to Lang's testimony where he does not recall developing or testing a prototype of the patents-in-suit, or what Mr. Kosak contributed to the patents-in-suit.  (D.I. 766 at 2).  Defendants cite to testimony of Mr. Kosak where he could not remember the process of developing his invention or details about certain prototypes.  (D.I. 766 at 2-3).

The only issue that this testimony would relate to is conception and reduction to practice. There was no asserted claim or defense where conception or reduction to practice was at issue in this case.  There is no requirement that a prototype be built.  Nor is there a requirement that the inventors recall specific individual contributions to an invention.  There is no evidence (or even an assertion) how this testimony was relevant, how Defendants' case was prejudiced or that memory of these events was lost because of the alleged delay.

(2)     Inequitable Conduct Has Never Been Pled

Defendants cite to Lang's deposition where he did not remember if he did a prior art search before filing his patent applications or whether he provided information on "GroupLens" to his patent attorneys.  (D.I. 766 at 2).  There is no requirement that a prior art search be conducted before applying for a patent.  A patent's presumption of validity applies regardless of whether or not such a search is completed.  And GroupLens was not asserted by Defendants' expert as prior art.  Further, any issue regarding these lines of questions would only be relevant to an inequitable conduct defense, which was not asserted in this case.  There is no evidence (or even an assertion) how this testimony was relevant, how Defendants' case was prejudiced or that memory of these events was lost because of the alleged delay.

(3)     Non-Prior Art in the Field of Technology

Defendants cite testimony of Mr. Kosak where he could not identify the first system to *ever* combine content-based and collaborative filtering.  (D.I. 766 at 2).  Inventors are not required to know the state of the art either before or after their invention. There is no evidence that he ever knew this and forgot it because of the alleged delay or that such a fact is knowable.

Defendants also cite to testimony of Mr. Lang where he could not remember details of the operation of the "NewsWeeder" and "WiseWire" systems.  (D.I. 766 at 1).  NewsWeeder and the WiseWire Systems relate to inventions in earlier patents that were not asserted in this case. Defendants did not direct any interrogatories to the NewsWeeder or WiseWire systems.  They did not assert either system as prior art.  Nor did they submit any of the many NewsWeeder and WiseWire documents that were produced in this case into evidence (many of which described in detail the operations of the systems).  There is no evidence (or even an assertion) how this testimony was relevant, how Defendants' case was prejudiced or that memory of these systems was lost because of the alleged delay.

26

(4)        Inventor Testimony Regarding Claim Construction is
          Irrelevant

Defendants cite to testimony by Lang that he did not remember how he would have

defined "adaptive filtering" in 1998, and by Kosak that he could not recall whether he thought in

1998 that a system for scanning a network was different from a system for searching a network.

(D.I. 766 at 1 and 3). These topics only relate to Mr. Lang's and Mr. Kosak's opinions on claim

construction. But their opinions are irrelevant to the Court's claim construction, and therefore do

nothing to hinder Defendants' case. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983

(Fed. Cir. 1995) (en banc). There is no evidence (or even an assertion) of how this testimony

was relevant, of how Defendants' case was prejudiced or that memory of these events were lost

because of the alleged delay.

### c.        The Blais Testimony Does Not Support Laches

(1)        The Blais Testimony is Inadmissible

The Court ruled that virtually all of the Blais testimony was inadmissible because it

related to events that occurred before Mr. Blais joined Lycos . (*See* Trial Tr. at 1676:16-1679:1).

The Court may not rely on plainly inadmissible testimony to support its laches finding. *See*

*United States v. Poole*, 640 F.3d 114, 120 (4th Cir. 2011) (when the Court sits as the trier of fact

on an issue, it is presumed that the Court's decision is based on admissible evidence.).

(2)        None of the Testimony of Mr. Blais Related to Any
          Noticed 30(b)(6) Topic

Defendants subpoenaed Lycos under Rule 30(b)(6) to testify regarding specific noticed

topics. (Exh. 6). Mr. Blais was the Lycos designee. ***None*** of the excerpts identified in

Defendants' proffer related to the noticed topics. There was no obligation for Mr. Blais to be

prepared to testify regarding ***unnoticed*** topics. Lycos had no notice that it should prepare to

answer questions relating to subjects that were outside the scope of the notice. For example,

27

Lycos had no notice that is should prepare to answer questions relating to what Lycos did in 1998 in buying WiseWire (before the patents-in-suit were even filed).  At the very least, Lycos's inability to do so should not be used as evidence of some type of evidentiary prejudice used to support Defendants' laches arguments.  Defendants never complained that Lycos was unprepared; they never sought a second deposition.  Indeed, they never made any effort to obtain this "critical" evidence from Lycos or any other source.

This is only compounded by the fact that Mr. Blais began working at Lycos in January 2005.  (D.I. 771, Exh. B at 8:9-13).  His answers did not relate to information that he forgot over time or because of some alleged delay.  It was information that he never had.  For example, the witness testified regarding the June 2005 Overture-Lycos agreement: "I honestly don't know. I didn't negotiate the financial terms of this."  (D.I. 818-2 at 104:2).  Blais lacked knowledge because he did not negotiate the license, not because of any alleged delay.  Defendants did not attempt to depose either Overture or the Lycos attorney who was involved in negotiating the financial terms of the Overture-Lycos agreement.   There is no evidence that either was unavailable or unable to testify about this agreement.

