# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF VIRGINIA (NORFOLK DIVISION)

|  |  |
|---|---|
| I/P ENGINE, INC. | |
| Plaintiff, | |
| v. | Civil Action No. 2:11-cv-512 |
| AOL, INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 59 MOTION FOR A NEW TRIAL ON THE DOLLAR AMOUNT OF DAMAGES

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

I.   I/P ENGINE WAS NOT PRECLUDED FROM SEEKING DAMAGES FOR
     THE APPROPRIATE, POST-COMPLAINT PERIOD ........................................... 4

II.  THE COURT DID NOT ERR IN ITS "TIMING" OF THE LACHES RULING ............. 6

     A.   I/P Engine Was Fully Aware of the Court's Intention to Rule on Laches............... 6

     B.   I/P Engine Had Every Opportunity to Make Its Arguments on Damages ............... 7

     C.   The Timing Of The Laches Ruling Did Not Cause Jury Confusion......................... 9

     D.   The Court's Supplemental Jury Instructions Were Correct .................................. 11

III. THE COURT PROPERLY EXCLUDED TOTAL ADWORDS REVENUE ................. 12

     A.   Evidence of Overall AdWords Revenues Was Not Relevant ................................ 12

     B.   The Court Correctly Found That Evidence Of Overall AdWords Revenue
          Was Prejudicial, Confusing, And A Waste of Time ............................................. 14

          1.   *Uniloc* and *LaserDynamics* Hold That Evidence of Overall
               Revenue Is Inherently Prejudicial.............................................................. 14

          2.   I/P Engine Fails to Distinguish *Uniloc* and *LaserDynamics* .................... 15

          3.   Admission of Evidence of Total AdWords Revenue Would Have
               Multiplied the Proceedings and Confused the Jury .................................... 19

     C.   I/P Engine Fails to Identify Any Prejudice From Exclusion of Total
          AdWords Revenue ............................................................................................... 21

     D.   I/P Engine Is Not Entitled to Judgment as a Matter of Law Regarding the
          Form of the Reasonable Royalty .......................................................................... 23

IV.  THE DAMAGES AWARD AGAINST GOOGLE IS NOT "OUTRAGEOUSLY
     LOW," INCONSISTENT, OR UNSUPPORTED BY SUBSTANTIAL
     EVIDENCE ........................................................................................................... 23

i

V.      A NEW TRIAL COULD NOT BE ACCOMPLISHED IN A DAY ................................ 26

CONCLUSION ............................................................................................................................... 27

## INTRODUCTION

I/P Engine's motion for a new trial on damages is based on three fundamentally flawed premises: *First*, that I/P Engine was somehow surprised by the fact that Defendants pursued a laches defense; *Second*, that the Court somehow precluded I/P Engine from introducing evidence of a royalty base for the post-complaint damages period; and *Third*, that despite failing to introduce evidence of a post-complaint royalty base, I/P Engine had a right to argue for damages that had no support in the record. None of these contentions are supported by the actual events at trial or the law.

Contrary to I/P Engine's contentions, the Court did not prevent it from introducing evidence of a royalty base for the post-complaint damages period. Instead, the problems with I/P Engine's unsupported damages arguments were of its own making. I/P Engine has been on notice of Defendants' laches defense since the outset of this case. It has known full well that its damages may be limited to those that accrued after the filing of the Complaint. Despite this knowledge, I/P Engine chose to proceed at trial as if laches was not at issue and decided not to introduce any evidence of a royalty base for the post-complaint period. I/P Engine's reckless strategy is no basis for the new trial that it now seeks. If anything, the lack of evidence on damages actually warrants judgment as a matter of law against I/P Engine based on its complete failure of proof on critical issues for which it bore the burden at trial.

## BACKGROUND

I/P Engine filed its Complaint on September 15, 2011, more than six years after its predecessor-in-interest, Lycos, first had constructive knowledge of alleged infringement. (D.N. 800, 8, 16.) Because of this delay, Defendants pled the defense of laches in their Answers (D.N. 45, 20-21; D.N. 58, 19; D.N. 59, 16; D.N. 60, 17; D.N. 61, 17), and moved for summary judgment on the defense at the close of discovery. (D.N. 238, 38-40.) As is well-established and

this Court has held, laches in patent cases bars recovery of damages for the period before the

filing of the Complaint. (D.N. 800, 2.) I/P Engine has therefore been on notice since the outset

of this litigation that its entitlement to pre-filing damages was sharply disputed.

Nevertheless, I/P Engine proceeded at trial as if the defense was not at issue. As part of a

clear strategy to present the largest possible revenue numbers to the jury, I/P Engine introduced

evidence of Defendants' "apportioned" revenue from 2005 through 2012 as aggregate totals.

(Trial Tr., 832.)



(D.N. 836-1, PDX077.) As I/P Engine acknowledges, its damages expert, Dr. Becker "provided

testimony covering the entire claimed damages period, from September 15, 2005 through

September 30, 2012 . . . ." (Motion, 4.) Although I/P Engine was aware of the pending laches

defense, which, if successful, would limit damages to those incurred after the filing of the

Complaint, I/P Engine chose not to introduce any evidence breaking the royalty base out by year,

quarter, or month, and not to introduce any evidence of what portion was incurred post-complaint.

(Trial Tr., 833.) Instead, it attempted to place the largest revenue numbers in front of the jury that

it possibly could.  As a result of I/P Engine's own strategy, there was no evidence in the trial record of a royalty base or damages limited to the post-complaint period.

## LEGAL STANDARD

The district court may grant a new trial where "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996).  "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *E.E.O.C. v. Marion Motel Assoc.*, 763 F. Supp. 1338, 1341 (W.D.N.C. 1991) (quoting 11C Wright & Miller, Federal Practice and Procedure § 2803 (1973)).

Where the alleged miscarriage of justice is premised on an improper jury instruction, a new trial is not warranted unless the instructions "as a whole clearly misled the jury." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004) (quoting *Delta-X Corp. v. Baker Hughes Prod. Tools., Inc.*, 984 F.2d 410, 415 (Fed. Cir. 1993)).  The movant must have made "a request for alternative instructions which could have corrected the flaws." *Id.* (quoting *Delta-X*, 984 F.2d at 415).  The failure to object to the instruction constitutes waiver. *Pathways Psychosocial v. Town of Leonardtown, MD*, 223 F. Supp. 2d 699, 707 (D. Md. 2002).

