UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |
|---|---|
| I/P ENGINE, INC.<br><br>                        Plaintiff,<br><br>        v.<br><br>AOL, INC., *et al.*,<br><br>                        Defendants. | Civil Action No. 2:11-cv-512 |

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON DAMAGES OR A NEW TRIAL**

As discussed in Defendants' motion, I/P Engine presented no evidence of a royalty base for the appropriate damages period.  The single demonstrative exhibit that I/P Engine relied on during closing arguments did not come close to satisfying its burden of proof.  In response, I/P Engine agrees that its demonstrative exhibit "has nothing to do with a royalty base" (Opp., 6) and admits "that a specific damages number for the shortened period was not in evidence" (*id.*, 10).  Thus, there is no question that I/P Engine failed to meet its burden on damages.

The principal argument in I/P Engine's opposition is not that it introduced evidence of a royalty base for the appropriate period, but the novel proposition that the remedy for its complete failure of proof is a new trial, not entry of judgment as a matter of law.  But numerous cases hold that the Court is well within its discretion to enter judgment of no or nominal damages where a patentee fails to meet its burden of proof, as I/P Engine has done in this case.  *See, e.g., Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 509 (Fed. Cir. 1990) (affirming award of zero damages where none were proven by patentee).  Similarly, it is long established that inadmissible evidence, such as relied on by I/P Engine, does not satisfy a plaintiff's burden of proof.  *Weisgram v. Marley Co.*, 528 U.S. 440, 456 (2000).  Judgment as a matter of law is

1

especially appropriate here because I/P Engine was on notice of Defendants' challenges to its claim for pre-complaint damages and the numerous flaws its expert's damages opinions long before trial, yet made no effort to introduce evidence of a post-complaint royalty base or correct its expert's faulty analysis of damages.  And the Court already rejected I/P Engine's argument that a new trial was not necessary to correct any injustice when it denied the motion for a new trial on laches.  (D.N. 884.)

## I.   I/P ENGINE FAILS TO CITE ANY EVIDENCE OF A ROYALTY BASE FOR THE POST-COMPLAINT PERIOD

In light of the Court's ruling on laches, I/P Engine bore the burden of proving the amount of damages it incurred, limited solely to the post-complaint period.  *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co*., 960 F.2d 1020, 1040-41 (Fed. Cir. 1992) (en banc).  To make this showing, I/P Engine was required to introduce evidence of a royalty base of revenue accrued solely after the filing of the complaint.  In response to Defendants' motion for judgment as a matter of law, however, I/P Engine concedes that the demonstrative exhibit, PDX-441, it presented to the jury during closing arguments did not meet this burden because it "has nothing to do with a royalty base" (Opp., 6) and is therefore not evidence of post-complaint damages.[1]

The only evidence I/P Engine cites (though only in a footnote) that it contends satisfies its burden of proving a royalty base is evidence of the Defendants' aggregated revenue that spanned both the pre- *and* post-complaint periods.  (*Id.*, 6 n.5 (citing Trial Tr., 833-46).)  But

---

[1]   As described in Defendants' motion, I/P Engine encouraged the jury to rely on this demonstrative as a measure of damages against Google, even though the demonstrative aggregated claimed damages against all Defendants.  (Motion, 13.)  I/P Engine contends that any challenge to its use of the demonstrative during closing arguments is waived by Defendants' failure to object.  However, I/P Engine's misrepresentations to the jury regarding this demonstrative, instead of relying on admitted evidence in the record, merely highlights its failure of proof on the royalty base.  Further, Defendants objected that this demonstrative was not substantive evidence that the jury could rely on.  (Trial Tr., 1954, 1965-66.)

2

there is simply no evidence in the record from which the jury could take these aggregate numbers and determine the Defendants' revenue for the post-complaint period, much less attempt any apportionment of those revenues.

Rather than cite admitted evidence of a royalty base for the post-complaint period, I/P Engine argues that it *should* have been allowed to introduce quarterly reports for *all* of AdWords revenue. (Opp., 6.) According to I/P Engine, the jury could have used those total revenue figures to calculate damages. This argument fails on at least two grounds.

First, total AdWords revenue is not evidence of a royalty base because it is not apportioned. Even I/P Engine's damages expert, Dr. Becker, testified that it was necessary to apportion Defendants' AdWords revenue to determine an appropriate royalty base. (Trial Tr., 799, 819-20, 826; D.N. 870-1.) The jury, therefore, could not have relied on total AdWords revenue—even limited to revenue generated after the filing of the complaint—as a proper royalty base. *See Cornell University v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 287 (N.D.N.Y. 2009) (Federal Circuit Chief Judge Rader, sitting by designation) (holding that "no reasonable jury could have relied on" evidence of a royalty base that was not properly apportioned).

