**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| I/P ENGINE, INC.,            ) <br><br>             Plaintiff,    ) <br><br>       v.               ) <br><br> AOL, INC.  et al.,        ) <br><br>           Defendants.   ) | Civ.  Action No. 2:11-cv-512 |

**PLAINTIFF I/P ENGINE'S REPLY IN SUPPORT OF ITS MOTION FOR A NEW**
**TRIAL ON THE DOLLAR AMOUNT OF PAST DAMAGES**

## I.       INTRODUCTION

The jury found that damages should be calculated with 1) a running royalty and 2) a 3.5%

royalty rate.  Google's damages model, which was based on a lump sum payment, was expressly

rejected by the jury.  As such, the ***only*** evidence that the jury could have relied on was that

evidence presented during the testimony of Dr. Becker, I/P Engine's damages expert.  I/P

Engine's damages evidence supported an award of approximately $120 million from September

15, 2011 (the date of filing of the Complaint) through September 30, 2012.  The jury, however,

inexplicably deviated from the evidence by orders of magnitude for its damages

calculation.  Because the jury's verdict on damages is unsupported by the clear weight of the

evidence, a new trial is required on the damages amount for the post-filing damages period.

## II.      THE JURY'S PAST DAMAGES AWARD IS AGAINST THE CLEAR WEIGHT
##          OF THE EVIDENCE

Under Rule 59(a), a court may grant a new trial if the verdict is against the clear weight

of the evidence.  *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10cv121, 2010 U.S. Dist. LEXIS

119119, at *5 (E.D. Va. Nov. 9, 2010), citing *Atlas Food Sys. & Servs. Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 594 (4th Cir. 1996).  For the post-filing damages period, the evidence supports an award of past damages of approximately $120 million against all Defendants.  (Trial Tr. at 848:14-21; Brothers Decl., Exh. A (PDX-083).)[1]  Yet the jury awarded a total of $30.5 million in damages against all Defendants, ***one quarter*** of the appropriate damages award.

Since Defendants did not provide any alternative royalty theory, I/P Engine's damages evidence was the only evidence that the jury could have relied on for its damages award.  This evidence showed that the lion's share of infringing revenues (over 90%) was attributable to Google.  (Trial Tr. at 832:5-833:13; Brothers Decl., Exh. C (PDX-077).)  Google's infringing revenue base was over ***ten times*** greater than that of the non-Google Defendants combined.  Thus, Google's award should be at least ten times greater than that of the non-Google Defendants.  Indeed, the damages methodology used by Dr. Becker was the same for all Defendants; the royalty rate (3.5%) was the same; and the apportionment percentage (20.9%) was the same.  But the Google award was $15.8 million -- only 7.5 percent more than the $14.7 million award against the non-Google Defendants.  There is nothing in the record to reconcile this inconsistency.  And while the parties have provided the Court with their respective and differing views for the inconsistency (Motion at 14-15; Opp. at 24 n.15), the result is the same.  The jury's $30.5 million damages award differs from the $120 million damages award supported by the evidence by a factor of four.

The Federal Circuit has made clear that a new trial is justified when a jury verdict is substantially smaller than the one suggested by the evidence.  In *Richardson v. Suzuki Motor*

---

[1]  Although Defendants deny in their opposition that I/P Engine's evidence supported a $120 million damages award for the post-filing damages period, during the instruction conference, Defendants were prepared to present that very same number to the jury as the damages calculation under I/P Engine's damages model.  (Brothers Decl. ¶ 2, Exh. B.)

*Co., Ltd.*, 868 F.2d 1226, 1240-41 (Fed. Cir. 1989), as here, the instructions of the district court caused the jury to award damages that were too low by a factor of four.  There, the appellate court ordered a new trial on damages.  Likewise, in *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1328 (Fed. Cir. 1987), the Federal Circuit vacated a 5% royalty where the evidence demonstrated that the appropriate amount of royalties were "substantially higher."  The same should occur here.

### III.   THE DISCREPANCY IN THE PAST DAMAGES AWARD AGAINST GOOGLE IS A RESULT OF THE TIMING OF THE COURT'S LACHES RULING

Respectfully, I/P Engine believes that the timing of the Court's laches ruling complicated the jury's already difficult task and contributed to the error in the damages award.  When the Court ruled on laches, the parties already had tried their damages cases.  They had presented all of their evidence with the understanding that (1) the jury would be deciding damages from September 15, 2005, and (2) the Court would take up the equitable issue of laches after the jury verdict only if necessary.  (*See* Trial Tr. at 1815:1-11.)  The Court's laches ruling, which limited the damages period to post filing of the complaint, came the day before closing arguments, after the record had been closed regarding damages evidence.

