# EXHIBIT 1

## COVENANT NOT TO SUE AND INTELLECTUAL PROPERTY AGREEMENT

This Covenant Agreement ("*Agreement*") is dated December 18, 2008 (the "*Effective Date*") and is made by and between: Carl Meyer, an individual residing at 20252 Hill Avenue, Saratoga, California 95070 (hereafter "*Meyer*"), and Google Inc., a Delaware company having offices at 1600 Amphitheatre Parkway, Mountain View, California 94043 (hereafter "*Google*").

### ARTICLE I - BACKGROUND

1.1    Google owns the patent(s) and patent application(s) identified in **Schedule 1.1** attached hereto.

1.2    Meyer owns the patent(s) and patent application(s) identified in **Schedule 1.2** attached hereto.

### ARTICLE II - DEFINITIONS

For purposes of this Agreement, the following definitions shall apply:

2.1    "*Affiliate*" means a business entity controlled by, controlling or under common control with, a party to this Agreement. For purposes of this Agreement, "control" has the meaning given to it under Rule 12b-2 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). An entity shall only have the rights and responsibilities set forth herein as an Affiliate, for so long as the criteria set forth in this Section 2.1 are satisfied with respect to such entity.

2.2    "*Google Products and Services*" means (a) a distributed set of facilities, machines and associated software and technologies that comprise the Google infrastructure, whether in the past, currently, or in the future, and (b) any product or service offered by Google, whether in the past, currently, or in the future.

2.3    "*IQ Platform*" means the computer software and related technologies, in whole or in part, that comprise the IQ Advantage platform as described at www.iqadvantage.com, as that software and those technologies are currently configured as of the Effective Date.

2.4    "*Patent Rights*" means: (a) the patents, patent applications, provisional patent applications and/or related foreign patents and patent applications listed on **Schedule 1.1** or **Schedule 1.2**, as the context requires, including all rights pursuant to 35 U.S.C. § 154 and any and all letters patent issuing from any continuation, divisional and/or continuation-in-part applications; (b) requests for continuing examination, substitutions, reissues, extensions, renewals and reexaminations of any of the foregoing; (c) all inventions, invention disclosures and discoveries described in any of the foregoing; and (d) all rights to apply in any country for any foreign counterpart, certification of invention or other governmental grant or issuance corresponding to any of the foregoing throughout the world.

### ARTICLE III – RECIPROCAL COVENANTS

3.1    *Meyer Covenant.* Meyer covenants that neither he nor any Meyer Affiliate will sue or threaten to sue Google, or any Google Affiliate, for past, present and/or future infringement anywhere in the world of any of the Patent Rights identified in **Schedule 1.2** with respect to any products or services including, without limitation, the Google Products and Services, however designated. Meyer covenants that neither he nor any Meyer Affiliate will sue or threaten to sue any Google customer, for past, present and/or future infringement anywhere in the world of any of the Patent Rights identified in **Schedule 1.2** with respect to the Google Products and Services, however designated. As a condition of this agreement, the Meyer Covenant shall travel with, and shall be conveyed with, any purchase, assignment, exclusive license, or other conveyance of any enforcement rights for any of the Patent Rights identified in Schedule 1.2.

3.2    *Google Covenant.* Google covenants that neither it nor any Google Affiliate will sue or threaten to sue Meyer, or any Meyer Affiliate, for past, present and/or future infringement anywhere in the world of any of the Patent Rights identified in **Schedule 1.1** with respect to the IQ Platform, however designated, except:

- 1 -

CONFIDENTIAL OUTSIDE COUNSEL ONLY

G-IPE-0220751

3.2.1    As a condition of this agreement, the Google Covenant may not be assigned by Meyer in connection with the sale or assignment to a third party of any Meyer Affiliate, or the IQ Platform, and shall not survive any transfer of control or transfer of rights in Meyer, any Meyer Affiliate, or the IQ Platform.

3.2.2    As a condition of this agreement, the Google Covenant does not convey to Meyer foundry rights, have-made rights, or the right to use the IQ Platform as a pass-through entity for any third party.

3.3    There shall be no monetary payments associated with the covenants herein. The consideration for each party's covenant shall be the other party's covenant.

3.4    All rights in and to a patent affected by this Agreement are reserved to the owner. In addition, except as otherwise expressly set forth herein, the reciprocal covenants granted herein are limited solely to the patents expressly identified, and neither party shall receive the benefit of the other party's covenant for any other patents in a party's portfolio.

3.4.1    For the purposes of the U.S. Bankruptcy Code and as a condition of this agreement, the rights and benefits of Google hereunder shall be treated as irrevocable by Meyer, his heirs, beneficiaries, successors and assigns to the Patent Rights set forth in Schedule 1.2.

