**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| I/P ENGINE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Civ. Action No. 2:11-cv-512 |
| | ) |
| AOL, INC. et al., | ) |
| | ) |
| Defendants. | ) |

**I/P ENGINE, INC.'S REPLY IN SUPPORT OF ITS**
**MOTION FOR AN AWARD OF POST-JUDGMENT ROYALTIES**

## I.   INTRODUCTION

This Court's final judgment finding I/P Engine's patents not invalid and infringed worked a substantial shift in the bargaining position of the parties. With respect to the patents-in-suit, I/P Engine is in a much better bargaining position with Google than it would have been prior to the jury verdict. Ignoring this "substantial shift" in I/P Engine's bargaining power, Defendants ask this Court to award at most a $3.5 million lump-sum payment. Defendants' argument largely relies on the pre-verdict 2008 Carl Meyer and 2011 Lycos agreements as controlling during the post-verdict hypothetical negotiations. This is the very same damages model and evidence Defendants presented at trial, and which the jury flatly rejected.

Defendants admit continuing infringement at least from November 2012 through May 2013, but provide no meaningful opposition to I/P Engine's post-judgment royalty analysis during that period. Instead, Defendants wholly disregard the jury's verdict as well as this Court's and the Federal Circuit's precedent in *ActiveVideo II*, reasserting their $3.5 million

1

lump-sum argument–a post-judgment payment that is $27 million *less* than the jury award for only *one year* of past-infringement.

Post-verdict, Defendants' continued infringement is willful.  It is customary and justified to increase the jury's royalty rate to reflect both the change of circumstances and a defendant's post-judgment willful infringement.  Without post-judgment enhancement, Defendants would have no incentive to not infringe; there would be no downside to being an adjudged infringer because only a reasonable royalty (or substantially less as asserted by Defendants) would be imposed.  Defendants' position is not supported by law or fact.  In fact, I/P Engine has been unable to identify a single case where an ongoing royalty was awarded at a rate lower than the jury's verdict—much less one that removes the jury's running royalty finding altogether.  On a go-forward basis, I/P Engine is entitled to more—not some 90% less—than the jury's award for past infringement.  Defendants' contrary position should be rejected.

Further, Defendants' alleged design around (allegedly implemented two days before their opposition) is nothing more than an attempt to hijack I/P Engine's motion for ongoing royalties. Indeed, Google—after over a year of extensive discovery; multiple expert reports; a 3-week jury trial; and a $30 M verdict—now over 7 months after the Court's final judgment, claims that it has easily and at no impact on revenue, designed around the patents and no longer infringes.  The Court should reject Google's attempt to subvert the ongoing royalty issue here and outright reject Defendants' alleged design-around claim as it is not properly before this Court.

## II.  I/P ENGINE IS ENTITLED TO ONGOING ROYALTIES FOR DEFENDANTS' CONTINUING, WILLFUL INFRINGEMENT

### A.  Only Enhanced, Post-Judgment Royalties Will Fully Compensate I/P Engine for Defendants' Continued, Willful Infringement

Defendants ask this Court to deny I/P Engine post-judgment royalties (at 26) or to limit any ongoing royalties to a $3.5 million lump sum (a fraction of the jury's reasonable royalty) (at

10).  Defendants offer no precedent (and I/P Engine has found none) that has outright denied

ongoing royalties or reduced a jury's running royalty rate for continued infringement post-

judgment.[1]  To the contrary, post-judgment enhancement of the jury's royalty rate is favored:

> Without the risk of post-judgment enhancement, a defendant would be encouraged to
> bitterly contest every claim of patent infringement, because in the end, only a reasonable
> royalty would be imposed and there would essentially be no downside to losing.

*Affinity Labs of Texas, Inc. v. BMW N. Am., LLC*, 783 F. Supp. 891, 898 (E.D. Tex. 2011);

*Soverain Software LLC v. Newegg Inc.*, 836 F. Supp. 2d 462, 483 (E.D. Tex. 2010) *rev'd on

other grounds*, 705 F.3d 1333 (Fed. Cir. 2013) ("[a]n on going post-verdict royalty is

appropriately higher than the jury's pre-verdict reasonable royalty").  This Court should reject

Defendants' (adjudicated and now willful infringers) attempt to owe less for their post-verdict

infringement than the jury found they owed for their pre-verdict infringement.  *See Boston

Scientific Corp. v. Cordis Corp.*, 838 F. Supp.2d 259, 276 (D. Del. 2012).

