UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| I/P ENGINE, INC.      Plaintiff, | |
| v. | Civil Action No. 2:11-cv-512 |
| AOL, INC., *et al.*,      Defendants. | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL EVIDENCE

I/P Engine's opposition does not address whether Defendants have shown good cause to file supplemental evidence obtained after the close of briefing on the pending motion for post-judgment royalties. Instead, it rehashes its case for a post-judgment royalty and argues that its own recent license for the patents-in-suit to Microsoft is somehow irrelevant to the outcome of a post-judgment hypothetical negotiation for a license to the same patents with Google. That argument is contrary to not only Federal Circuit authority, but also contradicts I/P Engine's own post-judgment royalty position based on the <u>pre</u>-litigation Overture licenses with various small entities in 2004.

## I. PLAINTIFF DOES NOT REFUTE GOOGLE HAS SHOWN GOOD CAUSE TO FILE SUPPLEMENTAL EVIDENCE.

The issue before the Court on Defendants' motion is simply whether there is good cause to file information concerning a license granted by I/P Engine to Microsoft for the patents-in-suit. Because that agreement was not signed or made public until after briefing closed on that motion, good cause is shown.

Further, as admitted by I/P Engine, the license is relevant to the hypothetical post-judgment licensing negotiation between Google and I/P Engine, which provides the analytical framework for the determination of a post-judgment royalty. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357-59 (Fed. Cir. 2012) (patentee's

licensing practices are relevant to determining form of agreement that would result from

hypothetical negotiation).   I/P Engine does not seriously dispute this.  Indeed, I/P Engine argues

that the license supports <u>its</u> position as to what the post-judgment royalty should be.  (Opp. at 1-2

(arguing that the "Microsoft Settlement demonstrates that I/P Engine would ***not*** consider a lump

sum payment" (emphasis in original)).  Accordingly, Defendants motion for leave should be

granted.

## II.     PLAINTIFF'S ARGUMENTS AS TO THE MERITS OF ITS REQUEST FOR AN ONGOING ROYALTY FAIL.

The only dispute I/P Engine actually raises is whether, and to what extent, it should

receive a post-judgment royalty.  For example, I/P Engine argues that its license agreement with

Microsoft is not probative of a post-judgment royalty in this case because Microsoft had not been

found to infringe, Microsoft is a "smaller player in the search advertising market," and the

Microsoft license was "pre-litigation."  (Opp. at 1.)

As an initial matter, these factors do not distinguish the Microsoft license.  I/P Engine

ignores that Google's <u>current</u> system has <u>also</u> not been found to infringe.  (*See* Dkt. 938 at 4-7;

Dkt. 940.)  Nor is the Microsoft license "pre-litigation," as I/P Engine contends.  I/P Engine filed

a patent infringement complaint against Microsoft in the Southern District of New York that this

license resolved.  *See I/P Engine, Inc. v. Microsoft Corp.,* No. 1:13-cv-00688 (S.D.N.Y.).

Further, I/P Engine's attempts to distinguish the Microsoft license undermine its entire

post-judgment royalty model.  I/P Engine's post-judgment royalty position is premised on

license agreements entered into by Overture Services that are distinguishable on the <u>exact same</u>

<u>grounds</u>.  (*See* Dkt. 823 at 8-9; Dkt. 824 at 4-5; Dkt. 949 at 8-9.)  Overture never filed litigation

against the parties to these licenses, and none were found to infringe.  (Dkt. 460 at 11 & 13.)

Also, none of them were substantial players in the search advertising market.  Far from it.  (Trial

Tr. 889-90 (Overture licensees were not "household names" or "global technology leaders" like Google)).  In fact, Microsoft, a well known, long-time player in search advertising is much more similar to Google than any of the small companies that were parties to the Overture licenses upon which I/P Engine exclusively relies.  I/P Engine's argument merely reinforces that I/P Engine has not met its burden of providing the Court with any comparable license agreements from which a post-judgment royalty could be derived.

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc*., 827 F. Supp. 2d 641, 656 (E.D. Va. 2011), rev'd in part 694 F.3d 1312 (Fed. Cir. 2012), cited by I/P Engine, is not to the contrary.  (Opp. at 2.)  That case declines to base a sunset royalty ***rate*** on the rate in a third-party license agreement.  But Defendants have not argued that the Court should base a post-judgment royalty ***rate*** on the Microsoft license.  Instead, Defendants have simply pointed out that this agreement confirms I/P Engine's willingness to enter into lump-sum licenses for the patents-in-suit.

I/P Engine also contends that the Microsoft license is not a lump sum.  (Opp. at 3-4.)  I/P Engine, however, acknowledges that Microsoft will be required to pay to I/P Engine 5% of any amounts that Google pays for use of I/P Engine's patents and that this payment is subject to a cap.[1]  (Opp. at 1-2 & n.1.)  Nevertheless, I/P Engine argues that this agreement does not require a lump-sum payment because these amounts cannot presently be quantified.  (Opp. at 3-4.)  The fact that a royalty payment cannot be immediately quantified does not, however, make that payment a "running royalty," as I/P Engine argues.  Instead, a royalty is "running" when its

---

[1]   To the extent I/P Engine disputes Defendants' characterization of the Microsoft license, I/P Engine was free to file a copy of that license with the Court.  Defendants cannot do so because I/P Engine has not produced the agreement to them and it was not made public. Similarly, to the extent the parties to the Microsoft license agreement attached any real value to the assignment of the six patents that I/P Engine refers to (Opp., 3), I/P Engine could have provided evidence of that value.  Tellingly, I/P Engine did not.

amount is "tied directly to how often the licensed invention is later used or incorporated into products by the <u>licensee</u>." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326-27 (Fed. Cir. 2009) (emphasis added). As Defendants have noted, nothing in the Microsoft license ties payments to how often <u>Microsoft</u>, the licensee, uses I/P Engine's patents.

I/P Engine also ignores the fact that Microsoft's liability is capped, making its maximum royalty payment readily quantifiable. The agreement provides that Microsoft will pay $1 million "plus five percent (5%) of any amounts Google pays for use of the patents." (Dkt. 954-2 at 3.) The agreement also places a limit on Microsoft's total liability that will take effect if "the amounts received from Google substantially exceed the judgment previously awarded." (Dkt. 954-2 at 3.) The judgment against Google is for $15.8 million, and the judgment against its codefendants, who Google is indemnifying, totals approximately $19 million. (Dkt. 801.) Five percent of these judgments combined is approximately $1.74 million. Thus, the monetary payment from Microsoft (even assuming that it would also be based on the judgments against the co-defendants that Google is indemnifying) is capped at an amount that would not substantially exceed $2.74 million (the $1 million lump sum payment, plus $1.74 million). The lump-sum payment, and the maximum amount that will be paid under the license, are highly relevant to this Court's informed decision concerning I/P Engine's claim for an exponentially greater and uncapped amount of post judgment royalties from Google.

DATED: June 21, 2013

/s/ Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

David Nelson
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401
davidnelson@quinnemanuel.com

David Bilsker
David A. Perlson
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

*Counsel for Google Inc., Target Corporation,
IAC Search & Media, Inc., and Gannett Co., Inc.*

   /s/ Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW,  GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile:  (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile:  (415) 653-6444

*Counsel for Defendant AOL Inc.*

6

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2013, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following:

Jeffrey K. Sherwood
Kenneth W. Brothers
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC   20006
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, VA  23510
Telephone:  (757) 623-3000
Facsimile:  (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff, I/P Engine, Inc.*

  */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com

12466533v1