IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
AUG 1 4 2013
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

I/P ENGINE, INC.,

    Plaintiff,

V.                                                      CIVIL ACTION NO. 2:11cv512

AOL INC., *et al.*,

    Defendants.

### *MEMORANDUM OPINION & ORDER*

Before the Court is Plaintiff's Motion for an Award of Post-Judgment Royalties (ECF No.822). Having carefully considered the parties' arguments, this matter is ripe for judicial decision.

### I. BACKGROUND

On September 15, 2011, I/P Engine, Inc. ("I/P Engine") filed a complaint against AOL, Inc., Google, Inc., IAC Search & Media, Inc., Gannett Company, Inc. and Target Corporation (collectively known as "Google" or "Defendants") in which I/P Engine alleged that the Defendants had infringed several its patents. On November 6, 2012, the jury reached a verdict finding that the Defendants had infringed the asserted claims of two of I/P Engine's patents: U.S. Patent Nos. 6,314,420 ("the '420 patent") and 6,775,664 ("the '664 patent") (collectively the "Patents"). *See* Verdict Form, Nov. 6, 2012, Dkt. No. 789. The jury awarded I/P Engine damages in the amount of $30,496,155, which did not include interest. *See id.* The jury also awarded I/P Engine a running royalty rate of 3.5%. On November 20, 2012, the formal judgment of the Court was entered into the record. *See* Judgment of the Court, November 20,

2012, Dkt. No. 801. As a result of this favorable verdict, I/P Engine now asks this Court for an award of an ongoing post-judgment royalty until the expiration of the patents at issue.

## II. LEGAL STANDARD

### A. The Court's Authority to Grant Ongoing Royalty

In light of the Supreme Court's decision in *eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006)*, it is no longer appropriate for a district court to enter an automatic permanent injunction to prevent future patent infringement. As the Supreme Court directs in eBay:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion. These familiar principles apply with equal force to disputes arising under the Patent Act. As this Court has long recognized, "a major departure from the long tradition of equity practice should not be lightly implied. Nothing in the Patent Act indicates that Congress intended such a departure.

*eBay*, 547 U.S. at 391-392 (internal citations omitted). When the plaintiff cannot meet the requirements to garner a permanent injunction, the imposition of an ongoing, post-judgment royalty may be appropriate. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007) (hereafter *"Paice II"*); *See also Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 850 (E.D. Tex. 2009) (hereafter *"Creative Internet"*) (citing *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 624 (E.D. Tex. 2009) (hereafter *"Paice III"*)). The United States Court of Appeals for the Federal Circuit ("Federal Circuit") asserts that a district court's authority to impose an ongoing royalty is rooted in 35 U.S.C. § 283, the statutory provision that

permits federal courts to grant injunctions "to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Further, the Circuit notes that:

> In *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 628 (Fed. Cir. 1985), this court upheld a 5% court-ordered royalty, based on sales, "for continuing operations." Although the parties in that case contested the amount of the royalty, styled a "compulsory license" by the court, there was no dispute as to the district court's authority to craft such a remedy. *See id.* In the context of an antitrust violation, "mandatory sales and reasonable-royalty licensing" of relevant patents are "well-established forms of relief when necessary to an effective remedy, particularly where patents have provided the leverage for or have contributed to the antitrust violation adjudicated." *United States v. Glaxo Group Ltd.*, 410 U.S. 52, 59, 93 S. Ct. 861, 35 L. Ed. 2d 104 (1973).
>
> But, awarding an ongoing royalty where "necessary" to effectuate a remedy, be it for antitrust violations or patent infringement, does not justify the provision of such relief as a matter of course whenever a permanent injunction is not imposed. In most cases, where the district court determines that a permanent injunction is not warranted, the district court may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty. Should the parties fail to come to an agreement, the district court could step in to assess a reasonable royalty in light of the ongoing infringement.

*Paice II*, 504 F.3d at 1314-1315. Other district courts have found that their authority to impose an ongoing royalty is a function of 35 U.S.C. § 284, which directs that "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention of the infringer, together with interest and cost as fixed by the court." *Creative Internet*, 674 F. Supp. 2d at 851 (quoting 35 U.S.C. § 284). Taken together, there is adequate support for the Court's authority to impose an ongoing royalty when necessary to effectuate the jury's finding of patent infringement. Further, there is no support in *eBay* or the subsequent case law that suggests a prevailing party in a patent infringement suit must be able to show that the requirements for a permanent injunction have been met before an ongoing royalty can be awarded to said party. Additionally, the Federal Circuit urged in *Paice* II, parties should be given an opportunity by a district court to fashion an

