**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| I/P ENGINE, INC.　　Plaintiff, | |
| v. | Civil Action No. 2:11-cv-512 |
| AOL, INC., *et al.*,　　Defendants. | |

**OPPOSITION TO PLAINTIFF I/P ENGINE, INC.'S NOTICE OF CALCULATION OF SUPPLEMENTAL DAMAGES, PREJUDGMENT INTEREST AND POST-JUDGMENT INTEREST**

**I. SUPPLEMENTAL DAMAGES CALCULATED IN ACCORDANCE WITH WHAT THE JURY ACTUALLY AWARDED, RATHER THAN I/P ENGINE'S APPORTIONMENT THEORY THAT THE JURY DID *NOT* ADOPT, ARE $2,249,777**

The Court's August 1, 2013 Order (Dkt. 960) found "that I/P Engine is entitled to supplemental damages for the period of October 1, 2012 to November 20, 2012." (Dkt. 960 at 5.) The Court also ordered that "supplemental damages are calculated in accordance with the damages awarded in the jury verdict." Dkt. 960 at 2; *see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10cv248, 2011 WL 4899922, at *2 (E.D. Va. Oct. 14, 2011) (same). Other courts have similarly held that supplemental damages should be awarded "based on the ratio of damages to sales" awarded by the jury. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08-cv-335, 2010 WL 3070370, at *2 (S.D. Cal. Aug. 5, 2010); *see also Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F. Supp. 656, 668 (W.D. Wis. 1994) ("As it concerns the method of calculating damages, it is most appropriate to base the calculation on lost sales rather than pounds of product and to approximate that award based upon the ratio of damages to sales determined from the jury's verdict."). And where the jury does not answer a special interrogatory on its method for calculating damages, it is appropriate for the Court to extrapolate from the general verdict when calculating supplemental damages. *See Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, No. 02-2590, 2005 WL 1498667, at *2 (N.D. Ill, June 9, 2005) (extrapolating royalty rate from general verdict).

Consistent with this precedent and the Court's ruling, Defendants calculated supplemental damages amounts as follows: They used the amounts the jury awarded and the 3.5% royalty rate the jury adopted to determine the apportionment rate used for the jury's award. They then used the 3.5% royalty rate and this apportionment rate against the supplemental damages period. Specifically, as detailed in the Declaration of Keith Ugone filed herewith, the

1

demonstrative exhibit that I/P Engine relied on at trial for the allowable damages period as to Google appeared to show a royalty amount of approximately $118 million for the relevant damages period. (Trial Tr. 2005:13-2008:24; Dkt. 807 at ¶ 3 & Ex. B (PDX-441).) The jury's award of $15,800,000 is roughly 13.4% of that $118 million. (Ugone Dec. ¶ 4; Dkt. 806 at 4 & Ex. 2.) As detailed in Defendants' Opposition to Plaintiff's Motion For an Award of Pre-Judgment Interest, Post-Judgment Interest, and Supplemental Damages (Dkt. 805)[1] as well, this appears to amount to an approximate 2.8% apportionment. (Ugone Dec. ¶ 4; Dkt. 806 at ¶¶ 7-8.)

Without contesting this indisputable math, I/P Engine asserts that it is entitled to the 20.9% apportionment that I/P Engine asserted at trial. However, I/P Engine points to nothing the jury actually did to support this apportionment, and it is apparent from the verdict that it did <u>not</u> adopt a 20.9% apportionment. This is contrary to the Court's directive that "supplemental damages are calculated in accordance with the damages awarded in the jury verdict."[2] Dkt. 960 at 2. Showing how far removed I/P Engine's calculation of supplemental damages is from what the jury actually did, I/P Engine calculates supplemental damages for a <u>seven-week period</u> to be $16 million, which is over half the entire damages award at trial for a <u>twelve-month period</u>. Simple math shows that I/P Engine's calculation of supplemental damages does not comply with the Court's Order.

