**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| I/P ENGINE, INC.    Plaintiff,<br><br>            v.<br><br>AOL, INC., *et al.*,    Defendants. | Civil Action No. 2:11-cv-512 |

**OPPOSITION TO PLAINTIFF I/P ENGINE, INC.'S MOTION FOR DEFENDANTS TO SHOW CAUSE UNDER RULE 37 FOR NONCOMPLIANCE WITH AUGUST 13, 2013 ORDER**

## Introduction

This is a motion that should never have been brought. Google has fully complied with the Court's Order by producing the source code for the redesigned system and the relevant technical documents. In addition, even though Google did not agree that the discovery I/P Engine demanded was called for by the Court's August 14 Order, before I/P Engine filed its motion, Google agreed to I/P Engine's demand for the production of email to avoid burdening the Court with further motion practice. I/P Engine complains that Google has not produced custodial emails, but in the very correspondence that I/P Engine attaches to its motion, Google clearly and explicitly agrees to produce them: "[I]n order to work with Plaintiff in good faith to avoid unnecessary disputes, *Google will do a targeted production of email*." (Dkt. 979-1 (emphasis added).) I/P Engine omits this commitment in its brief, choosing instead to quote the next two sentences in the email to create the false appearance that Google equivocated on its commitment. Despite Google's commitment and without any attempt by I/P Engine to further meet and confer about timing, custodians, search terms or anything else, I/P Engine filed this motion the next day.

At bottom, this motion is a misguided attempt by I/P Engine to win procedurally what it cannot win on the merits. Google has fully cooperated with I/P Engine by offering discovery into the redesigned system as far back as April of this year, producing source code and technical documents, and agreeing to produce email. I/P Engine's sole complaint is that Google did not review and cull for production millions of custodial emails in ten days. Google disagrees that I/P Engine's expectation was contemplated by the Court's August 14, 2013 Order, but even assuming I/P Engine had a legitimate grievance, the appropriate course would have been to work with Defendants to resolve the issue through, for example, an agreement to seek an extension of

1

the briefing schedule, not to rush to Court and seek a default judgment on the issue of an ongoing royalty and other extraordinary relief.

This is not the first time I/P Engine has needlessly raced to Court to file unnecessary motions. I/P Engine has filed no fewer than three previous motions for discovery sanctions. (Dkt. 201; Dkt. 278; Dkt. 283.) In each instance, the Court denied I/P Engine's requests for sanctions.[1] (Dkt. 275; Dkt. 697.) In addition, I/P Engine previously moved to compel faster production of custodial documents. (Dkt. 117.) In the subsequent hearing on the motion, the Court explicitly found that Google's document production efforts were reasonable (Dkt. 165 at 51-52), and simply ordered Google to complete its production by the time to which Google had already committed. (Dkt. 156 at 2-3.) Like I/P Engine's previous failed attempts to seek sanctions or otherwise hasten discovery Google already agreed to provide, this motion, too, should be denied.

## Background

### A. I/P Engine Moves For an Ongoing Royalty

I/P Engine first moved for an ongoing royalty on December 18, 2012. (Dkt. 823.) In response, Defendants moved to postpone briefing until after the Court had ruled on motions for a new trial and for judgment as a matter of law (Dkt. 847), which the Court granted. (Dkt. 860.) On April 3, 2013, following its ruling on post-trial motions, the Court directed Defendants to respond to I/P Engine's motion. (Dkt. 909.) Google then informed I/P Engine that it had redesigned the accused system to avoid infringement and offered discovery on the newly designed system. (Dkt. 942-29.) I/P Engine responded that it did not believe discovery on the redesigned system was relevant to its request for ongoing royalties, and therefore declined the

---

[1] In reference to one motion, the Court merely ordered Google to produce certain revenue that Google had actually already provided. (Dkt. 697.)

offer.[2] (*Id*.) Google has thus voluntarily and openly offered discovery into the redesigned system for the past five months.

On August 14, 2013, the Court found that limited discovery aimed at determining whether Google's new system was more than colorably different was in order. (Dkt. 963 at 8.) The Court therefore *sua sponte* set a focused discovery and briefing schedule. In terms of discovery, the Court ordered that by Sunday, August 25, "[t]he parties must produce any documents *relevant for determining whether New AdWords is no more than a colorable variation* of the adjudicated product." (*Id*. (emphasis added).) The Court additionally allowed no more than three (3) depositions per side, including expert witnesses. (*Id.*)

**B.     Google Produces Documents and Source Code Related to the Design Around**

Pursuant to the Court's Order, and as it offered to do months ago, Google made the relevant source code for the new system available for inspection on Friday, August 23. (Sistos Dec. ¶ 4.) This production included approximately 968 source code files and almost two million lines of code. (*Id.*.) Google also timely produced the relevant technical documents, such as design documents, related to the new system. (*Id.* ¶¶ 2-3.) The source code is the best available documentation for showing the <u>actual</u> changes to the system, how the new system no longer infringes, and how the system is more than a colorable variation of the adjudicated product.

