# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| I/P ENGINE, INC.    Plaintiff, | |
| v. | Civil Action No. 2:11-cv-512 |
| AOL, INC., *et al.*,    Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM REGARDING MOTION TO SHOW CAUSE AND MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL MEMORANDUM

**Introduction**

The facts underlying Plaintiff's claim that Google's "New AdWords" system is no more than a colorable variation from the "Old AdWords" system are not in dispute.  This is because Plaintiff and its expert Dr. Frieder received all the information they needed through the voluminous source code and technical documents that Google produced by August 25, 2013, the end of the ten day period[1] the Court gave the parties to produce the documents relevant to determining whether New AdWords is no more than a colorable variation of Old AdWords, and in conjunction with the deposition of Bartholomew Furrow, whom Google made available also pursuant to the Court's Order.  Indeed, in his report, Dr. Frieder does not cite to a single document that Google had not produced by the August 25 deadline for production of relevant documents.  And neither he nor Plaintiff point to any fact regarding New AdWords that Plaintiff or he could not ascertain from this initial production.  In other words, Google's production of documents that were actually relevant to whether New AdWords is no more than a colorable variation of the old AdWords was spot-on.

Rather than focus on the substance of whether New AdWords is more than a colorable variation of Old AdWords, Plaintiff yet again seeks to falsely cast aspersions on Google in support of its underlined fourth motion for sanctions in this case.[2]  (*See* Dkts. 200, 277, 282 (Plaintiff's first three sanctions motions); Dkts. 275, 697 (denying all three motions)).  Google already demonstrated why, like Plaintiff's prior three motions, this one also should be denied.  As discussed more fully in Google's Opposition to Plaintiff's underlying Motion to Show Cause

---

[1]   The Court gave Google ten days, but the 10th day fell on a Sunday – August 25, 2013.

[2]   Plaintiff's first and third sanctions motions were denied in their entirety, while for the second sanctions motion the Court denied Plaintiff's actual sanctions requests and merely ordered Google to update certain U.S. revenue figures, as Google had already agreed to do. (Dkt. 697).

(Dkt. 982), Google first produced 986 highly-confidential source code files (two million lines of code) as well as other technical documents showing the changes to the accused systems. After Plaintiff complained that it was also entitled to custodial emails – even though the parties agreed earlier that there was no obligation to preserve emails after the start of the litigation – Google then undertook a time-intensive email pull and produced roughly 9,000 pages of custodial emails as well. After its deposition of Google engineer Bartholomew Furrow, Plaintiff requested additional categories of documents, and – continuing its efforts to work with Plaintiff in good faith to avoid unnecessary disputes before the Court – Google worked quickly to produce these newly-requested documents in time for Plaintiff's expert reports. Google's actions do not remotely show a party who is disregarding its discovery obligations and/or deserves sanctions. Rather, Google's actions show a party who is working hard to accommodate Plaintiff's serial discovery requests in good faith to avoid unnecessary disputes and motion practice. Despite Google's good-faith efforts, Plaintiff rushed to the Court raising its baseless request for sanctions. Plaintiff now seeks to buttress its sanctions request with a series of new accusations raised in the supplemental memorandum, which it filed at the same time it sought leave to file – essentially granting its own relief. Plaintiff's self-help alone warrants denial of Plaintiff's motion for leave. But even if considered, Plaintiff's new accusations are just as baseless as its prior ones.

First, Plaintiff alleges that Google improperly deleted instant message chats about New AdWords. But the parties had agreed long ago that instant messages occurring after the filing date of the litigation need not be preserved or produced. In any event, Google's company-wide policy since 2008 has been not to record IMs in the first place. Google did not "delete" anything; it simply followed its long-time corporate policy in not recording these communications.

Second, Plaintiff alleges that Google did not create launch documents about New AdWords. But litigants have no obligation to create new documents just because their opponents would like to discover them. Google's decision not to create certain launch documents cannot be deemed improper as a matter of law.

