**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| I/P ENGINE, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:11-cv-512 |
| AOL, INC. et al., | ) ) ) | |
| Defendants. | ) ) | |

**I/P ENGINE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE**

Contrary to its representation, Google's actions do reflect a party that is disregarding its discovery obligations and deserves sanctions. Google (1) deleted relevant electronic records, (2) purposefully avoided producing relevant launch documents, (3) withheld relevant English-language descriptions of the changes to its source code, and (4) withheld relevant documents until after this Court's deadline for production. *See* D.I. 998.

Here, a jury judged Google's most profitable system (AdWords) to infringe the patents-in-suit. Google then modified that system but purposely failed to follow its normal business procedures in documenting and launching that new system. For example, Google engineer Bartholomew Furrow testified that, ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Furrow Dep. 192:21-24; 193:6-21. Mr. Furrow further testified that ██████████████████████████

████████████████████████████████ *Id*. at 194:10-17.

It was also apparently believed to be in Google's "best interests" not to discuss or document the new system in emails or on paper. So, all communications about the launch of the new system took place verbally or over Google's instant messaging system in an "off the record" mode. Furrow Dep. 136:2-22. These communications were not retained by Google despite the clear obligation to do so. There is no dispute that Google's instant messaging system is capable of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Zmrhal Decl., ¶ 6.

It turns out that Google's modified system is substantially the same as the adjudged infringing system—it still filters advertisements based on Quality Score/predicted clickthrough rate. Presumably, this is the reason Google took such drastic steps to avoid documenting its modifications—it was concerned about its own employees describing the system in terms that prove infringement. If the modifications were truly different, and therefore non-infringing, Google would certainly have documented how the system works. Because the system is so close to the adjudged infringing system, Google instead made the calculated decision to risk sanctionable conduct by preventing the natural creation of evidence by its employees that show New AdWords is no more than a "colorable difference" from Old AdWords.

I. ARGUMENT

    A. **Google Erroneously Claims "The Parties Had Agreed Long Ago That Instant Messages Occurring After The Filing Date Of The Litigation Need Not Be Preserved Or Produced"**

First, the instant messaging provision of the proposed ESI Agreement relates to the claims and defenses in the complaint and answer. It is unreasonable to argue that this language included relevant post-trial discovery after a jury verdict and final judgment against Google, at which time Google fully understood the scope and nature of the post-verdict dispute, knew how it wished to attempt a design around, and used its own electronic instant messaging systems to

evade its duty to preserve evidence. The December 2011 communications between the parties were not a free pass for Google to fail to preserve relevant documents, and its attempt to argue them as such is not credible.

Second, as stated in I/P Engine's May 7, 2012 email (attached as Exhibit 13 to the Declaration of Joshua Sohn (D.I. 1005)), "I/P Engine's understanding is that the parties previously agreed not to *collect* and *produce* (or log) any documents created after the filing date of the litigation (custodial or non-custodial)." (Emphasis added.) The understanding did not have anything to do with Google's duty to *preserve* evidence that was known or should have been known to be relevant to this litigation. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *Thompson v. HUD*, 219 F.R.D. 93, 100 (D. Md. 2003); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003) (any information relevant to the claims or defenses of any party, or which is relevant to the subject matter involved in the litigation, is covered by the duty to preserve).[1]

In fact, the parties never made any agreement with respect to corporate instant messaging. *See* Ex. A. As of April 2012 – well after the alleged December 2011 communications – counsel for Google stated that if instant messaging became an issue in the future, the parties would meet and confer pursuant to the instant messaging provision. *Id.*

---

[1] "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Thompson*, 219 F.R.D. at 100 (quoting *Zubulake*, 220 F.R.D. at 218). A failure to preserve documents and records, once the duty to do so has been triggered, raises the issue of spoliation of evidence. This Court has discretion to impose sanctions for "the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (authorizing a court to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence).

3

Counsel's statement shows that there was no actual agreement regarding instant messaging and therefore Google must have known it still had a legal obligation to preserve those records.[2]

Google cites *Malletier v. Dooney & Burke* (No. 04-5313, 2006 WL 3851151 (S.D.N.Y. Dec. 22, 2006)) to support its argument, but that case is inapposite to the situation here. There, the instant messaging technology "that [Defendant] utilized apparently did not provide a ready means for retaining such communications." *Id.* at *2. Here, Google's instant messaging technology has ███████████████████████████████████████████████████████ Zmrhal Decl., ¶ 6 ███████████████████████████████████████████████████████ ███████████████████████████████████████████████ Moreover, unlike the defendant in *Malletier*, Google is an adjudged infringer creating a heightened sense of relevance for documents related to any alleged design around, and based on Mr. Furrow's testimony, Google is proactively trying to avoid the creation of a record.

    **B.**     **With Respect To The Withheld "Launch Cal" Documents That Were Produced Late, Google Claims "Plaintiff Gave No Indication Before The Furrow Deposition That These Launch Cal Documents Had Any Relevance Or That Additional Launch Cal Documents Should Be Produced"**

Google's argument here is premised on its belief that I/P Engine needed to have "asked" for these documents. But it is not I/P Engine's obligation to "indicate" to Google what Google documents are responsive to this Court's Order. It was Google's burden of production to produce "any relevant" document. D.I. 963 at 8. Google cannot rightfully pass its burden of production to I/P Engine. It was because I/P Engine believed responsive, relevant documents

---

[2] As already noted above, even if the parties had reached an agreement, it would not have been reasonable for Google to conclude, post-verdict and final judgment, when it is an adjudged infringer and continues to willfully infringe, that it could fail to preserve records relating to its alleged design around. The fact that Google even makes this argument shows its disregard for preservation of evidence whenever such preservation is not "in Google's best interests."

were not produced, that it filed the present Motion to Show Cause. The fact that I/P Engine did not "ask" for certain documents is of no moment. I/P Engine was not required to do so.

