UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |  |
|---|---|---|
| I/P ENGINE, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Civil Action No. 2:11-cv-512 |
| AOL, INC. et al., | | |
| Defendants. | | |

## I/P ENGINE, INC.'S OPENING BRIEF ON POST-JUDGMENT ROYALTIES

I/P Engine is entitled to post-judgment royalties in the form of an ongoing royalty using a royalty base of 20.9% of U.S. AdWords revenues. D.I. 963 at 6. Those royalties are owed to I/P Engine from the date of judgment through at least May 11, 2013. *See id*. at 7. The royalty rate should be 7% based on a 2012 hypothetically negotiated post-judgment rate of 5%, and then enhanced for Defendants' continued willful infringement.

After May 11, the date when Google allegedly modified the infringing system ("New AdWords"), this Court must determine whether New AdWords is no more than a colorable variation of the adjudged infringing system ("Old AdWords"), and if so, whether New AdWords still infringes the patents-in-suit.[1] *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869, 880-81 (Fed. Cir. 2011) (en banc). The evidence shows that New AdWords contains the same functionality that was found to infringe in Old AdWords: filtering out low quality ads on the basis of pCTR. Google argues that it  . But that difference constitutes no more than a colorable variation

---

[1] I/P Engine understands from this Court's August 14 Order and the parties' communications with this Court's clerk that this filing is limited to 15 pages, including all supporting evidence.

because the claims do not require a specific point in time when the filtering must occur. Because the modification kept the infringing functionality—filtering out low quality ads on the basis of pCTR—New AdWords continues to infringe, and royalties thus remain ongoing.

I. **THE MODIFIED *GEORGIA-PACIFIC* ANALYSIS RESULTS IN A ROYALTY OF 5% AND THE *READ* FACTORS REQUIRE ENHANCEMENT TO 7%**

This Court should increase the jury's determined royalty rate (3.5%) based on the changed circumstances of the parties post-judgment under a modified *Georgia-Pacific* analysis, and then enhance that rate due to Defendants' willful infringement. *See e.g., Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639 (E.D. Tex. 2011) (GP analysis increased jury rate from 0.5% to 0.75%; *Read* analysis doubling rate to 1.5%); *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891 (E.D. Tex. 2011) (GP analysis, $11 base rate; *Read* analysis increased rate to $14.50); *see also Creative Internet Advertising Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 861 (E.D. Tex. 2009) (GP analysis increased jury's rate from 20% to 23%).

A. **Under A Modified *Georgia-Pacific* Analysis, A Rate Of 5% Is Appropriate**

Courts routinely use the jury's "royalty rate [as] a starting point for determining the ongoing post-judgment royalty rate." *Soverain Software LLC v. J.C. Penney Corp., Inc.*, 899 F. Supp. 2d 574, 589 (E.D. Tex. 2012) (citations omitted); *see also Creative Internet*, 674 F. Supp. 2d at 861. Here, that starting point is 3.5%. D.I. 789 at 11. Courts also routinely increase the jury's rate based on the changed circumstances of the parties post-judgment. *Creative Internet*, 674 F. Supp. 2d at 861. Here, the following four changed circumstances weigh in favor of this Court adjusting upward the jury's rate to 5%. *See id.*; Becker Decl. ¶¶ 3-7.

<u>The Parties' Changed Legal Status</u>. Because Defendants are adjudged infringers of I/P Engine's valid patents, I/P Engine's bargaining position is stronger. *See* Becker Decl. ¶ 4; *see*

*Creative Internet*, 674 F. Supp. 2d at 861 ("a jury verdict" affects "the parties' bargaining position"). This supports an upward adjustment of the rate.

The Negotiating Parties are Different. In 2012, I/P Engine owned the patents-in-suit and, unlike Lycos, enforces and licenses its patents. Becker Decl. ¶ 5. I/P Engine is also financially sound giving it a much stronger bargaining position. *Id*. This supports the upward adjustment.

