UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| I/P ENGINE, INC.   Plaintiff,<br><br>v.<br><br>AOL, INC., *et al.*,   Defendants. | Civil Action No. 2:11-cv-512 |

## DEFENDANTS' RESPONSIVE BRIEF REGARDING ISSUES RAISED IN THE COURT'S AUGUST 14 ORDER

## I.   PLAINTIFF FAILS TO SHOW THAT  NEW ADWORDS IS A MERE COLORABLE, AND INFRINGING, VARIATION OF OLD ADWORDS

Plaintiff fails to apply the "no more than colorably different" standard with anywhere near the degree of rigor required by the Federal Circuit in *TiVo, Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011) (en banc) and *nCube Corp. v. SeaChange International, Inc.*, 732 F.3d 1346 (Fed. Cir. 2013).  That rigorous standard requires Plaintiff to show there is not even "a fair ground of doubt as to the wrongfulness of [the defendant's] conduct."  *Tivo*, 646 F.3d at 882. Plaintiff first must show that there are no "significant" differences between Old AdWords and New AdWords, but a mere colorable variation between the two.  *nCube*, 732 F.3d at 1349.  In other words, that the differences between Old AdWords and New AdWords are not genuine, but "merely one of appearance." *Petter Invs., Inc. v. Hydro Eng'g, Inc.*, 1:07-CV-1033, 2011 WL 2935411, at *5 (W.D. Mich. July 18, 2011) (applying *TiVo*, 646 F.3d at 882).  If Plaintiff clears this first hurdle, it must then show that New AdWords actually infringes.  *Tivo*, 646 F.3d at 882-83.  Plaintiff cannot meet its burden on either hurdle.

### A.   New AdWords Is Far More Than Colorably Different from Old AdWords

#### 1.   New AdWords Removed the Accused "Filtering"

The Federal Circuit's *nCube* and *Tivo* standard requires this Court to focus its inquiry "on those elements of the adjudged infringing products that the patentee previously contended, and

1

proved, satisfy specific limitations of the asserted claims."  *nCube*, 732 F.3d at 1349 (quoting

*TiV*o, 646 F.3d at 882).  At trial, Plaintiff accused three pre-auction "filtering" steps: a QBB

filtering step that used one type of pCTR (but <u>not</u> LTV scores) to disqualify ads from the

AdWords auction before any query had been entered, and two other filtering steps that used LTV

scores (which include pCTR) to disqualify additional ads from the auction after the query had

been entered.  (Trial Tr. 494:8-497:1).  Plaintiff does not dispute that these accused pre-auction

"filtering" steps ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  This alone makes New AdWords more than

colorably different, and shows Plaintiff's statements that "[i]n New AdWords . . . the infringing

'filtering' functionality was neither modified nor turned off" (P's Br., 5) and that New AdWords

"contains the same functionality that was found to infringe" (*id*. at 1) are simply not credible.

Nevertheless, Plaintiff latches on to the fact that both New and Old AdWords calculate

and use an LTV score, suggesting that Google simply moved the use of LTV from a pre-auction

to a post-auction stage.  (*Id*.)  Plaintiff, however, did not accuse the mere use of pCTR in

calculating LTV scores, or even the use of these scores to rank and place ads through the auction.

(Trial Tr. 710:4-711:12.)  Indeed, one of the accused "filtering" steps, QBB disabling, did not use

LTV scores at all.  Yet, Plaintiff does not even try to show that a system ▮▮▮▮▮▮▮▮▮

is only colorably different from a system ▮▮▮▮▮▮▮.  And the extensive differences

between how New and Old AdWords use LTV scores further defy Plaintiff's position.

| ▮▮▮▮▮ | ▮▮▮▮ | ▮▮▮ | New AdWords |
|---|---|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | ▮▮▮▮ | ▮▮ |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | ▮▮ | ▮▮ |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | ▮▮ | ▮▮ |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | ▮▮ | ▮▮ |

| | | | New AdWords |
|---|---|---|---|
| | | | |
| | | | |

Neither Plaintiff nor Dr. Frieder address these differences, much less explain how the two systems could be no more than colorably different despite them.

Further, Plaintiff stressed at trial the fact that these pre-auction steps excluded ads from participating in ad auctions, thereby reducing the computational machinery needed to run the auctions, was "filtering." (Ungar Report (D.N. 1024-1) ¶¶ 24-28; Trial Tr. 1067-69 & 1127-28.) As detailed in the report of Dr. Ungar (served before Plaintiff's Opening Brief),

Indeed, it is undisputed                                                                    that, according to Plaintiff's trial arguments, required Old AdWords to disqualify ads from participating in the auction through filtering because the servers could not handle all the ads that otherwise would enter the auction. (Trial Tr. 1067:24-1068:12; 1127:21-1128:11; 1994:1-3.) Plaintiff ignores this undisputed difference between the two systems as well. Plaintiff's failure to meet the threshold requirement of demonstrating that the accused functionality in New AdWords is insignificantly different from the functionality it relied upon for its infringement claims against Old AdWords at trial ends the inquiry. *nCube,* 732 F.3d at 1349.

