UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| I/P ENGINE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civ. Action No. 2:11-cv-512 |
| | ) |
| AOL INC. et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF I/P ENGINE, INC.'S OPPOSITION TO DEFENDANTS' OPENING BRIEF ON ISSUES RAISED IN THE COURT'S AUGUST 14 ORDER**

Like Old AdWords, New AdWords filters out low-quality ads based on Quality Score/Predicted Clickthrough Rate. On this point, both Google's source code and the testimony of its own witness, Mr. Bartholomew Furrow, are consistent and undisputed. Because filtering in New AdWords occurs at a different time than in Old AdWords, Defendants argue that New AdWords is more than a colorable variation. But, to be more than a colorable variation, the law requires a difference that impacts at least one claim limitation. None of the differences Defendants identify, including the timing difference, impact any claim limitation. New AdWords therefore cannot be more than a colorable variation of Old AdWords as a matter of law.

Relying on evidence that the jury and Court previously considered and rejected, Defendants propose a post-judgment royalty rate of 0.5% in disregard of the jury's explicit royalty rate finding of 3.5%. Fundamentally, they ignore the parties' changed circumstances post-verdict, and that a royalty rate baseline of 3.5% exists as a result of the verdict. Defendants' proposed rate of 0.5% has no factual or analytic support, and implausibly suggests that the

favorable jury verdict in this case severely weakened I/P Engine's post-judgment negotiation position. That suggestion is wrong as a matter of law.

## I. DEFENDANTS PROFFER NOTHING TO ESTABLISH THAT NEW ADWORDS IS MORE THAN A COLORABLE VARIATION OF OLD ADWORDS: PER-POSITION AUCTIONS PERFORM THE INFRINGING "FILTERING" STEP

New AdWords is no more than a colorable variation of Old AdWords. D.I. 1038. Defendants' arguments to the contrary are inconsistent with the record.

### A. Google Merely Moved the Infringing Functionality Within The System

Defendants characterize the changes to New AdWords as the removal of the accused QBB Disabling, Mixer Disabling, and Promotion Disabling steps. But Google replaced those steps with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Through its designated witness Mr. Furrow, Google admits that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

D.I. 1038, Frieder Decl. ¶ 6; Furrow Dep. Tr. 140:20-141:10. According to Mr. Furrow, the new filtering functionality (▇▇▇▇▇▇▇▇▇▇▇▇▇) achieves the same result of maintaining quality standards as the old functionality (▇▇▇▇▇▇▇▇▇▇).

Google's source code comments also confirm that New AdWords simply moved the filtering functionality found to infringe in Old AdWords. For example, the comments state that

2

███████████████████████████████████████████████████████████████

██████████████████████████████████████ Frieder Rebuttal Decl. ¶ 2. Thus, the comments themselves demonstrate the change simply merged (or replaced, or moved) the pre-existing threshold (used for filtering) with the auction. The code does *not* say such thresholds were removed.

Defendants cite *nCube Corp. v. SeaChange Int'l, Inc.*, 732 F.3d 1346 (Fed. Cir. 2013). But there, "the defendant redesigned the product and the patentee subsequently claimed that *an entirely different component* that performed *a different function* than what Plaintiff pointed to at trial nevertheless infringed." *Id.* at 1350-51 (emphasis added). Here, per position auctions perform *the same filtering function* that I/P Engine asserted that the QBB Disabling, Mixer Disabling and Promotion steps did at trial: ████████████████████████████████████

████████████████████████████████████████████. D.I. 1038, Frieder Decl. ¶¶ 6-8; SC-G-IPE-0000274; Furrow Dep. Tr. 85:10-19. Unlike *nCube*, where the defendant pointed to a different component that performs a different function, I/P Engine points to the identical function in the source code.

### B. The Timing of Filtering Relative the Auction Is Not Relevant to the Claims

Defendants argue that performing the filtering step *during* the auction is different than performing the filtering step *before* the auction. D.I. 1033 at 7-9.[1] But, that timing difference is irrelevant to the asserted claims—none require any particular timing or sequencing relative to the auction. And Defendants have failed to identify any specific claim limitation that is relevant to or impacted by such a timing change.

---

[1] Following this Court's Order, I/P Engine submitted 15 pages of briefing and supporting evidence. Defendants, on the other hand, did not follow that Order, and submitted 15 pages of briefing without any supporting evidence.

3

Similarly, the other differences Defendants identified – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – do not in any way relate to or impact asserted claim limitations. As a matter of law, therefore, these differences cannot rebut I/P Engine's showing that New AdWords is no more than a colorable variation of Old AdWords.

