**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



**I/P ENGINE, INC.,**

     **Plaintiff,**

     **v.**                      **CIVIL ACTION NO. 2:11cv512**

**AOL INC.,** *et al.,*

     **Defendants.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Plaintiff's Opening Brief on Post-Judgment Royalties, Dkt. Nos. 1028

(public version), 1038 (sealed version), Defendants' Opening Brief on Issues Raised in the

Court's August 14 Order, Dkt. Nos. 1020 (public version), 1033 (sealed version), and the parties'

responsive briefs. The Court has carefully considered the parties' pleadings and **FINDS** that

Defendants' modified product is nothing more than a colorable variation of the infringing

system. The Court **DEFERS** ruling on the royalty rate pending the parties' settlement

conference scheduled for January 22, 2014.

### I. BACKGROUND

On September 15, 2011, Plaintiff I/P Engine, Inc. filed a complaint against Defendants

AOL, Inc., Google, Inc., IAC Search & Media, Inc., Gannett Company, Inc. and Target

Corporation in which I/P Engine alleged that the Defendants had infringed several of its patents

through their AdWords system. On November 6, 2012, a jury reached a verdict finding that the

Defendants had infringed the asserted claims of two of I/P Engine's patents. *See* Verdict Form,

Nov. 6, 2012, Dkt. No. 789. The jury awarded I/P Engine damages in the amount of

$30,496,155, which did not include interest. *Id.* The jury also awarded I/P Engine a running royalty rate of 3.5%. *Id.* On November 20, 2012, the formal judgment of the Court was entered into the record. *See* Judgment of the Court, Nov. 20, 2012, Dkt. No. 801.

As a result of this favorable verdict, on December 18, 2012, I/P Engine asked this Court for an award of post-judgment royalties from the date of entry of final judgment, November 20, 2012, until Defendants ceased infringing or until the infringed patents expire on April 4, 2016. Dkt. No. 822. Further, it contended that the appropriate royalty base for an award was 20.9%, and the appropriate royalty rate was 7% based on changed circumstances post-judgment. The Court deferred ruling on I/P Engine's motion until after it ruled on various post-trial motions, and on May 13, 2013, Defendants filed their Opposition to I/P Engine's Motion. Dkt. No. 938. Defendants argued that I/P Engine was not entitled to any post-judgment royalties as a matter of law, that in any event Defendants had ceased infringing even before the entry of judgment because they had modified AdWords, and that if royalties were warranted, it should be in a lump sum. On August 14, 2013, the Court entered an Order finding that I/P Engine was entitled to an ongoing royalty with a royalty base of 20.9%, and that royalty payments should be made on a quarterly basis. Dkt. No. 963.

The Court deferred ruling on two other issues. First, it ordered the parties to meet to negotiate an appropriate ongoing royalty rate and to schedule a settlement conference if they were unable to come to an agreement. On November 18, 2013, the parties notified the Court that they were unable to resolve the rate issue, Dkt. No. 1060, and on December 11, 2013, Magistrate Judge Lawrence R. Leonard entered a Settlement Conference Order for January 22, 2014. Dkt. No. 1061. Second, the Court ordered further discovery and briefing as to Defendants' contention that they had ceased infringement on May 11, 2013, finding that the relevant legal standard was

whether Defendants' modified version of AdWords ("new AdWords") was nothing more than a colorable variation of the infringing product ("old AdWords"). The parties conducted discovery per the Court's Order, and filed their opening briefs on October 30, 2013, Dkt. Nos. 1020, 1028, and their responsive briefs on November 11, 2013, Dkt. Nos. 1048, 1052.

On November 7, 2013, the Court ordered the parties to each provide the name of two independent experts unaffiliated with the parties whom the Court might appoint to assist it in determining whether new AdWords is nothing more than a colorable variation of old AdWords. Dkt. No. 1044. The parties complied with that Order, but after reviewing the submissions of the parties on this issue, including the expert reports initially submitted on this issue, *see* Dkt. Nos. 822, 938, and accompanying exhibits, the Court concludes that the parties do not disagree on the essential features of new AdWords. Rather, they have thoroughly explained the relevant features of new AdWords and the differences between the two systems. The sole dispute between the parties is the application of the colorable variation standard to those facts. The Court, which is well-versed in the patents' claims and in I/P Engine's theory of infringement after presiding over the lengthy proceedings in this case, therefore finds it unnecessary to appoint an independent expert to resolve this matter.

