IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

FILED

JAN 28 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

I/P ENGINE, INC.,

        **Plaintiff,**

    **v.**                            **CIVIL ACTION NO. 2:11cv512**

AOL INC., *et al.*,

        **Defendants.**


### *MEMORANDUM OPINION & ORDER*

Before the Court is Plaintiff's Opening Brief on Post-Judgment Royalties, Dkt. Nos. 1028 (public version), 1038 (sealed version), Defendants' Opening Brief on Issues Raised in the Court's August 14 Order, Dkt. Nos. 1020 (public version), 1033 (sealed version), and the parties' responsive briefs. The parties have been unable to agree on the appropriate ongoing royalty rate. Therefore, the rate is ripe for the Court's disposition, and the Court **FINDS** that the appropriate rate is 6.5%.


## I. BACKGROUND

On September 15, 2011, Plaintiff I/P Engine, Inc. filed a complaint against Defendants AOL, Inc., Google, Inc., IAC Search & Media, Inc., Gannett Company, Inc. and Target Corporation in which I/P Engine alleged that the Defendants had infringed several of its patents through their AdWords system. On November 6, 2012, a jury reached a verdict finding that the Defendants had infringed the asserted claims of two of I/P Engine's patents. *See* Verdict Form, Nov. 6, 2012, Dkt. No. 789. The jury awarded I/P Engine damages in the amount of

$30,496,155, which did not include interest. *Id.* The jury also awarded I/P Engine a running royalty rate of 3.5%. *Id.* On November 20, 2012, the formal judgment of the Court was entered. *See* Judgment of the Court, Nov. 20, 2012, Dkt. No. 801.

As a result of this favorable verdict, on December 18, 2012, I/P Engine asked this Court for an award of post-judgment royalties from the date of entry of final judgment, November 20, 2012, until Defendants ceased infringing or until the infringed patents expire on April 4, 2016. Dkt. No. 822. Further, it contended that the appropriate royalty base for an award was 20.9%, and the appropriate royalty rate was 7% based on changed circumstances post-judgment. The Court deferred ruling on I/P Engine's motion until after it ruled on various post-trial motions, and on May 13, 2013, Defendants filed their Opposition to I/P Engine's Motion. Dkt. No. 938. Defendants argued that I/P Engine was not entitled to any post-judgment royalties as a matter of law, that in any event Defendants had ceased infringing even before the entry of judgment because they had modified AdWords, and that if royalties were warranted, it should be in a lump sum. On August 14, 2013, the Court entered an Order finding that I/P Engine was entitled to an ongoing royalty with a royalty base of 20.9%, and that royalty payments should be made on a quarterly basis. Dkt. No. 963.

The Court deferred ruling on two other issues. First, the Court ordered further discovery and briefing as to Defendants' contention that they had ceased infringement on May 11, 2013, finding that the relevant legal standard was whether Defendants' modified version of AdWords ("new AdWords") was nothing more than a colorable variation of the infringing product ("old AdWords"). After the parties conducted discovery and filed their briefs, on January 21, 2014, the Court entered an order finding that new AdWords was nothing more than a colorable variation of old AdWords.

2

Second, the Court ordered the parties to meet to negotiate an appropriate ongoing royalty rate, and to schedule a settlement conference if they were unable to come to an agreement, noting that Federal Circuit precedent suggested that the parties should be given an opportunity to negotiate the ongoing royalties rate. It also decided that the proper method to use to determine the ongoing royalties rate was a modified *Georgia-Pacific* approach. On November 18, 2013, the parties notified the Court that they were unable to resolve the rate issue, Dkt. No. 1060, and on December 11, 2013, Magistrate Judge Lawrence R. Leonard entered a Settlement Conference Order for January 22, 2014. Dkt. No. 1061. The parties were unable to resolve the matter at that settlement conference. Accordingly, the matter is ripe for the Court's disposition.