Setting all of this aside, none of the subjects identified by Defendants have any material relevance to any claim or defense in this case.  What Lycos did in 1998 in buying WiseWire (before the patents-in-suit were even filed), or how third-parties Terra Networks or Daum Communications (not even Lycos) evaluated Lycos's intellectual property in 2000 and 2004 are not relevant.  Nor can Lycos be expected (at any time) to know what a third-party, former owner did or thought eight and twelve years prior.  Also irrelevant to this case is the Overture-Lycos agreement and any amount of revenue Lycos earned from its partnership with Google.  No expert relied on this agreement or this type of revenue information.  Tellingly, Defendants did not seek

production of the revenues from the Google partnership (information that Google itself would possess).  The *only* documents that Defendants subpoenaed from Lycos were Lycos's agreements relating to the licensing of patent rights related to Internet search and advertising from 2002-2006.  (Exh. 6 at 8).  Nothing else.

Defendants' argument that Mr. Blais could not recall Lycos's corporate policies regarding patent enforcement and licensing in *2004* is equally meritless.  Defendants' noticed topic was "Lycos's patent licensing policies and practices."  (Exh. 6).  There is no indication whatsoever that Mr. Blais was to prepare testimony on Lycos's policies eight years prior—before even any infringement was alleged to have begun.  And Blais testified that he did not know about 2004, not that he couldn't recall.  (D.I. 818-1 at 51:9-13).  Another Lycos witness, with proper notice, might well have provided that evidence testimony.  Notably, Blais testified about 2005 and 2006 policies without difficulty.  (D.I. 818-1 at 51:14-52:2).

### 4. Laches Is A Personal Defense, And Cannot Limit The Damages Of AOL Or Gannett In The Absence Of Evidence Of Indemnification

The doctrine of laches is a defense that is personal to each party.  *See, e.g., Israel Bio-Engineering Project v. Amgen,* 401 F.3d 1299, 1306 (Fed. Cir. 2005); *Sweetheart Plastics Inc. v. Detroit Forming, Inc.,* 743 F.2d 1039, 1046 (4th Cir. 1984).  It must be shown for each and every defendant.  *Lucent Technologies Inc. v. Gateway, Inc.*, 470 F.Supp.2d 1187, 1191-92 (S.D. Cal. 2007) (dismissing laches claims of indemnified customers because the indemnified customers relied only on evidence of the relationship between the plaintiff and the manufacturer).  On November 1, during the charge conference, and before closing arguments, the Court ruled relied on those cases and ruled that the laches defense was not available to the non-Google defendants.  I/P Engine relied upon the Court's ruling and made its closing argument in which it asked the

jury to award the full amount of damages from the non-Google defendants.  (Trial Tr. at 2008:25-2009:2).

At some point on November 1, counsel for Defendants provided the Court with a copy of the *Odetics* decision.  I/P Engine was not advised of this fact, and was not provided a copy of the decision by Defendants' counsel.  The Court apparently reviewed the decision in chambers, then returned to the bench and announced that it was changing its ruling regarding laches.  The Court ruled that Google's customers who are indemnified should also enjoy the benefit of the defense. (Trial Tr. at 2022:3-12; *see also* D.I. 800 at 15).  At trial, Defendants represented that all the non-Google defendants had indemnification agreements.  (Trial Tr. at 2019:24-2021:12; 2021:22-2022:2).  In its Order, the Court cites to the indemnification clause in PX-242, which is Google's Agreement with IAC.  (D.I. 800 at 15).

Defendants did not introduce into evidence either the AOL or Gannett agreements with Google, and failed to sponsor any evidence that those parties were indemnified.  Instead, Defendants falsely represented to the Court, without introducing evidence, that all non-Google defendants were indemnified.  This error alone requires a new trial on damages with regard to AOL and Gannett.  For example, the agreement between Google and Gannett does not contain any patent-indemnification provision.  (Exh. 2).  In fact, during discovery, Google expressly refused to admit that it was indemnifying the other defendants.  (Exh. 3).  At the very least, this was a factual issue that was required to be resolved prior to any final judgment on the issue.

## V.      CONCLUSION

The Court should amend its findings regarding laches under Rule 52(b), and grant a new trial on the amount of damages under Rule 59.  The new trial should be limited solely to the amount of damages accrued from September 15, 2005.  The jury's findings on infringement, validity, running royalty, and the 3.5% rate, should remain undisturbed.

Dated: December 18, 2012

By:  /s/ Jeffrey K.  Sherwood
Donald C.  Schultz (Virginia Bar No. 30531)
W.  Ryan Snow (Virginia Bar No. 47423)
CRENSHAW, WARE & MARTIN PLC
150 West Main Street
Norfolk, VA 23510
Telephone:      (757) 623-3000
Facsimile:      (757) 623-5735

Jeffrey K.  Sherwood (Virginia Bar No. 19222)
Frank C.  Cimino, Jr.
Kenneth W.  Brothers
Dawn Rudenko Albert
Charles J.  Monterio, Jr.
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone:      (202) 420-2200
Facsimile:      (202) 420-2201

Counsel for Plaintiff I/P Engine, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of December, 2012, the foregoing **PLAINTIFF I/P ENGINE, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT UNDER RULE 52(B) AND A NEW TRIAL UNDER RULE 59**, was served via the Court's CM/ECF system on the following:

Stephen Edward Noona
Kaufman & Canoles, P.C.
150 W Main St
Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com

David Bilsker
David Perlson
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

Robert L. Burns
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
robert.burns@finnegan.com

Cortney S. Alexander
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
cortney.alexander@finnegan.com

                                             /s/ Jeffrey K. Sherwood