Where the alleged miscarriage of justice is premised on the allegedly improper exclusion of evidence, the movant must show that the district court's evidentiary ruling was erroneous and caused prejudice.  Fed. R. Civ. P. 61; *Dent v. Siegelbaum*, No. 08-886, 2012 WL 718835, at *2 (D. Md. Mar. 5, 2012).  Harmless error is not grounds for a new trial. *See* Fed. R. Civ. P. 61.

# ARGUMENT

## I.   I/P ENGINE WAS NOT PRECLUDED FROM SEEKING DAMAGES FOR THE APPROPRIATE, POST-COMPLAINT PERIOD

I/P Engine goes to great lengths to blame the Court's procedure for resolving laches for "precluding" it from introducing evidence of damages after the date of the filing of the Complaint. (Motion, 3-7.) Notably absent from I/P Engine's motion, however, is an identification of any ruling or order that excluded any proffered damages evidence for that time period. The Court never excluded any such evidence. Instead, I/P Engine, whether through inadvertence or for strategic reasons, *chose* not to introduce any damages figure or royalty base evidence for the period between the filing of the Complaint and trial. I/P Engine's suggestion to the contrary is flatly contradicted by the record at trial.

I/P Engine's failure of proof on damages was a problem of its own making. As described above, I/P Engine has been aware of the laches defense throughout this case.[1] Further, I/P Engine was aware at least as early as September 21, 2012 that Defendants contended that I/P Engine could not prove that there had been any infringement prior to 2010. (D.N. 320, 1-2, 9-10.) I/P Engine was therefore on notice that its entitlement to extensive pre-complaint damages was in question and that it could be limited to those damages it could prove for the post-complaint period. I/P Engine simply chose not to introduce evidence from which a jury could calculate such damages.[2] This is grounds for judgment as a matter of law against I/P Engine, not a new trial.

---

[1]   Defendants are at a loss as to how I/P Engine can make the false claim that "[p]rior to the Court's laches ruling on October 31, 2012, there was no motion, or even suggestion, either by this Court or Defendants during trial that the time period for damages should commence on September 15, 2011." (Motion, 4.) Defendants have made this contention since they filed their Answers pleading laches at the very start of this case.

[2]   In light of this complete failure of proof, Defendants have moved for judgment as a matter

I/P Engine nevertheless faults the Court for "declin[ing] to permit I/P Engine to refer to a specific damages number for Google or use a demonstrative that reflected the royalties from September 15, 2011 through September 30, 2012." (Motion, 4.) Yet I/P Engine again fails to identify any evidence in the record that would support a specific damages number for the appropriate post-complaint period. To allow I/P Engine to attempt to break out a royalty base or damages figure for the post-complaint period, when neither the testimony nor any exhibit contains such information, would have "violated a fundamental rule, known to every lawyer, that argument is limited to the facts in evidence." *United States v. Wilson*, 135 F.3d 291, 298 (4th Cir. 1998) (quoting *United States ex rel. Shaw v. De Robertis*, 755 F.2d 1279, 1281 (7th Cir. 1985)).[3]

The only "evidence" that I/P Engine even mentions in its motion are demonstrative exhibits. Demonstrative exhibits are not evidence. *United States v. Buck*, 324 F.3d 786, 790 (5th Cir. 2003) (holding that demonstratives are not evidence and Rule 611 is meant to allow pedagogical aides to clarify evidence that has already been admitted).[4] Indeed, during trial, I/P Engine and the Court several times noted that demonstratives were not admitted into evidence. (Trial Tr., 832-33, 1464-65, 1962-63, 2119-21.) Even if such demonstratives were evidence, none of them contain an actual post-complaint royalty base broken down for each Defendant. I/P

---

of law on the grounds that I/P Engine failed to introduce substantial evidence to support a damages award covering the post-complaint period because it offered no evidence of a royalty base. (D.N. 833.) That motion is currently pending.

[3] *See also Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1380 (Fed. Cir. 2005) (district court did not abuse discretion in vacating damages award where patentee relied on misleading demonstrative not supported by record evidence during closings); *Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 2:10-cv-837, 2012 WL 1067941, at *5 (S.D. W.Va. Mar. 29, 2012) ("The content of closing arguments is limited to the scope of evidence presented at trial and reasonable inferences therefrom.").

[4] *See also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 535 F. Supp. 2d 580, 584 (E.D. Va. 2008); *Pritt v. United States*, No. Civ.A. 601-1045, 2002 WL 32438757, at *4 (S.D. W. Va. July 30, 2002) ("Demonstrative exhibits do not constitute evidence.").

Engine itself describes its demonstratives as containing only "vaguaries." (Motion, 5.)  The

Court was therefore correct to limit I/P Engine's closing argument to the evidence in the record.

The fact that I/P Engine could cite only demonstratives to support its damages claim justifies

judgment as a matter of law against it, not a new trial.

## II.    THE COURT DID NOT ERR IN ITS "TIMING" OF THE LACHES RULING

I/P Engine faults the Court for the "timing" of the laches ruling. (Motion, 5-6.)  But

contrary to I/P Engine's argument, the Court ruled after the parties had been given notice and a full

opportunity to present their arguments on laches.  Then, after I/P Engine made its initial closing,

the Court ruled that it would instruct the jury that the laches defense applied to all Defendants, and

not just Google, because I/P Engine's earlier representations regarding the applicability of the

laches bar were wrong.  I/P Engine's challenge to these procedures is unavailing because the

argument is waived, the ruling was correct, and I/P Engine has failed to demonstrate any prejudice.

### A.    I/P Engine Was Fully Aware of the Court's Intention to Rule on Laches

As an initial matter, I/P Engine does not dispute in this motion that laches not only bars

pre-complaint damages against Google, but also pre-complaint damages against any customer that

uses the accused product and will be indemnified by Google for any consequential patent

infringement liability. (*See* D.N. 800, 14-15 (citing *Odetics, Inc. v. Storage Tech. Corp.*, 919 F.

Supp. 911, 925-26 (E.D. Va. 1996), *vacated on other grounds*, 116 F.3d 1497 (Fed. Cir. 1997)).)

I/P Engine contends, however, that the Court erred in its "timing" of its laches ruling with respect

to Google's Codefendants.