Second, I/P Engine never even *attempted* to introduce evidence of an apportioned quarterly royalty base. I/P Engine was never precluded from introducing evidence of an apportioned royalty base by quarter or any other timeframe. It simply chose not to do so. I/P Engine's argument is merely an after-the-fact attempt to explain its failure of proof. This is grounds for judgment as a matter of law on past damages, not a new trial.

## II. I/P ENGINE DID NOT MEET ITS BURDEN OF INTRODUCING EVIDENCE OF AN APPORTIONED ROYALTY BASE

In addition to its failure of proof on a royalty base for the appropriate post-complaint period, I/P Engine failed to introduce any evidence apportioning the royalty base evidence that it

did introduce (for the wrong period) to reflect the value of the allegedly patented versus unpatented features of the accused systems, as it was required to do.  Accordingly, I/P Engine's proffered evidence of a royalty base covering the entire pretrial period should not have been admitted, and judgment as a matter of law is warranted for this additional reason.

I/P Engine does not argue or point to any admitted evidence that the entire value of the SmartAds system is attributable to the patents-in-suit.  Nor does it contend that it introduced evidence attempting to apportion the incremental value of the allegedly patented technology.  Instead, I/P Engine argues that because it did not use *all* of Google's search advertising revenue as a royalty base, and instead used the revenue improvement it contended was attributable to SmartAds, it had apportioned the royalty base well enough.  Yet Dr. Becker admitted that "the SmartAds system that's accused in this case includes a lot more than just the technology that's accused of infringement."  (Trial Tr., 918.)  Contrary to I/P Engine's argument, there is no authority to support I/P Engine's argument that so long as a damages expert performs *some* apportionment, his testimony is admissible.  As explained in Defendants' opening brief (Motion, 18-19), Federal Circuit Chief Judge Rader rejected this same argument when sitting by designation in *Cornell*.  609 F. Supp. 2d at 285 (granting judgment as a matter of law where patentee "simply stepped one rung down the [defendant's] revenue ladder from servers and workstations to the next most expensive processor-incorporating product without offering any evidence to show a connection between consumer demand for that product and the patented invention").

Contrary to I/P Engine's argument, neither *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), or *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), hold that an expert royalty base opinion is admissible so long as the expert performs *some* apportionment.  Instead, *LaserDynamics* held that a plaintiff asserting a patent on an improvement

4

to an optical disk drive could not rely on revenue from the sale of an entire computer (including the disk drive) as the royalty base. 649 F.3d at 68-69. Similarly, the Court in *Uniloc* stated that it is improper to use revenue from a larger product or system as a royalty base when the patent covers "but a very small component." 632 F.3d at 1320. Here, it is undisputed that the accused functionality is only a small part of the overall SmartAds system. Thus, as in *LaserDynamics* and *Uniloc*, I/P Engine must apportion the royalty base correctly to account for the allegedly patented versus unpatented features of SmartAds. By only performing a partial apportionment, I/P Engine's royalty base is overinflated when compared to the actual value of the patents-in-suit.

I/P Engine exacerbated this error when it argued that the 3.5% royalty rate was sufficiently small to account for its failure to correctly apportion the royalty base. I/P Engine contends that Dr. Becker did not agree that he adjusted his royalty rate in light of the lack of precision in his apportionment opinion. (Opp., 23.) But I/P Engine made this argument to the jury during its closing. (Motion, 18 (quoting Trial Tr., 2009).) By arguing that any lack of precision in its apportionment method was acceptable in light of a sufficiently small royalty rate, I/P Engine did exactly what the Court in both *LaserDynamics* and *Uniloc* explicitly told patentees not to do. *LaserDynamics*, 694 F.3d at 69; *Uniloc*, 632 F.3d at 1319-20.

Finally, I/P Engine argues that "if Defendants believed Dr. Becker's apportionment was overinflated, they could have presented their own apportionment to the jury." (Opp., 24.) But it is not Defendants' burden to prove damages; it is I/P Engine's burden. And as *LaserDynamics* explains, difficulties in apportioning the royalty base weigh strongly in favor of measuring damages in the form of a lump sum, as Defendants have consistently argued throughout this case. 694 F.3d at 70.