By this time, both sides presented damages evidence relevant to the royalty base and total damages numbers for the seven years spanning September 15, 2005 to September 30, 2012.  (Trial Tr. at 754:10-935:20; 1556:11-1769:6.)  The evidence of the adjusted royalty base and total damages numbers covered these seven years.  (Trial Tr. at 832:20-833:13; 846:4-17; 848:14-849:6.)  Rather than permit the jury to come to a verdict on the already presented evidence, then adjusting that verdict after to reflect the Court's laches ruling, the jury had to make assumptions.  The jury could not rely on I/P Engine's precise, numerical calculation of

damages.  Instead, it had to attempt to recall I/P Engine's damages methodology, then apply it only to the four quarters included within the post-filing damages period.

The jury's multiple-damages related questions during deliberation show how much it struggled with calculating the amount of past damages due to the timing and sequence of the Court's implementation of its laches rulings.[2]  (Trial Tr. at 2146:15-17; 2148:7 ("If a running royalty rate is determined, are we to apply the rate to a certain figure for each defendant?" and "To what figure do we apply the rate?"; *see also* 2141:1-2; 2154:24-2155:1.)  The royalty base numbers that the jury sought in each of its questions were available for the seven year damages period that I/P Engine presented in its damages case.  Those royalty base numbers for the post-filing damages period were integrated into the original damage claims against each defendant, and were illustrated to the jury through Dr. Becker's testimony and in demonstratives showing the surging revenues in 2011 and 2012.  (Trial Tr. at 848:14-849:6; Exh. A (PDX-083).)

As a result, while the jury did the best that it could, the jury's award is orders of magnitude lower than the evidence showed; it is too low by a factor of four.  Thus, a new trial is required.  *Richardson*, 868 F.2d at 1240-41; *Del Mar Avionics*, 836 F.2d at 1328.

---

[2]  I/P Engine's assent to the Court's responses to the jury's questions does not constitute waiver of its right to request a new trial based upon the jury's subsequent award as being against the clear weight of the evidence.  The Court had overruled I/P Engine's timely objections to the substance and timing of the Court's laches rulings. Trial Tr. at 1811:19-1812:2 (suggesting leaving the damages period unchanged); 1815:12-1816:15 (suggesting allowing the jury to evaluate both damages periods); 1976:9-19, 2022:13-18 (objecting to jury instructions regarding the damages period).  A party is not obligated to reiterate an overruled objection every time the issue is later presented.  *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 599 n. 10 (4th Cir. 2005) (no waiver where Court was "fully aware of the plaintiff's position" but had rejected that position).

**IV.    A ONE-DAY TRIAL IS REQUIRED TO CORRECT THE ERROR OF THE PAST-DAMAGES AWARD AND TO CURE THE PREJUDICE CAUSED BY THE TIMING OF THE COURT'S LACHES RULING**

A new trial limited to the issue of damages from September 15, 2011 through September 30, 2012, will allow the jury to consider evidence tailored to the damages period, and cure the error and prejudice described above. *See Attard Indus., Inc.,* No. 1:10cv121, 2010 U.S. Dist. LEXIS 119119, at * 5; *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. Va. 1998).

The only issue and evidence that needs to be tried and presented before a new jury is that which is required to determine the royalty base.  The jury already has determined that the form of a reasonable royalty is a running royalty.  (D.I. 789 at 11.)  This finding should remain undisturbed because it is substantially supported by the evidence (*e.g.* Trial Tr. at 769:23-772:21) and is not implicated by the present motion.  *See Int'l Ground Transp. v. Mayor And City Council Of Ocean City, MD*, 475 F.3d 214, 218-19 (4th Cir. 2007) (jury verdicts supported by substantial evidence should not be disturbed).  That finding also eliminates the need for Defendants to present their alternative lump-sum damages model.  (*E.g.* Trial Tr. at 1564:8-1565:1.)  Further, the jury's finding that the rate of a reasonable royalty is 3.5%, which is also supported by substantial evidence (Trial Tr. at 784:24-799:1; 833:24-846:7) and is not implicated by this motion, eliminates the need for any experts to address most of the *Georgia Pacific* factors.  *See Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1484-85 (Fed. Cir. 1997) ("[T]he special verdict enables errors to be localized so that the sound portions of the verdict may be saved and only the unsound portions be subject to redeterminations through a new trial.").

As such, once the jury determines the royalty base, it is a simple matter of applying the running royalty rate of 3.5% to the royalty base.  At trial, Dr. Becker presented this evidence in

about an hour, and cross-examination on that topic was less than 30 minutes.  (Trial Tr. at 779:11-784:23; 799:2-832:23 (direct); 902:6-919:22 (cross).)  Defendants' unrealistic time estimate for a new trial (at 27) contemplates an opening on all issues (liability and damages) and testimony and evidence on all damages-related issues.  Because the scope of the trial is tightly defined by the jury's special verdict findings, however, a new trial on the dollar amount of past damages could be completed in a day.

## V.   DEFENDANTS' WAIVER ARGUMENT IS MERITLESS

Defendants' central argument is that I/P Engine waived any right to a new trial because it, aware that Defendants raised a laches defense, should have introduced damages claims under both a non-laches and laches scenario.  (Opp. at 1, 4, 25.)  But Defendants fail to cite a single case supporting that argument.  And I/P Engine is not aware of any court ever having ruled that a patentee is obligated, on threat of waiver, to present alternative non-laches and laches damages claims at trial.