3.4.2    In the event of any attempt to assign, or attempt or transfer any enforcement rights, in any of the Patent Rights listed in Schedule 1.2, without this agreement being conveyed therewith, then Google shall be granted, retroactive to the the date of this agreement, a one-half ownership interest in the Patent Rights set forth in Schedule 1.2.

## ARTICLE IV – CONSULTING

4.1    For ninety (90) days following the Effective Date, Meyer agrees to perform consulting, advisory and related services with respect to the Patent Rights of **Schedule 1.1**.

4.2    Meyer shall receive no monetary compensation for the consulting services, which Google agrees shall be no more than fifty (50) hours. Google shall reimburse Meyer for all actual, reasonable, and necessary expenses incurred or paid by Meyer in connection with, or related to, the performance of consulting services under this Agreement pursuant to Google's standard policies for reimbursement for contractor and consulting expenses. Meyer shall submit to Google itemized statements, in a form satisfactory, of such expenses, if any, incurred in a prior consulting period. Google shall pay to Meyer amounts shown on each such statement within 30 days after receipt thereof. Notwithstanding the foregoing, Meyer shall not incur any expenses without the prior written approval of Google pursuant to a separate agreement between the parties. Meyer shall not be entitled to any worker's compensation, medical, dental, life insurance, short or long term disability coverage, or any other privileges, including, without limitation, holiday pay, vacation pay, employee cash incentive plans, stock options, 401(k) plan, or F.I.C.A/Medicare contributions, federal or state unemployment insurance, or any other benefits made available to Google employees, except by way of any separate agreement between the parties.

## ARTICLE V – CONFIDENTIALITY

5.1    The parties hereto will keep the terms and existence of this Agreement confidential and will not now or hereafter divulge any of this information to any third party except (a) with the prior written consent of the other party; (b) as otherwise may be required by law or legal process; (c) during the course of litigation, so long as the disclosure of such terms and conditions is restricted in the same manner as is the confidential information of other litigating parties; (d) in confidence to its legal counsel, accountants, banks, and financing sources and their advisors solely in connection with administering or complying with its obligations with respect to this Agreement; (e) by Meyer, to potential purchasers of his Patent Rights; and (f) to enforce a party's right, title and interest in and to his or its respective Patent Rights; provided that, in (b) and (c) above, (i) to the extent permitted by law, the disclosing party will use all legitimate and legal means available to minimize the disclosure to third parties, including, without limitation, seeking a confidential treatment request or protective order whenever appropriate or

CONFIDENTIAL OUTSIDE COUNSEL ONLY

G-IPE-0220752

available; and (ii) the disclosing party will provide the other party with at least ten (10) days' prior written notice of such disclosure. Notwithstanding the above, Google may file and publicly record with the United States Patent & Trademark Office (PTO) a redacted version of this Agreement, substantially as shown in Exhibit A.

## ARTICLE V – DISPUTE RESOLUTION

6.1     Dispute Resolution. Any and all claims, disputes, or controversies relating in any way to, or arising out of, this Agreement, including, without limitation, any breach or threatened breach of this Agreement, ("Disputes") will be resolved as follows:

(a)     The party raising the Dispute shall promptly provide the other party with a written notice describing the nature of the Dispute in reasonable detail (a "Dispute Notice"). During the thirty (30) day period after a party's receipt a Dispute Notice, the parties will commence discussions to attempt to resolve the Dispute.

(b)     If the parties cannot timely resolve the Dispute through negotiation, before resorting to arbitration, the parties will try in good faith to settle the Dispute by mediation before a mutually agreed mediator in San Jose, California. The mediation will be conducted in English and administered by the American Arbitration Association ("AAA") under its Commercial Mediation Procedures. If the parties are unable to agree upon a mutually acceptable mediator, the AAA will appoint a qualified mediator. The mediation proceeding shall take place on the earliest practicable date following the submission of a request for mediation by either party, which request shall be submitted within sixty (60) days after a party's receipt of a Dispute Notice.

(c)     If the Dispute is not resolved through mediation within thirty (30) days after the mediation hearing, the parties will submit the Dispute to final and binding arbitration administered by the AAA under its Commercial Arbitration Rules.

## ARTICLE VI – GENERAL PROVISIONS

7.1     Each party represents and warrants that this Agreement has been duly authorized, executed and delivered by and, as of the date executed by a party, constitutes the party's valid and binding obligation, enforceable in accordance with its terms.

7.2     Each party further represents and warrants that there is no action or proceeding pending or, in so far as the party knows, threatened against it before any court, administrative agency or other tribunal which could impact upon the party's right, power and authority to enter into this Agreement, to grant the covenant hereunder, or to otherwise carry out its obligations hereunder.