### B.  Ongoing Royalties are Awarded When the Four-Factor *eBay* Test for a Permanent Injunction is Not Met

Ignoring precedent, Defendants assert (at 3) that I/P Engine cannot receive ongoing

royalties unless it satisfies the four-factor *eBay* test for a permanent injunction.  That is not the

law.  Just the opposite, ongoing royalties are routinely awarded *because* the four-factor test is *not*

met.  *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007) ("*Paice I*")

(remanding case so district court could provide its reasoning for its ongoing royalty rate after

---

[1]  *Cf. Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, No. cv-03-597, D.I. 1057 (D. Ariz. Sep. 8, 2010), aff'd 670 F.3d 1171 (Fed. Cir. 2012) (1.25x-2x jury rate for ongoing rate under modified *Georgia Pacific* ("GP") factors); *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72 DF, 2011 WL 8810604 (E.D. Tex. Aug. 2, 2011) (2.5x enhancement under modified GP analysis); *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639 (E.D. Tex. 2011) (increased jury rate of 0.5% to 0.75% under GP analysis; doubled to 1.5% under *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)); *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620 (E.D. Tex. 2009) ("*Paice II*") (4x enhancement (increasing jury rate of $25 to $98) under modified).

determining *eBay* test was not met for a permanent injunction); *see also ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1341 (Fed. Cir. 2012) ("*ActiveVideo II*") (vacating grant of a permanent injunction after finding *eBay* factors not met; remanding "[f]or the district court to consider an appropriate ongoing royalty rate for future infringement"); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d 1171, 1192-93 (Fed. Cir. 2012) (affirming ongoing royalty rate where permanent injunction denied under *eBay* four-factor test). Defendants fail to cite to a single decision that requires the *eBay* four-factor test to be satisfied prior to receiving ongoing royalties.[2]

## C. The Ongoing Royalty Should be Calculated Under a Modified *Georgia Pacific* Analysis, Then Enhanced Under *Read* for Defendants' Continued, Post-judgment Infringement

An accepted method of calculating an ongoing royalty is to increase the jury's royalty rate due to the changed circumstances of the parties post-judgment under a modified *Georgia Pacific* analysis, then to enhance that rate because of a defendant's continued willful infringement.  *See e.g., Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639 (E.D. Tex. 2011) (GP analysis (at 646-49) increased jury rate from 0.5% to 0.75%; *Read* analysis (at 652-53) doubling rate to 1.5%); *Affinity Labs of Texas*, 783 F. Supp. 2d 891 (GP analysis (at 897- 900), $11 base rate; *Read* analysis (at 902-04) increased rate to $14.50).  I/P Engine has provided the only framework for this Court to calculate an appropriate ongoing running royalty rate under a modified *Georgia Pacific* and *Read* analysis.

The appropriate ongoing royalty should be 7% of 20.9% of Defendants' U.S. AdWords revenue.  The 20.9% apportioned-revenue base was derived from Google's own documents self-

---

[2] Defendants' confusion stems from the observation that an ongoing royalty, like a permanent injunction, is an equitable form of relief.  The mere categorization of an award as equitable hardly suggests that the Court must apply a test that governs an entirely different equitable remedy.

4

declaring the impact of Google's use of the patented technology to its own revenue.  (Becker 12/18 Decl., ¶ 3; Becker 5/20 Decl., ¶ 13).  This base is conservative; the evidence indicates that the impact of the patented technology on Google's revenue was as high as 40%.  (Becker 5/20 Decl., ¶ 13).  The 7% rate is derived by taking the post-judgment rate of 5%, which differs from the jury's 3.5% rate due to the parties' changed circumstances, then enhancing that rate to 7% because of Defendants' continued, willful infringement.

> ### 1. I/P Engine is entitled to a 5% post-judgment royalty rate based on the changed circumstances of the parties.

Courts routinely use the "jury's implied royalty rate [as] a starting point for determining the ongoing post-judgment royalty rate."  *Soverain Software LLC v. J.C. Penny Corp., Inc.*, 899 F. Supp. 2d 574, 589 (E.D. Tex. 2012) (citations omitted); *see also supra* n.1.  Here, that starting point is the jury's 3.5% rate.  It is also routine for courts to increase the jury's royalty rate based on the changed circumstances of the parties post-judgment.  *See supra*, n.1.

As detailed in I/P Engine's moving brief (at 7-9) and Dr. Becker's Declaration (at ¶¶ 7-12), four factors impact a modified *Georgia Pacific* analysis in this case: (1) the parties' changed legal status post-judgment; (2) I/P Engine (not Lycos) as the patentee; (3) 2012 (not 2004) as the hypothetical negotiation date; and (4) the range of comparable royalty rates is higher.  These changed circumstances support a higher post-verdict royalty than the jury's pre-verdict reasonable royalty—not a substantially lower one as asserted by Defendants.  Defendants' arguments are not supported by fact or law.