ongoing royalty through direct negotiations before a court imposes one on them. *Paice II*, 504 F.3d at 1314-1315. Furthermore, the Federal Circuit held that the imposition of an ongoing royalty rate without a jury finding for prospective damages does not violation a Defendant's Seventh Amendment rights. *Paice II*, 504 F.3d at 1316. Finally, "[w]hen injunctive relief is denied under the traditional four factor test and the Court instead considers whether an infringer should pay an ongoing royalty, the Court finds that the burden of proving damages remains with the patentee." *Creative Internet*, 674 F. Supp. 2d at 855 (citations omitted) (citing *Vulcan Engineering Co., Inc. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002) ("The patentee bears the burden of proving its damages by a preponderance of the evidence."). I/P Engine has not sought a permanent injunction against the use of its patents by the Defendants. Instead, I/P Engine seeks a reasonable ongoing royalty for the continued use of their technologies.

### B. Means of Assessing a Reasonable Ongoing Royalty Rate

Once a district court determines that a permanent injunction is not warranted and an ongoing royalty is necessary to compensate a Plaintiff for future infringement, the Court must fix an appropriate ongoing royalty. Doing so requires the Court to make three determinations. First, the Court must determine what the appropriate royalty base is. Second, the Court must determine what the appropriate royalty rate is. Third, the Court must determine the frequency of the royalty payment. Furthermore, in situations in which a Defendant argues that it is no longer infringing on the Plaintiff's technology, the Court must determine the duration an ongoing royalty should be awarded for as well as whether an ongoing royalty is justified at all. A number of district courts considering the questions before this Court have often applied the Georgia-Pacific Factors as a framework to determine what the proper royalties are as "[m]any of the

factors noted by the *Georgia-Pacific* Court are also seemingly applicable to an ongoing royalty rate analysis." *Paice III*, 609 F. Supp. 2d at 624. However, as the Federal Circuit notes:

> There is a fundamental difference, however, between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement. Cf. Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1317 (Fed. Cir. 2007) ("[P]re-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors.") (Rader, J., concurring). Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved.

*Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-1362 (Fed. Cir. 2008) (citation omitted); *see also Paice III*, 609 F. Supp. 2d at 624 ("Many of the factors noted by the Georgia-Pacific Court are also seemingly applicable to an ongoing royalty rate analysis. A post-judgment, ongoing royalty negotiation, however, is logically different from the pre-trial hypothetical negotiation discussed in Georgia-Pacific. In the case of an ongoing royalty, the hypothetical negotiation occurs post-judgment; therefore, the "willing licensee" in this negotiation is an adjudged infringer, unlike the situation described in Georgia-Pacific."). As the *Paice III* Court further elaborates:

> In many ongoing royalty negotiations, the threat of a permanent injunction serves as a big stick, essentially framing negotiation in terms of how much an adjudged infringer would pay for a license to continue its infringing conduct. However, when an injunction is not proper under *eBay*, *the question instead becomes: what amount of money would reasonably compensate a patentee for giving up his right to exclude yet allow an ongoing willful infringer to make a reasonable profit? See Georgia-Pacific*, 318 F. Supp. at 1120 (factor 15).

*Paice III*, 609 F. Supp. 2d at 624 (emphasis added). The Court will apply the modified Georgia-Pacific approach to resolve the question of what should be the proper royalty for any ongoing infringement by the Defendants.

## III. DISCUSSION

### A. Plaintiff Is Entitled to an Ongoing Royalty for Continued Infringement and the Appropriate Royalty Base is 20.9%

Despite the Defendants arguments to the contrary, there is no case law to support the proposition that Plaintiff is not entitled to an ongoing royalty because I/P Engine cannot meet its burden to receive a permanent injunction. As long as Defendants continue to infringe on I/P Engine's patents, the Plaintiff must receive monetary relief to compensate for Defendants' infringement. As a result, the Court **FINDS** that I/P Engine is entitled to an ongoing royalty to compensate it for Defendant's continued infringement of I/P Engine's patents.

At trial, the Plaintiff introduced expert testimony that starting in the Fourth Quarter of 2007, the infringing components of the Smart Ads system added 20.9% to Google's U.S. AdWords revenue and additional evidence is in the record to support this position. The Defendants continue to contest the use of this base and the matter is on appeal at the Federal Circuit. The Court will not re-litigate this question and will apply the 20.9% royalty base introduced at trial to determine the proper ongoing royalty.

### B. Frequency of Royalty Payment

In addition to determining the royalty base, the Court must also determine the frequency of the payments. The Defendants are hereby **ORDERED** to pay any ongoing royalty to I/P Engine on a quarterly basis by wire transfer or other certified means of receipt. The Defendants are **FURTHER ORDERED** to certify by penalty of perjury the U.S. revenue attributable to Defendant's use of AdWords in U.S. Dollars and the calculation of the royalty payment. The Plaintiff shall have the right to request audits of relevant revenue figures and have its designated auditor review said data. All royalty payments are due within **TWENTY (20) DAYS** after the end of each calendar quarter. If payment is not made on a timely basis, the Plaintiff shall petition

the Court for a show case order to determine why payment has not been made and whether a penalty should be assessed.