The 2.8% apportionment number should also be used for the non-Google defendants because there is frankly no other number to adopt that can be reconciled with the record and the

---

[1] Defendants continue to believe that no award of damages, pre-judgment interest, or post-judgment interest is appropriate, as previously briefed. (*See* Dkt. 805; Dkt. 834; Opening Brief in *I/P Engine, Inc. v. AOL Inc.*, 13-1307, Dkt. 39 (Fed. Cir. July 22, 2013).

[2] I/P Engine argues that it is entitled to use a 20.9% apportionment rate because the Court found that such a rate was appropriate for a post-judgment ongoing royalty calculation. (Notice at 2.) The Court, however, did not and has not ruled that such a rate is appropriate for calculating past supplemental damages. Indeed, the jury made no finding that a 20.9% rate was appropriate, and its verdict is, in fact, inconsistent with such a finding as described below.

2

jury verdict. Again, the jury did not award the 20.9% apportionment that Plaintiff asked for. Nor is there any cognizable guidance to be had from the jury's actual award. Initially, Plaintiff presented no basis at all as to what its asserted revenue base was for the non-Google Defendants in the appropriate time period. The only evidence related to the <u>entire</u> damages period. (*See* Trial Tr. 2008:25-2009:2 (arguing for $42 million to the jury before the Court ruled that laches applied to the non-Google Defendants); Trial Tr. 2069:22-2070:9 (I/P Engine arguing to the jury on damages after the Court extended laches ruling to the non-Google defendants). Due to this failure of proof, it is not possible to deduce what apportionment rate the jury effectively applied to determine damages for the non-Google Defendants.

In any event, it was clear all along that the damages Plaintiff sought from the non-Google Defendants were much smaller than those sought from Google. For example, in Dr. Becker's demonstrative (which was based on a much larger time period than the relevant damages period), he attributed approximately $451 million in damages to Google and then a total of approximately $42 million to the non-Google Defendants for the same period – a mere 8.5%. (*See* Dkt. 807 ¶ 2 & Ex. A.) But the jury returned a verdict of $30,496,155 that allocated to the non-Google Defendants $14,696,155 – **48%** of the total damages. (D.N. 789, 11.) The Court should not compound the jury's error by awarding supplemental damages to the non-Google defendants in an apportionment that goes far beyond what even Plaintiff argued to the jury. Instead, if supplemental damages are to be awarded, they should be awarded based on the 2.8% apportionment applied to Google, the only apportionment rate that there is any support the jury actually applied.

I/P Engine's calculations also err by including in the royalty base revenues outside the supplemental damages period. The Court found that I/P Engine was "entitled to supplemental

3

damages for October 1, 2012 to November 20, 2012." (Dkt. 960 at 7.) Google produced revenue data for the non-Google Defendants for October 1 through November 30, 2012, because revenue information for partial months was not available. (Kammerud Dec., Exs. A, B.) Google informed I/P Engine that the revenue data covered the entire month of November 2012. (*Id.*, Ex. A.) Even though I/P Engine is entitled to supplemental damages, at most, only through November 20, it included revenue for the entire month, without prorating. (*Compare id.*, Ex. B, *with* Dkt. 968, Ex. A.)

For all the foregoing reasons, Google submits the appropriate supplemental damages, if any, are as follows:[3]

| Defendant | Supplemental Damages |
|---|---|
| Google | $2,120,939 |
| AOL | $42,390 |
| Gannett | $18 |
| IAC | $84,387 |
| Target | $906 |
| AOL Search Marketplace | $1,138 |
| **Total** | $2,249,778 |

II. **PRE-JUDGMENT INTEREST IS APPROPRIATELY LIMITED DUE TO THE LACHES RULING**

In its August 1, 2013, Order, the Court held: "Given the Court's ruling on laches, *see* ECF No. 800, it is appropriate to limit prejudgment interest. The Court does not find it necessary or equitable to deny prejudgment interest altogether but will instead limited it in accordance with

---

[3] The methodology employed for these calculations is further explained in the contemporaneously filed Declaration of Keith Ugone.