On August 26, 2013, I/P Engine requested a meet and confer to discuss inspection of Google's source code. (Sistos Dec., Ex. A (8/26 email from C. Monterio to M. Kammerud).) Google inquired about specific aspects of that inspection that I/P Engine wished to discuss, and I/P Engine responded that it intended to confer on the logistics of the inspection, Google's document production, and the identity of the person most knowledgeable about the redesigned

---

[2]   I/P Engine had refused to make its expert on the appropriate ongoing royalty, Dr. Becker, available for deposition, which the Court's August 14 Order now requires. (Dkt. 923.)

3

system. (Sistos Dec., Ex. A (8/26 email from C. Monterio to D. Perlson).) This was also the first time I/P Engine suggested that it believed custodial emails were relevant to its request for an ongoing royalty. (Sistos Dec. ¶ 5.)

The parties discussed the issue of email production for the first time telephonically on August 27. (Sistos Dec. ¶ 6.) Google informed I/P Engine that it had produced the relevant documents pursuant to the Court's Order. (*Id.*; Dkt. 979-1.) I/P Engine insisted that Google also produce emails. (Sistos Dec. ¶ 6.) Google did not agree that emails were relevant to the issue of whether the redesigned system is more than colorably different from the previous system, an issue for which the source code itself is dispositive. (*Id*.) Nevertheless, in the interest of compromise and to avoid motion practice, Google informed I/P Engine the next day that it would produce custodial emails. (*Id*.) I/P Engine did not raise any further objection or initiate any further communications with Google. (*Id..*) Rather, I/P Engine brought this motion the next day.

  **C.**  **Google's Reasonable Efforts to Produce Emails Pursuant to I/P Engine's Request**

Google has committed to diligently producing custodial emails as it told I/P Engine it would despite the fact that Google does not believe these emails are relevant to determining the differences between the redesigned and old version of the product or are called for by the Court's August 14 Order. To that end, it has assigned fifteen attorneys to the task of reviewing custodial emails. (Zmrhal Dec. ¶ 7.) While I/P Engine has refused to engage with Google on the custodians whose documents will be searched or the appropriate keywords to perform that search, Google expects to complete production of emails from the relevant custodians by September 13. (*Id.* ¶ 10.) As a result, Google is likely to have completed the production it had already agreed to well before the Court even rules on this motion.

4

**Argument**

I. **GOOGLE HAS COMPLIED WITH THE COURT'S ORDER**

Google has fully complied with the Court's Order to provide discovery on the redesigned AdWords system. I/P Engine's arguments to the contrary rest on a misreading of the Court's Order, are inconsistent, and ignore the history of this litigation. The Court Order provides for focused and streamlined discovery, not limitless document production. Consistent with that Order, Google produced the source code for the accused system and the relevant technical documents. This is consistent with the nature of the focused discovery and language adopted by the Court, which described the documents to be produced as any documents *relevant for determining whether New AdWords is no more than a colorable variation*. (Dkt. 963 at 8.) Google has therefore fully complied with the Court Order.

I/P Engine nevertheless contends that Google was required to produce every document, file, or email that relates in any way to the new system. That is not a reasonable reading of the Order in light of the history of this litigation. There are many Google employees that work on the AdWords system. Even the subset of them that Google has identified as custodians for the email review and production that I/P Engine has requested have approximately two million email files acquired or generated since the date of trial. (Zmrhal Dec. ¶ 3.) The process of reviewing and producing such a large volume of documents in a matter of a few days is not possible, and I/P Engine's claim that the Court ordered such a process is not reasonable.