Third, Plaintiff alleges that Google withheld calendaring documents and textual notes about its source code changes. These ministerial documents <u>about</u> the source code changes have little if any relevance to determining whether New AdWords is no more than a colorable variation of Old AdWords, particularly compared to the source code itself. But when Plaintiff stated that it believed these ministerial documents <u>were</u> relevant and asked that they be produced, Google promptly did so. Tellingly, Plaintiff did not cite any of these documents in its expert reports either, thus confirming that these ministerial documents <u>about</u> the source code (as opposed to the source code itself) are not relevant.

Plaintiff's Motion for Leave, like its underlying Motion to Show Cause, is nothing more than an unjustified attempt to win its post-judgment royalty case by default. Plaintiff seeks a default "death penalty" sanction – namely, an order that New AdWords is no more than a colorable variation of Old AdWords. Yet, as explained in Defendants' Opposition to the underlying Motion to Show Cause, such sanctions are reserved for "flagrant" behavior that is materially prejudicial to the opposing party. (Dkt. 982 at 14 (citing *Wilson v. Volkswagen of Am.*, 561 F.2d 494, 504 (4th Cir. 1977)). Plaintiff cannot show flagrantly improper behavior by Google. To the contrary, Google has worked hard to accommodate Plaintiff's serial discovery requests, even after Plaintiff cast its net wider and wider by deeming more and more documents supposedly relevant to its case. And Plaintiff cannot show prejudice, as the only documents that

Plaintiff's expert actually cited in his report <u>are the source code and technical documents that Google originally produced by the Court's August 25 deadline</u>.

Likewise, civil contempt sanctions of any kind are designed "to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained." *Bradley v. Am. Household Inc.*, 378 F.3d 373, 378 (4th Cir. 2004). But Google has complied even with Plaintiff's serial, seemingly never-ending document requests. There is nothing to "coerce." And Plaintiff has suffered no prejudice, so there are no "losses" that require compensation. Accordingly, contempt sanctions of any kind are inappropriate, much less the death penalty sanction of a default judgment.

Thus, like the underlying Motion to Show Cause, the supplemental memorandum is without merit. The Court should disregard the supplemental memorandum and deny the Motion for Leave to file the supplemental memorandum.

## Background

**I. DEFENDANTS PRODUCED THE DOCUMENTS RELEVANT TO DETERMINING WHETHER NEW ADWORDS IS NO MORE THAN A COLORABLE VARIATION *BEFORE* THEY WERE DUE.**

On August 14, 2013, the Court ordered Defendants to produce "any documents relevant for determining whether New AdWords is no more than a colorable variation of the adjudicated product." (Dkt. 963 at 8.) The Court ordered this production by Sunday, August 25. (*Id.*) Google diligently searched for the documents relevant to making this determination, and produced them in advance of the deadline, on August 23: 986 source code files (two million lines of code) relating to New AdWords, as well as technical design documents about the new system.[3] (*See* Dkt. 982 at 3.) These documents would turn out to be the only Google-produced

---

[3] As early as this Spring, Google had offered Plaintiff discovery into New AdWords – including these technical documents and a deposition – in conjunction with the briefing over

documents that Plaintiff's technical expert, Dr. Frieder, would cite in his expert report on whether New AdWords is no more than a colorable variation of Old AdWords.

Not only did Google produce the source code, but it went to great lengths to make this code as accessible and digestible as possible. For example, rather than dumping irrelevant code on Plaintiff and forcing Plaintiff to "go fish" for the relevant portions, Google carefully targeted its production to the source code files that show the changes between Old AdWords and New AdWords. As Google engineer Bartholomew Furrow explained at his deposition:

> So what happened is I – I looked for changes to the code that were relevant in my opinion to the changes between old AdWords and new AdWords. And what I did is I identified particular change lists that corresponded to changes – relevant changes. And each change list corresponds to a certain set of files.