Moreover, Google already knew such documents were responsive to this Court's Order. As Google admits, it had already produced the launch document for the removal of QBB Disabling, so Google knew that such documents were relevant and needed to be produced.

    **C.    With Respect To The Relevant English-Language Descriptions Of The Changes To Its Source Code, Google Erroneously Argues Again That I/P Engine Failed To Request The Information**

Here again, Google implies that it was I/P Engine's burden to "ask" for these documents. I/P Engine had no such burden. If "it is hardly uncommon for Google or any other software company to have a change list with textual notes of source code changes" as Google asserts (Opp. at 11), Google should have produced them. If the underlying source code was responsive to this Court's Order, its corresponding textual notes are too; especially given that Google knew that Mr. Furrow used this exact information to identify the source code it produced as relevant in the first place. Furrow Dep. 224:1-7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Hence, I/P Engine should not have had to ask for it. Any argument to the contrary is not credible.

    **D.    With Respect To Producing Relevant Documents Well After This Court's Deadline For Production, Google Wrongly Claims "It Was Entirely Reasonable For Google To Read The Court's August 14 Order To Implicate Source And Technical Documents Rather Than Custodial Emails, Given That Custodial Emails Are Extremely Voluminous And Could Not Practically Be Collected And Produced In Just 10 Days"**

Google's argument that it could unilaterally exclude emails from the scope of this Court's Order is without merit. This Court was quite clear when it ordered the production of "*any*

5

*documents relevant* for determining whether New AdWords is no more than a colorable variation of the adjudicated product." D.I. 963 at 8 (emphasis added). Google's self-serving interpretation of this Court's order must be rejected – there is nothing in this Court's Order to justify Google's action. If Google was unclear as to this Court's intentions, as it suggests, or the production would have been too burdensome, then it should have sought clarification from this Court.

### E. I/P Engine Is Prejudiced by Google's Failure to Comply With This Court's Order

Contrary to Google's assertions, I/P Engine has suffered prejudice. First of all, I/P Engine has no access to or knowledge of the electronic instant messaging communications, which were likely to have conclusively decided the issue before this Court—showing in Google's employees' own words that Google retained all the essential features of the infringing system. For example, those instant messages most likely indicated that filtering out low quality advertisements based on Quality Score/predicted clickthrough rate remains a top priority for Google. In addition, the failure to preserve came as a result of legal advice, which supports the inference that the instant messages, if preserved and produced, would have been harmful to Google and helpful to I/P Engine. Google should not avoid sanctions for its discovery gamesmanship because I/P Engine was eventually able to learn the system through deposition of a coached witness. Opp. at 14 ("The expert reports of Plaintiff's technical expert (Dr. Frieder) and Defendants' expert (Dr. Ungar) do not conflict at all in their descriptions of how New AdWords actually operates.").

### F. Google Claims That I/P Engine Failed To Conduct A Meet And Confer As To Its Motion To Show Cause And The Motion For Leave

This argument contradicts fact. Google has already admitted that a meet and confer was conducted before I/P Engine filed its Motion to Show Cause. D.I. 982 at 3-4 (describing the

parties' meet and confer in detail). No subsequent meet and confer was necessary. I/P Engine complied with this Court's meet and confer requirement.

## II. CONCLUSION

For these additional reasons, this Court should grant I/P Engine's Motion to Show Cause.

Dated: October 28, 2013

By: /s/ Jeffrey K. Sherwood
Donald C. Schultz (Virginia Bar No. 30531)
W. Ryan Snow (Virginia Bar No. 47423)
CRENSHAW, WARE & MARTIN PLC
150 West Main Street
Norfolk, VA 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735

Jeffrey K. Sherwood (Virginia Bar No. 19222)
Frank C. Cimino, Jr.
Kenneth W. Brothers
Charles J. Monterio, Jr.
Jonathan Falkler
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Dawn Rudenko
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Counsel for Plaintiff I/P Engine, Inc.

## **CERTIFICATE OF SERVICE**

I certify that on this 28th day of October 2013 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to the following:

> Stephen Edward Noona
> Kaufman & Canoles, P.C.
> 150 W Main St, Suite 2100
> Norfolk, VA 23510
> senoona@kaufcan.com
>
> David Bilsker
> David Perlson
> Quinn Emanuel Urquhart & Sullivan LLP
> 50 California Street, 22nd Floor San Francisco, CA 94111
> davidbilsker@quinnemanuel.com
> davidperlson@quinnemanuel.com
>
> Robert L. Burns
> Finnegan, Henderson, Farabow, Garrett & Dunner, LLP Two Freedom Square
> 11955 Freedom Drive Reston, VA 20190
> robert.burns@finnegan.com
>
> Cortney S. Alexander
> Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
> 3500 SunTrust Plaza
> 303 Peachtree Street, NE Atlanta, GA 94111
> cortney.alexander@finnegan.com

                                                        /s/ Jeffrey K. Sherwood