The Negotiation Date is Different. In 2012, unlike in 2004, AdWords' revenue impact was not an expectation; it was *known*, well documented and significant. *Id*. at ¶ 6; *see also* PX-228; PX-32; PX-34; PX-337; PX-64, slide 38. This warrants an increase of the jury's rate. Becker Decl. ¶ 6; *see Mondis Tech*, 822 F. Supp. 2d at 648 (finding commercial success after the original hypothetical negotiation warranted an increase of the jury's rate).

The Applicable Comparable Rates are Different. At trial, Dr. Becker presented "discounted" rates from the Overture license agreements because a business relationship existed between Lycos and Google during the 2004 hypothetical negotiation. *See* Trial Tr. 842:2-843:23. No such business relationship, however, would exist in the 2012 hypothetical negotiation between I/P Engine and Google. Becker Decl. ¶ 7. So the comparable rates in 2012 would be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. This also supports the upward adjustment.

**B.    The Negotiated Post-Judgment Rate of 5% Should Be Enhanced To 7%**

"Once judgment is entered, ongoing infringement by the adjudged infringer is willful." *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 626 (E.D. Tex. 2009); *see also Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008); *Affinity Labs*, 783 F. Supp. 2d at 899; *Soverain Software LLC v. Newegg Inc.*, 836 F. Supp. 2d 462, 483 (E.D. Tex. 2010) (reversed on other grounds). Hence, without dispute, Defendants' continued use of AdWords was and is willful. Under the relevant *Read* factors, described below, an enhancement to 7% is proper.

Factors 2 and 5 (Good Faith Non-Infringement/Invalidity Belief and Closeness of Case). Neither (1) a pending appeal nor reexamination, (2) a good-faith belief of non-infringement or invalidity, nor (3) "closeness" of the case militates away from enhancement. *See Mondis Tech.*, 822 F. Supp. 2d at 649 (finding "no reason to discount the royalty base based on the possible outcome of an appeal" (internal citation omitted)); *J.C. Penney*, 899 F. Supp. 2d at 589 (factors 2 and 5 "strongly favor enhancement" as defendants are adjudged infringers of valid patents); *Affinity Labs*, 783 F. Supp. 2d at 902-03 (finding post-judgment, no good faith belief of invalidity, non-infringement or close case; this exerts an upward influence on the enhancement).

Factor 4 (Defendants' Size and Financial Condition). In this case, enhancement will not unduly prejudice Google's non-infringing business. *See Krippelz v. Ford Motor Co.*, 670 F. Supp. 2d 815, 822-23 (N.D. Ill. 2009). With a $301.42 *billion* market cap, Google can easily carry on its business despite an ongoing royalty of 7% until the patents-in-suit expire (in 2016).

Factor 7 (Defendant's Remedial Actions). At trial, Google offered three non-infringing alternatives that it told the jury were easy to implement at minimal cost. Trial Tr. at 1470:9-19; D.I. 1005, Ex. 6, ¶ 21. After trial, Google implemented a fourth alternative (New AdWords) that was not available until after the 2012 hypothetical negotiation date. *See* Furrow Decl. ¶¶ 1-8. Google took no meaningful remedial action until after the 2012 negotiation date and misled the jury about the first three alternatives. This supports enhancement. Moreover, the law supports enhancement in cases of an alleged design around. *Affinity Labs*, 783 F. Supp. 2d at 904.

## II. NEW ADWORDS IS NO MORE THAN A COLORABLE VARIATION FROM OLD ADWORDS AND STILL INFRINGES

Ongoing royalties should continue after the implementation of New AdWords because the modified features of New AdWords are no more than a colorable variation of the adjudged

infringing features of Old AdWords. *See Creative Internet*, 674 F. Supp. 2d at 855; *see also TiVo*, 646 F.3d 869.[2]