## 2. The "Function-Way-Result" Test Does Not Support Plaintiff

Plaintiff argues that the "function-way-result" test for infringement under the doctrine of equivalents shows a mere colorable difference between Old and New AdWords. (P's Br., 7-8.) Initially, the Federal Circuit has never endorsed this approach for the colorable differences

inquiry – which, as noted above, is a threshold inquiry that <u>precedes</u> the inquiry into whether the new system actually infringes. *nCube*, 732 F.3d at 1349. Plaintiff's only authority for applying the function-way-result test to the colorable differences inquiry is a pre-*nCube* case, *ePlus Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2013 WL 4430912, at *4 (E.D. Va. Mar. 19, 2013), which itself cites only an unpublished district court decision. In fact, the doctrine of equivalents test is inappropriate for multiple reasons, including the fact that it is a test for infringement, not whether there are colorable differences and because it involves comparing a product to a patent claim limitation to determine whether they are equivalents, not comparing a new and old version of a product to one another. *Compare Mirror World LLC v. Apple, Inc.*, 692 F.3d 1351, 1357 (Fed. Cir. 2012) ("A patent is infringed under the doctrine of equivalents if any difference between a ***given limitation*** in the asserted claim and the ***corresponding element in the accused device*** is insubstantial.") (emphasis added), *with nCube*, 732 F.3d at 1349 ("If those differences between the old and new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one . . .") (quoting *TiVo*, 646 F.3d at 882).

In any event, even if the "function-way-result" test is applied, it only confirms that New AdWords is more than colorably different from Old AdWords, as demonstrated below:

| | Old AdWords: QBB disabling, Mixer disabling, and Promotion thresholding | |
|---|---|---|
| **Function** | Disqualify low quality ads from the auction to reduce server load and time to perform the auction. (Ungar Report ¶¶ 21-23; Trial Tr. 1067:24-1068:12, 1127:21-1128:11, 1994:1-3; 9.20.13 Furrow Dep. 65:2-24.) | |
| **Way** | Disqualify ads before the auction is performed based on a pCTR and/or | |

| | **Old AdWords:  QBB disabling, Mixer disabling, and Promotion thresholding** | |
|---|---|---|
| | LTV score.  (Ungar Report ¶¶ 21-23; Trial Tr. 494:8-497:1; 9.20.13 Furrow Dep. 14:23-15:7, 19:17-20:3.) | |
| **Result** | A per-slot ad auction system that uses up to two LTV scores calculated for each ad (right-hand-side LTV and top LTV) to disqualify ads from the auction before the auction is performed to reduce server load and equipment costs.  (Ungar Report ¶¶ 21-23; Trial Tr. 494:8-497:1, 1067:24-1068:12, 1127:21-1128:11, 1994:1-3; 9.20.13 Furrow Dep. 14:23-15:7, 19:17-20:3, 65:2-24.) | |

In contrast, Plaintiff's application of this test is at such a high level of abstraction that it renders the test meaningless.  Plaintiff argues, for example, that the "function" of Old AdWords is to "ensure a 'standard' of the advertisements shown to the user."  (P's Br., 8.)  But Plaintiff ignores that the function of the accused "filtering" in Old AdWords to reduce server load that Plaintiff asserted was so critical at trial, ████████████████████████████████████ (*Compare* Trial Tr. 1067:24-1068:12; 1127:21-1128:11 *with* Ungar Report ¶ 42.)  Also, even the alleged "standard" in New Adwords is different.  Old AdWords used a QBB pCTR in QBB disabling. ████████████████████████████████ (Ungar Report ¶¶ 34-36.)  Similarly, AdMixer disabling and Promotion thresholding in Old AdWords used one LTV Score for each ad for the top slot and another for the right-hand side slot.  Yet, New AdWords



(Ungar Report ¶ 49.)

Similarly, Plaintiff argues that the "way" is the same because both systems compare "a candidate's LTV score to zero."  (P's Br., 8.)  But that broad-brush characterization obscures the very different "ways" in which the two systems actually operate and use LTV scores.  Again, (Ungar Report ¶¶ 22-23 & 56.)   By contrast, (Ungar Report ¶¶ 32, 56; 9.20.13 Furrow Dep. 39:4-41:15.)  So not only are the "standards" different as explained above, the two systems have very different "ways" of operation.