The colorably different determination involves "making a comparison between the original product, the modified product, and *the claims*." *Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 855 (E.D. Tex. 2009) (citing *TiVo Inc. v. Dish Network Corp.*, 640 F. Supp. 2d 853, 863 (E.D. Tex. 2009)) (emphasis added); *see also TiVo Inc. v. Echostar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (the analysis must not focus on "randomly chosen features of the product"). In *Creative Internet*, the defendant argued that removing a graphical representation of a check box for a feature made its system colorably different. 674 F. Supp. 2d at 857. The court, however, correctly noted that "[the asserted claim] does not claim a check box" and therefore "a comparison between the adjudicated device and the modified device, in light of the claim language supports that the 'new' version of Yahoo Messenger is no more than a 'colorable variation' of the infringing protocol." *Id*. at 856, 859. The same is true here – the claims do not require filtering ads before an auction, nor do they require reducing machine costs. Even if taken as true, those differences cannot render New AdWords more than a colorable variation.

Instead of citing differences that impact specific claim limitations, Defendants rely upon selective portions of I/P Engine's trial statements that describe a benefit achieved by filtering pre-auction – computational savings – and argues that New AdWords no longer obtains that benefit. D.I. 1033 at 6. But, computational savings is not a claim limitation. And, I/P Engine

addressed many benefits at trial, including the important benefit of ensuring Google's quality standards by removing low quality ads from being shown to the user. *See* D.I. 1038 at 6. There is no dispute that this benefit is still achieved by New AdWords' per-position auction thresholds. Mr. Furrow admitted it during his deposition. D.I. 1038, Frieder Decl. ¶ 6; Furrow Dep. Tr. 140:20-141:10.

Defendants' citation to *Petter Invs., Inc. v. Hydro Eng'g, Inc.*, No. 1:07-cv-1033, 2011 WL 2935411 (W.D. Mich. July 18, 2011), is misplaced. There, the court determined that a new wash pad was significantly different because the new wash pads lacked *claimed features*. *Petter*, 2011 WL 2935411, at *7-8. The case does *not* stand for the proposition that functional differences unrelated to the claims are relevant. Here, Defendants' differences are unrelated to the claims. As a matter of law, they are afforded no weight in the "colorable variation" analysis.

C. New AdWords "Filters" Ads

Defendants claim that New AdWords does not "filter" ads when  D.I. 1033 at 7-11. First, this argument contradicts Google's own documents. The source code function that ▬▬▬▬▬▬▬▬▬▬. D.I. 1038, Frieder Decl. at ¶ 7 (emphasis added). ▬▬▬▬▬▬▬▬▬▬ *Id*.

Second, Google incorrectly focuses on ad *ranking*, and ignores ad *filtering*. In Old AdWords, ▬▬▬▬▬▬▬▬▬▬. D.I. 1038 at 6. In New AdWords, ▬▬▬▬▬▬▬▬▬▬

5

███ The ranking process in both Old AdWords and New AdWords is irrelevant because it was and is not accused and does not impact any claim limitation. The filtering functionality in both cases is exactly the same – ████████████████████████████████████████████████████████████████████████████████████████████████████████████ Google uses the same filtering functionality, ████████████████████████████████████████.

Google also claims this process is not "filtering" because it does not consider ads one-by-one. D.I. 1033 at 7-11. But, each ad in New AdWords that is considered for display to the user ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Defendants' argument that I/P Engine's position is inconsistent with I/P Engine's expert, Dr. Jamie Carbonell's description of filtering is unavailing. Dr. Carbonell distinguished the Bowman prior art because it described only *ranking* items, not *filtering* them. Dr. Carbonell testified that "filtering is done with a fixed criterion, a criterion that does not depend on the other items, and it does the processing one at a time without comparing one item to another." Trial Tr. at 1847:6-9. It is undisputed that New AdWords uses a "fixed criterion, a criterion that does not depend on the other items" for filtering: ██████████. New AdWords compares each ad considered for display one-by-one to that ██████████. New AdWords will display *no ads* if none of the candidate ads ████████████████████████████████. D.I. 1038, Frieder Decl. ¶ 6; Furrow Dep. Tr. 85:9-15. This is filtering – in exactly the same way as all experts described it at trial.

## II. DEFENDANTS' POST-JUDGMENT ROYALTY OF 0.5% HAS NO MERIT

### A. The Jury Found The Pre-Judgment Royalty Rate To Be 3.5% And That Is The Proper Baseline For Post-Judgment Royalties

The jury determined a royalty rate of 3.5% (D.I. 789 at 11), *not* 0.5% (D.I. 1033 at 11). That is the starting point for consideration of a post-judgment royalty. Ignoring the jury's unambiguous determination, as Defendants must in order to arrive at 0.5%, lacks merit.[2]

### B. Post-Verdict, I/P Engine Was In A Far Superior Bargaining Position Than Lycos Was 8 Years Earlier, The Date The Jury Relied Upon In Affixing The Pre-Judgment Royalty Rate Of 3.5% Warranting An Upward Adjustment

In awarding post-judgment royalties, this Court "must consider the change in the legal relationship between the parties to avoid incentivizing defendants 'to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing.'" *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 855 (E.D. Tex. 2012) (quoting *Paice, LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 628 (E.D. Tex. 2009)). After the jury's verdict, any post-infringing use of AdWords was made with a substantially diminished belief that such uses are permissible non-infringing uses. *Morpho Detection, Inc., v. Smiths Detection Inc.*, Case No. 2:11-cv-498, 2013 WL 5701522, *9 (E.D. Va. Oct. 17, 2013) (citing *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008) ("[E]asily dispos[ing]" of the defendant's argument that the district court was limited by the jury's reasonable royalty award because "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement," and explaining that prejudgment damages are affixed within the context of uncertainty regarding