## II. DISCUSSION

### A. Duration of Royalty Rate

In its August 14, 2013 Order, the Court concluded that the burden was on the patentee to demonstrate that Defendants' new version of AdWords is no more than a colorable variation of the adjudicated product. "This can be achieved by making a comparison between the original product, the modified product, and the claims." Dkt. No. 963, at 7 (quoting *Creative Internet Advertising Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 855 (E.D. Tex. 2009)). Should the Court

3

conclude that new AdWords is no more than a colorable variation of old AdWords, the Court

must then determine whether or not it infringes. *XpertUniverse, Inc. v. Cisco Sys., Inc.*, CV 09-

157-RGA, 2013 WL 6118447 (D. Del. Nov. 20, 2013) ("A party seeking to include a new

product version in post-verdict relief must prove that the new version is not more than colorably

different from the product found to infringe, and that the newly accused product actually

infringes." (citing *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011))). In doing

so, the Court may "utilize principles of claim and issue preclusion . . . to determine what issues

were settled by the original suit." *TiVo Inc.*, 646 F.3d at 884 n.4.

In its previous Order, the Court did not decide the applicable burden of proof.

Defendants now argue that I/P Engine must show that new AdWords is no more than a colorable

variation by clear and convincing evidence. Dkt. No. 1020, at 5-6. They rely on *nCube Corp. v.

SeaChange Int'l, Inc.*, 732 F.3d 1346 (Fed. Cir. 2013), but that case addressed the colorable

variation question in the context of the enforcement of a permanent injunction through a

contempt motion. And contempt "is a severe remedy." *TiVo Inc.*, 646 F.3d at 881-82 (quoting

*Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). I/P Engine does not

address the appropriate burden to be applied, but *Creative Internet Advertising Corp.*, which this

Court relied upon in its August 14, 2013 order, implied that a preponderance standard should

apply in the ongoing royalties context. 674 F. Supp. 2d, at 855. The clear and convincing

standard is typically used when enhanced damages are to be applied—for example, to prove a

claim of willful infringement. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir.

2007). But because the result would be the same under either standard, the Court will assume

without deciding that the clear and convincing standard applies.

4

"[I]n determining whether more than colorable differences are present the court focuses on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims." *nCube Corp.*, 732 F.3d at 1349 (quotations omitted).   At the trial in this case, I/P Engine's infringement expert, Dr. Ophir Frieder, testified that old AdWords infringed I/P Engine's patents at multiple points in the process of selecting which ads would be displayed for a given query. Trial Tr. 494-97, 576-77. Specifically, this occurred at two so-called "disabling" steps and one "promotion" step, all of which occurred prior to the auction for ad space. *Id.* Each step used a "predicted click-through rate," a quality score based on the combination of content and collaborative data. Trial Tr. 462. The selection of ads based on this combination was Dr. Frieder's central theory of infringement at trial. Ads, however, were not selected based only on this predicted click-through rate; instead, that score formed part of the "long term value," or LTV score, which included data on the quality of the webpage, the minimum bid, and other factors. Trial Tr. 697-99. For an ad to proceed to the next step, it was required to have an LTV score greater than zero. Trial Tr. 1105. Dr. Frieder testified that the "filtering" component of the patents was satisfied by this step. Trial Tr. 618.

The Court will not delve into the details of new AdWords in this Order because the parties have redacted most of those details in the public version of their briefings pursuant to the protective order in this case. The Court has, however, thoroughly reviewed the experts' descriptions of new Adwords and the ways in which it differs from old AdWords, and is confident that I/P Engine has shown that new AdWords is no more than a colorable variation of old AdWords. Suffice it to say that it is undisputed that new Adwords continues to use a candidate advertisement's LTV score that includes a predicted click-through rate in the process of choosing which advertisement will ultimately be shown to the individual performing the