## II. DISCUSSION

Both parties agree that the appropriate starting point is the jury verdict, but disagree as to what royalty rate the jury selected. Although the jury specifically indicated on the verdict form that the "running royalty rate" was 3.5%, Defendants contend that the jury actually found the rate to be 0.5%. The Court declines to adopt this contention, which requires speculation as to the jury's application of the Court's laches ruling, which of the multiple defendants to use as the applicable baseline, and other factors. Additionally, Defendants have in other filings represented to the Court that it should accept the 3.5% figure and instead work backwards from the jury's damages figures to adjust the royalty base, without explanation as to these conflicting approaches. Accordingly, the Court will adopt as a starting point for its analysis the 3.5% figure that was clearly expressed by the jury. I/P Engine's damages expert, Dr. Stephen Becker, specifically testified as to this rate at trial and the Court finds that his testimony was credible and persuasive. Trial Tr. 845.

3

In any event, the jury verdict is not dispositive but only a starting point in the analysis, because the jury verdict determined the rate for damages prior to the verdict of infringement. Ascertaining the appropriate rate after a verdict of infringement requires the consideration of additional factors and evidence. As the Federal Circuit has noted, "[p]rior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008). *See also Boston Scientific Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 275 (D. Del. 2012) ("A post-verdict royalty is fundamentally different from a pre-verdict royalty."). As the Court has previously recognized, the key question is "what amount of money would reasonably compensate [I/P Engine] for giving up [its] right to exclude yet allow an ongoing willful infringer to make a reasonable profit." Dkt. No. 963, at 5 (quoting *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620 (E.D. Tex. 2009)).

Reasoning that a jury verdict of infringement reduces the bargaining power of the infringer in a hypothetical negotiation *vis-à-vis* the patentee, courts frequently find that the post-verdict ongoing royalty rate should be higher than that found at trial. *E.g.*, *Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 861 (E.D. Tex. 2009) (noting that the "failure to recognize the parties' changed legal status would create an incentive for every defendant to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing" (quotation omitted)); *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 987 (N.D. Cal. 2009). I/P Engine contends that the rate should be increased from 3.5% to 5%, a nearly 43% increase. It relies

4

principally on a declaration by Dr. Becker describing the changed circumstances between the parties. Defendants offer various reasons why Dr. Becker's declaration is unreliable and continue to effectively argue for a lump sum despite the Court's previous ruling to the contrary.

In conducting a modified *Georgia-Pacific* analysis, the Court will focus on the factors that have been impacted by changed circumstances between a 2004 and 2012 hypothetical negotiation between the parties. *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 626 (E.D. Tex. 2009) (citing *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) (listing fifteen factors that may be considered in determining a reasonable royalty)). For that reason, the Court declines to address Defendants' attempts to re-attack and re-litigate the evidence presented and considered in the pre-trial proceedings and at the trial in this case, as such evidence does not represent a changed circumstance between the parties. I/P Engine's expert, Dr. Becker, points to four changed circumstances to justify its requested increase: Defendants are now adjudged infringers, there is now a different owner of the patent who is financially sound, AdWords' revenue impact is now better known, and certain comparable licenses would no longer be subject to discounted rates and would range between 3.75% and 5%. *See Georgia-Pacific Corp.*, 318 F. Supp. at 1120 (considering "[t]he opinion testimony of qualified experts"). The Court finds that the first three of those four changed circumstances, while all variations on the theme that Defendants are now adjudged infringers (a fact that will be further accounted for to some extent in a willfulness enhancement, as described below), are all relevant and weigh in favor of increasing the royalty rate (and are virtually undisputed by Defendants). With the jury's verdict in hand, I/P Engine is in a much stronger bargaining position than it would have been in 2004. The Court, however, places little weight on Dr. Becker's fourth consideration, which concerns pre-verdict circumstances. As I/P Engine

itself explicitly argues, pre-verdict settlements and agreements are of only little relevance in this analysis as it occurred when the bargaining positions of the parties were quite different. Dkt. No. 1054, at 9. Defendants do point to a license I/P Engine entered into after the judgment in this suit with one of Defendants' competitors. *See Georgia-Pacific Corp.*, 318 F. Supp. at 1120 (considering "[t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty"). However, that license is for an unspecified amount of money, and Defendants provide little detail as to the competitor's use of the patent, the competitor's likelihood of success in an infringement suit, and other factors that would allow a probative comparision to I/P Engine's hypothetical 2012 negotiation with Defendants.