I/P Engine's argument fails because it was not prejudiced by the timing of the Court's

ruling.  During trial, Defendants filed a proffer of evidence in support of their laches defense

(D.N. 766), and at the close of Defendants' case, I/P Engine moved for judgment as a matter of

law. (Trial Tr., 1771.)  Thereafter the Court gave clear notice that it intended to rule on laches

the following morning. (*Id.*, 1785.) Defendants responded that laches should apply. (*Id.*, 1785-89.) Following argument on I/P Engine's motion, Defendants filed their own motion for JMOL on laches. (D.N. 767.) On October 31, the Court ruled that pre-suit damages were barred by laches. (Trial Tr., 1800-05.) It was only after the Court ruled that I/P Engine first complained about the timing of the Court's ruling.[5] But the Court gave both parties advance notice of its intention to rule on the pending laches motions. I/P Engine cannot now argue that it was somehow "surprised" by the timing of that ruling.[6]

### B.     I/P Engine Had Every Opportunity to Make Its Arguments on Damages

Given that the Court's laches ruling would impact the closing arguments on damages, the night before closing arguments Defendants twice emailed I/P Engine seeking information on "(1) what evidence concerning the royalty base Plaintiff intends to rely on during closing, (2) what arguments Plaintiff intends to make regarding the amount of any running royalty damages, and (3) what curative jury instruction Plaintiff proposes the Court give with respect to the damages period." (Declaration of Dave Nelson in Support of Defendants' Opposition to Plaintiff's Motion for Judgment Under Rule 52(b) and a New Trial Under Rule 59 on Laches, Exs. A-B.) I/P Engine did not respond to either email. (*Id.*, ¶¶ 2-3.)

Instead, the morning after the Court's ruling and just before closing arguments, I/P Engine argued for the first time that laches should only apply to Google and not the other

---

[5] As set forth in the Defendants' Opposition to I/P Engine's Rule 52(b) Motion on Laches, I/P Engine had a full and fair opportunity to litigate  and argue the laches issue; the Court was right to reject these arguments as "Johnny come lately" arguments and as "an attempt to game the trial court." (Trial Tr., 1936, 1944-1945.)

[6]  I/P Engine incorporates by reference its argument from its Rule 52(b) motion that the Court's laches rulings were error. (Motion, 17.) As stated in Defendants' opposition to that motion, which they incorporate here by reference, the Court's substantive rulings on laches were correct and do not warrant a new trial.

Defendants. Initially, the Court adopted that argument. (Motion, 5.) I/P Engine then made its closing argument to the jury, during which it stated that damages from Google were "limited to the last four quarters, so back to the fourth quarter of last year." (Trial Tr., 2008.) But due to its failure to introduce any evidence of what the royalty base for that four-quarter period was, I/P Engine was unable to direct the jury to any particular amount. Instead, it told the jury to "rely on your memory and judgment" to determine a royalty for Google. (*Id.*; *see also* D.N. 834, 7-10.)

Following I/P Engine's closing argument, the Court revised its laches ruling based on *Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911 (E.D. Va. 1996), which contradicted I/P Engine's previous argument that laches should apply only to Google and not the other Defendants. (Trial Tr., 2016-22.) Under *Odetics*, laches applied at least to any Defendant that was being indemnified by Google. The Court gave I/P Engine five additional minutes for its rebuttal argument so that it could "deal with the issue of damages in view of the Court's ruling." (*Id.*, 2023-24.) Although I/P Engine disagreed with the revised jury instruction on laches, it did not object that the timing of the ruling was unfair or improper under the circumstances.

Despite being allotted five additional minutes to address the laches ruling in its rebuttal, I/P Engine mentioned that issue only in passing. The entirety of its rebuttal concerning the royalty base in light of the laches ruling amounts to only five sentences, during which I/P Engine simply told the jury to look at a single demonstrative slide:

> So when it comes to determining a royalty, as you have heard the Court has made a ruling, an additional ruling since I was up here before, with respect to what the scope of recovery is. And the scope of recovery is going to be limited for all defendants to the period September 15 forward to the present day. September 15, 2011, excuse me. So this is what you have to look at with respect to how to calculate the damages in this case, which is the last four quarters, and these amounts are cumulative. In other words, each bar on here reflects a different amount of money, a per quarter cumulation of revenue as a result of using the infringing system.

(*Id.*, 2069-70.)



(D.N. 836-6, PDX441.)  This slide was, however, simply a demonstrative exhibit, and therefore

not evidence, did not break out the royalty base by Defendant, and did not even clearly indicate

how much money each bar in the chart corresponded to.  (*See* D.N. 834, 12-13.)  I/P Engine did

not direct the jury to any actual evidence in the record on which the jury could rely in reaching

its verdict on damages.

### C.      The Timing Of The Laches Ruling Did Not Cause Jury Confusion

The only supposed prejudice I/P Engine alleges is that the jury was "confused" by the

inconsistency between I/P Engine's initial closing argument and the jury instructions.  But there

is nothing to suggest that any alleged jury "confusion" was the result of the timing of the Court's

laches rulings.  Instead, the record shows that the jury was at a loss how to calculate damages

due to I/P Engine's failure to prove a royalty base for the post-complaint period.

I/P Engine's failure to introduce any evidence of a royalty base for the post-complaint

damages period or reasonably address the laches defense prompted several questions from the

jury.  *First*, the jury asked, "Is there a date to use when considering the question of third-party

infringement?"  (Trial Tr., 2141.)  The Court proposed responding, "The date of infringement for

third-party infringement (defendants other than Google) is relevant only if you are calculating

damages. If you are calculating damages, the Court has provided Instruction 32." (*Id.*, 2146.)

I/P Engine did not object and instead its counsel stated, "I'm comforted by that." (*Id.*)

*Second*, the jury inquired "If a running royalty rate is determined, are we to apply the rate

to a certain figure for each defendant?" (*Id.*) I/P Engine proposed that the jury be instructed

"Yes" in response, and the Court so instructed. (*Id.*, 2147 ("I believe the answer is yes, your

Honor.").) I/P Engine not only did not object; it proposed the instruction that the Court gave.