## III.   I/P ENGINE CITES NO EVIDENCE OF INFRINGEMENT PRIOR TO 2010

As stated in Defendants' motion, the date of the hypothetical negotiation must be based on the date of first alleged infringement.  (Motion, 19-22.)  At trial, I/P Engine relied on the use of four specific templates to prove infringement, none of which were in use prior to 2010, much less in 2004.  (*Id*., 20-21.)  I/P Engine does not dispute this in its opposition or present any evidence that these templates were in use prior to 2010.  Nor does it dispute, as its expert testified, that many templates in SmartAds do not infringe.  (*See* Trial Tr., 694-95.)  Thus, there is no evidence to support a 2004 date for the hypothetical negotiation, as I/P Engine contends.

It is no answer for I/P Engine to argue that Dr. Becker "must presume infringement." (Opp., 14.)  Although Dr. Becker is not required to perform an infringement analysis himself, there must be support in the record for the assumptions that underlie his opinion, including the date of first infringement.  *Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC*, No. WDQ-11-2478, 2012 WL 3115867, at *4 (D. Md. July 25, 2012) ("But 'an expert's opinion, where based on assumed facts, must find some support for those assumptions in the record.'") (quoting *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 801 (6th Cir. 2000)).  I/P Engine fails to cite any evidence of infringement prior to 2010, much less in 2004.

The only evidence I/P Engine cites in an attempt to support an earlier date for the hypothetical negotiation is conclusory testimony from its technical expert, Dr. Frieder.  (Opp., 15 (citing Trial Tr., 592-600).)  Dr. Frieder testified that he had looked at various documents dated earlier than 2010 and concluded "basically they all matched."  (Trial Tr., 592-93.)  Those documents, however, describe SmartAds in only the most general terms.  (*See, e.g.*, *id*., 594 (document is a "high-level description"); *id*. (document "basically talk[s] about a Quality Score").)  None of them identify any pre-2010 template that allegedly corresponds to the accused

templates in the 2010 version of SmartAds.  I/P Engine has, therefore, failed to meet its burden of establishing a date of first alleged infringement prior to 2010.

It is also no answer to argue, as I/P Engine does, that Defendants did not present evidence of an alternative date for the hypothetical negotiation.  It is not Defendants' burden to prove either infringement or damages.  Nor is I/P Engine correct when it contends that either Defendants or their damages expert argued for a 2004 date of first infringement.  Defendants' damages expert, Dr. Ugone, testified that he "accepted [Dr. Becker's assumption of a 2004 date] for purposes of this discussion".  (*Id.*, 1580.)  The fact that Dr. Ugone assumed Dr. Becker's 2004 date of the hypothetical negotiation for purposes of his own analysis is not substantial evidence of infringement in 2004.  Defendants are therefore entitled to judgment as a matter of law on the date of the hypothetical negotiation.

## IV.     I/P ENGINE CITES NO EVIDENCE TO SUPPORT A RUNNING ROYALTY

I/P Engine also fails to support its contention that the hypothetical negotiation would have resulted in a running royalty.  First, I/P Engine cites generalized testimony describing theoretical advantages that a running royalty may offer under some circumstances.  (Opp., 17 (citing Trial Tr., 772).)  Such testimony, without any discernible link to the particular facts in this case, does not come close to the substantial evidence necessary to defeat judgment as a matter of law here.  *See Uniloc*, 632 F.3d at 1315 ("To properly carry this burden, the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'") (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)).  Second, I/P Engine cites licenses to the Overture patents.  But for the reasons stated in Defendants' motion, those agreements are not comparable and do not involve any party to the hypothetical negotiation in this case.  (Motion, 28-29.)  Third, I/P Engine cites testimony that Google had licensed the Overture patents.  But there is no evidence in the record that the Google-Overture agreement was for a running royalty.

Indeed, the facts are to the contrary.  Although not admitted at trial, the agreement between

Overture and Google was for a lump-sum payment of stock.  (D.N. 468-4, ¶ 155.)  Fourth, I/P

Engine cites evidence that Google lacked a formal licensing policy.  But the lack of a formal

policy is not substantial evidence showing that Google would have agreed to a running royalty in

this case.  Dr. Becker in fact agreed that Google had a preference for lump sum royalties.  (Trial

Tr., 885.)  Fifth, I/P Engine cites testimony that Lycos had a slight preference for a running

royalty in 2007.  (*Id.*, 1683.)  But I/P Engine failed to cite testimony that, prior to that date,

Lycos had no such preference.  (*Id.*, 1749-50.)  Therefore, none of this evidence supports a

running royalty.  And without substantial evidence to support the jury's verdict on this issue,

judgment as a matter of law is warranted for this additional reason.