Defendants' unsupported position is wrong for three reasons.  First, it misapprehends the law of laches.  Because laches is an affirmative defense, Defendants always bore the burden of proof.  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1038-39 (Fed. Cir. 1992).  Thus, there is no obligation for a patentee to introduce alternative damages evidence during its case-in-chief.

Second, laches is an equitable issue for the court, not the jury.  Because laches is an equitable defense, it should not be implemented in a manner that affects the jury's deliberations. *Humanscale Corp. v. CompX Intern. Inc.*, No. 09-86, 2010 WL 3222411, *1 and *8-*13 (E.D. Va. Aug. 16, 2010) (laches should be applied post-verdict to limit damages); *Amado v. Microsoft Corporation*, No. 03-242, 2008 WL 8641264, *1 (C.D. Cal Dec. 4, 2008) (adjusting jury verdict

based upon laches). Because the Court ruled at the pre-trial conference that it would not present laches to the jury, I/P Engine understood that laches would be decided by the Court after the jury verdict, and then only if necessary. (D.I. 839 ¶ 2 (Rudenko Dec.); D.I. 840 ¶ 2 (Sherwood Dec.); D.I. 841 ¶ 2 (Brothers Dec.), D.I. 842 ¶ 2 (Snow Dec.)). I/P Engine's understanding was not unreasonable. Indeed, in its laches ruling, the Court acknowledged that the timing of its ruling was unusual. (D.I. 800, at 1 ("[L]aches is an equitable defense to be resolved as to both fact and law by the Court, [thus,] a Rule 50(a) motion is inappropriate from either party. In the end, however, the Court will not place form over substance" and "the Court notes that Defendants made no … Rule 50(a) motion regarding laches.") The timing of the decision was unusual because courts commonly handle laches in patent cases either before trial or after trial. *See*, *e.g.*, *Humanscale,* 2010 WL 3222411, *1 (jury verdict covered damages period beginning six years prior to filing; court then denied laches); *Amado*, 2008 WL 8641264, *1 (jury verdict covered damages period beginning six years prior to filing; court found laches and altered jury award to reflect laches ruling); *Engineered Products Co. v. Donaldson Co.*, 330 F. Supp. 2d 1013,1017-18 (N.D. Iowa 2004) (full time period tried to jury; court considered laches post-verdict), *rev'd* on other grounds, 147 Fed. Appx. 979 (Fed. Cir. 2005); *Imonex Services, Inc. v. W.H. Munzprufer Deitmar, Trenner G.m.b.H.*, No. 01-174, 2003 WL 26095807, *1 (E.D. Tex. Sept. 25, 2003) (considering laches post-verdict).

Third, a requirement that a patentee submit two different and competing damage cases to the jury would create needless jury confusion. Defendants do not explain how a jury would reconcile these two different damage theories, or how the Court would instruct the jury to disregard laches damages evidence if the Court did not rule prior to verdict. This Court should decline Defendants' invitation to err.

## VI.     CONCLUSION

For all the reasons discussed above and in its moving papers, I/P Engine respectfully

requests that the Court grant its motion for a new trial on the dollar amount of past damages.


Dated: February 15, 2013                            By:  /s/ Jeffrey K.  Sherwood
                                                    Donald C.  Schultz (Virginia Bar No. 30531)
                                                    W.  Ryan Snow (Virginia Bar No. 47423)
                                                    CRENSHAW, WARE & MARTIN PLC
                                                    150 West Main Street
                                                    Norfolk, VA 23510
                                                    Telephone:     (757) 623-3000
                                                    Facsimile:      (757) 623-5735

                                                    Jeffrey K.  Sherwood (Virginia Bar No. 19222)
                                                    Frank C.  Cimino, Jr.
                                                    Kenneth W.  Brothers
                                                    Dawn Rudenko Albert
                                                    Charles J.  Monterio, Jr.
                                                    DICKSTEIN SHAPIRO LLP
                                                    1825 Eye Street, NW
                                                    Washington, DC 20006
                                                    Telephone:     (202) 420-2200
                                                    Facsimile:      (202) 420-2201

                                                    Counsel for Plaintiff I/P Engine, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2013, the foregoing **PLAINTIFF I/P ENGINE'S**

**REPLY IN SUPPORT OF ITS MOTION FOR A NEW TRIAL ON THE DOLLAR**

**AMOUNT OF PAST DAMAGES**, was served via the Court's CM/ECF system on the

following:


Stephen Edward Noona
Kaufman & Canoles, P.C.
150 W Main St
Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com

David Bilsker
David Perlson
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

Robert L. Burns
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
robert.burns@finnegan.com

Cortney S. Alexander
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
cortney.alexander@finnegan.com


                                    /s/ Jeffrey K. Sherwood
                                    _____