7.3     This Agreement (and all schedules hereto) constitute the entire agreement and understanding of the parties with regard to the subject matter hereof and merges and supersedes all prior discussions, negotiations, understandings and agreements between the parties concerning the subject matter hereof. Neither party shall be bound by any definition, condition, warranty, right, duty or covenant other than as expressly stated in this Agreement or as subsequently set forth in a written document signed by both parties. Each party expressly waives any implied right or obligation regarding the subject matter hereof. The parties hereby waive the provisions of section 1542 of the California Civil Code, which states:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

7.4     This Agreement will be interpreted, construed, and enforced in all respects in accordance with the laws of the State of California, without reference to its choice of law principles to the contrary.

7.5     Each party hereto agrees to execute, acknowledge and deliver all such further instruments, and to do all such further acts, as may be necessary, advisable or appropriate to carry out the intent and purposes of this Agreement.

CONFIDENTIAL OUTSIDE COUNSEL ONLY

7.6   Any of the provisions of this Agreement which are determined to be invalid or unenforceable in any jurisdiction shall be ineffective to the extent of such invalidity or unenforceability in such jurisdiction, without rendering invalid or unenforceable the remaining provisions hereof or affecting the validity or enforceability of any of the provisions of this Agreement in any other jurisdiction.

7.7   Except as expressly stated herein, nothing in this Agreement is intended to confer benefits, rights or remedies unto any person other than the parties hereto.

7.8   The headings used herein are for reference and convenience only, and shall not enter into the interpretation of this Agreement.

7.9   No term or provision hereof will be considered waived by either party hereto, and no breach consented to by either party hereto, unless such waiver or consent is in writing signed on behalf of the party against whom the waiver or consent is asserted. No consent to or waiver of a breach by either party hereto, whether express or implied, will constitute a consent to, waiver of, or excuse for any other, different, or subsequent breach by such party.

7.10   The parties hereby acknowledge and agree that: (a) the provisions and restrictions contained in this Agreement are reasonable and necessary for protection of the legitimate interests of the parties hereto; (b) neither party would have entered into this Agreement in the absence of such provisions and restrictions; and (c) any violation of any provision of this Agreement by a party hereto or such party's agents and representatives may result in irreparable injury to the other party hereto, which injury may be inadequately compensable in monetary damages. Accordingly, each party acknowledges and agrees that the other party shall be entitled to seek preliminary and/or permanent injunctive relief from any violation or threatened violation of this Agreement by the other party hereto or by such other party's agents or representatives. The rights and remedies of each party under this Agreement shall be cumulative and in addition to any other rights or remedies to which such party may be entitled under this Agreement, at law, or in equity.

7.11   This Agreement may be executed in counterparts, each of which will be deemed an original, and all of which together constitute one and the same instrument. Each party will execute and promptly deliver to the other parties a copy of this Agreement bearing the original signature. Prior to such delivery, in order to expedite the process of entering into this Agreement, the parties acknowledge that a transmitted copy of this Agreement will be deemed an original document. A transmitted copy means a copy bearing a signature of a party that is reproduced or transmitted via email of a .pdf file, photocopy, facsimile, or other process of complete and accurate reproduction and transmission.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives on the date(s) set forth below:

CARL MEYER

By: /s/ Carl Meyer

Name: Carl Meyer

Title: Owner

Date: 12/18/08

GOOGLE INC.

By: /s/

Name: KENT [illegible]

Title: Assistant Secretary

Date: 12/18/08

CONFIDENTIAL OUTSIDE COUNSEL ONLY

G-IPE-0220754

Schedules

1.1   List of Google Patents

1.2   List of Meyer Patents

CONFIDENTIAL OUTSIDE COUNSEL ONLY

## SCHEDULE – 1.1

## LIST OF GOOGLE PATENTS

Patents:

U.S. Patent No. 7,130,808
U.S. Patent No. 7,406,434
U.S. Patent No. 7,415,423

Patent Applications:

U.S. Serial No. 12/179,916
U.S. Serial No. 12/193,163

CONFIDENTIAL OUTSIDE COUNSEL ONLY

G-IPE-0220756

CONFIDENTIAL OUTSIDE COUNSEL ONLY

SCHEDULE – 1.2

LIST OF MEYER PATENTS

Patents:

U.S. Patent No. 6,915,271

Patent Applications:

U.S. Serial No. 10/074,074
U.S. Serial No. 10/017,499
U.S. Serial No. 10/017,763
U.S. Serial No. 10/024,630

G-IPE-0220757