Parties' Changed Legal Status.  Defendants argue (at 18) that the parties' changed post-judgment legal positions do not warrant an enhancement because the 2004-hypothetical negotiation (and thus the jury's 3.5% rate) was premised on the assumption that the patents were valid and infringed.  In *ActiveVideo II*, the Federal Circuit explicitly rejected this argument:

The district court is correct; there has been a substantial shift in the bargaining position of the parties. See *Amado*, 517 F.3d at 1362 ("There is a fundamental difference, however, between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement."). *We reject Verizon's argument that the district court erred in concluding that the jury verdict placed [plaintiff] in a stronger bargaining position.*

694 F.3d at 1342 (emphasis added). This Court used the plaintiff's enhanced bargaining position to award a royalty that the infringer "likely… would not have agreed to… prior to litigation." *Id.* at 1342. The Federal Circuit's logic in *ActiveVideo II* and *Amado* applies even if an injunction is not available. *Id.* at 1343 ("[t]his holding applies with equal force in the ongoing royalty context" and "[t]hough we vacate the district court's injunction, we see no error in its post-*verdict* royalty calculation"). Defendants contrary authority (at 18-19) predate the Federal Circuit's explicit rejection of Defendants' position in *ActiveVideo II*.

<u>Different Patentee.</u> Defendants argue (at 19) that I/P Engine rather than Lycos being the patentee has no impact on the 2012 negotiations because Lycos has also sued for patent infringement on the same patent family. Defendants ignore that during the 2004 hypothetical negotiation, Terra was the patentee, and was unaware or uninterested in protecting or monetizing Lycos' patent portfolio. (Becker 12/18 Decl., ¶ 7; Blais Depo. Tr. at 30-1-31:21). Defendants also ignore that Lycos' parent company directed it to abandon those lawsuits to reduce costs. (D.I. 818, July 31, 2012 Blais Dep. at 81-83, 88-89). Unlike Terra or Lycos, I/P Engine is in the business of protecting, enforcing and licensing its intellectual property. (Becker 12/18 Decl., ¶ 7). Notably, during trial, Defendants argued that Lycos would not have had a strong bargaining position against Google because it was in financial decline. (Trial Tr. at 1575:1-10). In its opposition, however, Defendants fail to mention that I/P Engine is financially sound, which under Defendants' own trial arguments, would provide it with superior bargaining power during

negotiations.  I/P Engine would have a stronger bargaining position with Google in 2012, than Lycos would have had in 2004.

Different Hypothetical Negotiation Date.  Defendants claim (at 16, 19) that the success of Google's adjudged infringing system would not impact the  2012 negotiations because (1) Dr. Becker has no support for his 20.9% revenue base, but even if he did, (2) Defendants' alleged, nine-day-old design around prevents further reliance on that base.

The 20.9% apportionment (the *only* apportionment presented at trial) comes from Google's self-declared statements of the increased revenue from the patented technology and declaring that the technology is "mission critical" to the success of the AdWords system. (Becker 5/20 Decl., ¶ 13).[3]  The significant success of AdWords since the 2004 hypothetical negotiation warrants an increase of the jury's reasonable royalty.  *See Mondis Tech*, 822 F. Supp. 2d at 648 (finding the commercial success of infringing product after hypothetical negotiation warranted an increase from the jury's determination).

Defendants' newly-minted design-around claim, as explained below, is not properly before this Court, and is not relevant to the ongoing royalty for the adjudicated infringing system.  At the very least, the 20.9% apportionment should apply to the ongoing royalties for that system from November 20, 2012 (final-judgment date) through May 11, 2013 (alleged date of design-around).

The Overture Agreements.  Defendants attack (at 16) Dr. Becker's reliance on the Overture agreements, arguing those agreements are too "temporally removed" from the 2012 hypothetical negotiation and not technologically comparable to the patents.  Contrary to

---

[3]  Dr. Ugone's (Defendants' damages expert) reassertion (at ¶ 36) that the correct apportionment factor is 2.8%, not 20.9%, is based on rank conjecture and is nothing more than after-the-fact speculation.  (*See* Becker 5/20 Decl., ¶¶  22-23).  Backing a percentage out of a portion of the jury's verdict (the jury award against Google) is not evidence or a proper calculation. (*See id.*).

Defendants' argument, and distinguishable from the Meyer and Lycos agreements relied on by Defendants, the Overture agreements are technically[4] and economically comparable to the patents-in-suit.  And unlike Defendants' sole reliance on Meyer and Lycos, the Overture agreements are only one factor of many that Dr. Becker relies on to support his position.

Dr. Becker used the Overture licenses as a starting point in the 2004 hypothetical negotiations in arriving at his 3.5% pre-verdict running royalty rate—the same form and rate the jury adopted.  The parties to the 2012 negotiation would have been aware that both the structure (running royalty) and the rates (5% or higher for the undiscounted royalty rates) were still relevant well past 2005.  Google itself licensed the '361 patent from Overture with respect to the AdWords system. (Becker 5/20 Decl., ¶ 11).  Overture had an ongoing licensing program for the '361 patent that resulted in patent license agreements with, among others, Marchex, eXact, Interchange, and Adknowledge.  (Becker 5/20 Decl., ¶ 10).  These licenses are relevant to the 2012 negotiation as the term of each is for the entirety of the term of the last to expire patent. (Becker 5/20 Decl., ¶ 10).  The '361 patent expires in 2019.  Thus, the parties would have been aware that the discounted royalty rates (3-4%) that Dr. Becker relied on (and which the Overture licensees received) were because those licensees were early licenses and/or had a business relationship with Overture.  (Becker 12/18 Dec., ¶¶ 10-12).