## C. Additional Discovery and Briefing Is Necessary to Resolve Ongoing Royalty Rate and Duration

The Defendants argue that as of May 11, 2013, they no longer use the infringing technologies and that I/P Engine is entitled to no ongoing royalty after that date. In *Creative Internet*, 674 F. Supp. 2d 847 at 850, the court assessed a similar claim by Defendant Yahoo! that it had modified its accused products in a manner that avoided use of the infringed patents. As a result, Yahoo! argued against an ongoing royalty on the "new" version of its product that no longer infringed on the Defendant's technology. *Id.* In *Creative Internet*, each party argued the other side had the burden of showing that the modified product is no more than "colorably different" from the original, adjudicated product. *Id.* Resolving the conflict, the *Creative Internet* Court determined that given it is the patentee's burden at trial to prove damages, "if a patentee intends to receive future damages for the continued violation of its right to exclude, the burden remains with the patentee to demonstrate that the product arising from the infringing product is no more than a "colorable variation" of the adjudicated product. This can be achieved by making a comparison between the original product, the modified product, and the claims." *Creative Internet*, 674 F. Supp. 2d at 855 (citing *TiVo*, 640 F. Supp.2d at 863).

The *Creative Internet* Court concluded that "in the absence of a permanent injunction, in order to establish future damages, the burden remains with the patentee to establish (1) that the products for which the royalty is based, are at least a "colorable variation" of the adjudicated product, and (2) a reasonable royalty that accounts for changes in the parties' bargaining positions and economic circumstances" and that a patentee "will not be required to put on a subsequent infringement case, but rather will have to carry its burden of establishing that the

disputed product is no more than a "colorable variation" of the adjudicated "old" version that a jury found to infringe[.]" *Creative Internet*, 674 F. Supp. 2d 847 at 855. The Court finds the *Creative Internet Adver. Corp* Court's analysis is highly persuasive and hereby adopts it for this case.

Google argues that its AdWords products, as of May 11, 2013, no longer infringe on the Plaintiff's patents. In effect, Google asserts it has created a "new" product ("New AdWords") that does not infringe and should not be subject to any ongoing royalty. The Plaintiff calls the Defendants' claim a "red herring" and urges the Court to establish a parallel proceeding for resolving the question of whether New AdWords is nothing more than a colorable variation of the adjudicated system and whether an ongoing royalty on New AdWords is appropriate. Since the ease and availability of non-infringing alternatives has some relevance to the question of an ongoing royalty as well as to the duration of such a royalty, running a parallel proceeding to address New AdWords is not in the interests of judicial economy. Instead, the *Creative Internet* Court's approach is preferred. In that case, the court directed the parties engage in additional discovery and additional briefing and addressed all royalty matters in a comprehensive fashion. Therefore, the Court sets forth the following discovery and briefing schedule for this matter:

- August 25, 2013 – The parties must produce any documents relevant for determining whether New AdWords is no more than a colorable variation of the adjudicated product. Any additional discovery is limited to three (3) depositions per side, including expert witnesses.
- September 25, 2013 – Expert witness reports due.
- October 15, 2013 – Expert rebuttal reports due.
- October 30, 2013 – The parties shall serve and file briefs and any supporting evidence, not to exceed fifteen (15) pages, addressing the issues raised in this order.
- November 10, 2013 – The parties may file responsive briefs, not to exceed ten (10) pages.
- Evidentiary hearing – The Court, if necessary, may schedule an evidentiary hearing in which the parties may present appropriate evidence and offer arguments in support.

**D. The Parties Shall Attempt to Determine an Ongoing Royalty Rate**

As the Federal Circuit suggests, parties should be given the opportunity to set their own royalty rate before the Court imposes one. *Paice II*, 504 F.3d at 1314-1315. To this end, within **FIVE (5)** days of completing the aforementioned discovery and briefing schedule, the Court **ORDERS** the parties to meet and to negotiate an appropriate ongoing royalty rate, using 20.9% of U.S. AdWords revenues as the appropriate royalty base. If the parties are unable to come to an agreement, the Court **FURTHER ORDERS** the parties to schedule a settlement conference with the United States Magistrate Judge assigned to this case no later than December 1, 2013.

## IV. CONCLUSION

The Court **FINDS** that I/P Engine is entitled to an award of a post-judgment royalty. However, additional discovery and briefing is necessary to determine the precise nature of the royalty. Accordingly, I/P Engine's motion is **GRANTED-IN-PART AND DEFERRED-IN-PART.** The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel and parties of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 13, 2013

Raymond A. Jackson
**United States District Judge**