4

its prior laches ruling." (Dkt. 960 at 6.) The Court's laches ruling, however, only limited the amount of past damages and had not yet placed a specific limit on the pre-judgment <u>interest</u> for those past damages. Assuming that such interest will be granted, use of the U.S. Treasury interest rate (instead of the prime rate requested by I/P Engine) would be an appropriate limit.[4] Results using both the U.S. Treasury and prime rate are provided below and described in the accompanying Declaration of Keith Ugone:

| **Defendant** | **Damages Found by Jury** | **Pre-Judgment Interest (Prime Rate)** | **Pre-Judgment Interest (Treasury Rate)** |
|---|---|---|---|
| Google | $15,800,000 | $278,538 | $15,178 |
| AOL | $7,943,000 | $140,027 | $7,630 |
| Gannett | $4,322 | $76 | $4 |
| IAC | $6,650,000 | $117,233 | $6,388 |
| Target | $98,833 | $1,742 | $95 |
| **Total** | **$30,496,155** | **$537,616** | **$29,295** |

I/P Engine's pre-judgment interest calculations err in several respects. First, I/P Engine's pre-judgment interest request is based in part on its improperly calculated supplemental damages figures. Second, I/P Engine's calculations do not apply any laches-based limit on pre-judgment interest. Instead, I/P Engine calculates pre-judgment interest on the entirety of the past damages and supplemental damages award. Third, the Court's Order states that pre-judgment interest is to

---

[4] Defendants acknowledge that the Court has stated that the prime rate should be used for pre-judgment interest. (Dkt. 960 at 6.) As described, however, use of the prime rate for all of the past damages imposes no additional limit on pre-judgment interest as a result of Plaintiff's delay, and the Court has stated that such an additional limit is appropriate. (Dkt. 960 at 6.) Defendants therefore seek clarification of this ambiguity in the Court's order and suggest use of the U.S. Treasury rate as an appropriate remedy for I/P Engine's delay in bringing suit. If the Court is not inclined to use the U.S. Treasury rate for these calculations, an alternative would be to halve the prejudgment interest accrued using the prime rate.

be "compounded quarterly." (Dkt. 960 at 6.) The supplemental damages period is entirely within the fourth quarter of 2012. Therefore, any interest would accrue at the end of the year, after judgment is entered, as post-judgment interest.

### III. POST-JUDGMENT INTEREST SHOULD BE CALCULATED CONSISTENT WITH THE CORRECT SUPPLEMENTAL DAMAGES AND PRE-JUDGMENT INTEREST CALCULATIONS

The errors in I/P Engine's supplemental damages and pre-judgment interest calculations are also reflected in its post-judgment interest calculations. Calculating post-judgment interest based on the appropriate supplemental damages and pre-judgment interest figures results in the following totals:

|  | Post-Judgment Interest Per Day Using Prime Rate for Pre-Judgment Interest | Post-Judgment Interest Accrued as of 8/21/13 Using Prime Rate for Pre-Judgment Interest | Post-Judgment Interest Per Day Using Treasury Rate for Pre-Judgment Interest | Post-Judgment Interest Accrued as of 8/21/13 Using Treasury Rate for Pre-Judgment Interest |
|---|---|---|---|---|
| Google | $84.76 | $23,225.52 | $83.54 | $22,889.43 |
| AOL | $37.84 | $10,369.37 | $37.23 | $10,200 |
| Gannett | $0.02 | $5.64 | $0.02 | $5.54 |
| IAC | $31.91 | $8,743.79 | $31.40 | $8,602.34 |
| Target | $0.47 | $129.51 | $0.46 | $127.40 |
| AOL Search Marketplace | $0.01 | $1.45 | $0.01 | $1.45 |
| **Total** | **$155.01** | **$42,475.28** | **$152.65** | **$41,826.57** |

### IV. CONCLUSION

For the foregoing reasons, the Court should award supplemental damages, pre-judgment interest, and post-judgment interest as described above.

6

DATED: August 26, 2013

/s/ Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

David Bilsker
David A. Perlson
QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

*Counsel for Google Inc., Target Corporation,
IAC Search & Media, Inc., and Gannett Co., Inc.*

/s/ Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP

7

                                                                           3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile: (415) 653-6444

*Counsel for Defendant AOL Inc*.

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 26, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jeffrey K. Sherwood
Kenneth W. Brothers
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, VA 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff, I/P Engine, Inc.*

      /s/ *Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com