The history of discovery in this litigation fully supports Google's interpretation of the Court's Order. During fact discovery in this case, on April 11, 2012, I/P Engine similarly moved to compel Google to produce custodial documents, arguing that Google had artificially delayed this review and production. (Dkt. 117.) In response, Google explained that it had begun collecting, processing, and producing these documents weeks before I/P Engine filed its motion

5

to compel. (Dkt. 146.) Google then employed fifty-five attorneys to review the millions of documents potentially responsive to I/P Engine's document requests and keyword search terms and that, even given these extensive resources, the review would take until May 30, 2012, to complete.[3] (Dkt. 145 at 3.) During the subsequent hearing on I/P Engine's motion, the Court agreed that this was reasonable in light of the volume of documents at issue:

> I do find that production efforts of Google with regard to these documents is appropriate as far as the Court is concerned. It looks to me as though they have devoted sufficient resources to the effort. They have a very carefully worked out plan. They have ranked the custodians, they have produced technical documents, licensing agreements, and so forth. So it's clear that they are attempting to complete their obligations without any intention of prejudicing the plaintiff.

(Dkt. 165 at 51-52.) The Court therefore ordered Google to complete its production by May 30, the date to which Google had previously committed. (Dkt. 156.) In other words, the Court carefully determined that it would reasonably take weeks or months to review and produce custodial documents related to the accused systems. Yet I/P Engine now contends that the Court contemplated that Google would similarly collect, process, review, and produce custodial emails in only ten days on pain of contempt. To the contrary, the only reasonable interpretation is that the Court contemplated that Google would identify and produce the relevant *technical* documents and source code concerning the design-around, which is precisely what Google has completed.

I/P Engine's own inconsistent arguments also demonstrate Google's compliance with the Court's Order. I/P Engine argues, on the one hand, that it has received "virtually no meaningful discovery" on the redesigned system. (Motion at 2.) Then, on the other hand, it claims it has

---

[3] Google had also agreed, as requested by I/P Engine, to a much earlier production of technical documents relevant to the accused systems that it could readily identify from I/P Engine's infringement contentions. (Dkt. 145 at 4.) This confirms I/P Engine's understanding that the best way to understand how the accused products works is *not* by sifting through hundreds of thousands of employee emails.

6

received "boundless source code." (Motion at 1.) The source code is, however, the *most* "meaningful discovery" on how the redesigned system operates. Indeed, it is direct and dispositive evidence of the operation of the redesigned system. As Plaintiff's infringement expert Dr. Frieder stated at trial, source code is "as detailed as you get" when it comes to the operation of the accused system. (Trial Tr. 592:23-593:3.) Yet, I/P Engine suggests, without any explanation, that *emails* are somehow the "meaningful discovery" necessary to determine how the accused system operates. But no matter what any email says, the system works as set forth in the source code. That code is the best evidence of what changes were made and how the system now works. The absurdity of claiming that the source code and technical documentation are not "meaningful discovery" demonstrates that I/P Engine is not reasonably interpreting the Court's Order.

## II.  I/P ENGINE HAS NOT BEEN PREJUDICED BY GOOGLE'S PRODUCTION

Because Google has fully complied with the Court's Order by producing the source code and relevant technical documents, I/P Engine is fully capable of determining what changes have been made to the accused system. There is therefore no prejudice. Further, I/P Engine's complaint about email production is entirely moot because Google agreed to produce custodial emails as soon as I/P Engine requested them.[4]  Google has devoted fifteen attorneys working full time to processing, reviewing, and producing these emails. (Zmrhal Dec. ¶ 7.)

I/P Engine's only complaint is that Google did not begin this process until I/P Engine requested custodial emails and, as a result, the production will be delayed a few days. It claims

---

[4] Contrary to I/P Engine's assertion, Google does not attempt to "relitigate" the Court's order. Indeed, Google has been openly offering I/P Engine discovery into the redesigned systems since April of this year and agreed to provide I/P Engine with emails from relevant custodians. Instead, it is I/P Engine that is attempting to manufacture a discovery dispute to gain strategic advantage where Google had already agreed to produce email as I/P Engine requests.

this delay is prejudicial because the current schedule for expert reports and briefing on I/P Engine's ongoing royalty request is too compressed. (Motion at 5 (describing the schedule as "truncated" and its review of the source code as "unduly burdensome).) Although Google has agreed to produce email to avoid further dispute, this minor delay is not prejudicial because Google's initial production of source code and technical documents met its obligations under the Court Order. Further, I/P Engine has not approached Defendants about requesting any extension to this schedule even though Defendants are willing to stipulate to one. Nor is there any particular reason why briefing on I/P Engine's request for an ongoing royalty must be performed with special dispatch. Indeed, the reason why I/P Engine has sought an ongoing royalty and not a permanent injunction against the use of its patents is precisely because that alleged use is <u>not</u> causing irreparable harm. The appropriate remedy for the allegedly large burden that I/P Engine claims to face in reviewing the source code is simply to seek an extension of time, not sanctions or a default judgment.