(Sohn. Decl.,[4] Ex. 8 (Furrow Dep. 224:1-7).) Google then produced "before" and "after" versions of this code, since this would be the easiest way for Plaintiff to identify and review the changes that were made to the code. (*Id.*, 224:18-21 ("And so I thought it would be most helpful to you if we – if I provided a version that – or both versions that would highlight the changes that took place . . . .").) Google even instructed Plaintiff on how to make a "diff" or redline copy to specifically show these changes between the "before" and "after" versions of the code. (Dkt. 983 (Sistos Decl.) at ¶ 7.)

## II.    PLAINTIFF FILES ITS UNNECESSARY MOTION TO SHOW CAUSE

On August 27, 2013, Plaintiff demanded that Google also produce custodial emails discussing the new system. Google did not agree that custodial emails were relevant to determining whether New AdWords is no more than a colorable variation of Old AdWords; that is shown in the source code. As Plaintiff's technical expert testified at trial, source code is "as

---

Plaintiff's original motion for post-judgment royalties. (*See* Dkt. 925). Plaintiff refused to take discovery at that time. (Dkt. 925-2.)

[4]   The Declaration of Joshua L. Sohn ("Sohn Decl.") is filed concurrently herewith.

detailed as you get" regarding the operation of AdWords.  (Trial Tr. 593:2-3.)  Moreover, the parties had agreed during pre-trial discovery that there was no obligation to preserve emails after the start of the litigation.  (Sohn. Decl., Ex. 3 and ¶ 2.)  Furthermore, as explained in Google's Opposition to the underlying Motion to Show Cause, it was entirely reasonable for Google to read the Court's August 14 Order to implicate source code and technical documents rather than custodial emails, given that custodial emails are extremely voluminous and could not practically be collected and produced in just 10 days.  (Dkt. 982 at 5-6.)  In the pre-trial discovery phase, review and production of custodial emails took two months.  (*See id.*)  The Court explicitly blessed that two-month timetable, finding it reasonable.  (*See id.*)  Thus, it was reasonable for Google to conclude that the Court's August 14 Order did not require a custodial email pull in just 10 days, particularly when source code and technical documents (not custodial emails) were the documents actually relevant to determining whether New AdWords is no more than a colorable variation of Old AdWords.  And Plaintiff certainly did nothing to reflect a contrary understanding.  Indeed, when the parties discussed custodial emails in the pre-trial discovery period, there were lengthy and prolonged discussions regarding custodians and search terms. Plaintiff made no effort to engage in similar discussions in the post-judgment phase, either before or even after the August 25 deadline for production of relevant documents.  This was entirely consistent with Plaintiff's conduct earlier in the case, in which Plaintiff sought production of emails only <u>after</u> Google's technical documents had been produced.  (*See* Dkt. 982 at 6 n.3).

Nonetheless, in the interest of compromise and to avoid motion practice, Google agreed on August 28 to collect and produce custodial emails.  (Dkt. 982 at 4.)  Google completed this production by September 13, 2013, producing over 9,000 pages of custodial emails to Plaintiff.

Rather than meeting and conferring with Google about the scope of this production, the timing of this production, or anything else, Plaintiff abruptly filed its Motion to Show Cause on August 29, the day after Google had **agreed** to produce the emails in question.  (Dkt. 978.) Plaintiff thus sought sanctions over an issue on which the parties had already reached agreement.

## III.    PLAINTIFF REQUESTS ADDITIONAL DOCUMENTS

On September 20, 2013, Plaintiff took the deposition of Google engineer Bartholomew Furrow.  Plaintiff did not question Mr. Furrow on any of the 9,000 pages of custodial emails at his deposition, despite Plaintiff's prior insistence that they be produced in time for the deposition and Plaintiff's prior representations in briefing that custodial emails were supposedly critical to its post-judgment royalties case.  (*See* Dkt. 979 at 5 ("The communications between Google personnel, especially its engineers, and other custodial documents describing Google's efforts regarding the relevant changes serves as a necessary tool in efficiently mapping out what changes Google actually implemented. . . .").)