Google's alleged modification to Old AdWords focuses on the "filtering" limitation of the claims (Google does not allege that any other limitation is relevant here).[3] Specifically, it claims to have removed the filtering functionality of Old AdWords. D.I. 944 at 1. That functionality was embodied in three filtering steps called QBB Disabling, Mixer Disabling and Promotion. Each filtering step was an independent infringement of the claims. Trial Tr. 494:8-497:4. In New AdWords, however, the infringing "filtering" functionality was neither modified nor turned off. It instead was simply ███████████████████████████████. As shown below, the new filtering functionality operates using the same data for the same purpose as in Old AdWords. Therefore, it is no more than a colorable variation and still infringes the "filtering" limitation.[4]

---

[2] This analysis must "focus initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused products." *Id.* at 882. Where one of the relied upon features has been modified or removed, the question is "whether that modification is significant." *Id.* At the most basic level, a modification is not significant (or not more than a colorable variation) if it "performs substantially the same function in substantially the same way with substantially the same result." *ePlus Inc. v. Lawson Software, Inc.*, Case No. 3:09-cv-620, 2013 WL 4430912, *4 (E.D. Va. Aug. 16, 2013) (citation omitted).

[3] Dr. Frieder testified that the "filtering" limitation has two-steps: (1) to combine the feedback data with content profile data, and (2) to filter based on relevance of the query. Trial Tr. 575:4-8. Google's modifications do not impact step one – New AdWords still uses pCTR (Frieder Decl. ¶ 7), which the jury found to be an infringing combination of feedback and content data.

[4] ███████████████████████████████████████████████████████████████████████

5

A.     **The Purported Modifications To New AdWords**

Old AdWords filtered out low quality ads using a ███████████████████████
███████. D.I. 945, Furrow Decl. ¶¶ 10-11. Specifically, ████████████████████
████████████████████████████████████████████ *Id.* at ¶ 11. ████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████ *Id.* ██████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████ Furrow Trial Tr. at 1085:11-19.

Filtering ads to ensure quality standards was a central theory of I/P Engine's case. *See* Trial Tr. 612:6-18 (Dr. Frieder testifying that Mixer Disabling "eliminates low quality ads."); Trial Tr. 618:11-15 (Dr. Frieder testifying that the three filtering steps are "taking away bad ads."); Trial. Tr. 1067:5-6 (Google's representative testifying that disabling means "finding ads that we don't want to show"); Trial Tr. 667:2-3 (Google's Chief Economist stating that low quality ads do not get shown to users).

In New AdWords, Google still maintains its quality standards by filtering out low quality ads. Frieder Decl. ¶¶ 6-8. Google does so in the exact same way that it did in Old AdWords: █
████████████████████████████████████████████████████████████████████
██████████████████████████████ *Id.*; SC-G-IPE-0000274. █████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████ Frieder Decl. ¶¶ 6-8. The filtering functionality in New AdWords achieves the same result as the Old AdWords filtering functionality—████████████████████████████████████████████████████
██████████████████████████████:

[REDACTED]

Furrow Dep. Tr. 85:10-19 (emphasis added). In both systems, filtering is a comparison of an ad's LTV score to a threshold of zero and ads below the threshold are not shown to the user.

### B. New Adwords's "Filtering" is No More Than Colorably Different From The Adjudged Infringing "Filtering" Of Old AdWords

New AdWords' "filtering" functionality is no more than a colorable variation of Old AdWords. Frieder Decl. ¶¶ 2-5. Both the old and new systems filter out low quality candidate ads. *Id*. [REDACTED] *Id*. The old and new systems are so similar that Google's own description of the filtering functionality on its AdWords website has not changed—it currently describes an ad's "eligibility" based on ad quality score in the exact same terms as the earlier Old AdWords versions of those documents, which were admitted as evidence at trial. *See* https://support.google.com/adwords/answer/2454010?hl=en (visited Oct. 30, 2013).

"Colorable variations" may be analyzed under the function-way-result test. *ePlus*, Case No. 3:09-cv-620, 2013 WL 4430912 at *4. If New AdWords' filtering functionality performs substantially the same function in substantially the same way to achieve substantially the same result as Old AdWords' filtering functionality, it is considered no more than a colorable variation of those steps. As illustrated below, the functions, ways, and results of the old and new systems are the same. Frieder Decl., ¶¶ 2-5. Thus, the modification is not a *significant* difference. *Id*.