Plaintiff also ignores the different "results" achieved by the two systems.  For example, (Ungar Report ¶¶ 34-35.)  Also, (Ungar Report ¶¶ 42 & 45). (Ungar Report ¶ 31.)  Old AdWords could not provide the result of this sophisticated analysis (Id. at ¶¶ 29-30.)  In other words, the "result" of what ads are shown in New AdWords is squarely different than Old AdWords.

In sum, Plaintiff cannot meet its burden of proving that all these undisputed differences between Old AdWords and New AdWords are insignificant.  If Plaintiff intends to stretch its

patent claims to encompass a substantially redesigned system, it must do so via a new complaint.

*Arbek Mfg., Inc. v. Moazzam*, 55 F.3d 1567, 1570 (Fed. Cir. 1995).

**B.     Plaintiff Fails to Offer Any Support For Its Interpretation of "Filtering" in Arguing that the ███████████ Does Filtering**

Plaintiff argues that the use of LTV scores in the ██████████ meets the "filtering"

limitations, but Plaintiff never explains why the ██████████████████████████

████████████████████ Dr. Unger explained in his report (again served

before Plaintiff's brief) that filtering "presupposes a plurality of items, with at least the possibility

that some items will pass through the filter and others will be excluded."[1]  (Ungar Report ¶ 69;

Defendants' Br. at 10-11.)  Plaintiff does not dispute this construction, or explain how New

AdWords filters under it.  Indeed, there is no dispute that New AdWords cannot "filter" under

this construction, becaus ███████████████████████████████████████
█████████████████████████████████████████████████
██████████████

Instead, it appears to be Plaintiff's new position that ███████████████████
█████████████████ Plaintiff offers no support for this interpretation of

filtering, nor could it.  At trial, Plaintiff disclaimed its current interpretation when it

distinguished prior art on the ground that  "filtering does not use a ranked list, but rather is an

item-by-item process."  (Trial Tr. 1847:1-9, 1851:17-1852:7; Ungar Report ¶¶ 57 & 70-72.)

Plaintiff makes no attempt to square its current contention that ███████████████████
█████████████████ even though there is no dispute that New AdWords

---

[1]   Dr. Frieder previously adopted a similar view of "filtering" in his deposition, stating in a hypothetical that "filtering" football players based on whether they weigh 300 pounds requires saying "I'll take anybody that's over 300 pounds."  (Frieder Dep. 46:15-17.)

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████ Plaintiff's failure to offer

any support for its interpretation of the critical "filtering" limitation shows that there are

substantial open issues that cannot be resolved in this truncated post-trial proceeding.

## II.   PLAINTIFF'S POST-JUDGMENT ROYALTY REQUEST IS UNREASONABLE AND INCONSISTENT WITH THE VERDICT

### A.   Plaintiff Cannot Reconcile Its Royalty Request with the Jury Verdict

The parties agree that the starting point for the hypothetical negotiation in November

2012 should be the jury verdict.  (P's Br., 2.)  But the post-judgment royalty that Plaintiff seeks is

grossly disproportionate to the jury award.  The 7% royalty that Plaintiff now seeks would have

resulted in approximately ███████ in damages for period that was the subject of the jury's

award.[2]  Yet the jury's award did not remotely approach that amount. The jury awarded just

$15.8 million against Google.  As Defendants have repeatedly pointed out, and which Plaintiff

consistently ignores, the award against Google is the appropriate benchmark given that the award

against the remaining Defendants was a result of double counting.  (Ugone Report ¶ 17; Trial Tr.

2171:4-11; D.N. 834, 13-14.)  The rate Plaintiff urges the Court to adopt is over ██████ times

the damages awarded against Google.  Even ignoring the double counting, the jury awarded

$30.5 million against all Defendants combined (D.N. 789 at 11), ████ times less than what

Plaintiff urges the Court to adopt.  Yet, Plaintiff does not even attempt to reconcile its royalty

demand with the jury verdict.