---

[2] Defendants have previously made this "jury verdict-implied" argument but as applied to the royalty base. D.I. 805 at 9-11; D.I. 806 at 3-5; D.I. 944 at 16-17; D.I. 946 ¶¶ 43, 55, 56 (given the damages awarded and the jury's determined 3.5% royalty rate, the implied royalty base must have been 2.8% of Google's U.S. AdWords revenues). This Court rejected that argument. Now that this Court has ruled on the royalty base to be used for post-judgment royalties (20.9% of Google's U.S. AdWords revenues), Defendants retool their failed argument to assert that the jury impliedly found a royalty rate of 0.5%, even though the jury explicitly entered the rate of 3.5% on the verdict form and even though the jury saw no evidence of any rate lower than 3.0% at trial. Defendants' continued efforts to re-litigate issues, and rewrite the evidence and the verdict, should be disregarded.

7

infringement and validity, whereas post-verdict "a judgment of validity and infringement has been entered . . . [and] its calculus is markedly different because different economic factors are involved"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, 694 F.3d 1312, 1343 (Fed. Cir. 2012) (noting that "although *Amado* dealt with the imposition of royalty damages while an injunction was stayed during appeal, [the] holding [also] applies with equal force in the ongoing royalty context") (*ActiveVideo II*). This therefore warrants an upward adjustment to the jury-determined royalty rate.

### C. Lowering The Jury's Royalty Rate Based On Evidence Already Heard And Considered By The Jury Or Rejected By This Court Is Wholly Improper

Both the jury and this Court previously considered and rejected Defendants' only evidence to support reducing the jury's 3.5% rate. While Defendants insist that their damages model accounts for "real-world indicators" of the value of the patents-in-suit (*id*. at 14-15), the jury has already heard and considered **all** of Defendants' supposed evidence that support such a notion. *See* Trial Tr. at 927:20-928:23 (discussing Google's license to Overture's patent); *Id*. at 892:8-893:7; 1587:13-1592:5 (discussing Google's non-patent-in-suit related contributions to AdWords); *Id*. at 1566:14-19; 1582:14-1584:22 (discussing Lycos' 2011 sale of the patents-in-suit to I/P Engine); *Id*. at 1258:23-1259:21; 1270:16-1274:17 (discussing ease and availability of non-infringing alternatives); *Id*. at 879:3-6; D.I. 705 at 3 (excluding the Lycos license agreements). The jury, in rendering its verdict, considered and rejected this evidence. The remaining evidence relied upon by Defendants, the Disney and Invenda license agreements, was never said to be technologically comparable until now and was excluded at trial by this Court. D.I. 705 at 4-5; Trial Tr. at 900:22-902:2; 894:6-899:9.

### D. The Microsoft Agreement Is Similarly Irrelevant In Determining Post-Judgment Royalties

This Court has recognized, "[i]t would be improper to base a royalty rate" on a pre-verdict agreement that a patentee had reached when the "bargaining positions [of the involved parties] in any hypothetical negotiation post-verdict has clearly improved." *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc*., 827 F. Supp. 2d 641, 656 (E.D. Va. 2011), confirmed by *ActiveVideo II* (*ActiveVideo I*). The Microsoft Settlement is a pre-litigation settlement, and is not the result of a post-judgment negotiation. There, different circumstances were at play, including the benefits of early settlement and avoidance of discovery costs and Microsoft's small market share in search engine advertising. *See LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 78 (Fed. Cir. 2012) (remanding with instructions to exclude settlement agreement because it was outside the scope of circumstances where settlements are admissible and probative); *see also ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2011 WL 2119410, at *14 (E.D.Va. May 23, 2011) (rejecting defendant's assertion that settlement agreements could permit an adequate basis to calculate reasonable royalty, specifically noting the avoidance of litigation costs by early-stage settlement). This Court and the Federal Circuit have warned against using such agreements in a post-royalty determination. *See ActiveVideo I*, 827 F.Supp.2d at 656; *ActiveVideo II*, 694 F.3d at 1342; *see also LaserDynamics,* 694 F.3d at 77.

Dated: November 11, 2013

Donald C. Schultz (Virginia Bar No. 30531)
W. Ryan Snow (Virginia Bar No. 47423)
CRENSHAW, WARE & MARTIN PLC
150 West Main Street
Norfolk, VA 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735

By: /s/ Jeffrey K. Sherwood
Jeffrey K. Sherwood (Virginia Bar No. 19222)
Frank C. Cimino, Jr.
Kenneth W. Brothers
Dawn Rudenko Albert
Charles J. Monterio, Jr.
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Counsel for Plaintiff I/P Engine, Inc.

10