query. Dkt. No. 1020, at 5. The only differences between the two systems that are potentially relevant in light of I/P Engine's theory of infringement at trial is that the LTV score is no longer used at the multiple steps just described, and occurs once at a different point in the process of selecting which advertisements will ultimately be shown to users. Defendants do not contend that the number of times the LTV score is used is relevant. And at which point in the process this filtering occurred was irrelevant to I/P Engine's theory of infringement. *E.g.*, Trial Tr. 439 (describing the final filtering step as "[y]ou basically eliminate a poor quality ad, i.e., keep the higher quality ad"). On cross-examination, Dr. Frieder agreed with Defendants' counsel that the "[p]atents-in-suit don't say anything about an auction system." Trial Tr. 710.

To hold otherwise would contravene the Federal Circuit's guidance that "[t]he analysis must focus not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product." *TiVo Inc.*, 646 F.3d at 882. While Defendants may have made significant amendments to AdWords as a whole, it has not modified it in a way that affects I/P Engine's theory of infringement. Defendants point to *nCube* as standing for the proposition that an infringing element must serve an identical function in both the old and modified systems to be nothing more than a colorable variation. To the contrary, functionality in isolation from the theory of infringement was not dispositive in that case. Responding to one of the patentee's arguments, the court agreed with the district court that a modification was significant when an element "still performs the same relevant functions . . . but does so in a way that all parties admit puts [the element] outside the claim." 732 F.3d at 1351. Importantly, the court emphasized, "the colorable-differences standard focuses on how the patentee in fact proved infringement." *Id.*

6

For largely the same reasons, I/P Engine has also proven that new AdWords, like old AdWords, infringes its patents by filtering based on the combination of collaborative and content data. *See* Dkt. No. 1038, Attachment 1 (sealed) (Declaration of Dr. Ophir Frieder). Defendants' argument to the contrary focuses on the patents' filtering limitations. As noted in the Court's claim construction opinion entered on June 15, 2012, the parties ultimately did not ask the Court to construe any of the patents' terms regarding filtering. Dkt. No. 171, at 2 & n. 1. The patents' key claims use the term filtering on multiple occasions. Principally, they require "the filter system combining pertaining feedback data from the feedback system with the content profile data in filtering each informon for relevance to the query," and "a content-based filter system for combining the information from the feedback system with the information from the scanning system and for filtering the combined information for relevance to at least one of the query and the first user." Dkt. No. 171, at 3-5. Defendants contend that the term filtering presupposes a plurality of items, with some passing through and some being excluded, whereas new AdWords only compares the LTV score of a single ad to the threshold of zero. Further, Defendants contend that new AdWords now uses a comparative process, rather than filtering against a fixed criterion, which they say contradicts I/P Engine's theory of validity.

Neither argument is persuasive. As to the first, even accepting Defendants' definition of filtering, new AdWords still satisfies it. Although each candidate advertisement is considered individually in new AdWords, the comparison to the LTV score still serves to determine the final set of advertisements shown to a user in response to a given query, and in the process may likely exclude certain candidate advertisements and reduce the initial number of candidate advertisements. In any event, Defendants' definition appears to conflict with its second argument. Defendants argue that I/P Engine should be bound by its expert's testimony that

7

"filtering is a 'one by one' process in which each candidate item is compared to a standard to determine whether it should be kept or discarded." Dkt. No. 1020, at 11. New AdWords clearly performs this function. *See* Dkt. No. 1053 (sealed), at 4-6.

### B. Ongoing Royalty Rate

In its August 14, 2013 Order, the Court noted that Federal Circuit precedent suggests that parties should be given the opportunity to set their own royalty rate. Therefore, the Court **DEFERS** deciding this issue until after the parties' settlement conference scheduled for January 22, 2014.

### III. CONCLUSION

For the reasons stated above, the Court **FINDS** that Defendants' modified system is nothing more than a colorable variation of the system adjudged to infringe. Accordingly, Plaintiff is entitled to ongoing royalties as long as Defendants continue to use the modified system. The Court **DEFERS** ruling on the appropriate royalty rate in light of the parties' upcoming settlement conference.

The Clerk is **DIRECTED** to send a copy of this Order to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
January 21, 2014

Raymond A. Jackson
**United States District Judge**

8