A further flaw in Dr. Becker's analysis is that it does not account for the substantial investment that Defendants have made to improve old AdWords and improve new AdWords. *See Georgia-Pacific Corp.*, 318 F. Supp. at 1120 (S.D.N.Y. 1970) (considering "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer"). For these reasons, the Court finds it appropriate to increase the royalty rate under the modified *Georgia-Pacific* approach to 4.6% rather than to the 5% requested by I/P Engine.

I/P Engine further contends that the royalty rate should be increased by an additional 40% to account for the fact that Defendants are now willful infringers. *Affinitiy Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 899 (E.D. Tex. 2011) ("Following a jury verdict and entry of judgment of infringement and no validity, a defendant's continued infringement will be willful absent very unusual circumstances."). Defendants assert that they should not receive a willfulness enhancement because they are now subject to a court-sanctioned royalty, and because

they have reasonable arguments of invalidity and non-infringement in their pending appeal in the

Federal Circuit.   Both of these contentions are unavailing.   Defendants point to no support for

the proposition that continued infringement following a jury verdict of infringement should not

be considered willful because of a court-ordered ongoing royalty.   Instead, the case law this

Court is aware of directly contradicts their argument.   *E.g.*, *Id.*; *Paice*, 609 F. Supp. 2d at 631.

Defendants cite *ActiveVideo Networks, Inc. v. Verizon Commc'ns*, 827 F. Supp. 2d 641 (E.D. Va.

2011), but that case involved infringement during a limited sunset period granted by the Court at

Defendants' request, a significantly different scenario from a royalty ordered by the Court at

Plaintiff's request to compensate for Defendants' choice to continue to infringe.   As to

Defendants' second argument, in *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d

639 (E.D. Tex. 2011), the Court thoughtfully explained why it found it appropriate to reject

similar arguments.   Among other reasons, it stated that the Federal Circuit and not the district

court was in the proper position to evaluate the merits of the appeal, and that continued

infringement before appeal would nonetheless usually be considered willful.   It then doubled the

royalty rate to account for willfulness, an enhancement on the high end of typical enhancements.

*Affinity Labs*, 784 F. Supp. 2d at 901 (increasing by 33% and noting that "other courts in this

district have commonly awarded post-trial premiums in the range of 33% to 50%").   In light of

the treble damages normally awarded for willful infringement, the Court finds Defendants' 40%

request reasonable.

Further, the relevant factors delineated in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-

27 (Fed. Cir. 1992), weigh in favor of I/P Engine.   Those factors are: 1) whether the infringer

deliberately copied, 2) whether the infringer had a good faith belief of invalidity or non-

infringement, 3) the infringer's behavior as a party in the litigation, 4) the defendant's size and

7

financial condition, requiring consideration of whether any enhancement would severely impact

the defendant, 5) closeness of the case, 6) duration of defendant's misconduct, 7) remedial action

by the defendant, 8) defendant's motivation for harm, 9) whether the defendant attempted to

conceal its misconduct.  Although I/P Engine does not dispute that there is no evidence of

copying, improper motive, or concealment (Factors 1, 8, and 9) on Defendants' part, Defendants'

misconduct continues presently (Factor 6) and Defendants have taken no remedial action (Factor

7).  In fact, they have redesigned a system that clearly replicates the infringing elements of old

AdWords (Factor 2).  Dkt. No. 1086.  For all of these reasons, the Court finds I/P Engine's

request for a willfulness enhancement to be reasonable, and will enhance the 4.6% rate by just

over 40% to 6.5%.


### III. CONCLUSION

For the reasons stated above, the Court **FINDS** that the appropriate ongoing royalty rate

is **6.5%**.

The Clerk is **DIRECTED** to send a copy of this Order to the parties.

**IT IS SO ORDERED**.


Norfolk, Virginia
January 28, 2014

_____
/s/
Raymond A. Jackson
United States District Judge

8