*Third*, the jury queried, "To what figure do we apply the rate?" (*Id.*, 2148.) The Court

proposed instructing the jury, "You must recall the evidence. The jury must recall the evidence

on its own. That's all." (*Id.*) I/P Engine did not object to this instruction and instead stated,

"We agree, your honor." (*Id.*) After some discussion, the Court proposed the slightly revised

instruction: "The jury must independently recall the evidence." (*Id.*, 2149.) I/P Engine

responded, "That's fine, your Honor," and did not object. (*Id.*)

*Fourth*, the jury questioned, "If we assign a cash amount to be awarded, is this in addition

to a running royalty rate we choose?" (*Id.*, 2154-55.) The Court suggested responding, "If you

have made a determination that a lump sum royalty or a running royalty is applicable, you must

determine damages, if any, should be awarded in III C . . . of the verdict form." (*Id.*, 2160.) I/P

Engine did not object to this proposal and instead stated, "That's fine, your Honor." (*Id.*)

Even if any prejudice could have resulted, the Court provided I/P Engine ample

opportunity to cure it. As discussed above, the Court granted I/P Engine five additional minutes

to use in its rebuttal argument to address laches. (*Id.*, 2023-24.) I/P Engine used only a very

small portion of its rebuttal to address the damages issues raised by the laches ruling. (*Id.*, 2069-

70.) It did not point to any admitted evidence of a post-complaint royalty base. Indeed, because

I/P Engine did not break out its proposed "apportioned" royalty base by month or quarter or

between pre-complaint and post-complaint periods, there was no evidence of a royalty base for the appropriate period to cite to the jury. I/P Engine therefore had the opportunity to prevent or cure any confusion, but was unable to do so only because of its own failure of proof, not the timing of the Court's laches ruling. (*See also* D.N. 834 (Defendants' Motion For Judgment As A Matter Of Law On Damages).)

Further, I/P Engine has waived any challenge to the timing of the Court's ruling extending laches to the non-Google Defendants. I/P Engine could have, but did not, object at trial to the timing of that ruling, and it did not argue that the additional rebuttal time was insufficient to cure any alleged prejudice. Instead, it thanked the Court and accepted the additional time for rebuttal argument (Trial Tr., 2023), but used most of that additional time on liability issues, not damages. Instead of dealing with its failure of proof, I/P Engine hoped for a favorable verdict, and then, when the verdict disappointed, filed this motion for a new trial. I/P Engine's after-the-fact request for a "do-over" is precisely what the rules regarding waiver are meant to prevent.

### D.    The Court's Supplemental Jury Instructions Were Correct

I/P Engine goes to great length to fault the Court's instructions when responding to questions from the jury. (*See, e.g.,* Motion, 6, 13.) As described above, I/P Engine did not object to any of these instructions and, in fact, agreed that they were correct on the record and, in at least one instance, proposed the instruction that it now contends was error. Further, I/P Engine fails to explain how any of the Court's supplemental instructions were incorrect. I/P Engine's suggestion that the Court somehow erred in its supplemental instructions therefore is not only waived, it is completely disingenuous.

## III.   THE COURT PROPERLY EXCLUDED TOTAL ADWORDS REVENUE

I/P Engine contends that a new trial is warranted because the Court excluded evidence of

Defendants' overall AdWords revenues. (Motion, 7-13.) Instead, the Court allowed I/P Engine

to introduce a supposedly apportioned royalty base derived from Google's AdWords revenue in

the United States. (Trial Tr., 746.) I/P Engine's argument that this was error fails because: (1)

I/P Engine does not show how total AdWords revenue was relevant, *see* Fed. R. Evid. 401; (2)

the Court correctly found that the probative value of total AdWords revenue was substantially

outweighed by the danger of prejudicial impact, confusion, and waste of time, *see* Fed. R. Evid.

403; and (3) any alleged error was harmless. *See* Fed. R. Civ. P. 61.

### A.   <u>Evidence of Overall AdWords Revenues Was Not Relevant</u>

I/P Engine fails to demonstrate how total revenue from the accused products is relevant.

The Supreme Court has long held that "[t]he patentee . . . must in every case give evidence

tending to separate or apportion the defendant's profits and the patentee's damages between the

patented feature and the unpatented features, and such evidence must be reliable and tangible,

and not conjectural or speculative," or show that "the entire value of the whole machine, as a

marketable article, is properly and legally attributable to the patented feature." *Garretson v.

Clark*, 111 U.S. 120, 121 (1884). Therefore, where the patented technology is part of a larger

system and does not form the "basis for customer demand" or "substantially create[] the value of

the component parts," the patentee must apply the royalty rate against an apportioned royalty

base and not the entire revenue from the accused product. *Uniloc USA, Inc. v. Microsoft Corp.*,

632 F.3d 1292, 1318 (Fed. Cir. 2011). Based on this rule, even I/P Engine's damages expert, Dr.

Becker, testified that it was necessary to apportion the revenue that the Defendants derived from

AdWords to determine an appropriate royalty base. (Trial Tr., 799, 819-20, 826; Declaration of

Margaret Kammerud in Support of Defendants' Opposition ("Kammerud Decl."), Ex. 1,

PDX076.) It was this "apportioned" amount that was the basis for I/P Engine's damages theory and that the Court allowed into evidence.

I/P Engine nevertheless argues that total AdWords revenue was relevant because it could have relied on it to argue to the jury for a proper post-complaint royalty base. (Motion, 13.) I/P Engine's argument fails, however, because it has conceded that the royalty base cannot be the total revenue from AdWords. That revenue must be apportioned. The jury therefore could not have relied on the total AdWords revenue—even limited to revenue generated after the filing of the Complaint—as a proper royalty base. Because no jury could have reasonably relied on this evidence to calculate damages, it is not relevant. *See Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 287 (N.D.N.Y. 2009) (Federal Circuit Chief Judge Rader, sitting by designation) ("no reasonable jury could have relied on" evidence of a royalty base that was not properly apportioned).

Moreover, the Court never precluded I/P Engine from introducing evidence of an apportioned royalty base for the post-complaint period. I/P Engine was free to introduce such evidence, but chose not to do so. Because I/P Engine could have introduced an apportioned post-complaint royalty base, the total AdWords revenue was irrelevant and unnecessary.[7]

---

[7] I/P Engine argues inconsistently on the one hand that "[t]he only financial information that the Defendants produced in discovery was their total revenues for the accused AdWords system" (Motion, 7), but then, on the other hand, admits that Defendants produced "revenue statements and other revenue documents that showed Defendants' quarterly U.S. AdWords revenue" (*id.*, 8), and argues that the Court prevented it from introducing "Defendants' quarterly or annual revenue statements." (*Id.*, 13.) It is therefore false to suggest that Defendants produced only evidence of "total revenues" and not quarterly revenues that could be used in support of an apportioned post-complaint royalty base.