## V.    I/P ENGINE FAILS TO IDENTIFY ADMISSIBLE EVIDENCE TO SUPPORT A ROYALTY RATE

I/P Engine argues that whether Dr. Becker's testimony was sufficient to support the

alleged royalty rate was simply an issue of credibility for the jury.  (Opp., 18-21.)  For that to be

the case, however, Dr. Becker's opinion must first meet the Federal Circuit's reliability standards

for the admissibility of expert damages testimony.  Here, numerous errors regarding Dr. Becker's

analysis of the applicable royalty rate rendered his testimony unreliable and inadmissible,

including:  (1) he gave no weight to the sale price of the patents, (2) the Overture licenses were

not entered into near the correct hypothetical negotiation date in 2010; (3) he performed no

comparison of the scope of the Overture patent portfolio with the patents-in-suit; (4) the parties

to the Overture agreements were in vastly different bargaining positions than the parties to the

hypothetical negotiation; (5) the Overture patents were well-known in the industry, unlike the

patents-in-suit; and (6) I/P Engine's technical expert could only testify that the Overture patents

were comparable "in a general sense."

In response, I/P Engine argues that both the Overture patents and the patents-in-suit relate generally to "search advertising." (Opp., 19.) This tenuous link, however, does not allow an expert to ignore all other evidence in the record, including prior transactions involving the actual patents-in-suit. *LaserDynamics*, 694 F.3d at 79-80 (noting importance of "[a]ctual licenses to the patents-in-suit"); *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 872 (Fed. Cir. 2010) ("most reliable license in this record" was license to the patent in suit); *Integra LifeSciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003), *judgment vacated on other grounds*, 545 U.S. 193 (2005) (damages award vacated where inconsistent with sale price of company owning the patent). Otherwise a patentee would be free to cherry pick any "search advertising" related license involving different patents and different parties and argue for a royalty rate completely divorced from actual transactions involving the patents-in-suit and the parties to the hypothetical negotiation.[2] Simply put, an expert may not ignore the most relevant evidence and base his entire opinion on agreements that are only remotely related, if at all, to the circumstances surrounding the hypothetical negotiation at issue in this case.

I/P Engine argues that Dr. Becker "acknowledged" and "considered" the differences between the Overture agreements and the hypothetical negotiation, but did not find them significant. (Opp., 20-21.) But the Federal Rules of Evidence do not permit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999). It is, therefore, not sufficient for Dr. Becker to "consider" but ultimately place no importance on evidence, such as transactions involving the

---

[2]   I/P Engine does not dispute, for example, that its technical expert, Dr. Frieder, testified that the Overture patents do not relate to methods for filtering advertisements for relevance, unlike the patents-in-suit. (Trial Tr., 716-17.) Instead, I/P Engine argues, without explanation, that this somehow makes the patents-in-suit "better." (Opp., 20.) Even crediting that position, it confirms that the Overture licenses are not directed to comparable technology.

asserted patents, that the Federal Circuit has repeatedly held is among the most relevant evidence for determining a reasonable royalty as a matter of law. *LaserDynamics*, 694 F.3d at 79-80; *ResQNet.com*, 594 F.3d at 872; *Integra LifeSciences*, 331 F.3d at 871.

## VI. I/P ENGINE'S FAILURE OF PROOF DOES NOT ENTITLE IT TO A "DO OVER" ON DAMAGES

I/P Engine argues that it is entitled to a new trial— limited solely to the amount of damages against all Defendants—to fix the numerous errors in its case, despite having full knowledge before trial of Defendants' laches defense and their multiple challenges to its damages theories.  Contrary to I/P Engine's argument, it is neither required nor sensible for the Court to award I/P Engine a second chance to meet its burden of proof on damages.  But to the extent the Court decides to grant a new trial, it should be on all issues.[3]

### A.    Failure of Proof Is Not Grounds For a New Trial.

I/P Engine contends that, even if it failed to introduce evidence of damages—an essential element of its claim—a new trial, and not judgment as a matter of law, is appropriate.  Numerous decisions hold, however, that where a party fails to provide admissible evidence to support its damages claim, judgment as a matter of law of no or nominal damages is warranted.  *See Designing Health, Inc. v. Collett*, 226 F. App'x 976 (Fed. Cir. 2007) (reversing denial of judgment as a matter of law for failure to prove damages and holding that mandate forecloses a new trial); *Gustafson*, 897 F.2d at 509 (affirming award of zero damages where none were proven by patentee); *Devex Corp. v. Gen Motors Corp.*, 667 F.2d 347, 363 (3d Cir. 1981) (affirming award of no reasonable royalty damages where record was devoid of evidence of a royalty); *Apple Inc. v. Motorola, Inc.*, No. 1:11-cv-8540, 2012 WL 2362630, at *1 (N.D. Ill. June

---

[3]  I/P Engine falsely states that the parties "agree . . . that a new trial is necessary." (Opp., 1.)  To the contrary, I/P Engine's failure of proof warrants judgment as a matter of law.