None of those facts exist here.  This as well as that the infringing system is *known* to be "mission critical" to the success of AdWords, and the other changed circumstances explained by Dr. Becker, support an upward adjustment to a 5% ongoing royalty rate.  (PX-337; Becker 12/18 Decl., ¶¶ 8, 13-14).

---

[4] Contrary to Defendants' assertion, I/P Engine's technical expert established the technical comparability of the Overture patent ('361 patent) and the patents-in-suit at trial. (Trial Tr. at 630:12-23; Becker 5/20 Dec., ¶  11).

## 2. The post-judgment rate of 5% should be enhanced to 7% because of Defendants' continued, willful infringement post-judgment.

The post-judgment royalty rate of 5% should be enhanced to 7% because of Defendants' continued willful infringement. *See e.g., Mondis Tech.*, 822 F. Supp. 2d at 652-53 (doubling post-judgment rate of 0.75% to 1.5%); *Affinity Labs of Texas*, 783 F. Supp. 2d at 902-05 (enhancing post-judgment royalty of $11 to $14.50).  While the appropriate enhancement in a case is fact dependent, ongoing-royalty increases of 33% to 50% are routine.  Even doubling and trebling the jury's royalty rate is common.  *See Mondis Tech.*, 822 F. Supp. 2d at 644-653; *Paice II,* 609 F. Supp. 2d at 630; *DataTreasury Corp.,* 2011 WL 8810604, at *18-19;  *Soverain Software v. J.C. Penney,* 899 F.Supp.2d at 590.  I/P Engine's proposed 7% rate is not unusual and is justified by the facts of this case.

In opposition, Defendants invoke *Seagate*, cite *pre-verdict* willfulness cases, assert that the appeals process is not exhausted, and that I/P Engine did not claim willfulness pre-judgment.  Authority refutes these arguments.  "[O]nce judgment is entered, ongoing infringement by the adjudged infringer is willful; that factor, along with the potential for enhancement, the potential impact of res judicata, and many additional factors significantly change the ongoing negotiation calculus."  *Paice II*, 609 F. Supp. 2d at 626-27; *see also Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008) ("Prior to judgment, liability for infringement, as well as validity [], is uncertain, and damages are determined in the context of that uncertainty.  Once judgment [] has been entered, however, the calculus is markedly different because different economic factors are involved."); *Affinity Labs*, 783 F. Supp. 2d at 899 ("Following a jury verdict and entry of judgment of infringement and no invalidity, a defendant's continued infringement will be willful absent very unusual circumstances."); *Soverain Software v. Newegg*, 836 F. Supp. 2d at 483 ("[Defendant] is now an adjudged infringer and [its] continued infringement is both voluntary

and intentional, making [its] continued infringement willful").  It is well-settled that an

adjudicated infringer's continued infringement is willful.  The question before this Court is

whether Defendants' continued willful infringement, under the *Read* factors, warrants an

enhancement of the post-judgment royalty.   Here, the *Read* factors support an enhancement.

(*See* Dkt. No. 823, at 10-12).  Defendants' arguments, however, are unsupported by fact and law.

      Factor 1 (Evidence of Copying).  Defendants argue (at 23) that the absence of evidence

showing that Google copied the patented technology "weighs against enhancement."  Even if

there was no evidence of copying (*cf.* D.I. 823, at 10), this Factor would be neutral, not against

enhancement.  *See Affinity Labs*, 783 F. Supp.2d at 902 ("[f]irst *Read* factor is neutral, as there is

no evidence of deliberate copying"); *Soverain Software v. J.C. Penney*, 899 F. Supp. 2d at 589

(same); *Krippelz v. Ford Motor Co.*, 670 F. Supp. 2d 815, 820-21 (N.D. Ill. 2009) (same).

      Factors 2 and 5 (Good Faith Non-Infringement/Invalidity Belief and Closeness of Case).

Defendants claim (at 23) that in spite of the jury's verdict, they have a good faith belief of non-

infringement and invalidity because they have not exhausted their appeals and the patents are in

reexamination before the patent office.  Multiple courts have explicitly rejected these arguments.

*See Mondis Tech.*, 822 F. Supp. 2d at 649 (finding "no reason to discount the royalty rate based

on the possible outcome of an appeal" (quoting *DataTreasury*, 2011 WL 8810604, at *8));

*Soverain Software v. J.C. Penney*, 899 F. Supp. 2d at 589 (factors 2 and 5 "strongly favor

enhancement" as defendants are adjudged infringers of valid patents: "Defendants cannot assert a

good-faith belief of non-infringement or invalidity, and the case is no longer a close one");

*Affinity Labs*, 783 F. Supp. 2d at 902-03 (finding post-judgment, no good faith belief of

invalidity, non-infringement or close case; this exerts an upward influence on the enhancement)[5]. As a matter of law, a pending appeal or reexamination does not undue the final judgment of this Court creating a good-faith belief of non-infringement or invalidity; nor can the merits of the case any longer be "close." Here, Factors 2 and 5 support enhancement.