  Even setting aside the possibility of an extension, I/P Engine's prejudice claims are not supported. I/P Engine goes to great lengths to argue that emails are necessary for it to determine whether the redesigned AdWords system infringes and that any delay in production is prejudicial. According to I/P Engine, emails are necessary to provide a "roadmap" to understand the source code, and so that it can learn who worked on the redesign, what functionality was removed, and how Google implemented these changes in the source code. (Motion at 5.) None of these arguments holds water.

  I/P Engine fails to explain how sifting through emails is likely to provide it with a "roadmap" of Google's design around. Indeed, that is far from the most efficient way of determining the changes that were made to the accused system. Instead, it is far easier to simply

generate a "diff"—the engineering equivalent of a legal redline—that compares the previous version of a source code file to the present version and indicates any changes that have been made. (Sistos Dec. ¶ 7.) During the parties' meet and confer, Google explained to I/P Engine that it was putting old and new versions of the relevant source code files on the source code review computer and that the easiest way to determine the changes was to create such "diffs." (*Id.*) Google also offered to place the appropriate software on the source-code review computer and, upon I/P Engine's request, provide Google engineer Bartholomew Furrow for deposition about the changes. (*Id.*)

I/P Engine also argues that email is necessary for it to learn the identity of the Google engineers that worked on changes to the accused system, "what functionalities were removed or modified and what they were replaced with," and how Google "implemented each alleged change in its code." (Motion at 5.) Initially, Google previously filed a declaration with the Court that identifies "what functionalities were removed" in connection with its previous opposition to I/P Engine's ongoing royalty request. (Dkt. 940.) Further, as described above, the simplest way to determine what was removed from or modified in the accused systems and how those changes were implemented in the code is to examine a redline comparing the previous version of the code to the current version. (Sistos Dec. ¶ 7.)

Indeed, all the evidence suggests that I/P Engine's claims that reviewing the source code is unduly burdensome are pretextual. I/P Engine sent two attorneys (and not its technical expert) to review Google's source code on August 28. (Eff Dec. ¶ 3.) Those attorneys devoted only four hours to that inspection. (*Id.*) One of I/P Engine's attorneys inspected the source code again on August 30, but devoted only four hours to the task. (*Id.* ¶ 4.) This lack of diligence belies I/P Engine's claim of undue burden.

9

### III. I/P ENGINE'S REQUESTED SANCTIONS ARE UNSUPPORTED AND UNREASONABLE

Even assuming that Google has inadvertently misinterpreted the Court's Order, the extreme remedies that I/P Engine seeks are disproportionate and unwarranted. For what it contends is at most a minor delay in the production of marginally relevant emails, I/P Engine would have the Court effectively impose a default judgment in its favor. This is despite the fact that I/P Engine did not even raise the issue of email production until a single meet and confer immediately before filing this motion and that Google, in response, agreed to produce the requested emails. Any prejudice (assuming there were any) could be cured by a short extension of time for I/P Engine to prepare its expert report, but I/P Engine asks the Court for a dispositive ruling on its request for an ongoing royalty, potentially worth hundreds of millions of dollars.[5] That request is unreasonable on its face.

Rule 37(b)(2)(A) allows a court to issue "further just orders" when a party fails to obey an order to provide or permit discovery. In deciding the appropriate order, the court must consider four factors:

> (1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that noncompliance caused the adversary; (3) the need for deterrence of the particular sort of non-compliance; and (4) whether less drastic sanctions would have been effective.

*Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). I/P Engine does not even attempt to show that these factors weigh in favor of a default judgment, much less any of the other remedies it requests.

---

[5] I/P Engine has requested a 7% ongoing royalty. (Dkt. 823.) This is twice the 3.5% royalty rate found by the jury and, using the manner I/P engine calculated supplemental damages, would be more than $20 million per month. (Dkt. 968 Ex. A.)

10

### A. Google Has Not Acted in Bad Faith

Google's conduct does not even approach bad faith. As soon as it became relevant, Google proactively informed I/P Engine of its design-around and changes to AdWords, and offered I/P Engine discovery, an offer I/P Engine declined. In other words, from the start Google sought to make the changes in AdWords transparent to I/P Engine. I/P Engine refused this discovery, instead arguing to the Court that discovery into changes to AdWords would be irrelevant to an ongoing royalty determination. (Dkt. 942-29.)