After the deposition, Plaintiff requested the production of additional documents. Specifically, Plaintiff requested the production of: (1) textual notes about the source code changes that Google had made to the accused systems; and (2) "Launch Cal" documents for certain aspects of the changes that Google had made to the accused systems.[5]  (Sohn Decl., Ex. 4.)  Google produced these documents barely 24 hours later, on the night of September 24. (Sohn Decl., Ex. 5.)

---

[5]    As Mr. Furrow explained, "Launch Cal" is "short for Launch Calendar, and the basic notion is it contains a list of upcoming and past and current launches, thus the calendar aspect." (Sohn Decl., Ex. 8 (Furrow Dep. 201:8-12).)  Because Launch Cal documents are ministerial calendaring documents, they typically do not have significant notes on the substance of the various launches.  (*Id.* at 201:25-202:23.)  The one additional Launch Cal document that Google was able to find and produce after the Furrow deposition is attached hereto as Sohn Decl., Ex. 9. The Launch Cal document that Google had produced with its previous production is attached hereto as Sohn Decl., Ex. 10.

## IV.    PLAINTIFF'S EXPERT REPORT DOES NOT CITE ANY OF THE DOCUMENTS THAT FORM THE BASIS OF PLAINTIFF'S MOTION

Plaintiff served the expert report of its technical expert, Dr. Frieder, on September 25. (Sohn Decl., Ex. 6.)  Again, this report did not cite any of the 9,000 pages of emails that Google had produced (at Plaintiff's insistence) before the Furrow deposition or any of the textual notes or Launch Cal documents that Google had produced after the Furrow deposition and that Plaintiff now complains so bitterly about.  Nor did Plaintiff request any extension of its report on the ground that it needed additional time to digest these recently-requested and recently-produced documents.  (Sohn Decl., ¶ 10.)  Instead, Plaintiff served its expert report on September 25, citing exclusively to the source code and technical documents that Google had produced on August 23, the Furrow deposition testimony, a Furrow Declaration from May 2013, and Plaintiff's own documents.  (Sohn Decl., Ex. 6 at ¶ 4.)

## V.    PLAINTIFF FILES THE PRESENT MOTION WITH NO MEET AND CONFER

On October 7 Plaintiff filed the present Motion for Leave to file a supplemental memorandum (Dkts. 993 & 994) as well as the supplemental memorandum that it sought leave to file.  (Dkt. 998.)  Plaintiff did not request any meet-and-confer before filing the Motion for Leave.  (Sohn Decl., ¶ 9.)  Plaintiff filed it without notifying Defendants in any way.  As noted above, Plaintiff also filed the underlying Motion to Show Cause without meeting and conferring.

### Argument

## I.    PLAINTIFF'S SUPPLEMENTAL MEMORANDUM SHOULD BE STRICKEN

Rather than waiting for the Court to rule on Plaintiff's Motion for Leave to file a supplemental memorandum (Dkt. 993), Plaintiff actually filed the supplemental memorandum

(Dkt. 998) concurrently with the Motion for Leave.[6]  Plaintiff thus granted itself the very relief

(filing of the supplemental memorandum) that it purports to seek through the Motion for Leave.

This self-help is improper, and the Motion for Leave should be denied for this threshold reason

alone.  For the same reason, the supplemental memorandum (Dkt. 998) should be stricken from

the record, as Plaintiff filed this document without being granted leave to do so.

## II.   PLAINTIFF'S ALLEGATIONS OF DISCOVERY MALFEASANCE ARE MERITLESS

Plaintiff alleges that the Furrow deposition revealed additional discovery malfeasance by

Google.  (Dkt. 994 at 2.)  Plaintiff does not explain this alleged malfeasance in any detail in the

Motion for Leave, instead doing so through the supplemental memorandum it filed at the same

time it asked leave to file it.  But however Plaintiff divides its accusations between these two

documents, the accusations are meritless.