7



Frieder Decl., ¶ 2.

Defendants' expert essentially asserts that *when* the "filtering" step occurs (pre-auction versus during the auction) constitutes the significant difference. But, the asserted claims do not require a specific time when the "filtering" must occur—they only require that the act of "filtering" occur. If a design change is not relevant to a claim limitation, that change is not more than a colorable variation. *TiVo*, 646 F.3d at 882; *see also Suntiger, Inc. v. Telebrands Adver. Corp.*, 2003 U.S. Dist. LEXIS 26564, at *15-16 (E.D. Va. 2003). Shifting the filtering functionality from before the auction to during it would not constitute a colorable variation as it performs the same function in substantially the same way to obtain the same result. *Hughes Aircraft Co. v. U.S.*, 717 F.2d 1351, 1365 (Fed. Cir. 1983) (finding a change to an accused product's ability to provide an indication in "real time" versus a "delayed" response does not establish that the accused product does not perform the same function in substantially the same way to obtain the same result).

### C. New AdWords Still Infringes The Asserted Claims

It is undisputed that it uses the same content and collaborative data, and combines them in the same way

███████████████████████████████████████████████████████████

███████████████████████████████████████ Frieder Decl. ¶¶ 6-8.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ *Id.*

Because Google did not alter the infringing functionality in a way that affects the patent claims, it still infringes them. *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1528-29 (Fed. Cir. 1985) (Federal Circuit has explained that "[i]t may, in some cases only be necessary to determine that the modified device has not been changed from the adjudged device in a way which affects an element of a claim.") (overruled on other grounds); *Brine, Inc. v. STX, L.L.C.*, 367 F. Supp. 2d 61, 68 (D. Mass. 2005). This is true for both literal infringement and the doctrine of equivalents because, as noted above, they perform substantially the same function, in substantially the same way, to yield substantially the same result.

Dated: October 30, 2013          By: /s/ Jeffrey K. Sherwood

| | |
|---|---|
| Donald C. Schultz (Virginia Bar No. 30531) | Jeffrey K. Sherwood (Virginia Bar No. 19222) |
| W. Ryan Snow (Virginia Bar No. 47423) | Frank C. Cimino, Jr. |
| CRENSHAW, WARE & MARTIN PLC | Kenneth W. Brothers |
| 150 West Main Street | Dawn Rudenko |
| Norfolk, VA 23510 | Charles J. Monterio, Jr. |
| Telephone: (757) 623-3000 | Jonathan Falkler |
| Facsimile: (757) 623-5735 | DICKSTEIN SHAPIRO LLP |
| | 1825 Eye Street, NW |
| | Washington, DC 20006 |
| | Telephone: (202) 420-2200 |
| | Facsimile: (202) 420-2201 |
| | |
| | Counsel for Plaintiff I/P Engine, Inc. |

## **CERTIFICATE OF SERVICE**

I certify that on this 30th day of October 2013 I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification to the following:

>Stephen Edward Noona
>Kaufman & Canoles, P.C.
>150 W Main St, Suite 2100
>Norfolk, VA 23510
>senoona@kaufcan.com
>
>David Bilsker
>David Perlson
>Quinn Emanuel Urquhart & Sullivan LLP
>50 California Street, 22nd Floor San Francisco, CA 94111
>davidbilsker@quinnemanuel.com
>davidperlson@quinnemanuel.com
>
>Robert L. Burns
>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP Two Freedom Square
>11955 Freedom Drive Reston, VA 20190
>robert.burns@finnegan.com
>
>Cortney S. Alexander
>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
>3500 SunTrust Plaza
>303 Peachtree Street, NE Atlanta, GA 94111
>cortney.alexander@finnegan.com

                                                /s/ Jeffrey K. Sherwood