---

[2]      Specifically, the apportioned royalty base for the time period subject to the jury's
award would be approximately ███████ (Ugone Report ¶ 17.)  Applying a 7% royalty rate
to that base would yield damages of ███████

**B.    Plaintiff's Proposed 7% Royalty Rate Is Based on Irrelevant Licenses and Ignores Contrary Evidence**

Plaintiff's proposed 7% royalty rate is also unreasonable because it is based on the unreliable opinion of its damages expert, Dr. Becker.  Dr. Becker bases his opinion on the same 2005 Overture licenses that he relied on at trial.  (Becker Dec. ¶ 7.)  Yet Dr. Becker opined at trial that licenses entered into four years from the hypothetical negotiation were "sort of temporally removed" and thus irrelevant.  (Trial Tr. 837.)  The Overture licenses are now <u>seven</u> years "temporally removed" from the relevant negotiation date.  Even if the Overture licenses were an appropriate proxy for the 2012 hypothetical negotiation, the appropriate Overture license to consider would be the license that <u>Google</u> itself entered into for Overture's patents.  (Ugone Report ¶ 66.)  That license provided for a total payment of only $28.5 million for the lifetime of the patents, which is just ███████ the royalty Plaintiff seeks for a single year.  (*Id.*)  Neither Dr. Becker nor Plaintiff attempt to address these inconsistencies.

Dr. Becker and Plaintiff also cherry-pick and misapply the relevant *Georgia-Pacific* factors, to the extent they address these factors at all.  They ignore the many sales and licenses that are far closer to the date of the November 2012 hypothetical negotiation and that actually involve the patents-in-suit, the numerous additional contributions to the SmartAds system that Google made between 2004 and 2012, and the fact that Google was implementing changes to AdWords that would render it non-infringing.  (Ugone Report ¶¶ 10-15 & 37-39.)

**C.    A Willfulness Enhancement Is Not Appropriate**

Plaintiff argues that the royalty should be enhanced for willfulness by an additional two percentage points.  There was no finding or allegation of willfulness at trial, and as this Court has

held in an analogous context, it makes little sense to call future infringement "willful" where, instead of seeking an injunction to prevent it, Plaintiff has sought a court-sanctioned royalty.[3]

Further, there is a reasonable basis for believing that the patents are invalid and not infringed, which precludes willfulness as a matter of law. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236-37 (Fed. Cir. 2011). The Federal Circuit will soon decide whether the patent claims are invalid and not infringed as a matter of law. At least for the period prior to that decision, there are objectively reasonable invalidity and non-infringement defenses. Similarly, willfulness requires clear and convincing evidence that the infringer subjectively believed it was infringing a valid patent. *Seagate*, 497 F.3d at 1371. Plaintiff presents <u>no</u> evidence that anyone at Google has ever had such a subjective belief, especially in light of the invalidity and non-infringement arguments asserted on appeal and the redesign of AdWords.

Finally, Plaintiff misapplies the *Read* factors for determining the size of any willfulness enhancement. The bulk of these factors weigh against any enhancement, including: (1) there is no evidence of copying; (2) Google has a good faith invalidity and non-infringement belief; (3) there has been no misconduct; (4) Google has taken remedial action by redesigning the accused product; (5) there is no evidence of any improper motive; and (6) Google has not attempted to conceal its conduct. Further, Plaintiff's two-percentage point enhancement, by itself, is a multiple of the effective royalty rate applied by the jury at trial. (Ugone Report ¶ 17.)

DATED: November 11, 2013

        _/s/ Stephen E. Noona_
        Stephen E. Noona

---

[3]   *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 827 F. Supp. 2d 641, 656 (E.D. Va. 2011) (Jackson, J.) (ongoing post-judgment infringement not willful when authorized by an order staying entry of a permanent injunction), *rev'd in part on other grounds*, 694 F.3d 1312 (Fed. Cir. 2012); *In re Seagate*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (en banc) (a patentee that does not attempt to stop infringement via a preliminary injunction "should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct").

Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com

David Bilsker
David A. Perlson
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700
davidbilsker@quinnemanuel.com
davidperlson@quinnemanuel.com

*Counsel for Google Inc., Target Corporation, IAC Search & Media, Inc., and Gannett Co., Inc.*


 */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com

Robert L. Burns
FINNEGAN, HENDERSON, FARABOW,  GARRETT &
DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile:  (202) 408-4400

Cortney S. Alexander
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, NE

Atlanta, GA 94111
Telephone: (404) 653-6400
Facsimile:  (415) 653-6444

*Counsel for Defendant AOL Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 11, 2013, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:

Jeffrey K. Sherwood
Kenneth W. Brothers
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC   20006
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201
sherwoodj@dicksteinshapiro.com
brothersk@dicksteinshapiro.com

Donald C. Schultz
W. Ryan Snow
Steven Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, VA  23510
Telephone:  (757) 623-3000
Facsimile:  (757) 623-5735
dschultz@cwm-law.cm
wrsnow@cwm-law.com
sstancliff@cwm-law.com

*Counsel for Plaintiff, I/P Engine, Inc.*

  _/s/ Stephen E. Noona_
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com