**B.**     **The Court Correctly Found That Evidence Of Overall AdWords Revenue Was Prejudicial, Confusing, And A Waste of Time**

To the extent that the Defendants' overall AdWords revenues was relevant, the Court

correctly found that it was not admissible under Federal Rule of Evidence 403. I/P Engine's

argument to the contrary is precluded by *Uniloc*, 632 F.3d 1292, and *LaserDynamics, Inc. v.*

*Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012). As Defendants have previously detailed to

the Court, those cases stand for the proposition that, where the patented feature is not the basis for

consumer demand, introduction of evidence of total revenue from the accused product is extremely

prejudicial. (D.N. 834, 14-19.) Further, if a patentee is permitted to introduce evidence of overall

revenue under these circumstances, a defendant would be entitled to present evidence of how other

non-patented components and technologies contributed to that revenue, resulting in an

exponentially longer, more confusing, and more complicated trial.

**1.**     **_Uniloc_ and _LaserDynamics_ Hold That Evidence of Overall Revenue Is Inherently Prejudicial**

In *Uniloc*, the Federal Circuit warned district courts "of the danger of admitting

consideration of the entire market value of the accused [product] where the patented component

does not create the basis for customer demand." 632 F.3d at 1320. Where the patented

component is part of a larger system and does not form the "basis for customer demand" or

"substantially creates the value of the component parts," the patentee must apply the royalty rate

against an apportioned royalty base and not the entire revenue from the accused product. *Id.* at

1318. Under those circumstances, to admit evidence of the total revenue from the accused

product is extremely prejudicial to the defendant because it "cannot help but skew the damages

horizon for the jury, regardless of the contribution of the patented component to this revenue."[8]

---

[8]  *Id.* at 1320; *see also id.* (observing that the "$19 billion cat was never put back into the bag even by [defendant's] cross-examination of [plaintiff's expert] and re-direct of [defendant's

The Federal Circuit recently confirmed that admitting evidence of total revenue from the accused product is prejudicial where the patented technology does not "drive[] the demand for an entire multi-component product." *LaserDynamics*, 694 F.3d at 67. *LaserDynamics* cautions that "[r]egardless of the chosen royalty rate, one way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only." *Id.* at 68. "Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" *Id.* (quoting *Uniloc*, 632 F.3d at 1320).

In this case, I/P Engine does not contend that its patented technology "drives consumer demand for" or "substantially creates the value of the component parts" of AdWords. It acknowledged as much by agreeing that revenue from AdWords must be apportioned, consistent with *Uniloc* and *LaserDynamics*. Under those same cases, therefore, it is both unnecessary and improper to admit evidence of total AdWords revenues. Indeed, as Defendants have argued in their motion for judgment as a matter of law (D.N. 834, 14-19), the royalty base that I/P Engine was allowed to introduce already far exceeded the bounds permitted by these recent Federal Circuit decisions.

## 2.   **I/P Engine Fails to Distinguish *Uniloc* and *LaserDynamics***

I/P Engine's attempts to explain away *Uniloc* and *LaserDynamics*, but its arguments are contrary to both the plain language of those decisions and its own motion. First, I/P Engine

---

expert], and in spite of final instruction that the jury may not award damages based on [defendant's] entire revenue from all the accused products in the case") (quoting *Uniloc USA,*

argues that the *Uniloc* decision is distinguishable because Uniloc's damages expert offered two alternative opinions on how to achieve the same damages figure, one of which relied on a 25% royalty rate applied to a $10 per-unit royalty base, and a second that applied a 2.9% royalty to the defendant's entire revenue for the accused product. (Motion, 9-10; *Uniloc*, 632 F.3d at 1311-12.) I/P Engine argues that in *Uniloc*, "[t]here was no reason to mention the $19 billion number because it was in no way needed to calculate the royalty base" under the damages experts first 25% royalty/$10 per-unit method. (Motion, 9.) I/P Engine therefore contends that "the 2.9% figure [of the second method] was not the royalty rate; the royalty rate was 25%" from the first method. (*Id.*) I/P Engine then argues that, because Uniloc's expert offered the 25% of $10 per-unit opinion that did not require the use of the defendant's overall revenue, the defendant's overall revenue was not "an integral part" of Uniloc's expert's opinion. (*Id.*)

The argument that 2.9% of the defendant's total revenue in *Uniloc* was not the royalty rate misstates the case and is refuted by I/P Engine's own motion. I/P Engine states in the very next paragraph of its motion that Uniloc's expert "expressed his royalty rate as a percentage (2.9%)". (*Id.*) And the opinion itself states that Uniloc's expert testified "that 2.9% was a reasonable royalty" under his alternate methodology. 632 F.3d at 1318. Applying that 2.9% rate against the defendants' $19.28 billion in total revenue for the accused product as a royalty base yielded the claimed damages of $565 million. *Id.* at 1311, 1321. This, *Uniloc* holds, is improper. *Uniloc* forbids introduction of evidence of total accused product revenue when the royalty base must be an apportionment of the larger total revenue amount. 632 F.3d at 1320.

Second, I/P Engine argues that it did not attempt to introduce Defendants' total revenue from every product or service they may offer, but instead only their revenue from AdWords.

---

*Inc. v. Microsoft Corp.*, 640 F. Supp. 2d 150, 185 (D.R.I. 2009)).

(Motion, 10.) This is, however, precisely what *Uniloc* and *LaserDynamics* precludes.[9] Neither *Uniloc* nor *LaserDynamics* involved admission of a defendant's entire corporate revenue stream. Both decisions concerned the admission of evidence of total revenue for the accused product.

Third, I/P Engine argues that it was entitled to introduce evidence of the total revenue from AdWords because "there was no smaller unit of revenues for I/P Engine to seek." (Motion, 10.) Again, this is refuted by I/P Engine's Motion and its expert. I/P Engine itself argues that Dr. Becker was able to apportion AdWords revenue in an attempt to limit the royalty base to the 20.9% of AdWords revenue allegedly attributable to the patented technology. (*Id.*, 10-11; Trial Tr., 832; D.N. 836-1, PDX077.) It is therefore simply false for I/P Engine to now contend that Google's total AdWords revenue was the smallest royalty base available.

Fourth, I/P Engine argues that *Uniloc* is distinguishable because Dr. Becker "never once compared his damages amount to the Defendants' total revenue." (Motion, 10.) But that is precisely what I/P Engine intended for Dr. Becker to do until the Court excluded it. The initial set of demonstrative slides that I/P Engine intended to use during Dr. Becker's examination included the following:

---

[9] *Uniloc*, 632 F.3d at 1320 ("This case provides a good example of the danger of admitting consideration of the entire market value of the accused [product] where the patented component does not create the basis for customer demand."); *LaserDynamics*, 694 F.3d at 68 ("Regardless of the chosen royalty rate, one way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only.").