7, 2012) (Posner, J., sitting by designation) (granting summary judgment on right to past damages where patentee failed to present admissible evidence of damages); *Apple Inc. v. Motorola, Inc*., 869 F. Supp. 2d 901, 924 (N.D. Ill. 2012) (Posner, J., sitting by designation) (same); *Boston Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1120-22 (N.D. Cal. 2008) (denying patentee's motion for a new trial on damages and ruling that by failing to present evidence of a reasonable royalty, patentee waived right to damages).

Although there may be instances where a district court may, nevertheless, exercise its discretion to grant a new trial or recalculate damages on its own,[4] this is not such a case.  In *Weisgram*, 528 U.S. at 456, for example, the Court held that judgment as a matter of law without a new trial was warranted where "although [plaintiff] was on notice every step of the way that [defendant] was challenging his experts, he made no attempt to add or substitute other evidence." *See also id*. ("[A] litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk.") (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 897 (1990)).  The same is true here.  I/P Engine has known since this case's inception that its right to pre-complaint damages was in question, and it has been on notice that its damages theories were being challenged since Defendants served their rebuttal expert report

---

[4]    I/P Engine argues that in *Cornell*, 609 F. Supp. 2d at 292, the district court recalculated damages after it held that the jury had relied on an improper royalty base.  (Opp., 3 n.2.)  *Cornell* held that the appropriate royalty base was revenue from the sale of the infringing processor, not the larger CPU brick or even larger server and workstation system.  The trial record contained "evidence of sales data for processors," and the jury found a royalty rate.  *Id*. at 282-83.  Here, there is no evidence of a royalty base for the post-complaint period in the record.  There is, therefore, no means by which the Court could calculate damages and, indeed, no evidence of damages whatsoever.  Nor would such a judicial weighing of the damages evidence be consistent with the Seventh Amendment.  *See Boston Sci*., 550 F. Supp. 2d at 1121-22 (defendant has right to jury determination of damages in patent case).

on damages and moved prior to trial to exclude Dr. Becker's testimony.[5]  Yet it did nothing to ensure that it met its burden of proof.

I/P Engine's argument that the Court is required to grant a new trial whenever a patentee fails to introduce admissible evidence of damages is not only contrary to authority, it would unnecessarily burden the Court with multiple trials.  Here, the failures in I/P Engine's proof are of its own making.  Having failed to meet its burden on damages in the first trial, there is no reason why I/P Engine should have another chance to try to prove its case in yet another trial.  If that were the rule, any plaintiff who failed to prove its case would be permitted to try again, thereby leading to never-ending rounds of litigation.  Indeed, I/P Engine's complete failure of proof demonstrates that its damages case is unfounded, and therefore, no new trial is warranted.

## B.  The Laches Ruling Does Not Excuse I/P Engine's Failure To Introduce Evidence Of A Royalty Base For The Relevant Period.

Nor does the Court's ruling on laches justify I/P Engine's failure of proof or support granting a new trial on damages.  This Court already rejected the argument that there was any surprise or unfair prejudice in its resolution of laches when it denied I/P Engine's motion for a new trial on that issue.  (D.N. 884.)  In its motion, I/P Engine argued that "multiple procedural errors" in the Court's laches ruling warranted a new trial on laches, including the timing and notice of the Court's decision to rule.  (D.N. 837, 11-16.)  The Court has, therefore, already considered and rejected I/P Engine's argument that the ruling justifies a new trial on laches.  The

---

[5]  I/P Engine cites Federal Circuit decisions that hold that a patentee's expert testimony on damages was inadmissible and remand for a new trial.  (Opp., 3.)  Those cases merely confirm that a court *may* order a new trial in its discretion.  None of them hold that a court *must* grant a new trial when a patentee fails to introduce substantial evidence on damages or that judgment as a matter of law is prohibited.  Instead, the authority of the district court to enter judgment against a patentee who fails to provide admissible evidence in support of damages is confirmed by numerous decisions, cited above.

same reasoning warrants denial of I/P Engine's request for a new trial on the amount of damages here.