Factor 4 (Defendants' Size and Financial Condition). While conceding Google is a profitable, large, publicly traded company, Defendants claim (at 24) that Factor 4 is neutral because I/P Engine's parent company, Vringo, is a financially sound, publicly traded company. But Factor 4 looks at the defendant's size and financial condition, relative to the plaintiff and also individually "[t]o ensure that enhanced damages would 'not unduly prejudice the [defendant's] non-infringing business. *Krippelz v. Ford Motor Co.*, 670 F. Supp. 2d 815, 822-23 (N.D. Ill. 2009); *see also Read*, 970 F.2d at 827 ("[D]ouble damages [are appropriate]. *If* defendant were the giant *and plaintiff the small independent*, I would make it treble….") (emphasis added; citations omitted)). On a relative basis, there can be no dispute that Google, with its $301.42 *billion* market cap, is a giant that dwarfs Vringo's comparatively small $236.68 *million* market cap.[6] There is no support for Defendants' claim that Factor 4 is neutral simply because the parties are both publicly traded and financially sound. The *Krippelz* case (on which Defendants' rely) is a *pre-verdict* case. That court was analyzing *Read* to determine whether treble damages were warranted. *Krippelz*, 670 F. Supp.2d at 822. The *Krippelz* court found

---

[5]  Defendants falsely allege (at 24) that Factors 2 and 5 disfavor enhancement because the *Affinity Labs* court held that these factors "carry 'little to no weight' or 'less weight' in the context of a post judgment royalty." The *Affinity* court found Factors 2 and 5 favored enhancement. It found defendants' arguments of good faith based on opinion of counsel and appeal as carrying "little or no weight" in a post-judgment analysis. *Affinity Labs*, 783 F. Supp. 2d at 902-03.

[6]  As reported by Google as of May 20, 2013 on Google Finance.

Factor 4 neutral because Ford was having financial difficulties and trebling damages would cause it financial harm.  *Id.* at 823.  Notably, finding five of the *Read* factors favoring enhancement and the rest neutral, the *Krippelz* court found doubled damages appropriate.  *Id.* at 824.  Google has conceded it is a profitable company; it is far from financial trouble.[7]  Most importantly, Google did not—because it cannot—make a credible argument that an ongoing royalty of 7% of the apportioned infringing revenue base would result in prejudice to its businesses.  Factor 4 supports enhancement.

Factor 7 (Defendant's Remedial Actions).  Defendants argue (at 24-25) that Factor 7 weighs against enhancement because of Googe's alleged design around.  Defendants' design-around argument does not impact the Court's enhancement determination for four reasons.

First, Defendants' already admit that Google's alleged design around did not exist on the hypothetical negotiation date of November 20, 2012.  At a minimum, Factor 7 favors enhancement of the post-judgment royalties of the adjudicated infringing system from November 20, 2012 to May 11, 2013.

Second, the alleged design around is *not* one of three alleged non-infringing alternatives that Dr. Ungar (Defendants' technical expert) testified to (after speaking with Google's Messrs. Furrow and Alferness)[8] at trial asserting that they would (1) be easy to implement, and  (2) have minimal effect on revenue.  (Trial Tr. at 1470:9-19).  Assuming as we must that Dr. Ungar

---

[7] Google announced on April 18, 2013 that it "had a very strong start to 2013, with $14.0 billion in revenue, up 31% year-on-year."  GOOGLE INC. ANNOUNCES FIRST QUARTER 2013 RESULTS, http://investor.google.com/earnings/2013/Q1_google_earnings.html.

[8] Mr. Furrow is a staff software engineer at Google.  Mr. Alferness is a director of product management at Google.  Dr. Ugone and Defendants are here again relying on Mr. Furrow to support their new purported non-infringing alternative.

testified truthfully, the failure to immediately adopt one of those easy-to-implement non-infringing alternatives is additional evidence of Google's willfulness.

Third, Defendants have failed to provide evidence in the briefing record sufficient to determine the veracity of Defendants' self-serving claim that Google has designed around the patents-in-suit.  *See DataTreasury Corp.*, 2011 WL 8810604, at *12-14 (as part of ongoing royalty analysis, rejecting newly-proposed non-infringing alternative where availability of the alternative is disputed).  They have offered no expert testimony or other evidence explaining how Google's alleged new system purportedly works.  The only record evidence are the non-infringing alternatives subjected to extensive examination at trial (and during deposition) by Defendants' expert.  But, Google does not assert it adopted any of those alternatives.