After the Court issued its scheduling Order, Google produced the source code and relevant technical documentation. Then, immediately after I/P Engine raised the issue of email production that Google did not agree was contemplated by the Court's Order, Google agreed to I/P Engine's demand, even though this will require culling through millions of documents. Google invited I/P Engine to meet and confer on the appropriate custodians and search terms to use in identifying responsive documents, but I/P Engine would not engage, responding rather that it interpreted the Order to mean "all" regardless of the burden or cost. (Sistos Dec. ¶ 6.) And Google has tasked fifteen attorneys full time with the task of reviewing and producing these emails. (Zmrhal Dec. ¶ 7.) Far from even suggesting bad faith, the undisputed evidence demonstrates Google's good faith.

Further, as discussed above and as the Court implicitly recognized in the Court's ruling on I/P Engine's prior motion to compel custodial documents, Google would not have been able to comply with the Court's Order if the Court's Order actually required Google to produce custodial emails by August 25, 2013. (*See* Zmrhal Dec. ¶¶ 2-10.) Again, this would have required the review of approximately two million files in only ten days. (Zmrhal Dec. ¶ 3) This is a further reason there should be no sanction. *See* Wright & Miller, Federal Practice and Procedure § 2283 (3d ed.) ("]B]efore imposing a serious merits sanction the court should

11

determine whether the party guilty of a failure to provide discovery was unable to comply with the discovery.").

### B. I/P Engine Has Suffered No Prejudice and Defendants Are Agreeable to an Extension of Time

As fully described above, I/P Engine has suffered no prejudice. I/P Engine will shortly receive Google's custodial emails. As I/P Engine would have learned had it simply discussed the issue, Defendants are willing to stipulate to a reasonable extension of time for I/P Engine to serve its expert report. I/P Engine has not argued or offered any explanation why it would be prejudiced by such an extension. There is therefore no evidence of prejudice, and if there were, such prejudice is readily curable.

### C. If Any "Deterrence" Is Warranted, It Would Be to Deter I/P Engine's Tactics

As described above, Google promptly produced the relevant technical documentation and source code related to the redesign of the accused system. When I/P Engine claimed that it was, in addition, entitled to custodial emails, Google promptly met and conferred and agreed to I/P Engine's demands. This is exactly the type of cooperation on discovery issues that the Rules of Civil Procedure and Local Rules of this Court contemplate and encourage. However, when asked to work with Google to meaningfully reduce the costs and burden of such an effort, I/P Engine, once again, refused to engage. The Court should, if anything, shift the costs of the email search and production to I/P Engine.

I/P Engine claims that sanctions are necessary because Google has a "*modus operandi*" of delaying production of custodial emails. (Motion at 5.) To support that claim, it cites its prior motion to compel custodial documents during fact discovery. But that motion demonstrates the exact opposite. As described above, the Court explicitly found at the hearing on that motion that Google's document production efforts were reasonable, and the Court simply ordered Google to

complete its production by the date to which Google had already committed. If anything, this history instead confirms I/P Engine's *modus operandi* of needlessly burdening the Court with discovery disputes after the parties had already agreed to a reasonable protocol for production.

### D. There Is No Basis to Find Google in Contempt

I/P Engine argues throughout its motion that Google is in "willful contempt" of this Court's Order and should be sanctioned as a result. (Motion at 6 & 7.) No such basis for a contempt finding exists. I/P Engine does not even recite the standard for proving contempt, much less attempt to meet its burden of proving contempt by clear and convincing evidence. *See Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (movant must establish by clear and convincing evidence: (1) the existence of a valid order that the alleged contemnor had actual or constructive knowledge of; (2) the order was in the movant's favor; (3) a knowing violation; and (4) resulting harm). For the reasons stated above, there has been no knowing violation of the Court's Order, and I/P Engine has suffered no harm.

Nor are any of the remedies I/P Engine requests appropriate for civil contempt. It is well-established that "civil contempt sanctions are intended 'to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained.'" *Bradley v. Am. Household Inc.*, 378 F.3d 373, 378 (4th Cir. 2004). Because Google agreed, prior to I/P Engine bringing its motion, that it would produce custodial documents, coercion is not necessary. Further, no compensation would be equitable because I/P Engine chose to bear the costs of bringing the motion despite the fact that ***Google <u>had already</u> agreed to comply with I/P Engine's demand to produce custodial emails***.

### E. I/P Engine Seeks Extremely Drastic Sanctions

The sanctions I/P Engine has asked for are extreme, especially when considered in light of Google's good-faith efforts and agreement to produce email even before I/P Engine filed this

13

motion. The fact that Google immediately agreed to produce email as soon as I/P Engine requested it demonstrates that no sanction is necessary.