### A.   Google Did Not Delete Electronic Records

Plaintiff first argues in its motion for leave that Google "deleted relevant electronic

records."  (Dkt. 994 at 2.)  This allegation is presumably referring to its argument in its

supplemental memorandum concerning "chats" conducted over Google's instant messaging

services, Google Talk or Google Hangouts.  (Dkt. 998 at 2.)  But the parties explicitly agreed

that neither party had an obligation to preserve corporate instant messages created after

September 15, 2011.  (Sohn Decl. Exs. 1-2.)  Here, Google's internal electronic chats certainly

qualify as "corporate instant messages" that Google had no obligation to preserve, per the parties'

agreement.  That Plaintiff would seek a default judgment for Google's following the parties'

agreement shows how meritless Plaintiff's request is.

---

[6]   Rather than attaching the supplemental memorandum as an exhibit to the Motion for
Leave, as required by the Local Rules, Plaintiff actually _filed_ these documents under entirely
different docket entries.  (See Dkts. 993, 998.)

And to be clear, Google did not "delete" anything.  Nor did Google, as Plaintiff implies, alter its practices with respect to the chats at issue here.  At Google, chats are not recorded as a matter of course.  Google's company-wide corporate policy since 2008 has been by default to conduct <u>all</u> intra-company chats in "off-the-record" mode, meaning that such chats are not stored or recorded.[7]  (Zmrhal Decl., ¶ 8.)  This policy is consistent with the caselaw, which recognizes that parties have no obligation to preserve or record ephemeral, real-time conversations such as instant message chats.  As one court noted, demanding that a defendant log every chat would be "akin to a demand that a party to a litigation install a system to monitor and record phone calls coming in to its office on the hypothesis that some of them may contain relevant information.  There is no such requirement . . . ."  *Malletier v. Dooney & Burke*, No. 04-5316, 2006 WL 3851151, at *2 (S.D.N.Y. Dec. 22, 2006).  While Plaintiff's allegations may have some superficial rhetorical appeal, Google's engineers did nothing untoward here.  Rather, they followed the parties' agreement in the case and the policy in place at Google since 2008.

## B.    Google Had No Obligation to Create Launch Documents

Plaintiff next argues in its Motion for Leave that Google "purposefully avoided producing relevant launch documents" about changes to the accused systems.  (Dkt. 994 at 2.)  This allegation is also false.  As Plaintiff indicates in its supplemental memorandum, Plaintiff's real complaint is that Google did not "create" documents, not that Google failed to produce documents that it had created.  (Dkt. 998 at 4 ("Google changed its general business practices to avoid creating relevant documents. . . . ").)  So Plaintiff's real allegation is that Google somehow engaged in impropriety by not <u>creating</u> launch documents.  This allegation also fails as a matter of law.  It is a basic rule of civil discovery that parties have a duty to produce documents within

---

[7]    The Declaration of Kristin Zmrhal is filed concurrently herewith.

their possession, but have no duty to create new documents.  *See, e.g., Washington v. Garrett*, 10

F.3d 1421, 1437 (9th Cir. 1993) (affirming ruling "that the defendant was not required to create

documents to satisfy [plaintiff's] discovery requests"); *Brown v. Warden Ross Correctional Inst.*,

No. 2:10-cv-822, 2011 WL 1877706, at *5 (S.D. Ohio May 16, 2011) (similar).  Thus, Google's

decision not to create launch documents cannot be deemed improper or sanctionable as a matter

of law.  Here too, Plaintiff has made spurious allegations of malfeasance with superficial

rhetorical appeal, but devoid of any substance.