(Kammerud Decl., Ex. 2, PDX084.) This slide directly compares Dr. Becker's damages amount to total AdWords revenue. Had I/P Engine been permitted, it would have used this slide to do precisely what *Uniloc* forbids.

Fifth, I/P Engine argues that so long as *some* apportionment of the revenue from AdWords is performed, and that the royalty rate is applied against that apportioned royalty base, then there is no reliance on the entire-market-value rule and it was entitled to introduce evidence of total AdWords revenue to explain the apportionment method. (Motion, 8, 11-12 (citing *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, No. 09-290, 2012 WL 3679564 (W.D. Pa. Aug. 24, 2012)).) That position is directly contrary to *LaserDynamics* and *Uniloc*. *Uniloc* expressly states that the "disclosure that a company has made $19 billion dollars in revenue from an infringing product ***cannot help but skew the damages horizon*** for the jury, regardless of the contribution of the patented component to this revenue." 632 F.3d at 1320 (emphasis added). *LaserDynamics* reiterates the same warning and also cautions that "[a]dmission of such overall

revenues . . . *only serve* to make a patentee's proffered damages amount appear modest by
comparison, and to artificially inflate the jury's damages calculation beyond that which is
"'adequate to compensate for the infringement.'"  694 F.3d at 68 (quoting *Uniloc*, 632 F.3d at
1320) (emphasis added).  The use of the phrase "cannot help" and "only serve" show that the
prohibition on introducing overall revenue where the patented technology does not drive demand
is not in any way contingent on whether the plaintiff performed *some* apportionment.[10]  Indeed,
I/P Engine's argument would defeat the whole purpose of these Federal Circuit decisions—*i.e.*,
to prevent the jury from being unfairly prejudiced by large total revenue figures to award
overinflated damages that have no relation to the actual value of the patented technology or the
amount of a reasonable royalty for alleged infringement.

### 3.  Admission of Evidence of Total AdWords Revenue Would Have Multiplied the Proceedings and Confused the Jury

Allowing I/P Engine to introduce evidence of the total AdWords revenue would
exponentially multiply the proceedings, waste time, and confuse the jury, contrary to Federal
Rule of Evidence 403.  *See* Fed. R. Evid. 403 (court may exclude evidence if probative value is
substantially outweighed by a danger of "confusing the issues, misleading the jury, undue delay,

---

[10]  The cases cited by I/P Engine are distinguishable.  In *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, No. 09-290, 2012 WL 3679564 (W.D. Pa. Aug. 24, 2012), the plaintiff's expert in that case did not attempt to testify that her proposed royalty was "reasonable" by reference to the size of the Defendant's total revenue.  *Id.* at *4.  As described above and in PDX084, that is precisely what I/P Engine intended to do.  To the extent *Carnegie Mellon* can be read to permit introduction of total revenue from the accused product simply because some attempt at apportionment has been made, it is contrary to the plain language of *Uniloc* and *LaserDynamics*.  *PACT XPP Techs., AG v. Xilinx, Inc.*, No. 2:07-cv-563, 2012 WL 1666390, at *2 (E.D. Tex. May 11, 2012), and *Fractus, S.A. v. Samsung Electronics Co., Ltd.*, 876 F. Supp. 2d 802, 834 (E.D. Tex. 2012), simply hold that a patentee may rely on an apportionment of the sales price of the accused product as a royalty base.  They do not concern admission of evidence of total revenue from the accused product.

wasting time . . ."). In light of the marginal (at best) relevance and high risk of unfair prejudice, the Court was well within its discretion to exclude evidence of total AdWords revenue.

A complex system like AdWords (and even the SmartAds system used within the larger AdWords product) incorporates countless technologies, each of which adds value. For example, the asserted patents do not pertain to such features as the ordering and placement of selected advertisements on the web page, the performance of the advertisement auction, the basic idea of cost-per-click advertising, and the underlying search engine technologies. Dr. Becker himself testified that there are steps in the SmartAds process not accused of infringement and elements that are attributable to Google's efforts and not the patents. (Trial Tr., 918.) Indeed, the fact that the patents are not responsible for all AdWords revenue is the basic premise of Dr. Becker's apportionment opinion.

If I/P Engine were permitted to introduce evidence of total AdWords revenue, the Defendants would have been entitled to present evidence and argument about how other unpatented components of the AdWords system contribute value.[11] This could have potentially taken hours, if not days. Such a proceeding is, however, completely unnecessary. I/P Engine does not dispute that it is not entitled to apply a royalty rate against all AdWords revenue because that revenue must be apportioned. The result, therefore, would have been a lengthy and confusing ancillary litigation that would have contributed nothing to resolving the actual dispute.

---

[11]  *See* Note, *All Your Base Are Belong To Us: Towards an Appropriate Usage and Definition of the "Entire Market Value" Rule in Reasonable Royalties Calculations*, 53 B.C. L. Rev. 233, 264 (2012) ("It would be a mind-numbing exercise rivaling Psyche's grain-sorting toil (without the aid of ants) for any juror to sit through the dozens, if not hundreds, of presentations of evidence of the value of every single value-adding feature of a mammoth product like Microsoft Office.").

**C. I/P Engine Fails to Identify Any Prejudice From Exclusion of Total AdWords Revenue**

A new trial also is not warranted because I/P Engine was not prejudiced by the exclusion of total AdWords revenue. I/P Engine simply argues that the laches ruling left it without proof of a royalty base for the post-complaint period. Defendants agree that I/P Engine failed to introduce evidence of a post-complaint royalty base, but this fact does not warrant a new trial. Instead, it justifies entering judgment as a matter of law against I/P Engine due to its failure of proof. Introduction of total AdWords revenue would not have remedied this deficiency.

I/P Engine conclusorily states that evidence of total AdWords revenue was necessary "to explain and support Dr. Becker's establishment of the calculated royalty base." (Motion, 8.) But I/P Engine fails to identify what further "explanation" of the royalty base was necessary. Any further explanation would not have remedied I/P Engine's failure of proof because Dr. Becker's "calculated royalty base" improperly included revenue that preceded the filing of the Complaint. Nor does I/P Engine state how this unspecified "explanation" would have provided evidence of a post-complaint royalty base. Further "explanation" through the introduction of total AdWords revenue, therefore, would not have fixed Dr. Becker's failure to provide an apportioned post-complaint royalty base. And, as described above, such an "explanation" exception would completely undermine the holdings in *Uniloc* and *LaserDynamics*.