          **1.**      **There is no "common practice" of allowing a jury to find damages based on the wrong damages period.**

      I/P Engine also argues that its failure to introduce evidence of a royalty base justifies a new trial because of the Court's procedure for resolving the laches defense.  I/P Engine claims that "the common practice is for the jury to decide the damages due for the full damages period" and for the Court to later "reduce[] the jury's damages award to reflect only the post-suit damages."  (Opp., 8.)  The argument not only fails because there is no such common or binding practice, but also because it is waived.

      Any argument that the Court's procedure was faulty is waived.  I/P Engine never sought a special verdict on pre-complaint and post-complaint damages or apportionment rates for the appropriate periods that would enable the Court to adjust the damages award according to the subsequent laches ruling, consistent with the Seventh Amendment.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377 (1996) ("[T]here is no dispute that infringement cases today must be tried to a jury . . . ."); D.N. 699-1.  Nor did I/P Engine move before trial to bifurcate laches from damages or liability.[6]  At a minimum, I/P Engine's failure to even suggest this procedure prior to the Court's laches ruling demonstrates that a new trial is not necessary to correct any injustice.

----

     [6]  Although I/P Engine never requested bifurcation prior to trial, Defendants proposed bifurcating laches in the parties' joint October 5, 2012 "Preliminary Final Pretrial Order." (Declaration of Howard Chen in Support of Defendants' Reply Briefs, Ex. 2, ¶ 9.)  I/P Engine took no position on that issue, and instead simply stated that, if the Court granted Defendants' request, the laches hearing should occur after trial.  (*Id.*)  After the pretrial conference, Defendants withdrew their request for a separate hearing on laches, and I/P Engine stated in response only that "I/P Engine believes that any issues directed to laches outside [sic] of the presence of the jury."  (D.N. 719, 18.)

Further, none of the cases I/P Engine cites support its argument that there is a "common practice" for resolving laches that the Court did not follow. The cited cases actually refute that contention. For example, in *Humanscale Corp. v. CompX International, Inc.*, No. 3:09-cv-86, 2010 WL 3222411 (E.D. Va. Aug. 16, 2010), the verdict form asked the jury to find the amount of damages for the pre-complaint and post-complaint periods separately. *Id.* at *1 (noting that the jury found damages separately for the pre-March 2009 period and for the post-March 2009 period); *id.* at *8 (plaintiff initiated suit against defendant in March 2009). To allow the jury to make those findings, the patentee presented evidence of a royalty base by quarter for both the pre-complaint and post-complaint periods. *See id.* at *19. This is exactly what I/P Engine *failed* to do. And, as described above, I/P Engine never requested a verdict form with damages findings for both the pre- and post-complaint periods as was done in *Humanscale*. (*See* D.N. 699-1.) Its alleged reliance on the procedure in *Humanscale* is, therefore, disingenuous.[7]

Similarly, in *Amado v. Microsoft Corp.*, No. SA CV 03-242, 2008 WL 8641264, at *1 (C.D. Cal. Dec. 4, 2008), the parties stipulated to the number of infringing products sold. There was no dispute as to the royalty base, and the court simply applied the jury's royalty rate of four cents per unit after it ruled on laches. The opinion does not reflect any dispute as to the propriety of this procedure. *Id.* In the present case, however, the correct method of measuring the royalty base is sharply contested. Even I/P Engine used different apportionment rates for different time periods. (D.N. 870-1; Trial Tr., 826-27.) Determining post-complaint damages is, therefore, not a matter of simply applying the jury's royalty rate to an undisputed royalty base. Instead, it

---

[7]   Further, because the jury made separate findings for pre- and post-complaint damages, the procedure used in *Humanscale* did not require the Court to make any fact findings to adjust damages. I/P Engine never proposed such a special verdict form. As a result, unlike in *Humanscale*, any adjustment to the jury's verdict would require the Court resolve disputed issues of fact related to damages, contrary to the Seventh Amendment.

would require resolving factual disputes regarding apportionment of the royalty base.  I/P Engine has not explained how the Court could make these findings consistent with the parties' Seventh Amendment right to have damages determined by a jury.[8]

I/P Engine's argument that a district court must rule on laches in a separate, post-trial proceeding is also contrary to the Federal Rules of Civil Procedure.  The Court has already observed that "Rule 52's advisory committee's notes . . . 'authorizes the court to enter judgment *at any time* that it can appropriately make a dispositive finding of fact on the evidence.'"  (D.N. 800, 2 (emphasis added).)  Thus, the Rules themselves refute any contention that the Court must wait until after trial to rule on laches.