Fourth, Defendants' claim that they have started to and may be able to cease their infringing conduct, in fact supports an imposition of a higher enhancement, not a lower enhancement.  Like Defendants, the defendants in *Affinity Labs* argued that enhancement should be lower because they had developed a product that did not infringe some of the claims and could also use other non-infringing products in the market.  783 F. Supp. 2d at 904.  The *Affinity Labs* court nevertheless found Factor 7 weighed in favor of enhancement, reasoning that remedial action and a shorter duration of ongoing infringement, while decreasing culpability, supports a higher enhancement.

> A higher ongoing royalty will not be especially harmful if the technology at issue will be obsolete in the near future . . . .  On the other hand, should [] Defendants choose to continue their ongoing infringement for the life of the patents, despite the alleged availability of noninfringing alternatives, their culpability level would be high, which would support a higher enhancement. 783 F. Supp. 2d at 904.

*     *     *

Even construing the *Read* Factors in light of Defendants' arguments, *Read* Factors 2, 4, 5, 6[9] and 7 favor an enhanced royalty; the remaining factors are neutral; none disfavor enhancement. Courts routinely enhance the ongoing royalties in similar situations. *Affinity Labs*, 783 F. Supp. 2d at 902-05; *Mondis Tech*, 822 F. Supp. 2d at 652-53; *Soverain Software v. J.C. Penny*, 899 F. Supp. 2d at 588-90. The cases relied on by Defendants (at 25, n.16) to show that courts do not enhance royalties when some of the *Read* factors support doing so concern pre-judgment willfulness, not ongoing willful infringement post-judgment.[10] As adjudged infringers, Defendants' continued infringement is willful. The post-judgment royalty should be enhanced to 7% because of their continued willful infringement.

## III.   DEFENDANTS' REHASHED LUMP-SUM DAMAGES MODEL AND EVIDENCE ARE NOT CHANGED CIRCUMSTANCES WARRANTING AN ONGOING ROYALTY RATE LOWER THAN THE JURY'S REASONABLE ROYALTY FOR PRE-VERDICT INFRINGEMENT

Defendants argue (at 10-12) that ongoing royalties, if any, should be reduced to a $3.5 million lump sum because in the post-judgment 2012 hypothetical negotiation, the most comparable agreements would be the 2008 Meyer and 2011 Lycos purchase agreements. According to Defendants, this previously rejected lump-sum damages model and evidence (much

---

[9] Defendants do not oppose I/P Engine's position on Factor 6. *See* Opp. at 22-25.

[10] Defendants attempt to distinguish the cases relied on by I/P Engine (at 25, n.17) arguing that (1) they concern direct competitors (*Bard v. Gore*), (2) the magnitude of the underlying royalty rate is different (*Soverain Software v. J.C. Penney*), (3) the conduct of the CEO was a factor (*Mondis Tech.*), or (4) are limited to cases in which the plaintiff seeks a permanent injunction (*Affinity Labs*). These are distinctions without a difference. None of the *Read* factors, nor the elements of willful infringement, turn on the competitive relationship between the patentee and the infringer; the magnitude of the appropriate royalty rate is irrelevant to whether damages should be enhanced for willful infringement; the court's reference in *Mondis Tech.* to the CEO's improper conduct (822 F. Supp. 2d at 653) was one factor of several supporting enhancement; and *Affinity Labs* is not limited to cases permanent injunction cases. It would make little sense to base an enhancement for willful, ongoing infringement on whether a party requested alternative relief.

of which this Court excluded) [11] should be relied upon in lieu of the jury's verdict to derive an ongoing royalty.

The Federal Circuit and this Court have explicitly rejected this argument.  In *ActiveVideo II*, Verizon asserted that it should only have to provide royalties commensurate to the payments in an agreement that ActiveVideo accepted in 2009.  *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 827 F. Supp. 2d 641, 656 (E.D. Va. 2011) ("*ActiveVideo I*").  This Court rejected Verizon's argument reasoning:

> [t]hat once a verdict of infringement and validity issues, the bargaining position of the parties differs greatly than it would in a pre-judgment calculus.  With respect to the relevant patents, ActiveVideo is in a better "bargaining position" with Verizon than it would have been with Cablevision in 2009. It would be improper to base a royalty rate on an agreement ActiveVideo reached two years prior to the jury's verdict when their bargaining position in any hypothetical negotiation post-verdict has clearly improved.

*Id.* (internal citations omitted).  The Federal Circuit affirmed this Court's holding that while it was true that Verizon may not have agreed to the royalty determined by this Court prior to litigation, "Verizon has been adjudicated to infringe and the patent has been held not invalid after substantial challenge by Verizon."  *ActiveVideo II*, 694 F.3d at 1342.  The same is true here.