### 1. A Default on the Issue of an Ongoing Royalty Is Not Appropriate

I/P Engine's preferred remedy is a finding that the redesigned system is "not colorably different than the adjudged infringing system." Thus, I/P Engine attempts to win this entire dispute and receive an ongoing royalty to which it is not entitled on procedural grounds. Given the stage of the proceedings, this is essentially a request for a default judgment on I/P Engine's claim for ongoing royalties.

Such a harsh sanction would be contrary to law here for several reasons. First, a default remedy is limited to cases where the Court provided a "warning [to] a defendant about the possibility of default before entering such a harsh sanction." *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995). Here, the Court has not previously warned that Google would be required to produce potentially hundreds of thousands of custodial emails in only ten days or else suffer a finding that its new system is not more than colorably different than its old system. This is especially true in light of the focused discovery ordered by the Court, the fact that Google proactively offered discovery five months ago that I/P Engine refused, and Google's production of the technical documents, source code and its offer of a knowledgeable witness on the changes. Where the alleged violation of a court order is (as in this case) the violation of a general scheduling order, "the lack of any advance notice is especially problematic." *Id.*

Second, a default as a sanction is reserved for the "'flagrant case' in which it is demonstrated that the failure to produce 'materially affect(s) the substantial rights of the adverse party' and is 'prejudicial to the presentation of his case.'" *Wilson v. Volkswagen of Am.*, 561 F.2d 494, 504 (4th Cir. 1977). Here, an extension cures any alleged prejudice to I/P Engine. There is therefore no effect on I/P Engine's ability to support its claim to an ongoing royalty.

14

Third, the Fourth Circuit has cautioned that the Court must consider and impose less drastic sanctions first before ordering a default. In *Hathcock*, for example, the court held that it was an abuse of discretion to order a default sanction before considering and imposing a lesser sanction, such as costs and attorneys fees, "as a preliminary deterrent" to ensure compliance. 53 F.3d at 41.

Fourth, no sanction is appropriate where failure to comply is "due to inability, and not to willfulness, bad faith, or any fault of" the non-movant. *Wilson*, 561 F.2d at 504. As described above, it would not have been reasonably possible for Google to review and produce in only ten days the hundreds of thousands (if not millions) of emails and other custodial documents that I/P Engine now claims it is entitled to.

### 2. I/P Engine's Alternative Remedies Are Not Appropriate

I/P Engine's alternative requests, while less extreme than a default judgment, are also far too drastic. I/P Engine asks that the Court impose a laundry list of sanctions, including that Google will produce emails within three days, that I/P Engine shall receive an additional ten days to meet its deadlines related to its ongoing royalty request, that Google produce an additional witness to testify at deposition about the location and existence of documents on three-days' notice, that I/P Engine receive an additional seven hours of deposition time, that I/P Engine be relieved from complying with the the bulk of the Protective Order's provisions for source-code review, and that it receive its attorneys fees and costs. (Motion at 7.) I/P Engine does not even attempt to explain how any of this would remedy a short delay in receiving custodial emails. For example, it is unclear how I/P Engine being granted an additional seven hours to depose the original three Google witnesses serves as an appropriate remedy for Google's alleged delay in producing custodial emails. (*See id.*) Further, I/P Engine has not shown that it is entitled to any

sanction under the four-factor test, and it is clear that a simple request for a custodial production was effective to achieve production of emails, such that no sanction is needed.

Fees and costs should also be denied because Google's failure, if any, was "substantially justified" and "other circumstances make an award of expenses unjust," namely that I/P Engine's motion was unnecessary given Google's previous agreement to produce the custodial emails. *See* Fed. R. Civ. P. 37(b)(2)(C). If fees are awarded, they should be awarded to Defendants for having to respond to this unnecessary motion.

## Conclusion

Defendants respectfully request that the Court deny I/P Engine's unnecessary motion.

DATED: September 4, 2013

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

David Bilsker
David A. Perlson
QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

*Counsel for Google Inc., Target Corporation, IAC Search & Media, Inc., and Gannett Co., Inc.*

 */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367

16

KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile: (415) 653-6444

*Counsel for Defendant AOL Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 4, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jeffrey K. Sherwood
Kenneth W. Brothers
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, VA 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff, I/P Engine, Inc.*

                                                                            */s/ Stephen E. Noona*
                                                                            Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com