### C.    Google Promptly Produced the Textual Source Code Notes and Launch Cal Documents That Plaintiff Requested After the Furrow Deposition

Plaintiff finally enumerates other categories of documents that Google supposedly

withheld – namely, a single Launch Cal document and textual notes about Google's source code

changes.  (Dkt. 994 at 2.)  The former is one ministerial <u>calendaring</u> document (*see* footnote 5,

*supra*), while the latter are "vague" and "brief" notes on the source code changes.  (Sohn Decl.,

Ex. 8 (Furrow Dep. 230:17-22).)  Notably, Plaintiff had one Launch Cal document in its

possession <u>before</u> the Furrow deposition (Sohn Decl. Ex. 10 and ¶ 15), yet Plaintiff gave no

indication before the Furrow deposition that these Launch Cal documents had any relevance or

that additional Launch Cal documents should be produced.  Likewise, it is hardly uncommon for

Google or any other software company to have a change list with textual notes of source code

changes, yet Plaintiff expressed no desire for such textual notes before the Furrow deposition.

Only <u>three days *after*</u> the Furrow deposition did Plaintiff first say anything about desiring these

documents.  The fact that Plaintiff waited until three days after the deposition before uttering a

word about these ministerial documents shows that Plaintiff's demands are driven more by

gamesmanship than a legitimate need for relevant documents.

Google did not focus on these ministerial documents in its initial production because Google was focusing on producing the _actual_ source code changes that these documents relate to. Google's focus on the source code, rather than additional ministerial documents about the source code, was borne out by the fact that Plaintiff's technical expert did not ultimately cite any of these additional ministerial documents in his expert report.  Yet Plaintiff seeks the death penalty sanction of a default judgment simply because Google did not produce these ministerial documents _before_ Plaintiff specifically asked for them.

In any event, Plaintiff admits that it first asked for these ministerial documents after the Furrow deposition and that Google promptly produced them at that time.  (Dkt. 998 at 4-5.) Indeed, the parties' email correspondence shows that Plaintiff first asked for these documents the evening of September 23 and that Google produced them just 30 hours later.  (Sohn Decl., Exs. 4-5.)  Thus, Plaintiff's allegation that Google engaged in malfeasance with respect to these documents should be rejected too.  Rather, Google's production of these documents immediately after Plaintiff requested them shows Google's good-faith efforts to promptly produce all documents that Plaintiff deems relevant and asks to be produced.

Indeed, all Plaintiff has demonstrated is that working with Plaintiff in good faith is useless.  Unfortunately, good-faith efforts to deal with Plaintiff's concerns (legitimate or not) only spur further motion practice from Plaintiff.  Google respectfully submits that entertaining Plaintiff's empty complaints only further encourages the parties _not_ to cooperate, and to further waste party and Court resources with unnecessary motion practice as here.

### D.      Plaintiff Has Suffered No Prejudice

Even if the Court somehow found any impropriety in Google's good-faith initial production and its continued good faith in dealing with Plaintiff's subsequent requests, Plaintiff shows no prejudice from anything Google has done.  Plaintiff points to no relevant fact as to

whether New AdWords is more than a colorable variation from Old AdWords that it does not

have or could not have discovered from Google's initial production of documents pursuant to the

Court's August 14 Order.  Indeed, Plaintiff's technical expert cited nothing other than the

documents Google produced <u>before</u> the Court's deadline for production of documents regarding

whether New AdWords is more than a colorable variation from Old AdWords.  Nor did he state

that he was unable to determine any of the relevant facts about New AdWords from Google's

document production.  And to the extent Plaintiff needed more time to digest any of the

documents subsequently produced in good faith in response to Plaintiff's serial requests, Plaintiff

did not seek any extension of its expert report deadline in order to digest these documents (Sohn

Decl., ¶ 10) – an extension that Defendants would have gladly granted, had Plaintiff requested it.