I/P Engine also implies that evidence of total AdWords revenue was necessary to rebut Defendants' closing argument. (*Id.*, 12.) In closing, Defendants correctly argued that the laches ruling meant that Dr. Becker's royalty figure was "off the table" and, as a result, there was no evidence of an appropriate royalty base. (*Id.* (quoting Trial Tr., 2063).) Admission of total AdWords revenue would not have rebutted Defendants' argument. Total revenue must still be apportioned and limited to the post-complaint period, as confirmed by I/P Engine's own expert. I/P Engine never attempted to introduce evidence or make an offer of proof of how the

Defendants' total revenue would be limited and apportioned to the post-complaint period. As a result, the Court was never even asked to rule on the admissibility of any evidence of a post-complaint apportioned royalty base. I/P Engine's failure to introduce or make an offer of proof of an apportioned post-complaint royalty base therefore waives the argument.[12]

Further, I/P Engine never argued during trial that admission of total AdWords revenue was necessary in light of either the Defendants' pending laches defense or the Court's laches ruling. Thus, I/P Engine has waived that argument as well.

Finally, I/P Engine argues that evidence of total AdWords revenue would have been responsive to the questions asked by the jury during deliberations (Motion, 13), an argument it also never raised at trial. This is false; total AdWords revenue was not responsive to any jury question. The jury asked "If a running royalty is determined, are we to apply the rate to a certain figure for each defendant?" and "To what figure do we apply the rate?" (Trial Tr., 2146-48.) It is undisputed that the royalty rate found by the jury must be applied to an *apportioned* royalty base. Total AdWords revenue is not apportioned, and I/P Engine never attempted to introduce evidence of an apportioned royalty base for the post-complaint period.[13]

---

[12]   *See* Fed. R. Evid. 103(a)(2); *Carter v. Ball*, 33 F.3d 450, 457 (4th Cir. 1994) ("[W]e can assign no error to the exclusion of evidence, even a 'blanket' exclusion, where the plaintiff has not made a specific proffer to the court. *See* Fed. R. Evid. 103(a)(2)."); *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1067 (4th Cir. 1987) (challenge to exclusion of documents waived where no offer of proof made pursuant to Rule 103(a)(2)).

[13]   The jury also asked "Is there a date to use when considering the question of third-party infringement?" and "If we assign a cash amount to be awarded, is this in addition to a running royalty rate we choose?" (Trial Tr., 2141, 2154-55.) Total AdWords revenue is not even arguably responsive to these questions.

**D.**     **I/P Engine Is Not Entitled to Judgment as a Matter of Law Regarding the Form of the Reasonable Royalty**

I/P Engine also purports to "renew its Rule 50 motion regarding Dr. Ugone's damages analysis." (Motion, 3 n.1.) I/P Engine argues that "the proper measure of damages under the law are Defendants' infringing use." (*Id.*) 35 U.S.C. § 284 provides that the proper measure of damages is a reasonable royalty, and the Federal Circuit has stated many times that a reasonable royalty may be in the form of a lump sum, as Dr. Ugone testified. *See, e.g., Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357-59 (Fed. Cir. 2012) (reversing judgment as a matter of law on $15 million lump-sum reasonable royalty damages award); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326-28 (Fed. Cir. 2009) (describing use of lump sum royalties).[14]  Further, there is no evidence in the record supporting a running royalty, as fully discussed in Defendants' motion for judgment as a matter of law. (D.N. 834, 23-25.)

**IV.**    **THE DAMAGES AWARD AGAINST GOOGLE IS NOT "OUTRAGEOUSLY LOW," INCONSISTENT, OR UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

Following its verdict of infringement, the jury found that damages should be based on a running 3.5% royalty. (D.N. 789, 11.)  The jury awarded $15.8 million against Google, $7.943 million against AOL, $6.65 million against IAC, $4,322 against Gannett, and $98,833 against Target. (*Id.*)  The total of all these awards was a fraction of the last four bars in PDX441, the demonstrative that I/P Engine told the jury that it should consider when reaching its verdict.  The jury, thus, did not accept I/P Engine's damages theory.

---

[14]    I/P Engine argues that it is entitled to judgment as a matter of law because Defendants "abandoned" Dr. Ugone's damages analysis by arguing during closings that no damages were appropriate because I/P Engine had not met its burden of proof.  There is, of course, no requirement that a party must argue every claim, defense, or position supportable by the evidence during closings to avoid waiver.

I/P Engine argues that this very significant verdict is, nevertheless, "outrageously low," out of proportion with the amount I/P Engine asked the jury to award with respect to the combined pre- and post-complaint periods, inconsistent with the verdict against the other defendants, and unsupported by substantial evidence. (Motion, 13-15.) These arguments fail on numerous grounds.

A new trial should not be granted based on I/P Engine's alleged inconsistency in the verdict. First, I/P Engine has waived its argument that the verdict against Google is inconsistent with the verdict against the other Defendants. Fed. R. Civ. P. 49(b). Objections to inconsistencies in a verdict must be made before the jury is discharged. *L&W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318-19 (Fed. Cir. 2006); *White v. Celotex Corp.*, 878 F.2d 144, 146 (4th Cir. 1989) (recognizing that the "failure to bring any purported inconsistencies in the jury's verdict to the attention of the court prior to the release of the jury will constitute a waiver of a party's right to seek a new trial"). I/P Engine failed to raise any objection, and, therefore, waived the argument.

Further, I/P Engine does not actually argue that any of the jury's findings are internally inconsistent. Instead, it contends that the ratio between what Dr. Becker testified was owed by each Defendant and what the jury awarded against each Defendant is different. That is not an internal inconsistency in the verdict; it is an alleged inconsistency between the verdict and I/P Engine's demand, and I/P Engine cites no law that the jury must award the same percentage of the requested damages against each Defendant.[15]

---

[15]   I/P Engine states that it believes the jury's damages award is the result of having "misplaced a decimal point" because the jury awarded approximately 3.5% of I/P Engine's original damages request against Google, but 35% of the original request against the other Defendants. (Motion, 14.) This is speculation. If any mistake was made in the placement of a decimal point, it was most likely made in calculating the damages for the non-Google

Indeed, this Court has held that "it is well-settled that apparent verdict inconsistencies are not fatal and verdicts must be upheld even where 'no rational reconciliation of the verdicts is possible.'" *Synthon IP, Inc. v. Pfizer Inc.*, No. 1:05-cv-1267, 2007 WL 1075194, at *5 (E.D. Va. Apr. 6, 2007) (quoting *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1035-36 (9th Cir. 2003)).  For example, in *Hines v. IBG Int'l, Inc.*, 813 F.2d 1331, 1334 (4th Cir. 1987), the court held that in a case involving "general verdicts, incapable of being nicely dissected into their constituent parts," an "apparent inconsistency is not fatal."