I/P Engine argues that it had no "obligation" to present "alternative damages theories" or "damages claims under both a non-laches and laches environment."  (Opp., 7.)  I/P Engine is, of course, not "obligated" to present any evidence at trial on any issue.  But it was I/P Engine that bore the burden of proving damages, assumed it would prevail on laches, and *chose* to submit no evidence from which the jury could find damages for the appropriate period as part of its trial strategy to get the biggest numbers it could before the jury.  Further, an "alternative damages theory" was not necessary.  I/P Engine could have introduced evidence of Defendants' monthly or quarterly revenues—properly apportioned—for both the pre- and post-complaint periods.  It simply chose not to do so.  To the extent I/P Engine contends that it was somehow Defendants'

---

[8]  The other cases cited by I/P Engine do not even address the appropriate procedure for determining damages when the defense of laches is pled, and instead, simply rule against the defendant on laches after trial.  *See Engineered Prods. Co. v. Donaldson Co., Inc.*, 330 F. Supp. 2d 1013, 1029 (N.D. Iowa 2004); *Imonex Servs., Inc. v. W.H. Munzprufer Deitmar, Trenner G.m.b.H.*, 2:01cv174, 2003 WL 26095807, at *1-2 (E.D. Tex. Sept. 25, 2003).  Because these cases do *not* involve a finding of laches, they do not even address what the appropriate procedure is in cases where laches *is* found.

burden to prove damages for the post-complaint period, that suggestion is unsupported by any authority.

### 2.      Deficiencies in I/P Engine's expert reports are not grounds for denying judgment as a matter of law or granting a new trial.

I/P Engine also complains that it could not have introduced the necessary evidence of a post-complaint royalty base and damages opinion because its expert, Dr. Becker, did not include this opinion in his Rule 26 expert report.  (Opp., 9.)  That I/P Engine failed to satisfy the expert disclosure requirements of Rule 26 confirms that its request for a new trial should be rejected, and judgment as a matter of law should be granted.  A party cannot reasonably avoid judgment as a matter of law on its claims by pointing to its *own* failure to disclose the expert testimony needed to satisfy its burden of proof.  A new trial in these circumstances would leave I/P Engine in exactly the same place—with a deficient damages report and no relevant expert testimony.

### 3.      I/P Engine could have moved to reopen the record in response to Defendants' motion for judgment as a matter of law, but did not.

I/P Engine never sought to reopen the record at trial to introduce additional evidence and attempt to remedy the failure of proof identified in Defendants' Rule 50(a) motion for judgment as a matter of law on damages.  (Opp., 9-10.)  The purpose of a Rule 50(a) motion is to inform "the opposing party of the challenge to the sufficiency of the evidence and [to] afford[] a clear opportunity to provide additional evidence that may be available."  Fed. R. Civ. P. 50(a) advisory committee's notes (2006); *see also Houck & Sons, Inc. v. Transylvania Cnty.*, 852 F. Supp. 442, 452 (W.D.N.C. 1993) (purpose of Rule 50(a) is to allow "non-moving party an opportunity to reopen its case and present additional evidence").  Here, I/P Engine was on notice of the deficiencies in its proof prior to submission of the case to the jury.  But it never sought leave to introduce additional damages evidence after the Court's laches ruling.

16

I/P Engine does not dispute that it never moved to reopen the record to submit additional damages evidence.  (Motion, 7.)  It instead attempts to (again) blame the Court for its failure, this time by falsely arguing that the Court "made clear that it was not accepting additional testimony" regarding damages.  (Opp., 9.)  I/P Engine misrepresents the record.  In the portion of the transcript that I/P Engine cites, the Court rejected I/P Engine's attempt to submit additional evidence to rebut *laches* after the Court had already found in Defendants' favor.  (*See id.* (citing Trial Tr., 1868).)  I/P Engine never asked for—and the Court never denied—the opportunity to submit additional evidence on the *royalty base*.  These are two distinct issues.  The Court correctly denied I/P Engine's request to submit additional evidence on laches because the Court had already decided the issue.  I/P Engine, having lost on laches *after* being fully heard, was not entitled to reopen the record and submit additional evidence.  (*Id.*)  A motion to reopen the record in response to a Rule 50(a) motion for judgment as a matter of law, on the other hand, is intended to remedy deficiencies in proof that an opposing party has pointed out *before* the judge grants the motion or the jury is charged.

I/P Engine also faults the Court when it argues that "I/P Engine's counsel acknowledged that a specific damages number for the shortened period was not in evidence and asked the Court for guidance on how to address the situation." (Opp., 10.)  Despite I/P Engine's admission that there was no evidence of damages for the appropriate period, the Court gave I/P Engine the benefit of the doubt and allowed the case to proceed to verdict.  The Court is not, however, I/P Engine's lawyer and was under no obligation to provide it "guidance" on how to move to reopen the record or meet its burden of proof.  This argument confirms that there was never evidence from which the jury could find damages for the post-complaint period.  That the Court did not

immediately grant judgment as a matter of law or instruct I/P Engine's counsel to move to reopen the record is not grounds for a new trial.