Google entered into the Meyer agreement in 2008.  Neither Google nor Dr. Ugone have ever established any economic comparability between the Meyer patents and the patents-in-suit.  (Becker 5/20 Decl., ¶  12).  Aside from asserting it in litigations to seek low, lump sum damages

---

[11] Defendants discuss and submit (at 11-12) the  the same agreements that this Court excluded as non-comparable and irrelevant. (Trial Tr. at 899:7-8 (excluding Disney); D.I. 705 at 2-4 (excluding all others).)  Defendants do not explain how these excluded, non-comparable agreements are now somehow relevant to determine ongoing royalties post-judgment. They are not.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (requiring similar technology); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010) (rejecting licenses not showing a "discernible link to the claimed technology").

awards, there is no evidence that Google ever used the Meyer technology or derived any economic benefits from the Meyer technology or patents. (Becker 5/20 Decl., ¶ 12).

As for the Lycos agreement, I/P Engine purchased a portfolio that included the patents-in-suit in 2011. Lycos sold these patents because of a myriad of internal and external pressures, none of which related to the value of the patents-in-suit. (Blais Dep. at 122-156, July 31, 2012). This agreement was not negotiated without any doubts by the parties regarding the validity and infringement of the patents. (Becker 5/20 Decl., ¶ 5). Post-verdict, adjudged infringement and validity of the patents become indisputable. (*Id.*, ¶¶ 5, 17). That the patents-in-suit were found to be worth over 10 times the $3.2 million paid by I/P Engine, even for the one-year period covered by the jury award, demonstrates that Defendants' reliance on the Lycos agreement to set an ongoing royalty rate post-verdict is wrong. (*Id.*, ¶ 6).

The "[s]ystemic flaw throughout [Defendants'] analysis is [their] overt failure to consider the change in the legal status of the parties that resulted from the verdict and judgment in this case." *Paice II*, 609 F. Supp. 2d at 626-27. This Court's final judgment finding I/P Engine's patents not invalid and infringed worked "[a] substantial shift in the bargaining positions of the parties." *ActiveVideo II*, 694 F.3d at 1343. With respect to the patents-in-suit, I/P Engine is in a much stronger bargaining position with Google in 2012, than it would have been prior to the jury verdict. *ActiveVideo I*, 827 F. Supp.2d at 656. Defendants' attempt to link the 2012 hypothetical negotiation to the pre-verdict Meyer and Lycos agreements ignores I/P Engine's much stronger bargaining position and that the parties to this negotiation would be aware of a more recent "transaction" involving the patents-in-suit—the determination by a jury and entry of final judgment that the appropriate structure for a license to the patents was a running royalty of 3.5%. (Becker 5/20 Decl., ¶ 7).

16

The Meyer and Lycos agreements are the same agreements offered at trial, which based on the jury's verdict, it rejected.  They are not changed circumstances that the parties would have relied on post-verdict.  The changed circumstances that the parties would have been aware of during the 2012- hypothetical negotiation are that: (1) I/P Engine's patents are adjudged not invalid; (2) Defendants are adjudged infringers of those patents; (3) the infringing system became wildly successful after the patented technology was incorporated; (4) Google's own documents estimated the increased revenue between 20 and 40%; (5) the apportioned revenue of the adjudicated infringing system is in the billions of dollars; (6) the jury awarded a running royalty of 3.5%; and (7) the jury awarded $30 million for infringement for one year.  (Becker 5/20 Decl., ¶¶ 1, 6).  There is simply no basis (in fact, logic or law) to suggest that I/P Engine would, post-judgment, willingly enter into a new license with Defendants using a lump sum structure (based on the Meyer and Lycos agreements) for an amount that represents a fraction of the royalties that it had received for the patents-in-suit from the jury's verdict.  (*See* Becker 5/20 Decl., ¶ 9).  I/P Engine would, at a minimum, insist on a license of the same form as and not less—and indeed more–than the royalty awarded by the jury for Defendants' pre-verdict infringement.  (Becker 5/20 Decl., ¶ ¶ 17-18).

## IV.   DEFENDANTS' ALLEGED DESIGN-AROUND ARGUMENT IS A RED HERRING

Defendants' design-around claim is not properly before this Court; it is a red herring meant only to hijack I/P Engine's ongoing royalty motion.  Even if Google has or will design around the patents-in-suit, this has no impact on the ongoing royalty rate for the already adjudicated infringing system—again, which Defendants admit was in use until at least May 11, 2013.  Defendants' argument that its newly asserted design around should lower the ongoing royalty rate is also unsupportable for four additional reasons.

First, there is no credible evidence substantiating Defendants' claim that Google's current system no longer infringes I/P Engine's patents.  Defendants have introduced no evidence into the record explaining how the alleged redesigned system works; nor have they provided any technical expert opinions that the purported redesigned system does not infringe.  Defendants' unsubstantiated, self-serving statements that Google's system no longer infringes do not impact the ongoing royalties of the adjudicated infringing system.  *See Soverain Software v. Newegg*, 836 F. Supp. 2d at 484 (setting ongoing royalties prior to deciding whether design-around infringes or is more than colorably different from adjudicated system).  Whether the jury verdict extends to the allegedly modified system must be resolved in a separate proceeding.[12]

Second, Google's alleged design around does not constitute a non-infringing alternative that can be relied upon to reduce the ongoing royalty rate for the adjudged infringing system.  "Acceptable substitutes that the infringer *proves* were available during the accounting period can preclude or limit [damages]; substitutes only theoretically possible will not."  *Grain Processing*, 185 F.3d at 1353 (emphasis added).  The burden of proving the availability of a non-infringing alternative during the accounting period falls on Defendants:

> [W]hen an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a non-infringing alternative at that time.  The burden then falls on the infringer to prove availability, and the fact-finder 'must proceed with caution' in assessing such proof.