In fact, Defendants had previously offered up to a one-month extension of Plaintiff's expert

report deadline in exchange for Plaintiff withdrawing its Motion to Show Cause.  Yet Plaintiff,

far from agreeing to an extension to moot the Motion to Show Cause, demanded that Google

present Mr. Furrow for <u>14</u> hours of deposition (even thought it ultimately ended up taking less

than a seven hour deposition of Mr. Furrow), <u>and, even though not called for under the Court's</u>

<u>Order,</u> answer an interrogatory before Plaintiff would withdraw this Motion.  (*See* Sohn Decl.,

Ex. 11 at 2 & Ex. 12.)  Moreover, Plaintiff's demanded interrogatory had numerous sub-parts,

requiring "a narrative identifying what features have been modified or removed from the

adjudged infringing systems, identifying and describing the 'new' features and/or functionality

that replaced the modified or removed features, providing an overview of how the New

AdWords system having the 'new' features generally works (from receiving a user's search query

to displaying the relevant advertisements), and describing any features that enabled the removal

of those features or now perform any function(s) of those features."  (Sohn Decl., Ex. 12.)

In reality, the operation of New AdWords is <u>undisputed</u>.  The expert reports of Plaintiff's technical expert (Dr. Frieder) and Defendants' expert (Dr. Ungar) do not conflict at all in their descriptions of how New AdWords actually operates.  (*Compare* Sohn Decl. Ex. 6 *with* Sohn Decl. Ex. 7.)  They merely conflict in their opinions on whether this undisputed functionality represents more than a colorable difference from Old AdWords.  But that, of course, demonstrates no prejudice.[8]

In sum, Plaintiff presents no evidence that it suffered any prejudice from Google's document production, including its source code production.  Indeed, as detailed above, the facts show just the opposite.  Plaintiff is simply ginning up meritless accusations in an attempt to win its post-judgment royalty case by default.  (*See* Dkt. 998 at 5 ("This Court should impose sanctions against Google by entering default judgment against Google that the alleged changes to New AdWords are no more than colorably different than Old AdWords. . . .").)  The Court should not indulge these tactics.  As noted above, default sanctions are limited to flagrantly improper behavior that materially prejudices the rights of the opposing party,[9] and Plaintiff has shown neither flagrantly improper behavior <u>nor</u> prejudice.  Nor are contempt sanctions of any kind appropriate, as there is no need to coerce Google into compliance with the Court's Order or compensate Plaintiff for any losses that Plaintiff sustained (because Plaintiff sustained no losses).

---

[8]   On the issue of prejudice, Plaintiff also argues that Google's allegedly untimely production of English-language source code descriptions prejudiced Plaintiff because it "le[ft] I/P Engine to sort through the underlying code (968 source code files and almost two million lines of code (D.I. 982 at 3)) without the aid of these descriptions."  (Dkt. 998 at 4.)  If Plaintiff is trying to insinuate that Google dumped source code on Plaintiff without giving Plaintiff the tools to properly analyze it, this insinuation is meritless.  As discussed in the Statement of Facts, *supra*, Google carefully targeted its source code production to the files showing the changes between Old AdWords and New AdWords, and even <u>instructed Plaintiff</u> how to make a redline copy to highlight those changes.

[9]   *Wilson*, 561 F.2d at 504.

Thus, Plaintiff's Motion for Leave, like its underlying Motion to Show Cause, should be denied.

DATED: October 21, 2013

    */s/ Stephen E. Noona*

Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com

David Bilsker
David A. Perlson
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

*Counsel for Google Inc., Target Corporation,
IAC Search & Media, Inc., and Gannett Co., Inc.*


    */s/ Stephen E. Noona*

Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW,  GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700

15

Facsimile:  (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile:  (415) 653-6444

*Counsel for Defendant AOL Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 21, 2013, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following:

Jeffrey K. Sherwood
Kenneth W. Brothers
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC   20006
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, VA  23510
Telephone:  (757) 623-3000
Facsimile:  (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff, I/P Engine, Inc.*

  /s/ Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com