Nor should a new trial be granted based on the contention that the Google verdict is "outrageously low" in comparison to the verdict against the other Defendants. I/P Engine fails to cite any authority for its contention that a new trial is warranted because the damages against Google are "out of proportion" with that against the other Defendants. And I/P Engine identifies no evidence from which the Court could determine what the proper proportion between the Defendants' respective damages and I/P Engine's demand allegedly should be.  I/P Engine contends, for example, that "the royalty base for Google was approximately ten times larger than the royalty base for the other defendants combined." (*See* Motion, 14 n.7.)  These statements are unsupported speculation because I/P Engine introduced absolutely no evidence, either at trial or with this motion, of what the appropriate royalty base for Google or any other Defendant would be for the post-complaint period.  The only "evidence" that I/P Engine cited to the jury or in its motion is PDX-441, a demonstrative exhibit. (Motion, 15.)  As previously stated, demonstrative exhibits are not evidence (*see, e.g.*, Trial Tr., 832-33, 1464-65, 1962-63, 2119-21), and the

---

Defendants.  Neither party ever put a 35% number in front of the jury, but I/P Engine argued for a 3.5% royalty rate, which the jury appears to have adopted.  Therefore, it is more likely that the jury intended to award 3.5% of I/P Engine's original damages request with respect to all Defendants, rather than 35%.  In any event, however, I/P Engine waived any objection to this alleged inconsistency by not raising it at trial.

demonstrative it cites does not break out alleged damages for each defendant.[16] I/P Engine has

therefore offered no evidence that the damages award against Google is "outrageously low" or

"out of proportion" to an appropriate royalty base or the awards against the other Defendants.

I/P Engine is also mistaken when it argues that Defendants "did not challenge the royalty

base that Dr. Becker presented." (Motion, 15 n.7.) To the contrary, Defendants criticized Dr.

Becker's apportionment methodology because it improperly attributed all the value of the

"SmartASS," "Disabling," and "Promotion" measurements to the patents and ignored contributions

that Google had made, independent of the patents, that were included in those measurements.

(Trial Tr., 918-19, 1613-18, 2060.) The verdict reflects the fact that the jury did not accept I/P

Engine's royalty base position, as it was free to do.

Finally, I/P Engine misses the mark entirely when it argues that the damages award

against Google "is not supported by the jury's verdict finding that a 3.5% running royalty rate

was appropriate . . . [b]ecause nothing in the record supports such a small royalty base."

(Motion, 16.) Defendants agree that the award against Google is not supported by evidence of a

royalty base, but this is because I/P Engine failed to introduce *any* evidence of a royalty base,

large or small, for the appropriate period. The only evidence I/P Engine cites is PDX-441, a

demonstrative that it concedes is nothing but "vaguaries." (Motion, 5.) This justifies judgment

as a matter of law in favor of the Defendants (D.N. 834), not a new trial for I/P Engine.

## V.    A NEW TRIAL COULD NOT BE ACCOMPLISHED IN A DAY

I/P Engine contends that a new trial should be "accomplished in a single day, with brief

openings, stipulated facts, and expert testimony." (Motion, 2.) This is an overly optimistic

---

[16] *Buck*, 324 F.3d at 790; *Colgan Air*, 535 F. Supp. 2d at 584; *Pritt*, 2002 WL 32438757, at *4. This reliance solely on demonstrative exhibits warrants judgment as a matter of law against I/P Engine, not a new trial.

estimate.  As I/P Engine is well aware, jury selection and opening statements alone took an entire

day during the first trial.  The testimony of Dr. Becker took nearly an entire day and spans nearly

two hundred pages of transcript.  And Defendants' damages expert, Dr. Ugone, testified for

another day.  Although a new trial on damages would arguably be simpler than one that includes

liability, the trial would hardly be the straightforward math exercise that I/P Engine makes it out

to be.  Defendants would be entitled to present evidence disputing Dr. Becker's apportionment

methodology, critiquing Dr. Becker's use of a draft PowerPoint presentation to calculate a

royalty base, and demonstrating how various other non-accused technologies contribute to the

value of AdWords.  Thus, the accused technology would need to be explained, likely with both

fact and expert technical witnesses.  Presumably, Plaintiff would seek to address these issues as

well.  Contrary to I/P Engine's argument, a new trial would not be a matter of simple math.

## CONCLUSION

Because the gaps in I/P Engine's proof of damages were of its own making and not the

result of any erroneous ruling by this Court, I/P Engine's motion for a new trial on damages

should be denied.


DATED: January 25, 2013            /s/ Stephen E. Noona
                                   Stephen E. Noona
                                   Virginia State Bar No. 25367
                                   KAUFMAN & CANOLES, P.C.
                                   150 West Main Street, Suite 2100
                                   Norfolk, VA 23510
                                   Telephone:  (757) 624.3000
                                   Facsimile:  (757) 624.3169
                                   senoona@kaufcan.com

David Bilsker
David A. Perlson
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:  (415) 875-6600
Facsimile: (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

*Counsel for Google Inc., Target Corporation,
IAC Search & Media, Inc., AOL, Inc., and
Gannet Co., Inc.*


By: */s/ Stephen E. Noona* _____
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile:  (757) 624-3169

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW,  GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile:  (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile:  (415) 653-6444

*Counsel for Defendant AOL, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2013, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following:

Jeffrey K. Sherwood
Kenneth W. Brothers
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC  20006
Telephone: (202) 420-2200
Facsimile:  (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, VA  23510
Telephone:  (757) 623-3000
Facsimile:  (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff, I/P Engine, Inc.*

                                        /s/ Stephen E. Noona
                                        Stephen E. Noona
                                        Virginia State Bar No. 25367
                                        KAUFMAN & CANOLES, P.C.
                                        150 West Main Street, Suite 2100
                                        Norfolk, VA 23510
                                        Telephone:  (757) 624.3000
                                        Facsimile:  (757) 624.3169
                                        senoona@kaufcan.com