### C.    If A New Trial Is Granted, It Should Be On All Issues.

If the Court is inclined to grant a new trial, it should not be limited—as I/P Engine suggests—solely to the amount of damages.  Any new trial should encompass liability because the introduction of Dr. Becker's testimony was prejudicial to the entire case.  Numerous courts have held that the erroneous admission of evidence that the defendant is a large or wealthy company poses an impermissible risk of swaying the jury's liability determination.  *See U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc*., 608 F.3d 871, 897-98 (D.C. Cir. 2010); *Reilly v. NatWest Mkts. Group, Inc*., 181 F.3d 253, 266 (2d Cir. 1999) (evidence of wealth "generally inadmissible"); *Koufakis v. Carvel*, 45 F.2d 892, 902 (2d Cir. 1970) (remarks in closing concerning defendant's wealth "can be taken as suggesting that the defendant should respond in damages because he is rich and the plaintiff is poor" and "are grounds for a new trial").

I/P Engine argues that it did not introduce evidence of Defendants' "wealth," but instead, introduced evidence of Defendants' revenue.  This attempted distinction is unavailing because the same risk of prejudice arises from introduction of irrelevant evidence of a defendant's annual revenues.  In both cases, the large dollar figures create the danger that the jury may impermissibly conclude that the defendant should be held liable because it has substantial resources and the patentee is seeking a royalty that is small by comparison.  Further, as stated in Defendants' motion, evidence of total revenue attributable to SmartAds is not relevant to the damages analysis.  In situations such as this, where the asserted patents do not cover the entire accused product, the law requires that the royalty base "take into account the fact that the claimed invention is not the entire system but only a component of that system." *Cornell*, 609 F.

18

Supp. 2d at 290.[9]  I/P Engine does not contend that its patents cover more than just a small aspect of SmartAds, which is itself only one component of Google's AdWords system.  Because the introduction of evidence regarding Defendants' total revenues from SmartAds was inherently prejudicial to the jury's findings on both liability as well as damages, any new trial should be on all issues.[10]

## VII.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for judgment as a matter of law on damages.

DATED: February 15, 2013                  _/s/ Stephen E. Noona_____
                                          Stephen E. Noona
                                          Virginia State Bar No. 25367
                                          KAUFMAN & CANOLES, P.C.
                                          150 West Main Street, Suite 2100
                                          Norfolk, VA 23510
                                          Telephone:  (757) 624.3000
                                          Facsimile:  (757) 624.3169
                                          senoona@kaufcan.com

---

[9]   I/P Engine cites *Carnegie Mellon University v. Marvell Tech. Group, Ltd.*, No. 09-290, 2012 WL 3679564 (W.D. Pa. Aug. 24, 2012), but that case was decided prior to the Federal Circuit's recent decision in *LaserDynamics*, 694 F.3d at 68, which explicitly criticized and noted the unfair prejudice when evidence of the defendant's overall revenues is introduced to the jury.

[10]   *Walker v. Pettit Construction Co., Inc.*, 605 F.2d 128, 131 (4th Cir. 1979), cited by I/P Engine is distinguishable.  That case specifically notes that the errors at trial were "not so prejudicial or inflammatory as to cast doubt on the reliability of the jury's other findings."  *Id.* As the cases cited above demonstrate, the improper admission of evidence of a defendant's wealth, income, or size risk biasing the jury's findings on all issues, not merely damages.

David Bilsker
David A. Perlson
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

*Counsel for Google Inc., Target Corporation,*
*IAC Search & Media, Inc., and*
*Gannett Co., Inc.*

By:  */s/ Stephen E. Noona*         
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile:  (757) 624-3169

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW,  GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile:  (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile:  (415) 653-6444

*Counsel for Defendant AOL, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2013, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following:

Jeffrey K. Sherwood
Kenneth W. Brothers
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC   20006
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, VA  23510
Telephone:  (757) 623-3000
Facsimile:  (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff, I/P Engine, Inc.*

        */s/ Stephen E. Noona*
        Stephen E. Noona
        Virginia State Bar No. 25367
        KAUFMAN & CANOLES, P.C.
        150 West Main Street, Suite 2100
        Norfolk, VA 23510
        Telephone:  (757) 624.3000
        Facsimile:  (757) 624.3169
        senoona@kaufcan.com