---

[12]  The Court should not decide the issue of whether Google's alleged redesign is non-infringing in the context of this motion.  Instead, the Court should decide this issue along a separate track, ordering a period for fact and potentially expert discovery of the redesign and a briefing schedule, and then conducting a hearing to determine whether Google's redesign is more than colorably different from the adjudicated infringing AdWords system.  The outcome of that hearing will determine whether Google's redesigned system is subject to this Court's ongoing-royalty Order or must be adjudicated in a separate proceeding.  *See Soverain Software v. Newegg*, 836 F. Supp. 2d at 484.

*Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1298 (Fed. Cir. 2007).  Defendants claim that they stopped infringing on May 11, 2013—two days before they filed their opposition, and almost seven months after the 2012 hypothetical negotiation date.  Thus, Defendants admit that this alleged non-infringing alternative did not exist as of the 2012 hypothetical negotiation date.  And they certainly have not proved that the alleged alternative was available during the accounting period.  At a minimum, I/P Engine is entitled to ongoing royalties for Defendants' admittedly continued willful infringement from November 20, 2012 through May 11, 2013.

Third, this Court need not resolve the availability or veracity of Google's alleged non-infringing alternative to set an ongoing royalty rate because it "'is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative.'" *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008).  If Google's allegedly modified system is later determined to be colorably different, the ongoing royalty rate would not apply to the revenues derived from that system.  *See Soverain Software  v. Newegg,* 836 F. Supp. 2d at 484 ("If Newegg proves successful in designing-around the shopping cart claims and hypertext statement claims, it will be freed of the obligation to pay ongoing royalties.").

Fourth, if Google's design-around efforts were truly successful, Defendants should *prefer* a running royalty to a lump-sum payment.  With a running-royalty structure, payments cease being due if and when Google's system is established to no longer infringe.  There is no rational basis for Google to oppose a running royalty limited to infringing use when Defendants actually believe that any and all infringement has already ceased. (*Id.*).  And yet, Google vigorously opposes a running royalty while simultaneously touting the existence of a nine-day-old work

around that would cut off any royalty obligations.  The Court should "proceed with caution" before crediting Google's logically incompatible argument.

## V.      I/P ENGINE'S ACCOUNTING REQUEST IS PROPER

I/P Engine does not object to Google's proposal (at 26) to complete and provide payment within sixty days after the end of each calendar quarter.  Nor does I/P Engine object to Google providing the required statements and payments for the other defendants.  It is, however, routine to include a penalty, in addition to interest,  as a condition of failing to meet the payment and reporting terms in a license.  Defendants neither cite to any authority to the contrary, nor propose an alternative penalty rate.  Accordingly, I/P Engine's proposed 5% penalty should be adopted.

## VI.     CONCLUSION

For these reasons, and as set forth in its moving papers, I/P Engine respectfully requests that this Court enter an Order requiring that, for the period from November 20, 2012 through April 4, 2016, Defendants pay I/P Engine ongoing royalties computed on a base of 20.9% of Defendants' U.S. AdWords revenues, at a running royalty rate of 7% of that base for Defendants' continued willful infringement.  I/P Engine also requests that this Court enter an Order requiring Google to report and make payments as proposed by I/P Engine in its moving papers and as modified above.

Dated: May 21, 2013

Jeffrey K.  Sherwood (VA Bar No. 19222)
Frank C.  Cimino, Jr.
Kenneth W.  Brothers
Dawn Rudenko Albert
Charles J.  Monterio, Jr.
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone:     (202) 420-2200
Facsimile:     (202) 420-2201

By:    /s/ Jeffrey K.  Sherwood
Donald C.  Schultz (Virginia Bar No. 30531)
W.  Ryan Snow (Virginia Bar No. 47423)
CRENSHAW, WARE & MARTIN PLC
150 West Main Street
Norfolk, VA 23510
Telephone:     (757) 623-3000
Facsimile:     (757) 623-5735


Counsel for Plaintiff I/P Engine, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of May, 2013, the foregoing **REPLY IN**

**SUPPORT OF ITS MOTION FOR AN AWARD OF POST-JUDGMENT ROYALTIES**

was served via the Court's CM/ECF system, on the following:

Stephen Edward Noona
Kaufman & Canoles, P.C.
150 W Main St
Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com

David Bilsker
David Perlson
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

Robert L. Burns
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
robert.burns@finnegan.com

Cortney S. Alexander
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
cortney.alexander@finnegan.com

/s/ Jeffrey K. Sherwood